# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

APPALACHIAN VOICES, et al.

*Plaintiffs, on behalf of themselves and all others
similarly situated*

v.

UNITED STATES ENVIRONMENTAL
PROTECTION AGENCY and LEE ZELDIN, in his
official capacity as Administrator of the United States
Environmental Protection Agency

Defendants.

**DECLARATION OF THE NATIVE VILLAGE OF KIPNUK, A
FEDERALLY-RECOGNIZED NATIVE AMERICAN TRIBE**

I, Rayna M. Paul, declare as follows:

Background

1. My name is Rayna M. Paul, and I live in Kipnuk, Alaska. This declaration is based on my personal knowledge and professional education and experience. I am over the age of eighteen and suffer from no legal incapacity. I submit this declaration in support of the claim of The Native Village of Kipnuk, which is one of several grant recipients affected by the freeze and terminations of federal grant funding.

2.  The Native Village of Kipnuk is a Federally-recognized Native American Tribe per 85
    Fed. Reg. § 5462 and is located in Kipnuk, Alaska.   Kipnuk has approximately 974
    residents with a per capita annual income of only $12,107 and a poverty rate over 26%.

3.  Our community does not have a piped water and sewer system connected to any of our
    residential homes. This means we do not have running water in our homes and must
    collect our water in the summer from rainwater or from the local lakes and from chipped
    ice in the winter. To go to the bathroom, we must use honey buckets (5-gallon buckets)
    which, when full, are dumped into hoppers which then must then be transported manually
    to the honey bucket sewage lagoon. Some of our other buildings such as the AVCP
    triplex building, CVRF building, and the health clinic have toilets that flush, but the
    sewage goes to a holding tank which still must be drained and hauled manually to the
    honey bucket sewage lagoon. The only buildings which have flushable toilets are the
    school and the laundromat.

4.  Kipnuk is nestled along a bend in the Kugkaktlik River.  Almost all of Kipnuk's residents
    identify as of the Yup'ik culture, speak the Native language (Yup'ik), and maintain
    traditional lifeways including subsistence hunting, fishing, and gathering to support their
    families and neighbors, and for food security.  Kipnuk is a remote village, meaning that it
    is not on a road system. We are located approximately 98 nautical miles from the nearest
    airport hub of Bethel, and 436 nautical miles from Alaska's continuous road system.
    Transport in or out of the village must be by airplane or, in the summer months, by boat.
    Barges carrying construction equipment and supplies can only reach Kipnuk during the
    summer months, when the river bordering the village is free of ice.

5.  I am the Environmental Director for the Native Village of Kipnuk. I have worked in this position for six years. As Environmental Director, I manage the Environmental Department, including resilience and adaptation planning, and work to address the risks of erosion, flooding, and permafrost thaw.  My department also manages solid waste, hazardous waste, annual cleanup, and emergency and disaster preparedness and recovery.

6.  Under my supervision, the Native Village of Kipnuk applied for and was awarded a Community Change Grant from the United States Environmental Protection Agency ("EPA") ("the Grant").  The Grant was awarded to implement the Kipnuk Riprap Riverbank Stabilization Project to stabilize a portion known as Reach 3 of the quickly-eroding bank of the Kugkaktlik River so that the erosion does not jeopardize critical infrastructure and cultural resources, and does not threaten the release of hazardous waste that is stored near the riverbank.  The Grant was for three years starting March 1, 2025.

The "Terminated" Grant is Critical to the Environment and to the Future of the Tribe

7.  The Kipnuk Riprap Riverbank Stabilization Project, discussed below in more detail, is essential to prevent environmental and cultural catastrophe.  Any further delay in starting will create a risk that our village will suffer environmental, physical, and cultural harms that cannot be reversed.

8.  Addressing the environmental harm first, the village is built on permafrost, which is common in Alaska. Permafrost is a layer of ground that stays frozen throughout the year and is located under a surface layer of ground that thaws during the summer months.

9.  The permafrost in and around Kipnuk is thawing and the land is eroding.  Images and maps of the Village are attached as Exhibit 1.  As the permafrost thaws, the erosion rate

accelerates as the once frozen riverbank becomes soft. That causes the land to sink, increasing the frequency and severity of flooding. Floods accelerate the rate of erosion and cause more permafrost thaw.  This causes a cycle of destruction. (*2009 study:  US Army Corps of Engineers, Alaska Baseline Erosion Assessment, 2009, Appendix F: Community Erosion Assessment, Kipnuk, Alaska, 26 January 2009.*)  This is especially true along the banks of the Kugkaktlik River.  The riverbank recedes up to 22 feet every year in some places.  As of 2009, approximately 0.7 acres were lost each year. Since that time, the erosion has accelerated, as demonstrated by erosion monitoring measurements and erosion forecasting. This accelerated erosion is putting the health and safety of our community members and critical infrastructure at ever increasing risk.

10. We have already lost some of our critical infrastructure to erosion, demonstrating the imminent danger to our village.  The Tribal Bunkhouse was demolished because erosion made it unstable and at risk of collapsing into the river.  This bunkhouse was a source of income to the Tribe, and was used to house visitors and workers.  Now, visitors must stay at the school. At least one home has already been relocated away from the riverbank due to the risk of erosion. We plan to relocate an additional two homes this coming winter, and other at-risk homes in the future.

11. Our critical infrastructure located close to the project area, including the fuel header and pump house, boardwalks, the village corporation store, wind turbines, and the bulk fuel tank farm, are at risk if the Kipnuk Riprap Riverbank Stabilization Project is not completed promptly.  The fuel header, which is now only ten feet from the riverbank, is at imminent risk. When barges bring fuel to the village, the fuel is offloaded and transferred from the barge into the bulk fuel tanks through this fuel header. The pump house, which is our village's "gas station," is only 88 feet from the river.

4

12. Our village depends on boardwalks because the ground is too marshy and wet to walk on or drive four wheelers or other vehicles in the summer. Unfortunately, some boardwalks are at risk of falling into the river. Fifteen feet of boardwalk had to be removed in the fall of 2024 because the ground had eroded out from under it and it was too dangerous to walk on. The boardwalks are still at risk as the ground continues to erode.

13. The village corporation hardware store and warehouse, also located on Reach 3, are at imminent risk from riverbank erosion. The warehouse had to be moved away from the encroaching erosion just last month to avoid it collapsing into the river. The hardware store itself is only 128 feet from the riverbank. We also had to move four connex storage containers located next to the warehouse to prevent them from falling into the river.

14. Our wind turbines, which reduce the cost of generating electricity by almost 50%, are projected to be at the river edge between 2033 and 2043. However, erosion has been accelerating at an alarming rate, and the permafrost is quickly thawing, which will cause erosion to occur even more quickly than before. This means that the erosion may reach the wind turbines much sooner than expected.

15. The bulk fuel tank farm is similarly at risk. Our entire community relies on the fuel from this tank farm for running our power plant generators; for transportation (four-wheelers, boats, and snowmachines); and for heat and lights for our homes and public spaces, including our school, health clinic, public safety building, laundry facility, Tribal buildings, stores, etc.

16. Hazardous materials located close to the riverbank could release pollutants into the river. These hazardous materials include abandoned fuel tanks, transformers, lead acid batteries, and glycol that can become inundated during a flooding event or dislodged into the river. Without the Grant, we may not have the funding to remove and relocate these

hazardous materials to a safe location. This could result in the contamination of our river, the ocean, and surrounding lands that we rely on for our food.

17.  Kipnuk once stood hundreds of feet away from the riverbank, more protected from storm surges and flooding during extreme weather events. Recently, more frequent storms, strong river currents, frequent flooding, warming temperatures, accelerated permafrost thaw and resulting subsidence (sinking of the land), and rising sea level have caused the riverbank to erode at an alarmingly fast rate as shown in this table:

| Measurements in feet from structure to riverbank, showing rate of erosion | | | | |
|---|---|---|---|---|
| Structure | 2019 | 2023 | 2024 | 2025 |
| Tribal Bunkhouse | 130' | 22' | 15'6" | --- |
| Residential Buildings | 106' | 78' | 50'5" | 49'3" |
| New Bulk Fuel Header | 76' | 32' | 18'4" | 10' |
| Village Corp Warehouse | --- | 52' | 44'5" | --- |
| Power pole anchor | --- | 13' | 11' | 6' |

*Figure 1: Table of erosion rates along the Kipnuk riverfront.*

In September 2022, Typhoon Merbok further exacerbated the erosion with high waters, turbulent waves, and ripping currents. Another storm, in August 2024, caused even more erosion and flooding, resulting in a major disaster declaration.

18. As more land falls into the Kugkaktlik River, the strip of land on which our village is located continues to narrow, squeezing our village between the lakes to the south and the river to the north. We will soon have no safe place in our village to move homes, buildings, and other infrastructure at risk from erosion.

19. The Grant clearly describes the cultural importance of the Kipnuk Riprap Riverbank

Stabilization Project:

> This project enables [the] community to continue to live in the land
> they have inhabited since time immemorial, increases the
> protection of community and critical infrastructure during and after
> extreme weather events, reduces conditions that promote mold
> growth which reduces health risks from indoor air quality, and
> enables the community to carry out their subsistence activities
> while avoiding or preventing new pollution.

See the Grant Agreement attached as Exhibit 2.

20. If the project does not go forward, contamination from hazardous waste will jeopardize

our use of the river and land for subsistence hunting, fishing, and gathering. Community

members rely on subsistence activities for food security and for their cultural identity.

The loss of the fuel header, pump house, boardwalks, wind turbines, and bulk fuel tank

farm will jeopardize our community members' ability to carry on their daily lives.

21. The window for construction in Kipnuk is very short because when the river, riverbank,

and ground are frozen, the needed studies and mitigations cannot be performed.

Typically construction can only be done in the months from June to September.  Barges

carrying equipment and supplies needed for the project can reach Kipnuk only in the

summer when the river has thawed. If the Grant is not funded this June, engineering

planning and design for the project cannot begin in 2025, putting off this essential project

for a minimum of a full year.  This also means that construction of the project may not be

able to be completed in the three-year term allowed.

22. The loss of the current Grant would delay construction of a riverbank stabilization project

for at least a year if not longer. The application for the current Grant required significant

time and effort. I worked with a technical assistance team of four people and our statutory

partner Alaska Institute for Justice from February to August 2024 to gather information

and prepare the application.  Then, after it was submitted, it took the EPA from

September 2024 until January 2025 to award the Grant.

The Grant Award and Purported Termination Timeline

23. On December 12, 2024, the EPA announced on its website that Kipnuk had been awarded

a Community Change Grant.

24. On January 13, 2025, the EPA issued its Notice of Award and Grant Agreement to the

Village of Kipnuk for the Kipnuk Riprap Riverbank Stabilization Project, in the amount

of $19,998,693, with a grant start date of March 1, 2025.  See Exhibit 2.

25. Shortly after the grant money became available, we learned that it was suspended, and

then briefly started again.  The EPA Office of Mission Support formally notified the

Native Village of Kipnuk that its Grant was terminated by letter dated May 2, 2025.  That

letter says in part:

> This EPA Assistance Agreement is terminated effective immediately on
> the grounds that the remaining portion of the Federal award will not
> accomplish the EPA funding priorities for achieving program goals. The
> objectives of the award are no longer consistent with EPA funding
> priorities.

See Exhibit 3.  The EPA confirmed the termination of the Grant on May 2, 2025 in an

"Assistance Amendment."  A copy of the "Assistance Amendment" is attached hereto as

Exhibit 4.

26. The Native Village of Kipnuk promptly disputed the Grant termination in a letter dated

May 3, 2025, pointing out that the grounds for termination were invalid, and reserving

their right to litigate.

Work Under the Grant

27.  The work to be done under the Grant includes several engineering and community

initiatives. All these have been halted by the EPA Grant termination.

28. The riverbank stabilization includes building a structure to keep the riverbank from eroding, called a revetment.  The revetment will protect 1,424 feet of riverbank and 1,900 feet of boardwalk used by community members to travel within the village.

29.  The project includes removing hazardous materials that pose a risk of contaminating the Kugkaktlik River, including transformers, lead acid batteries, and glycol. The project will also remove abandoned fuel tanks at risk of falling into and contaminating the river.

30. Local workforce development and training are included as important components of the Grant, which will increase the long-term capacity of the Native Village of Kipnuk. This includes hiring and training a project manager; and hiring and training a bookkeeper on both accounting skills and grant management skills.

31. The Grant also includes funding to train Tribal staff on heavy equipment maintenance and operation. This will increase Tribal capacity for purposes of constructing the revetment, as well as maintaining the revetment once construction is completed.

32. The only thing the Native Village of Kipnuk has been able to accomplish under the Grant is buying a bulldozer that is to be used to construct and maintain the revetment. The bulldozer had to be purchased early in the process so that it can be shipped by barge during the few summer months when the waterways are passable.

The Native Village of Kipnuk Cannot Afford This Work Without the Grant

33. The Native Village of Kipnuk cannot stabilize the riverbank without this grant.  As I noted above, we have a high poverty rate in Kipnuk and residents lack financial resources. They cannot pay for this work themselves.

34. The Native Village of Kipnuk does not have taxing authority and cannot raise funds itself for riverbank stabilization, or anything else.  It depends on grants to fund local government projects. The power plant, which is owned by the Tribe, seeks to keep its

rates as low as possible and generates only enough income to pay the costs of generating and distributing power.  The Tribal Bunkhouse did provide income for the Tribe but it had to be torn down, as I described above.

Disruption Caused by Grant Termination

35. In February 2025, we hired a bookkeeper to work on the Grant project.  She began working on March 5, 2025. However, after I discovered that the Grant was suspended, I told the bookkeeper that the funding was suspended, and that I had to let her go until and unless we got that funding back. She worked only from March 5, 2025, to March 10, 2025. I was not able to draw down funds from the Grant to pay her wages because the funds were suspended. I still have not been able to do that.

36. The village of Kipnuk posted a job for a project manager for the Grant project, but we were not able to hire for that position because the Grant was terminated.

Negative Effects on Democracy Caused by Grant Termination

37. The Native Village of Kipnuk and the Tribal Council both have an obligation to ensure the wellbeing of their constituencies.  We cannot fulfill that democratic obligation without the Grant.

38. The only reason that the Native Village of Kipnuk settled in Kipnuk is because the Federal government built the school and other infrastructure there around 1922. The Tribe had been nomadic for thousands of years, but when the government built the school in Kipnuk, they told us we had to settle there so that our children could attend school. Failure to do so would risk having our children taken away and sent to boarding school, as had happened in the past. But Kipnuk is no longer a safe place to live and work. And now the Federal government is taking back the grant money that would have helped to

make it a safer place to live not only for my generation, but also for future generations. This is unconscionable and violates my trust in the Federal government.

39. In fact, the Federal government has trust responsibility to the Native Village of Kipnuk. As noted by the Secretary of the Interior in 2014:

> The United States' trust responsibility is a well-established legal obligation that originates from the unique, historical relationship between the United States and Indian tribes … The trust responsibility consists of the highest moral obligations that the United States must meet to ensure the protection of tribal and individual Indian lands, assets, resources, and treaty and similarly recognized rights.

US Secretary of the Interior, Order No. 3335, 2014 (citations omitted).

40. There have been repeated studies on the erosion of the riverbank bordering Kipnuk and the risk that erosion poses to our village. The Grant was the first time that the Federal government committed to take action to help our community stabilize the riverbank and prevent the looming devastation that inaction will bring.  Now, with the purported termination of the Grant, the government is seeking to back out of its commitment by refusing to fund the construction of a project that is critical to protect the health and safety of our community members and infrastructure.

41. Erosion has long been a concern of, and a priority for, our community. There was full support for the Kipnuk Riprap Riverbank Stabilization Project from both the Tribal Council and the community. EPA's purported termination is viewed as a broken promise by the Federal Government.

42. Community-wide relocation—which would require finding a safer location and moving or building new infrastructure, including homes, a school, a health clinic, and other public buildings—is not a viable option for my community. We do not have the money and other resources needed to relocate. And there is no government agency that has the

authority or resources to help with this process. Our Tribal leaders and local elders have chosen to protect in place. They know what is best for our community based on their extensive knowledge, experience, wisdom, and holistic view of the past and the future. Because they have chosen to protect in place, I focus my work on protecting our current location.

43. Restarting the Grant funding will allow the Native Village of Kipnuk and our subawardees to move forward with the Kipnuk Riprap Riverbank Stabilization Project. This project will help us stop the ongoing and accelerating erosion that is threatening our homes, buildings, and other critical infrastructure, and our way of life. This project will also help us prevent contamination from hazardous waste that may jeopardize our use of the river and land for subsistence hunting, fishing, and gathering.  Restarting the Grant will help us to preserve our way of life and heritage for generations to come.

44. Reinstating our Grant would allow the Village of Kipnuk to immediately rehire our bookkeeper and seek to hire the project manager who would help oversee the Kipnuk Riprap Riverbank Stabilization Project. Furthermore, because we are still within the Summer months where construction is possible, we may yet be able to order supplies to be delivered to the Village of Kipnuk via barge. We would immediately be able to hire workers and order critical supplies needed to resume the project to prevent riverbank erosion that is actively endangering Kipnuk.

*(signature on following page)*

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States, the foregoing is true and correct.

June 23, 2025

Rayna M. Paul, Environmental Director, the Native Village of Kipnuk

# EXHIBIT 1



*Figure 2 Aerial Image of Kipnuk, the Kugkaktlik River, and surrounding lakes (Zach Gionatti, 2023).*



*Figure 4: Erosion forecast map based on erosion forecast methods outlined in Buzzard, et al., 2021 (Map by Woodwell Climate Research Center, 2023).*



*Figure 4: Map defining the three "reaches" of the river bordering the village of Kipnuk. All three reaches are eroding at an alarming rate. However, the Grant was for the design and construction of a riprap riverbank stabilization project along Reach 3, to protect critical infrastructure including the fuel header and pump house, boardwalks, the village corporation store, wind turbines, and the bulk fuel tank farm.*



*Figure 5: Erosion and proximity of wind turbines, fuel tanks, and boardwalk within Reach 3 in June 2024.*



*Figures 6a and 6b: figure 6a (left) from June 2024, and figure 6b (right) from August 2024, showing accelerating erosion that is destroying community boardwalks and threatening other infrastructure, including homes.*

# EXHIBIT 2

5F  02J95601  0    Page 1

| | | | |
|---|---|---|---|
| **U.S. ENVIRONMENTAL PROTECTION AGENCY**<br><br>**Grant Agreement** | **GRANT NUMBER (FAIN):** 02J95601<br>**MODIFICATION NUMBER:** 0<br>**PROGRAM CODE:** 5F | | **DATE OF AWARD**<br>01/13/2025 |
| | **TYPE OF ACTION**<br>New | | **MAILING DATE**<br>01/16/2025 |
| | **PAYMENT METHOD:**<br>ASAP | | **ACH#**<br>X0209 |

| | |
|---|---|
| **RECIPIENT TYPE:**<br>Indian Tr be | **Send Payment Request to:**<br>rtpfc-grants@epa.gov |
| **RECIPIENT:** | **PAYEE:** |
| Native Village of Kipnuk<br>P.O. BOX 057<br>101 COUNCIL DR<br>KIPNUK, AK 99614-0057<br>EIN:  92-0059660 | Native Village of Kipnuk<br>P.O. BOX 057<br>101 COUNCIL DR<br>KIPNUK, AK 99614-0057 |

| **PROJECT MANAGER** | **EPA PROJECT OFFICER** | **EPA GRANT SPECIALIST** |
|---|---|---|
| Rayna Paul<br>PO Box 057<br>Kipnuk, AK 99614-0057<br>**Email:** kipnukigap@yahoo.com<br>**Phone:** 907-896-5515 | Martha Tomlinson<br>1200 Sixth Ave<br>Seattle, WA 98101-3144<br>**Email:**  Tomlinson.MarthaScott@epa.gov<br>**Phone:** 206-553-8696 | Mark Romelli<br>1200 Sixth Ave<br>Seattle, WA 98101-3144<br>**Email:**  romelli.mark@epa.gov<br>**Phone:** 206-553-6321 |

**PROJECT TITLE AND DESCRIPTION**

Kipnuk Reach 3 Riprap Riverbank Stabilization Project

See Attachment 1 for project description.

| **BUDGET PERIOD**<br>03/01/2025 - 02/29/2028 | **PROJECT PERIOD**<br>03/01/2025 - 02/29/2028 | **TOTAL BUDGET PERIOD COST**<br>$ 19,998,693.00 | **TOTAL PROJECT PERIOD COST**<br>$ 19,998,693.00 |
|---|---|---|---|

## NOTICE OF AWARD

Based on your Application dated 09/01/2024 including all modifications and amendments, the United States acting by and through the US Environmental Protection Agency (EPA) hereby awards $ 19,998,693.00. EPA agrees to cost-share <u>100.00%</u> of all approved budget period costs incurred, up to and not exceeding total federal funding of $ 19,998,693.00. Recipient's signature is not required on this agreement. The recipient demonstrates its commitment to carry out this award by either: 1) drawing down funds within 21 days after the EPA award or amendment mailing date; or 2) not filing a notice of disagreement with the award terms and conditions within 21 days after the EPA award or amendment mailing date. If the recipient disagrees with the terms and conditions specified in this award, the authorized representative of the recipient must furnish a notice of disagreement to the EPA Award Official within 21 days after the EPA award or amendment mailing date. In case of disagreement, and until the disagreement is resolved, the recipient should not draw down on the funds provided by this award/amendment, and any costs incurred by the recipient are at its own risk. This agreement is subject to applicable EPA regulatory and statutory provisions, all terms and conditions of this agreement and any attachments.

| **ISSUING OFFICE (GRANTS MANAGEMENT OFFICE)** | **AWARD APPROVAL OFFICE** |
|---|---|
| **ORGANIZATION / ADDRESS** | **ORGANIZATION / ADDRESS** |
| U.S. EPA, Region 10, EPA Region 10<br>Mail Code: 17-C04, 1200 Sixth Avenue, Suite 155<br>Seattle, WA 98101 | U.S. EPA, Region 10, Environmental Justice, Community Health and Environmental Review Division<br>R10 - Region 10<br>1200 Sixth Avenue<br>Seattle, WA 98101-3144 |

| **THE UNITED STATES OF AMERICA BY THE U.S. ENVIRONMENTAL PROTECTION AGENCY** | |
|---|---|
| Digital signature applied by EPA Award Official Felicia Thomas - Manager, Tribal Grants Section | **DATE**<br>01/13/2025 |

5F  02J95601  0    Page 2

# EPA Funding Information

| FUNDS | FORMER AWARD | THIS ACTION | AMENDED TOTAL |
|---|---|---|---|
| EPA Amount This Action | $ 0 | $ 19,998,693 | $ 19,998,693 |
| EPA In-Kind Amount | $ 0 | $ 0 | $ 0 |
| Unexpended Prior Year Balance | $ 0 | $ 0 | $ 0 |
| Other Federal Funds | $ 0 | $ 0 | $ 0 |
| Recipient Contribution | $ 0 | $ 0 | $ 0 |
| State Contribution | $ 0 | $ 0 | $ 0 |
| Local Contribution | $ 0 | $ 0 | $ 0 |
| Other Contribution | $ 0 | $ 0 | $ 0 |
| Allowable Project Cost | $ 0 | $ 19,998,693 | $ 19,998,693 |

| Assistance Program (CFDA) | Statutory Authority | Regulatory Authority |
|---|---|---|
| 66.616 - Environmental and Climate Justice Block Grant Program | Clean Air Act: Sec. 138 | 2 CFR 200, 2 CFR 1500 and 40 CFR 33 |

| Fiscal | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Site Name | Req No | FY | Approp. Code | Budget Organization | PRC | Object Class | Site/Project | Cost Organization | Obligation / Deobligation |
| - | 25125WB132 | 2226 | BSF5 | WF | 000W57XK1 | 4140 | - | - | $ 19,998,693 |
| | | | | | | | | | $ 19,998,693 |

Budget Summary Page

| Table A - Object Class Category (Non-Construction) | Total Approved Allowable Budget Period Cost |
|---|---|
| 1. Personnel | $ 406,673 |
| 2. Fringe Benefits | $ 36,845 |
| 3. Travel | $ 95,804 |
| 4. Equipment | $ 480,000 |
| 5. Supplies | $ 17,508 |
| 6. Contractual | $ 3,133,841 |
| 7. Construction | $ 14,832,855 |
| 8. Other | $ 894,400 |
| 9. Total Direct Charges | $ 19,897,926 |
| 10. Indirect Costs: 0.00 % Base | $ 100,767 |
| 11. Total (Share: Recipient ___0.00 % Federal __100.00 %) | $ 19,998,693 |
| 12. Total Approved Assistance Amount | $ 19,998,693 |
| 13. Program Income | $ 0 |
| 14. Total EPA Amount Awarded This Action | $ 19,998,693 |
| 15. Total EPA Amount Awarded To Date | $ 19,998,693 |

# Attachment 1 - Project Description

This agreement provides funding under the Inflation Reduction Act (IRA) to Native Village of Kipnuk. Specifically, the Kipnuk Riprap Riverbank Stabilization Project will add riprap to build a revetment along a segment of the Kugkaktlik river referred to as Reach 3. Bank stabilization accomplished through the Project will provide erosion protection and will prevent critical community infrastructure along the embankment from falling into the river. The project also includes removal of hazardous waste at risk of falling into the river, workforce development through training, and community engagement at meetings.

The activities to be performed include building a revetment to stabilize the riverbank and removal of hazardous waste, deteriorated construction materials, and fuel tanks that are at risk of falling into the Kugkaktlik River. Other activities include bulldozer training, project manager training, bookkeeper training, and other trainings/capacity building for Tribal employees and community members, as well as hosting seven community meetings to ensure that the community is informed of important issues and activities, and to receive community input, guidance, and feedback.

The anticipated deliverables include 1,424 feet of protected riverbank and approximately 1,900 feet of protected boardwalk. The project will also remove hazardous waste and deteriorated materials, remove fuel tanks at risk of falling into the Kugkaktlik River, reduce permafrost thaw, prevent relocation, reduce response time to emergencies, and reduce soaking of insulation, framing, flooring, and walls in homes and other structures caused by frequent flooding, reducing conditions that promote the growth of mold. The expected outcomes include improved resilience of native grasses and tundra ecosystem from natural and climate change-accelerated erosion, extreme weather, and environmental degradation thereby increasing protection from flooding, storm surges, natural scouring, permafrost thaw, and watershed sedimentation. Expected outcomes also include increased community mobility and access, maintaining barge access to the community, eliminating potential contamination in Kugkaktlik River, workforce development stimulating the local economy, and reducing costs associated with maintenance. This project enables community to continue to live in the land they have inhabited since time immemorial, increases the protection of community and critical infrastructure during and after extreme weather events, reduces conditions that promote mold growth which reduces health risks from indoor air quality, and enables the community to carry out their subsistence activities while avoiding or preventing new pollution. The intended beneficiaries are disadvantaged communities.

Subaward activities implemented through Alaska Institute for Justice (AIJ) include coordination of logistics, assistance, support, guidance, capacity building training, project management oversight, and serving as a liaison between Native Village of Kipnuk, contractors, agencies, and vendors. Additionally, AIJ will travel to Kipnuk for meetings (including community meetings) and trainings. Subaward activities implemented through Zender Environmental for full suite of grant management services include preparation of requests for proposals, guidance and assistance in selection and contracting of project contractors, subaward agreements and monitoring, capacity building grant management and bookkeeping training, guidance and assistance for Tribal employees, and grant closeout.

# Administrative Conditions

## 1. <u>NATIONAL ADMINISTRATIVE TERMS AND CONDITIONS</u>

### GENERAL TERMS AND CONDITIONS

The recipient agrees to comply with the current EPA general terms and conditions available at: https://www.epa.gov/system/files/documents/2024-10/fy_2025_epa_general_terms_and_conditions_effective_october_1_2024_or_later.pdf

These terms and conditions are in addition to the assurances and certifications made as a part of the award and the terms, conditions, or restrictions cited throughout the award.

The EPA repository for the general terms and conditions by year can be found at: https://www.epa.gov/grants/grant-terms-and-conditions.

## A.  CORRESPONDENCE

Federal Financial Reports (SF-425):  rtpfc-grants@epa.gov

MBE/WBE reports (EPA Form 5700-52A): R10grants@epa.gov

All other forms/certifications/assurances, Indirect Cost Rate Agreements, updates to recipient information (including email addresses, changes in contact information or changes in authorized representatives) and other notifications: R10grants@epa.gov

Requests for Extensions of the Budget and Project Period, Quality Assurance documents, workplan revisions, equipment lists, programmatic reports and deliverables, Amendment Requests, Requests for other Prior Approvals: tomlinson.marthascott@epa.gov@epa.gov

Administrative questions and issues: romelli.mark@epa.gov

## B.   TRIBAL COUNCIL COSTS

With regard to payments to members of the Tribal Council, 2 CFR 200.444, provides that general costs of government are unallowable, and subparagraph (a)(2) specifically includes in this prohibition salaries and expenses of tribal councils whether incurred for purposes of legislation or executive direction.

At the same time, however, the guidance includes other provisions which may or may not allow payment of grant funds to Council members:

**(a)** 2 CFR 200.422 Advisory Councils – Costs incurred by advisory councils or committees are unallowable unless authorized by statute or the awarding agency.

**(b)** 2 CFR 200.459 Professional Service Costs – Costs of professional and consultant services rendered by persons who are members of a particular profession or possess a special skill, and who are not officers or employees of the governmental unit, are allowable.

**(c)** 2 CFR 200.432 Conferences – Allowable conference costs paid by the non-Federal entity as a sponsor or host of the conference may include rental of facilities, speakers' fees, costs of meals and refreshments, local transportation, and other items incidental to such conferences unless further restricted by the terms and conditions of the awarding agency.

**(d)** 2 CFR 200.444(b) General Costs of Government – For Indian Tribes and Councils of Governments (COGs), the portion of salaries and expenses directly attributable to managing and operating Federal programs by the chief executive and his or her staff is allowable.

Any costs pertaining to the Tribal Council must be in accordance with 2 CFR Part 200, Subpart E and the terms of this award.  The recipient should refer to the entire paragraphs cited above and 2 CFR Part 200 in its entirety, 2 CFR Part 1500 and 40 CFR Part 35, as applicable, for additional requirements because the passages above are excerpts only, and other provisions could affect the allowability of costs.  In accordance with 2 CFR 200.403, costs charged to the grant must be adequately documented. The recipient or subrecipient agrees to keep documentation as to how any Tribal Council costs charged to this grant fit with the above-mentioned paragraphs and how the costs relate to the work plan components.

## Programmatic Conditions

The recipient agrees to comply with the current EPA Community Change Grants Programmatic Terms and Conditions, available at: https://www.epa.gov/inflation-reduction-act/epa-community-change-grants-program-terms-and-conditions.

These terms and conditions are in addition to the General Terms and Conditions, additional programmatic terms and conditions, and the administrative terms and conditions included in the EPA award document

**END OF DOCUMENT**

# EXHIBIT 3



## OFFICE OF MISSION SUPPORT
### WASHINGTON, D.C. 20460

May 2, 2025

**MEMORANDUM**

**SUBJECT:**    Termination of EPA Assistance Agreement 5F-02J95601 under 2 CFR 200.340

**FROM:**        EPA Award Official

**TO:**            Cornelius Samson, Tribal Administrator
                   Authorized Organization Representative (AOR)

The purpose of this communication is to notify you that the U.S. Environmental Protection Agency (EPA) is hereby terminating Assistance Agreement No. 5F-02J95601 awarded to Native Village of Kipnuk. This EPA Assistance Agreement is terminated effective immediately on the grounds that the remaining portion of the Federal award will not accomplish the EPA funding priorities for achieving program goals. The objectives of the award are no longer consistent with EPA funding priorities.

The EPA Administrator has determined that, per the Agency's obligations to the constitutional and statutory law of the United States, this priority includes ensuring that the Agency's grants do not conflict with the Agency's policy of prioritizing merit, fairness, and excellence in performing our statutory functions. In addition to complying with the law, it is vital that the Agency assess whether all grant payments are free from fraud, abuse, waste, and duplication, as well as to assess whether current grants are in the best interests of the United States.

The process for closeout is generally outlined in 2 CFR 200.344. EPA is clarifying what reports are required and what reports are waived below. Other requirements are still in effect if applicable to your grant.

EPA is requiring the following closeout reports due within 120 days of closeout (2 CFR 200.344a:)
- Final Federal Financial Report, SF-425
- Final Technical Report
- Other programmatic reports identified in your terms and conditions

As part of this termination, EPA is waiving the following closeout reports:
- Property Report, SF-428
- Final Minority Business Enterprise/Woman Business Enterprise Utilization Under Federal Grants and Cooperative Agreements, EPA Form 5700-52A

The recipient may request payment from the Automated Standard Application Payments (ASAP) system for allowable costs incurred up to the date of this memo provided that such costs were contained in the approved workplan. Costs incurred by you after this termination are allowable only if (a) those costs were properly incurred by you before the effective date of this termination, and not in anticipation of it; and (b) those costs would be allowable if your federal award was not suspended or expired normally at the end of the period of

performance in which the termination takes effect. *See* 2 C.F.R. § 200.343. You are encouraged to carefully review and discharge your closeout responsibilities set forth in 2 C.F.R. § 200.344-45 and your award agreement. Those responsibilities include, but are not limited to, your obligation to "promptly refund any unobligated funds" that have been paid out but "are not authorized to be retained." *See* 2 C.F.R. § 200.344(g).

Also, per 2 CFR 200.472, a recipient may use grant funds to properly closeout their grant including reasonable and necessary costs that might occur after the date of this memo. If the recipient drew down funds from ASAP for costs beyond the termination date or for costs that exceed the amount necessary to properly closeout their grant, the recipient must contact RTPFC at rtpfc-grants@epa.gov for instructions on how to return the excess funds.

The EPA Grants Management Office has issued an amendment to the agreement to document the termination.

If you wish to dispute this termination decision, the Disputes Decision Official (DDO), R10-Dispute@epa.gov, must receive the Dispute no later than 30 calendar days from the date this termination notice is electronically sent to you. Disputes must be sent electronically by email to the DDO, with a copy to the EPA Award Official, thomas.felicia@epa.gov within the 30-day period stated above. The Dispute submitted to the DDO must include: (1) A copy of the disputed Agency Decision; (2) A detailed statement of the specific legal and factual grounds for the Dispute, including copies of any supporting documents; (3) The specific remedy or relief you seek under the Dispute; and (4) The name and contact information, including email address, of your designated point of contact for the Dispute. *See* 2 CFR 1500.15

The requirements on post-closeout adjustments and continuing responsibilities, including audit and record retention requirements, at 2 CFR 200.345 remain in effect.

ATTACHMENT
Amendment Document

cc: Mark Romelli (EPA Grant Specialist)
    Martha Tomlinson (EPA Project Officer)
    Rayna Paul, Environmental Director (Grantee Program Manager)

EXHIBIT 4

5F  02J95601  1   Page 1

| | | GRANT NUMBER (FAIN): 02J95601<br>MODIFICATION NUMBER: 1<br>PROGRAM CODE: 5F | DATE OF AWARD<br>05/02/2025 |
|---|---|---|---|
| ![logo] UNITED STATES ENVIRONMENTAL PROTECTION AGENCY | **U.S. ENVIRONMENTAL PROTECTION AGENCY**<br><br>**Assistance Amendment** | TYPE OF ACTION<br>No Cost Amendment | MAILING DATE<br>05/02/2025 |
| | | PAYMENT METHOD:<br>ASAP | ACH#<br>X0209 |

| RECIPIENT TYPE: | Send Payment Request to: |
|---|---|
| Indian Tr be | rtpfc-grants@epa.gov |

| RECIPIENT: | PAYEE: |
|---|---|
| Native Village of Kipnuk<br>P.O. BOX 057<br>101 COUNCIL DR<br>KIPNUK, AK 99614-0057<br>EIN:  92-0059660 | Native Village of Kipnuk<br>P.O. BOX 057<br>101 COUNCIL DR<br>KIPNUK, AK 99614-0057 |

| PROJECT MANAGER | EPA PROJECT OFFICER | EPA GRANT SPECIALIST |
|---|---|---|
| Rayna Paul<br>PO Box 057<br>Kipnuk, AK 99614-0057<br>**Email:**  kipnukigap@yahoo.com<br>**Phone:** 907-896-5515 | Martha Tomlinson<br>1200 Sixth Avenue, Suite 155<br>Seattle, WA 98101-3144<br>**Email:**  Tomlinson.MarthaScott@epa.gov<br>**Phone:** 206-553-8696 | Mark Romelli<br>1200 Sixth Avenue, Suite 155<br>Seattle, WA 98101-3144<br>**Email:**  romelli.mark@epa.gov<br>**Phone:** 206-553-6321 |

**PROJECT TITLE AND EXPLANATION OF CHANGES**

Kipnuk Reach 3 Riprap Riverbank Stabilization Project

This amendment is to stop work; terminate the agreement; reduce performance period duration; curtail scope of work; and waive certain reporting requirements. Administrative terms and conditions are added.

Per 2 CFR 200.340 and the Termination General Terms and Conditions of this agreement, EPA is terminating this award. Your organization shall immediately stop work and take all reasonable steps to minimize the incurrence of costs otherwise allocable to the assistance agreement. See terms and conditions.

| BUDGET PERIOD<br>03/01/2025 - 05/02/2025 | PROJECT PERIOD<br>03/01/2025 - 05/02/2025 | TOTAL BUDGET PERIOD COST<br>$ 19,998,693.00 | TOTAL PROJECT PERIOD COST<br>$ 19,998,693.00 |
|---|---|---|---|

## NOTICE OF AWARD

Based on your Application dated 08/31/2024 including all modifications and amendments, the United States acting by and through the US Environmental Protection Agency (EPA) hereby awards $ 0.00. EPA agrees to cost-share 100.00% of all approved budget period costs incurred, up to and not exceeding total federal funding of $ 19,998,693.00. Recipient's signature is not required on this agreement. The recipient demonstrates its commitment to carry out this award by either: 1) drawing down funds within 21 days after the EPA award or amendment mailing date; or 2) not filing a notice of disagreement with the award terms and conditions within 21 days after the EPA award or amendment mailing date. If the recipient disagrees with the terms and conditions specified in this award, the authorized representative of the recipient must furnish a notice of disagreement to the EPA Award Official within 21 days after the EPA award or amendment mailing date. In case of disagreement, and until the disagreement is resolved, the recipient should not draw down on the funds provided by this award/amendment, and any costs incurred by the recipient are at its own risk. This agreement is subject to applicable EPA regulatory and statutory provisions, all terms and conditions of this agreement and any attachments.

| ISSUING OFFICE (GRANTS MANAGEMENT OFFICE) | AWARD APPROVAL OFFICE |
|---|---|
| ORGANIZATION / ADDRESS | ORGANIZATION / ADDRESS |
| U.S. EPA, Region 10, EPA Region 10<br>Mail Code: 14-D12, 1200 Sixth Avenue, Suite 155<br>Seattle, WA 98101 | U.S. EPA, Region 10, Environmental Justice, Community Health and Environmental Review Division<br>R10 - Region 10<br>1200 Sixth Avenue, Suite 155<br>Seattle, WA 98101 |

| THE UNITED STATES OF AMERICA BY THE U.S. ENVIRONMENTAL PROTECTION AGENCY | |
|---|---|
| Digital signature applied by EPA Award Official Felicia Thomas - Manager, Tribal Grants Section | DATE<br>05/02/2025 |

# EPA Funding Information

| FUNDS | FORMER AWARD | THIS ACTION | AMENDED TOTAL |
|---|---|---|---|
| EPA Amount This Action | $ 19,998,693 | $ 0 | $ 19,998,693 |
| EPA In-Kind Amount | $ 0 | $ 0 | $ 0 |
| Unexpended Prior Year Balance | $ 0 | $ 0 | $ 0 |
| Other Federal Funds | $ 0 | $ 0 | $ 0 |
| Recipient Contr bution | $ 0 | $ 0 | $ 0 |
| State Contribution | $ 0 | $ 0 | $ 0 |
| Local Contribution | $ 0 | $ 0 | $ 0 |
| Other Contribution | $ 0 | $ 0 | $ 0 |
| Allowable Project Cost | $ 19,998,693 | $ 0 | $ 19,998,693 |

| Assistance Program | Statutory Authority | Regulatory Authority |
|---|---|---|
| 66.616 - Environmental and Climate Justice Block Grant Program | Clean Air Act: Sec. 138 | 2 CFR 200, 2 CFR 1500 and 40 CFR 33 |

Budget Summary Page

| Table A - Object Class Category<br>(Non-Construction) | Total Approved Allowable<br>Budget Period Cost |
|---|---|
| 1. Personnel | $ 406,673 |
| 2. Fringe Benefits | $ 36,845 |
| 3. Travel | $ 95,804 |
| 4. Equipment | $ 480,000 |
| 5. Supplies | $ 17,508 |
| 6. Contractual | $ 3,133,841 |
| 7. Construction | $ 14,832,855 |
| 8. Other | $ 894,400 |
| 9. Total Direct Charges | $ 19,897,926 |
| 10. Indirect Costs: 0.00 % Base | $ 100,767 |
| 11. Total (Share: Recipient ___0.00 % Federal __100.00 %) | $ 19,998,693 |
| 12. Total Approved Assistance Amount | $ 19,998,693 |
| 13. Program Income | $ 0 |
| 14. Total EPA Amount Awarded This Action | $ 0 |
| 15. Total EPA Amount Awarded To Date | $ 19,998,693 |

5F  02J95601  1  Page 4

# Administrative Conditions

## UNILATERAL TERMINATION

1. The Agency is asserting its right under 2 CFR 200.340 and the Termination General Term and Condition of this agreement to unilaterally terminate this award. This amendment serves as required notice under 2 CFR 200.341.

2. Consistent with 2 CFR 200.343 Effect of suspension and termination, costs to the recipient or subrecipient resulting from financial obligations incurred by the recipient or subrecipient after the termination of a Federal award are not allowable. Costs after termination are allowable if:

   a. The costs result from financial obligations which were properly incurred by the recipient or subrecipient before the effective date of suspension or termination, and not in anticipation of it; and

   b. The costs would be allowable if the Federal award was not suspended or expired normally at the end of the period of performance in which the termination takes effect.

   c. The costs are reasonable and necessary termination costs consistent with 2 CFR 200.472.

3. Federal Financial Reporting (FFR) General Terms and Conditions is still in full force and effect. EPA recipients must submit the SF-425 no later than 120 calendar days after the end date of the period of performance of the award.

4. Programmatic Terms and Conditions. Performance reporting is still in full force and effect.  The recipient must submit the final report no later than 120 calendar days after the period of performance.

In accordance with 2 CFR 200.329, the recipient agrees to submit performance reports that include information on each of the following areas:

   a. A comparison of accomplishments to the outputs/outcomes established in the assistance agreement work plan for the reporting period;

   b. Explanations on why established outputs/outcomes were not met; and

   c. Additional information, analysis, and explanation of cost overruns or high-than-expected-unit costs.

5. Waiver of Reports

The following reports are waived:

   a. Utilization of Disadvantaged Business Enterprises General Terms and Conditions, EPA Form 5700-52A.

   b. Tangible Personal Property Report, SF-428, General Terms and Conditions.

6. Record Retention

Access to Records, 2 CFR 200.337, is still in full force and effect. The termination of this award does not affect the right of EPA to disallow costs and recover funds on the basis of a later audit or other reviews. Information regarding record retention, property disposition in accordance with EPA regulations, and other frequently asked questions can be accessed at https://www.epa.gov/grants/frequent-questions-about-closeouts.

## Programmatic Conditions

All Programmatic Conditions Remain the Same

**END OF DOCUMENT**