IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| APPALACHIAN VOICES, et al., ) | |
| ) | |
| *Plaintiffs*, ) | |
| ) | Civil Action No. 1:25-cv-01982-PLF |
| v. ) | |
| ) | |
| UNITED STATES ) | |
| ENVIRONMENTAL PROTECTION ) | |
| AGENCY, et al., ) | |
| ) | |
| *Defendants*. ) | |

**PLAINTIFFS' MEMORANDUM IN SUPPORT
OF MOTION FOR CLASS CERTIFICATION**

Pursuant to Federal Rule of Civil Procedure 23(a) and 23(b)(2), and Local Civil Rule 23.1(b), Plaintiffs, on behalf of themselves and all others similarly situated, respectfully move this Court for an order certifying the following class:

> All entities that received awards from the EPA authorized in whole or in part by 42 U.S.C. § 7438 which EPA then terminated after January 20, 2025 (including statutory partners). The covered awards are Environmental Justice Collaborative Problem Solving Cooperative Agreements (CFDA 66.306); Environmental and Climate Justice Community Change Grants (CFDA 66.616); Thriving Communities Grantmaking Grants (CFDA 66.615); Environmental Justice Government-to-Government Program awards awarded to non-State entities (CFDA 66.312), as well as awards to Thriving Communities Technical Assistance Centers (CFDA 66.309).
>
> This class excludes the plaintiffs in *Sustainability Institute v. Trump*, No. 25-cv-2152-RMG (D.S.C.) or *Green & Healthy Homes Initiative, Inc. v. EPA*, No. 25-cv-01096 (D. Md.) and excludes entities whose awards were expressly terminated for identified financial or performance failures.

Plaintiffs further request that the Court appoint all named Plaintiffs as class representatives and Southern Environmental Law Center, Earthjustice, and Public Rights Project as class counsel.

## INTRODUCTION

This case presents a textbook example of when class treatment is both appropriate and necessary. As set out in Plaintiffs' Complaint (Dkt. 1), beginning in January 2025, EPA abruptly froze, and then unlawfully terminated, the entire Environmental and Climate Justice Block Grant program that Congress established under Section 138 of the Clean Air Act, as amended by the Inflation Reduction Act ("IRA"). 42 U.S.C. § 7438. Invoking Executive Orders focused on dismantling climate and environmental justice and equity initiatives, EPA shuttered the entire grant program and terminated all grants issued under it for what it termed "policy reasons." Ex. 1-A ¶ 3 (T. Voyles Decl.).

The consequences fell on the more than 350 community organizations, Tribes, local governments, higher education institutions, and their partners across the country who make up the proposed class. Each received grants authorized in whole or in part by 42 U.S.C. § 7438. And each lost their grant when EPA dismantled the program from which it came.

EPA's actions halted hundreds of shovel-ready, community-led environmental initiatives—threatening critical local progress, lost jobs and services, and deeper harm to communities already disproportionately burdened by environmental and health risks. With the program shuttered, and their grants now terminated, Plaintiffs and proposed class members have each been forced to take disruptive actions: halting programmatic work, *see, e.g.*, Ex. 2 ¶¶ 17–19 (Appalachian Voices Decl.), Ex. 3 ¶¶ 18, 20 (PUSH Buffalo Decl.); implementing hiring freezes, *see, e.g.*, Ex. 4 ¶ 26 (Landforce Decl.); reducing pay and staff hours, *see, e.g.*, Ex. 5 ¶¶ 31–32, (2CM Decl.); laying off essential staff hired to carry out the grant-funded work, *see, e.g.*, Ex. 6 ¶ 17 (Parks Alliance Decl.), Ex. 7 ¶ 14 (Deep South Center for Environmental Justice Decl.); and continuing to work without pay, *see, e.g.*, Ex. 8 ¶ 17 (Lowcountry Alliance for Model

Communities Decl.).

To halt this systemic harm, Plaintiffs seek declaratory and injunctive relief—reinstatement of the congressionally-authorized Environmental and Climate Justice Block Grant program and their individual grants—on behalf of themselves and the proposed class. This is precisely the type of indivisible remedy that Rule 23(b)(2) is designed to address. The proposed class meets all of Rule 23(a)'s requirements of numerosity, commonality, typicality and adequacy and is a proper Rule 23(b)(2) class because EPA's unlawful conduct applies uniformly to all class members, and the relief sought would benefit them all equally.

**Numerosity**. The proposed class includes over 350 recipients of grants authorized under Section 138 of the Clean Air Act, spread across the country, easily satisfying Rule 23(a)(1)'s requirement.

**Commonality**. The claims of Plaintiffs and the proposed class raise numerous common questions of fact and law. Plaintiffs and proposed class members received grants authorized by Section 138 of the Clean Air Act. 42 U.S.C. § 7438. All had their grants terminated by EPA "for policy reasons," using near-identical termination notice letters drawn from boilerplate templates. Ex. 1-A ¶ 3 (T. Voyles Decl.), *see* Ex. 1-B (M. Wise Email re Termination Procedure); Ex. 1-C, (Boilerplate Termination Letter). The key question of law—whether EPA's blanket termination of the Environmental and Climate Justice Block Grant program violated the U.S. Constitution and the Administrative Procedure Act ("APA")—is common to the entire class and will drive resolution of its claims.

**Typicality**. Plaintiffs' claims are typical of the claims of the proposed class. Plaintiffs raise on their own behalf the same claims they seek to litigate for the class, and those claims arise from the same course of events and implicate the same legal theories. Plaintiffs are thus

3

well-positioned to act on behalf of and safeguard the interests of the class.

**Adequacy**. The proposed class representatives satisfy the adequacy requirement because they assert the same claims and seek the same relief—reinstatement of the Environmental and Climate Justice Block Grant program and their individual grants—and they will defend the rights of all the proposed class members fairly and adequately, with the assistance of able class counsel. Proposed class counsel is a team of highly experienced attorneys with backgrounds litigating class actions and other complex cases in federal court, including similar cases challenging federal grant freezes.

This case is likewise appropriate for class certification under Rule 23(b)(2). As in *Healthy Futures of Texas v. Department of Health and Human Services*, 326 F.R.D. 1, 8 (D.D.C. 2018), where a court in this District certified a Rule 23(b)(2) class challenging a program-wide decision that affected all grantees, the relief sought here—a declaration that the termination was unlawful and an order reinstating the program and grants awarded under it—would provide the same remedy to each class member. The Court thus should permit this case to proceed as a class action.

## BACKGROUND

**I.    Congress established and EPA implemented the Environmental and Climate Justice Block Grant Program.**

In 2022, when Congress enacted the IRA, it aimed to make substantial federal investments in cutting-edge clean energy technology, reduced energy costs, and mitigation of the impacts of greenhouse gas emissions and toxic air pollution. As part of this effort, Congress amended the Clean Air Act to create a new program for "Environmental and Climate Justice Block Grants" and appropriated $2.8 billion to EPA for projects within impacted communities across the country. Pub. L. No. 117-169 § 60201, 136 Stat. 1818, 2078 (codified at 42 U.S.C.

4

§ 7438). It likewise appropriated $200 million for technical assistance to support grant recipients in designing projects, preparing applications, and performing on their grants. *Id.*

EPA followed the congressional mandate established in 42 U.S.C. § 7438 by creating four grant programs and a technical assistance program (Thriving Communities Technical Assistance Centers ("TCTACs")).[1] Those four grant programs are the Thriving Communities Grantmaking Program, Community Change Grants, Environmental Justice Collaborative Problem-Solving Cooperative Agreements, and the Government-to-Government Program. The proposed class members are recipients of grants under one or more of these programs.

## II. EPA unlawfully terminated the Environmental and Climate Justice Block Grant Program.

On January 20, 2025, President Trump took office and issued a series of Executive Orders, two of which directed the broad termination of grant programs: the "Unleashing American Energy" and the "Ending Radical and Wasteful Government DEI Programs and Preferencing" Executive Orders ("EOs"). Both EOs directed the mass termination of EPA grants. *Unleashing American Energy*, Exec. Order No. 14154 (Jan. 20, 2025), 90 Fed. Reg. 8353, 8357, § 7 (Jan. 29, 2025); *Ending Radical and Wasteful Government DEI Programs and Preferencing*, Exec. Order No. 14151 (Jan. 20, 2025), 90 Fed. Reg. 8339, 8339, § 2(b)(i) (Jan. 29, 2025). The EOs did not contemplate the specific terms and conditions of individual grants but rather directed that entire programs—including programs that had been specifically mandated by Congress—be cancelled because they were contrary to the President's policy objectives.

---

[1] *Inflation Reduction Act Environmental and Climate Justice Program*, EPA (last updated Mar. 27, 2025), https://perma.cc/3BKM-DR5D. Although EPA also created the UPLIFT Climate and Environmental Community Action Grant program, no grants were awarded under that program. *Id.*

In implementing these EOs, federal officials froze and then terminated entire programs—including the Environmental and Climate Justice Block Grant program. On February 25, 2025, Deputy Administrator Voyles unilaterally decided—in a single day—to terminate the Environmental and Climate Justice Block Grant program "for policy reasons." Ex. 1-A ¶ 3 (T. Voyles Decl.); *see* Ex. 1-D, (D. Coogan Email to T. Voyles). EPA proceeded to do just that. It instructed staff to carry out terminations using boilerplate templates, without individualized review and providing no meaningful process. Ex. 1-B (M. Wise Email re Termination Procedure); Ex. 1-E (EPA Grant Termination Standard Operating Procedure); Ex. 1-C (Boilerplate Termination Letter). Instead, EPA stated its intent to terminate all grants authorized under 42 U.S.C. § 7438 for the same generic "policy reasons" with no specific or individualized rationale. Ex. 1-A ¶ 3 (T. Voyles Decl.); *see* Ex. 1-F (D. Coogan Decl.). EPA's unlawful, mass termination of the Environmental and Climate Justice Block Grant program has harmed and will continue to harm Plaintiffs and proposed class members. *See* Compl. (Dkt. 1); Mot. for Prelim. Inj. (Dkt. 29).

## ARGUMENT

Under Federal Rule of Civil Procedure 23, a lawsuit may proceed as a class action if two conditions are met. The party seeking class certification must satisfy Rule 23(a)'s four requirements, showing that "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a); *see J. D. v. Azar*, 925 F.3d 1291, 1312 (D.C. Cir. 2019). And it must satisfy one of the requirements of Rule 23(b)—here, by showing that a "single injunction or declaratory

judgment would provide relief to each member of the class." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360 (2011) (citing Fed. R. Civ. P. 23(b)(2)). Plaintiffs who satisfy these prerequisites have a "categorical" right to "pursue [their] claim as a class action." *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010). At the class-certification stage, they need not prove their claims. *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013). Plaintiffs need only show that the Rule 23 requirements are satisfied.

The proposed class easily meets these standards. Indeed, this case is on all fours with many cases in which courts have granted certification under Rule 23(b)(2) for challenges to the federal government's abdication of its duties under the Constitution or APA. *See, e.g.*, *DL v. District of Columbia*, 860 F.3d 713, 724–26 (D.C. Cir. 2017); *see also Huashan Zhang v. U. S. Citizenship & Immigr. Servs.*, 344 F. Supp. 3d 32, 61–65 (D.D.C. 2018), *aff'd*, 978 F.3d 1314 (D.C. Cir. 2020); *Afghan & Iraqi Allies Under Serious Threat Because of Their Faithful Serv. to the United States v. Pompeo*, 334 F.R.D. 449, 458–64 (D.D.C. 2020): *Ramirez v. U.S. Immigr. & Customs Enf't*, 338 F. Supp. 3d 1, 43–50 (D.D.C. 2018); *Nio v. U. S. Dep't of Homeland Sec.*, 323 F.R.D. 28, 32–35 (D.D.C. 2017); *Steele v. United States*, 159 F. Supp. 3d 73, 79–85 (D.D.C. 2016), *on reconsideration in unrelated part*, 200 F. Supp. 3d 217 (D.D.C. 2016). As in these cases, Plaintiffs here challenge a single agency action—EPA's unlawful termination of a program on which all class members depend. Plaintiffs and proposed class members suffered the same injury as a result—the termination of their grants. And Plaintiffs seek the same, indivisible injunctive and declaratory relief on behalf of themselves and the class as a whole. Class-wide resolution of their claims is not only appropriate, but necessary.

## I. The proposed class satisfies Rule 23(a).

### A. The proposed class satisfies the numerosity requirement.

As an initial matter, a class action is appropriate here because "the class is so numerous" that "joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Demonstrating impracticability "does not mandate that joinder of all parties be impossible—only that the difficulty or inconvenience of joining all members of the class make use of the class action appropriate." *DL v. District of Columbia*, 302 F.R.D. 1, 11 (D.D.C. 2013), *aff'd*, 860 F.3d 713 (D.C. Cir. 2017) (citation omitted). The numerosity requirement "'imposes no absolute limitations,' but rather 'requires examination of the specific facts of each case.'" *Lightfoot v. District of Columbia*, 246 F.R.D. 326, 335 (D.D.C. 2007) (quoting *Gen. Tele. Co. of the NW v. EEOC*, 446 U.S. 318, 330 (1980)). However, a class containing a minimum of forty "creates a presumption of the impracticability of joinder." *Borum v. Brentwood Vill., LLC*, 324 F.R.D. 1, 14–15 (D.D.C. 2018); *Taylor v. D.C. Water & Sewer Auth.*, 241 F.R.D. 33, 37 (D.D.C. 2017); *see also Lightfoot*, 246 F.R.D. at 335.

Here, the numerosity requirement is met. The proposed class's more than 350 members far exceed the forty-member presumption. And the specific facts of this case only reinforce that conclusion. Joinder of hundreds of plaintiffs spread all over the country is textbook impracticability. The quantity of class members is thus more than sufficient for certification.

Furthermore, while the D.C. Circuit has not addressed whether Rule 23 contains an implied ascertainability requirement, *see J.D.* 925 F.3d at 1319-20, any concerns about ascertainability are not present here. The proposed class is ascertainable because it is defined by objective criteria and limited to specific entities: (1) that received one or more grants that were authorized in whole or in part by 42 U.S.C. § 7438 and (2) whose grants terminated by EPA after

January 20, 2025, as part of its shutdown of the Environmental and Climate Justice Block Grant program. The proposed class is ascertainable using Defendants' records of grant awards and termination notices.

### B. The proposed class presents common questions of law or fact.

To satisfy commonality, Plaintiffs must show that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). That means that the class's claims must depend on a "common contention" that is "capable of classwide resolution"—in other words, that it is possible to resolve "an issue that is central" to the claims' validity "in one stroke." *Wal-Mart*, 564 U.S. at 350. That inquiry is "simplified" in cases like this one, "because, as the D.C. Circuit has explained, a challenge to 'a uniform policy or practice that affects all class members' in the same way clearly gives rise to common questions of law and fact." *Healthy Futures of Texas*, 326 F.R.D. at 7 (quoting *DL*, 713 F.3d at 128).

Just so here. Each proposed class member was subjected to the same EPA policy or practice and was affected in the same way. Each proposed class member received at least one grant authorized and funded through the Environmental and Climate Justice Block Grant program. *See* Compl., Dkt.1, ¶¶ 21, 66, 71, 80, 86, 91. EPA then eliminated the program in full, for blanket, self-described "policy reasons." Ex. 1-A (T. Voyles Decl.); Ex. 1-D (D. Coogan Email to T. Voyles – Feb. 25, 2025). EPA subjected each proposed class member to substantively the same process, up to and including sending each one a substantively identical, boilerplate termination notice. Compl., Dkt.1, ¶114. And Plaintiffs seek the same uniform relief: a declaration that EPA's termination of the program was unlawful, and an injunction restoring the program and reinstating its grants.

This case thus hinges on common contentions of law or fact, the answers to which will resolve the claims of all the class members. Those contentions include:

a) Whether EPA engaged in a course of conduct that unlawfully terminated the Environment and Climate Justice Block Grant programs under which class members received their grants;

b) Whether EPA's actions to terminate the Grant programs violated the APA;

c) Whether EPA's actions to terminate the Grant programs violated the Constitution's Separation of Powers and Presentment Clauses;

d) Whether Plaintiffs and the other class members are entitled to injunctive and/or declaratory relief.

The possibility that the class members might differ in other respects makes no difference. So long as "a single aspect or feature of the claim is common to all proposed class members," commonality is met. *Attias v. CareFirst, Inc.*, 344 F.R.D 38, 49 (D.D.C. 2023) (internal quotation marks and citation omitted). And here, there are several—any one of which is enough not just to satisfy Rule 23(a)(2)'s permissive standard, but to make it "productive and economical" to certify this class. *J.D.*, 925 F.3d at 1321 (internal quotations and citation omitted).

Indeed, the D.C. Circuit has repeatedly upheld commonality where, as here, all proposed class members are subject to the same harm and seek the same remedy, even if they differ in other ways. *See id.* (commonality met where proposed class members were subject to a common policy); *Brown v. District of Columbia*, 928 F.3d 1070, 1082 (D.C. Cir. 2019) (commonality found where "common proof will lead to common answers" on key questions); *see also Afghani and Iraqi Allies*, 334 F.R.D. at 459–61 (commonality met where all proposed class members sought and would benefit from the same remedy). Here, all proposed class members are harmed by the same EPA-wide termination of the Grant program and seek the same injunctive and declaratory relief. That shared harm and remedy readily satisfy the commonality requirement.

### C. Plaintiffs' claims are typical of proposed class members' claims.

The proposed class's claims satisfy Rule 23(a)(3)'s typicality requirement for many of the same reasons. Typicality is construed liberally and is met when the class claims "stem from a single event or a unitary course of conduct" or share "the same legal or remedial theory." *In re McCormick & Co., Pepper Prods. Mktg. & Sales Pracs. Litig.*, 422 F. Supp. 3d 194, 237 (D.D.C. 2019). Rule 23(a)'s typicality inquiry "tend[s] to merge" with both commonality and adequacy. *Amchem*, 521 U.S. at 626 n.20 (citation omitted). And it does so here. Plaintiffs' claims are typical of the claims of the proposed class, for largely the same reasons that the proposed class presents common questions of law and fact: Plaintiffs challenge EPA's across-the-board termination of the Grant program on the same constitutional and APA grounds for themselves as for the proposed class, and seek the same declaratory and injunctive relief. If Plaintiffs prevail on their claims that EPA's conduct violated the Constitution or the APA, that ruling would benefit all members of the proposed class in the same way.

### D. Plaintiffs will adequately protect the interests of the proposed class.

Rule 23(a)(4) requires that "[t]he representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Courts apply a two-pronged test for adequacy: (1) the named plaintiffs must not have conflicting interests with unnamed class members, and (2) the named plaintiffs "must appear able to vigorously prosecute the interests of the class through qualified counsel." *Thorpe*, 303 F.R.D. at 150. Plaintiffs satisfy both prongs.

Here, Plaintiffs' interests are aligned with those of the proposed class. The injuries and claims of all proposed class members arise from the same EPA conduct. There are no known conflicts of interest among Plaintiffs or members of the proposed class, all of whom share a common interest in challenging EPA's unlawful conduct and obtaining relief from the same.

Further, Plaintiffs will fairly and adequately protect the interests of the proposed class. Plaintiffs have remained engaged throughout the development of this lawsuit, have remained in regular contact with Plaintiffs' counsel, and have otherwise acted in a manner consistent with the interests of the proposed class. They seek no relief beyond what all class members would obtain. Each proposed class representative is willing and able to "take an active role in this litigation and to protect the interests of absent plaintiffs." *Ramirez*, 338 F. Supp. 3d at 47.

## II. The proposed class satisfies Rule 23(b)(2).

In addition to satisfying each of the requirements of Rule 23(a), Plaintiffs meet the requirements of Rule 23(b)(2). That rule requires that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). It "exists so that parties and courts . . . can avoid piecemeal litigation when common claims arise from systemic harms that demand injunctive relief." *D.L.*, 860 F.3d at 726. To that end, certification under Rule 23(b)(2) is appropriate "when a single injunction or declaratory judgment would provide relief to each member of the class." *Wal-Mart*, 564 U.S. at 360–61.

Rule 23(b)(2)'s requirements are met here. This case challenges a uniform practice that affects all class members: the termination of the Grant program, and with it, all grants awarded under that program to proposed class members. Defendants' actions thus are "generally applicable to the class." *Steele*, 159 F. Supp. 3d at 81. And Plaintiffs seek "final injunctive relief or corresponding declaratory relief on behalf of the class." *Id.* Specifically, they request: (1) a declaratory judgment that the Grant program termination violated the U.S. Constitution and the Administrative Procedure Act; and (2) injunctive relief applicable to all proposed class members, including setting aside EPA's unlawful decision to terminate the Grant program and requiring

12

EPA to reinstate it and their individual grants. A "single program-wide injunction on behalf of the class" thus would benefit Plaintiffs and proposed class members in the same way. *Healthy Futures of Texas*, 326 F.R.D. at 8–9. And no individual class member seeks or would receive different declaratory or injunctive relief. *See id.* This is thus "exactly" the "sort of suit" for which "[t]he Rule 23(b)(2) class action was designed." *D.L.*, 860 F.3d at 726.

Courts routinely certify classes challenging agency actions under Rule 23(b)(2). *See, e.g.*, *Afghan & Iraqi Allies*, 334 F.R.D. at 464 (certifying 23(b)(2) class challenging unreasonable delay of visa applications under the APA); *Thorpe*, 303 F.R.D. at 151–52 (certifying 23(b)(2) class bringing a challenge under the Americans with Disabilities Act). Indeed, a court in this District has certified a class under 23(b)(2) in nearly identical circumstances—where, like here, its proposed members sought declaratory and injunctive relief from a federal agency's programmatic decision to prematurely end grant funding awarded to individual recipient organizations. *See Healthy Futures of Texas*, 326 F.R.D. at 8–9. There, as here, "a single program-wide injunction" would resolve the claims of the entire class. *Id.* at 9. That is "precisely the situation that Rule 23(b)(2) envisions." *Id.*

Because Rule 23(b)(2) applies equally here, this Court should certify the class.

## III. The Court should appoint Southern Environmental Law Center, Public Rights Project, and Earthjustice as class counsel under Rule 23(g).

In certifying this class, the Court should appoint proposed class counsel as class counsel. Proposed class counsel have demonstrated the requisite efforts for investigation into the claims, have the necessary experience to litigate such claims, and have dedicated significant resources to this action. In determining adequacy of class counsel, a court considers four factors: (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in

13

the action; (3) counsel's knowledge of the applicable law; and (4) the resources that counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A). Evaluation of these factors often overlaps or even merges with factors considered under Rule 23(a)(4), but specific to proposed appointed counsel. *See* 1 William Rubenstein, Newberg and Rubenstein on Class Actions, § 3:80 (6th ed. 2025). Counsel meet each one.

*First*, counsel have expended a great deal of resources investigating potential claims in this action. All three firms have devoted extensive time interviewing potential plaintiffs, gathering facts, and researching in preparation for this action. Moreover, Southern Environmental Law Center and Public Rights Project have litigated several similar claims with overlapping facts in their pending action, *Sustainability Institute v. Trump*, No. 25-cv-2152-RMG, --- F. Supp. 3d ---, 2025 WL 1486979 (D.S.C. May 20, 2025).

*Second*, counsel hold no conflicts of interest with proposed class members. The absence of such conflicts means that counsel are well-positioned to ensure fairness to the class. *Cf. Bachman v. Pertschuk*, 437 F. Supp. 973, 975 (D.D.C. 1977) (modifying class certification to exclude attorney from serving as class counsel where he was a class member and an employee of the defendant).

*Third*, proposed class counsel work for legal organizations with extensive experience litigating complex administrative and constitutional matters in federal court, and they themselves bring substantial experience in these areas. *See* Ex. 9 ¶¶ 3, 7, 9, 10, 12, 14 (Como Decl.); Ex. 10 ¶¶ 6, 7, 9, 10, 11, 12 (Vizcarra Decl.); Ex. 11 ¶¶ 3, 4, 6, 7 (Merrill Decl.) Counsel thus are more than competent "to manage a class action and the underlying legal claims the lawsuit seeks to advance." *Healthy Futures of Texas*, 326 F.R.D. at 8. And, although not required, multiple counsel have experience litigating class action lawsuits. Ex. 9 ¶¶ 7, 12 (Como Decl); Ex. 10 ¶ 10

14

(Vizcarra Decl.); Ex. 11 ¶¶ 3, 6 (Merrill Decl.); *see also Vargas v. Meese*, 119 F.R.D. 291, 296 (D.D.C. 1987) (nonprofit counsel adequate because "experienced in federal court practice" and in the substantive areas at issue in the case).

*Finally*, counsel possess the resources and expertise to vigorously represent the proposed class. In this inquiry, courts look to "the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A)(iv). Proposed class counsel work for well-resourced legal nonprofit organizations with complementary skills and staff to efficiently advance this case. Each firm has committed multiple attorneys to the case to handle various aspects of the litigation. Southern Environmental Law Center has over 120 attorneys and has decades of experience in litigation, including numerous complex cases in federal courts involving issues of environmental, constitutional, and administrative law. Ex. 9 ¶ 3 (Como Decl.). Southern Environmental Law Center has staffed four qualified attorneys to work on this case. Ex. 9 ¶ 5 (Como Decl.). Earthjustice has over 200 attorneys and frequently brings complex litigation in federal courts, including against federal agencies. Ex. 10 ¶ 6 (Vizcarra Decl.). Earthjustice has staffed five qualified attorneys to work on this case. Ex. 10 ¶ 8 (Vizcarra Decl.). Public Rights Project has extensive experience bringing complex litigation in federal courts, including on behalf of large groups of local governments. Ex. 11 ¶ 4 (Merrill Decl.). Public Rights Project has staffed three qualified attorneys to work on this case. Ex. 11 ¶ 5 (Merill Decl.).

**CONCLUSION**

Plaintiffs respectfully request that the Court grant this Motion and enter an order certifying the proposed class under Rule 23(b)(2); appoint Plaintiffs as class representatives; and appoint Plaintiffs' counsel from Southern Environmental Law Center, Earthjustice, and Public Rights Project as class counsel.

Respectfully submitted this 27th day of June 2025,

/s/ Ben Grillot
Ben Grillot (D.C. Bar No. 982114)
Kimberley Hunter (N.C. Bar No. 41333)
(*Pro Hac Vice* forthcoming)
Irena Como (N.C. Bar No. 51812)
(*Pro Hac Vice* forthcoming)
James Whitlock (N.C. Bar No. 34304)
(*Pro Hac Vice* forthcoming)
SOUTHERN ENVIRONMENTAL LAW CENTER
122 C St NW, Suite 325
Washington, DC 20001
Telephone: (202) 828-8382
Facsimile: (202) 347-6041
bgrillot@selc.org
kmeyer@selc.org
icomo@selc.org
jwhitlock@selc.org

*Counsel for Appalachian Voices, 2°C Mississippi, Lowcountry Alliance for Model Communities, Parks Alliance of Louisville, Pittsburgh Conservation Corps (Landforce) and Southwest Renewal Foundation and Proposed Class Counsel*

/s/ Hana V. Vizcarra
Hana V. Vizcarra (D.C. Bar No. 1011750)
Deena Tumeh (D.C. Bar No. 1741543)
Linnet Davis-Stermitz (WA Bar No. 63190)
(*Pro Hac Vice*)
Molly Prothero (D.C. Bar No. 1779237)
Andrew Saavedra (N.Y. Bar No. 6062814)
(*Pro Hac Vice*)

EARTHJUSTICE
1001 G Street NW, Suite 1000
Washington, D.C. 20001
Telephone: (202) 667-4500
hvizcarra@earthjustice.org
dtumeh@earthjustice.org
ldavisstermitz@earthjustice.org
mprothero@earthjustice.org
asaavedra@earthjustice.org

*Counsel for Air Alliance Houston, Bessemer Historical Society (d/b/a Steelworks Center of the West), Deep South Center for Environmental Justice, Downwinders at Risk, Health Resources in Action, Institute for Sustainable Communities, Inter-Tribal Council of Michigan, PUSH Buffalo, and WE ACT for Environmental Justice and Proposed Class Counsel*

/s/ Toby Merrill
Toby Merrill (D.D.C. Bar ID MA0006)
Graham Provost (D.C. Bar No. 1780222)
(*Pro Hac Vice* pending)
Elaine Poon (VA Bar No. 91963)
(*Pro Hac Vice* pending)
PUBLIC RIGHTS PROJECT
490 43rd Street, Unit #115
Oakland, CA 94609
Telephone: (510) 738-6788
toby@publicrightsproject.org
graham@publicrightsproject.org
elaine@publicrightsproject.org

*Counsel for Allegheny County, Kalamazoo County, King County, Native Village of Kipnuk, City of Sacramento, City and County of San Francisco, City of Springfield, and Treasure Island Mobility Management Agency and Proposed Class Counsel*

/s/ Julie Wilensky
David Chiu (CA Bar No. 189542)
SAN FRANCISCO CITY ATTORNEY
Yvonne R. Meré (CA Bar No. 175394)
(*Pro Hac Vice* forthcoming)
Chief Deputy City Attorney
Mollie M. Lee (CA Bar No. 251404)

17

(*Pro Hac Vice* forthcoming)
Chief of Strategic Advocacy
Sara J. Eisenberg (CA Bar No. 269303)
(*Pro Hac Vice* forthcoming)
Chief of Complex and Affirmative Litigation
Julie Wilensky (CA Bar No. 271765)
(*Pro Hac Vice* forthcoming)
Deputy City Attorney
1390 Market Street, 7th Floor
San Francisco, CA 94102
Telephone: (415) 554-4274
yvonne.mere@sfcityatty.org
mollie.lee@sfcityatty.org
sara.eisenberg@sfcityatty.org
julie.wilensky@sfcityatty.org

*Counsel for City and County of San Francisco and Treasure Island Mobility Management Agency*

/s/ David J. Hackett
David J. Hackett (WA Bar No. 21234)
(*Pro Hac Vice* forthcoming)
General Counsel to King County Executive &
Special Deputy Prosecutor
Alison Holcomb (WA Bar No. 23303)
(*Pro Hac Vice* forthcoming)
Deputy General Counsel to King County Executive
& Special Deputy Prosecutor
OFFICE OF KING COUNTY PROSECUTING ATTORNEY
LEESA MANION
401 5th Avenue, Suite 800
Seattle, WA 98104
(206) 477-9483
David.Hackett@kingcounty.gov
aholcomb@kingcounty.gov

*Counsel for Martin Luther King, Jr. County*

18

**CERTIFICATE OF SERVICE**

I certify that on June 27, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system. I further certify that arrangements have been made to deliver a true and correct courtesy copy of the foregoing to the following via Certified U.S. Mail, Return Receipt Requested:

United States Environmental Protection Agency
1200 Pennsylvania Avenue, NW
Washington, DC 20460

Lee Zeldin, in his official capacity as
Administrator of the United States Environmental
Protection Agency
Mail Code 1101A
1200 Pennsylvania Avenue, NW
Washington, DC 20460

Jeanine Ferris Pirro, in her official capacity as
United States Attorney for the District of Columbia
601 D Street, NW
Washington, DC 20579

Pamela Bondi, in her official capacity as
Attorney General of the United States Department
of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530

/s/ Ben Grillot
*Counsel for Plaintiffs*