APPALACHIAN VOICES, ET AL v. EPA, ET AL

1:25-CV-01982-PLF

# EXHIBIT 7

# Deep South Center for Environmental Justice Declaration

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**DECLARATION OF DR. BEVERLY WRIGHT, DEEP SOUTH CENTER FOR**
**ENVIRONMENTAL JUSTICE**

I, Dr. Beverly Wright, declare and state as follows:

1. I am the Founder and Executive Director of Deep South Center for Environmental Justice (DSCEJ). In my role as Executive Director, I oversee the strategic direction of the organization.

2. I have worked at DSCEJ for 33 years. I am familiar with DSCEJ's organization, policies, practices, and programs.

3. Established in 1992, DSCEJ's mission is to provide opportunities for communities, decision-makers, and scientific researchers to collaborate on programs and projects that promote the rights of all people to be free from environmental harm as it impacts health, jobs, housing, education, and general quality of life.

4. One way that DSCEJ works to implement its mission is by running programs like the Environmental Career Worker Training Program and the Hazardous Waste Worker Training Program, which prepare residents of fence-line communities for jobs in remediation, construction, HAZWOPER, and disaster response. We also run the Gulf Water Justice Strategic Planning Project in collaboration with Texas Southern University, where we engage in community science and advocacy around salt-water intrusion and flooding throughout the Gulf Coast Region. DSCEJ also created the Navigate NOLA initiative to provide social-emotional curricula in New Orleans schools, girls' leadership circles, and wellness groups for Black women – linking mental health to environmental stressors.

5. These programs, and the many other programs run by DSCEJ, are funded through a mix of federal competitive grants, state and local grants, and private and corporate philanthropy.

6. In November 2022, we applied for an Environmental Justice Thriving Communities Technical Assistance Center (EJ TCTAC) grant from EPA to fund the creation of the Community Investment Recovery Center (CIRC).

7. The goal of CIRC is to enhance the capabilities of tribal communities and community-based organizations in rural, remote, or underserved communities throughout EPA Regions 4 and 6 in securing vital grants from the EPA, DOE, and other governmental and non-governmental sources. Through a rigorous and holistic training process, organizations that work with CIRC are meant to leave the program better equipped to advocate on behalf of their communities and to build up local resilience.

8. In September 2023, DSCEJ's application for an EJ TCTAC grant was approved. EPA approved a funding amount of $8 million, which in December 2024 was increased via an EPA amendment to $11 million. Ex. 1.

9. Since receiving approval for the TCTAC grant, we hired multiple staffers, entered into multiple contracts, and engaged nearly 70 community organizations throughout EPA Regions 4 and 6 in the CIRC training process.

10. Between the time that the grant was awarded and February 21, 2025, DSCEJ was able to log into the Automated Standard Application for Payments (ASAP) system and make four successful drawdowns of our TCTAC grant funds, for a total of $2.47 million.

11. On February 21, 2025, we received notice from EPA Award Official Alfred Burch that our EJ TCTAC grant was terminated. By way of explaining the cancelation, EPA stated

that the award "no longer effectuates the program goals or agency priorities," and that "the objectives of the award are no longer consistent with EPA funding priorities." Ex. 2.

12. The notice from EPA further stated that it is the EPA's priority to ensure "that the Agency's grants do not support programs or organizations that promote or take part in diversity, equity, and inclusion ("DEI") initiatives, 'environmental justice' initiatives, and conflict with the Agency's policy of prioritizing merit, fairness, and excellence in performing our statutory functions." Because the TCTAC grant "provides funding for programs that promote or take part in DEI initiatives or environmental justice initiatives … the grant is therefore inconsistent with, and no longer effectuates, Agency priorities." *Id.*

13. DSCEJ is no longer able to access the ASAP system. Prior to the program's termination, DSCEJ incurred certain costs spent on CIRC that can no longer be submitted for reimbursement given the inaccessibility of the ASAP system. These costs currently total $132,635.40.

14. Since we received the termination notice for our TCTAC grant, we have experienced a significant negative impact on our daily operations and on our budget. Most critical to our own operations, we have been forced to terminate three full-time employees and two contractors due to lack of funds in our budget. We have been forced to divert funds within our budget to cover payroll costs for two additional project staffers and two other cross-functional team members. The funds to cover those payroll costs were taken from our general support donations fund. If the grants program were not terminated, these funds would have covered costs associated with certain core initiatives like our HBCU internship program and the HBCU Climate Change Conference.

15. Additionally, the termination of our grant funding forced DSCEJ to suspend two RFP processes that had already begun, and we were forced to halt the hiring process for four full-time employees to fill critical roles within CIRC, including the Deputy Program Director role, a Government and External Affairs Manager, a Community Engagement Coordinator role for Region 4, and a Community Engagement Coordinator role for Region 6.

16. I am also concerned about the impact that this grant program termination will have on the communities that DSCEJ has been able to serve through the TCTAC. Prior to the termination of the grant program, CIRC was in the process of serving approximately 70 grassroots partner organizations working across 13 states. These organizations were engaged at various steps of the overall training process, and are now unable to receive coaching on grant application strategies that would make them more effective advocates for their own communities. The now-terminated funds would have supported the creation of jobs, the lowering of energy costs, and the construction of community-driven resiliency projects within these organizations' communities; terminating the TCTAC program directly undermines this progress and threatens their long-term impact.

17. In an attempt to fill the gap in our budget left by the decision to terminate the grant program, we have increased our fundraising and grant application efforts at DSCEJ. This shift toward fundraising has taken focus away from many of my other core duties as Executive Director, and has required additional working hours from several staff members. Thus far, however, our increased efforts have not resulted in any new grants to fill the gap.

18. This experience has had an impact on DSCEJ's standing within our community. There is a well-founded and hard-earned skepticism within our community regarding the federal

government, and it is one that DSCEJ has worked for several years to change. Our organization has consistently made the case that the federal government has a genuine interest in promoting the health and well-being of communities like ours. With the funding we received through this grant program, we made a promise to our community and to our partner organizations that the federal government was acting on that interest. With the EPA's decision to terminate the grant program, this is the first time in our organization's 35-year history that we cannot deliver on a promise made to our community.

19. If the TCTAC grant program is restored soon and we are able to access our funding, DSCEJ will be able to hit the ground running to restart CIRC's programming in the manner it had been running up to the grant program's termination and fulfill our promise to the community. We will also be able to hire back the three full-time employees and two contractors who were terminated for lack of funding.

20. I am concerned, however, that the longer DSCEJ goes without these funds, the greater the risk that the employees and contractors we intend to rehire will move on to different roles.

I declare under penalty of perjury that, to the best of my knowledge, the foregoing is true and correct.

Date: 6/23/25

Dr. Beverley Wright