UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| APPALACHIAN VOICES, et al.,<br><br>    *Plaintiffs*,<br><br>    v.<br><br>UNITED STATES ENVIRONMENTAL<br>PROTECTION AGENCY, et al.,<br><br>    *Defendants*. | Civil Action No. 1:25-cv-01982-RJL |

**DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................................. 1

BACKGROUND ............................................................................................................................... 2

LEGAL STANDARD ....................................................................................................................... 4

ARGUMENT .................................................................................................................................... 5

I.    THE COURT LACKS JURISDICTION TO CONSIDER CLASS CERTIFICATION ................................................................................................................ 5

II.   THE COURT SHOULD RESOLVE DEFENDANTS' MOTION TO DISMISS BEFORE ADDRESSING CLASS CERTIFICATION ........................................................ 6

III.  PLAINTIFFS FAIL TO SATISFY RULE 23(A)'S REQUIREMENTS FOR CLASS CERTIFICATION ................................................................................................... 7

      A.    Plaintiffs Cannot Satisfy Rule 23(a)'s Commonality and Typicality Requirements .................................................................................................... 8

      B.    Plaintiffs Also Fail to Satisfy Rule 23(b) ........................................................ 10

CONCLUSION ............................................................................................................................... 13

## TABLE OF AUTHORITIES

**CASES**

*AIDS Vaccine Advoc. Coal. v. U.S. Dep't of State*,
  -- F. Supp. 3d --, 2025 WL 752378 (D.D.C. Mar. 10, 2025) ................................................... 12

*Amchem Prod., Inc. v. Windsor*,
  521 U.S. 591 (1997) ................................................................................................................. 4

*Berriochoa Lopez v. United States*,
  309 F. Supp. 2d 22 (D.D.C. 2004) ........................................................................................... 7

*Bynum v. District of Columbia*,
  214 F.R.D. 27 (D.D.C. 2003) ................................................................................................. 11

*C.G.B. v. Wolf*,
  464 F. Supp. 3d 174 (D.D.C. 2020) ....................................................................................... 12

*Califano v. Yamasaki*,
  442 U.S. 682 (1979) ................................................................................................................. 4

*Comcast Corp. v. Behrend*,
  569 U.S. 27, 33 (2013) ............................................................................................................. 4

*Crowley Gov't Servs., Inc. v. Gen. Servs. Admin.*,
  38 F.4th 1099 (D.C. Cir. 2022) ................................................................................................ 6

*Curtin v. United Airlines, Inc.*,
  275 F.3d 88 (D.C. Cir. 2001) ................................................................................................... 7

*DaSilva v. Border Transfer of MA, Inc.*,
  296 F. Supp. 3d 389 (D. Mass. 2017) .................................................................................... 13

*Dep't of Educ. v. California*,
  145 S. Ct. 966 (2025) ............................................................................................................. 12

*DL v. District of Columbia*,
  860 F.3d 713 (D.C. Cir. 2017) ............................................................................................... 10

*Garcia v. Johanns*,
  444 F.3d 625 (D.C. Cir. 2006) ................................................................................................. 7

*Gen. Tel. Co. of Sw. v. Falcon*,
  457 U.S. 147 (1982) ............................................................................................................ 4, 8

*Great-West Life & Annuity Ins. Co. v. Knudson*,
  534 U.S. 204 (2002) .................................................................................................... 12

*Hyman v. First Union Corp.*,
  982 F. Supp. 8 (D.D.C. 1997) ........................................................................................ 6

*Lewis v. U.S. Parole Comm'n*,
  743 F. Supp. 3d 181 (D.D.C. 2024) ............................................................................... 5

*Lightfoot v. District of Columbia*,
  273 F.R.D. 314 (D.D.C. 2011) ................................................................................. 9, 11

*Love v. Johanns*,
  439 F.3d 723 (D.C. Cir. 2006) ................................................................................. 9, 10

*Menominee Indian Tribe of Wisc. v. United States*,
  614 F.3d 519, 526 (D.C. Cir. 2010) ............................................................................. 10

*O.A. v. Trump*,
  404 F. Supp. 3d 109 (D.D.C. 2019) ........................................................................... 6, 8

*Ross v. Lockheed Martin Corp.*,
  No. 16-cv-2508, 2020 WL 4192566 (D.D.C. July 21, 2020) ...................................... 12

*Smith v. Bayer Corp.*,
  564 U.S. 299 (2011) ...................................................................................................... 3

*Steel Co. v. Citizens for a Better Env't*,
  523 U.S. 83 (1998) ........................................................................................................ 6

*Steele v. United States*,
  200 F. Supp. 3d 217 (D.D.C. 2016) ............................................................................... 5

*Taylor v. Fed. Aviation Admin.*,
  No. 18-cv-35, 2018 WL 1967127 (D.D.C. Feb. 8, 2018) ............................................. 6

*Trump v. CASA, Inc.*,
  --- S. Ct. ---, 2025 WL 1773631 (U.S. June 27, 2025) ............................................. 3, 4

*U.S. Conf. of Cath. Bishops v. U.S. Dep't of State*,
  -- F. Supp. 3d --, 2025 WL 763738 (D.D.C. Mar. 11, 2025) ...................................... 12

*\*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) ............................................................................................. *passim*

**STATUTES**

5 U.S.C. § 706(2) ..................................................................................................................11

**REGULATIONS**

2 C.F.R. § 200.340 .......................................................................................................... *passim*

*Ending Radical and Wasteful Government DEI Programs and Preferencing* Executive Order,
   No. 14,151, 90 Fed. Reg. 8,339 (Jan. 20, 2025) ..................................................................... 2

*Implementing the President's "Department of Government Efficiency" Cost Efficiency Initiative* Executive Order,
   No. 14,222, 90 Fed. Reg. 11,095 (Feb. 26, 2025) .................................................................. 2

**RULES**

Fed. R. Civ. P. 23 ............................................................................................................. *passim*

**INTRODUCTION**

The Environmental Protection Agency ("EPA") has, since 2023, administered grants to nonprofit organizations and local and Tribal governments in support of the Environmental and Climate Justice Block Grant program described in section 138 of the Clean Air Act. The appropriations statute that funds these grants generally prescribes the purposes and initiatives that the grants must support, but EPA otherwise has broad discretion to decide, based on Agency priorities, what activities to fund, to whom grants should be awarded, and what form those grants should take. During the period of February to May 2025, EPA elected to terminate these grant awards based on EPA's determination that those particular awards are "no longer consistent with" the Department's "priorities." 2 C.F.R. § 200.340. Those termination decisions were the end product of a multi-week review process, during which EPA assessed whether the grant awards continued to effectuate the Department's various priorities with respect to environmental funding.

On June 25, 2025, 23 grant recipients filed this lawsuit to challenge EPA's terminations under the Administrative Procedure Act ("APA"). Not content to limit their claims to themselves alone, Plaintiffs also seek to represent a class consisting of all Environmental and Climate Justice block grant recipients nationwide.

Plaintiffs' motion to certify such a class should be denied for several reasons. As a threshold matter, as explained in Defendants' recently filed opposition to Plaintiffs' Motion for Preliminary Injunction, this case became moot on July 4, 2025, when the President signed into law a bill that rescinded all unobligated funds for Clean Air Act section 138. Additionally, this Court lacks jurisdiction to grant the contract-based relief Plaintiffs demand, it likewise lacks jurisdiction to address class certification. Even if the Court were to conclude otherwise, it should resolve Defendants' motion to dismiss before addressing class certification, as doing the former will likely narrow the inquiry into the latter, and may even moot the class certification issue entirely. In any event, the individualized, fact-dependent nature of the multiple termination decisions Plaintiffs challenge means that Plaintiffs fail, in any event, to satisfy all of the requirements for class certification, *i.e.*, commonality, typicality, and the requirements of Rule 23(b)(2).

1

## BACKGROUND

The background for this case is set forth in Defendants' Motion to Dismiss and Memorandum in Opposition to Plaintiffs' Motion for Preliminary Injunction ("Defendants' Brief"), which Defendants incorporate by reference here.

As relevant to the class certification issue, in January 2025, EPA leadership began a careful review of its environmental and climate justice grant programs to determine, consistent with EPA's regulatory authority, whether the programs advance current EPA priorities. Those priorities included effectuating the President's policies as described in his Executive Orders regarding diversity, equity, and inclusion and minimizing waste, fraud, and abuse in federal programs.[1]

The grant review process considered whether a particular open grant award, based on the grant's project description, effectuated EPA's current priorities. Compl., Ex. 1-A at 2. In February 2025, EPA began terminating discretionary grants awards based on EPA's determination that those specific grants "no longer effectuate[] the program goals or agency priorities." Compl., Ex. 1-J at 1; *see also* Compl., Ex. 1-A at 2; 2 C.F.R. § 200.340. EPA subsequently terminated those grant awards and sent a notice of termination to each affected recipient between February and May 2025. Each notice explained that the award in question was being terminated pursuant to 2 C.F.R. § 200.340 because the "objectives of the award are no longer consistent with EPA funding priorities." *See, e.g.*, ECF 29-3 at 28. Each notice further explained that the EPA Administrator had determined, "per the Agency's obligations to the constitutional and statutory law of the United States, this priority includes ensuring that the Agency's grants do not conflict with the Agency's policy of prioritizing merit, fairness, and excellence in performing our statutory functions. In

---

[1] *See Ending Radical and Wasteful Government DEI Programs and Preferencing* Executive Order, No. 14,151, 90 Fed. Reg. 8,339 (Jan. 20, 2025*); Implementing the President's "Department of Government Efficiency" Cost Efficiency Initiative* Executive Order, No. 14,222, 90 Fed. Reg. 11,095 (Feb. 26, 2025).

addition to complying with the law, it is vital that the Agency assess whether all grant payments are free from fraud, abuse, waste, and duplication, as well as to assess whether current grants are in the best interests of the United States." *Id.*

Each recipient of a termination notice was given 30 calendar days to file an administrative appeal of their respective terminations stating, among other things, the argument that formed the basis of the appeal and "any disputed factual, legal or other issues." *See, e.g.*, ECF 29-3 at 29. Some of the named Plaintiffs filed an administrative appeal. ECF No. 29-5 at 47-48, 50-56; ECF No. 29-15 at 6; ECF No. 29-17 at 7; ECF No. 29-26 at 28.

On June 25, 2025, Plaintiffs filed a complaint challenging the termination of their respective grant agreements and moved for a preliminary injunction two days later. Compl., ECF No. 1; Pls.' Mem. in Supp. of Mot. for Prelim. Inj. (Pls.' Mem.), ECF No. 29-1.

On June 27, 2025, the U.S. Supreme Court issued a ruling in *Trump v. CASA, Inc.*, holding that "universal injunctions" were improper because "federal courts lack authority to issue them." *Trump v. CASA, Inc.*, --- S. Ct. ---, 2025 WL 1773631, at *13 (U.S. June 27, 2025). In discussing why universal injunctions were inappropriate, the Supreme Court noted that they "circumvent[ed] Rule 23's procedural protections and allow[ed] 'courts to create de facto class actions at will.'" *Id.* at *10 (quoting *Smith v. Bayer Corp.*, 564 U.S. 299, 315 (2011)). However, the Supreme Court stressed "Rule 23's limits on class actions," despite suggesting nationwide class actions might permit nationwide injunctive relief. *Id.* Notably, Justice Alito's concurrence emphasized that "district courts should not view [the Supreme Court]'s decision as an invitation to certify nationwide classes without scrupulous adherence to the rigors of Rule 23. . . . [o]therwise, the universal injunction w[ould] return from the grave under the guise of 'nationwide class relief,'" *id.* at *18 (Alito, J., concurring).

On June 27, shortly after the Supreme Court issued its ruling in *CASA* that day, Plaintiffs filed a motion for class certification, in which they ask the Court to certify a class consisting of "[a]ll entities that received awards from the EPA authorized in whole or in part by 42 U.S.C. § 7438 which EPA then terminated after January 20, 2025 (including statutory partners)." ECF No. 30-1 at 1.

**LEGAL STANDARD**

A class action is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Califano v. Yamasaki*, 442 U.S. 682, 700-701 (1979); *see also Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (same). To fall within this exception, a plaintiff "must affirmatively demonstrate his compliance" with Rule 23. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). As the Supreme Court has explained, "Rule 23 does not set forth a mere pleading standard." *Id*. Indeed, "certification is proper only if 'the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied[.]'" *Id*. at 350–51 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982)).

To meet this "affirmative" burden of compliance with Rule 23, Plaintiffs must demonstrate the existence of each and every element required by Rule 23(a) that: (1) there are sufficiently numerous parties ("numerosity"); (2) there are questions of law or fact common to the class ("commonality"); (3) the claims of the named plaintiff are typical of those of the class ("typicality"); and (4) the named plaintiff will fairly and adequately protect the interests of the class ("adequacy of representation"). Fed. R. Civ. P. 23(a); *see also Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 613 (1997). "[A]ctual, not presumed, conformance with Rule 23(a) [is] indispensable." *Falcon*, 457 U.S. at 160. The proposed class must also "satisfy at least one of the three requirements listed in Rule 23(b)." *Wal-Mart Stores*, 564 U.S. at 345. Plaintiffs here assert that their class should proceed under Rule 23(b)(2), which permits class action litigation where

4

"the party opposing the class has acted … on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2); *see also* Class Mot. at 12.

## ARGUMENT

The Court should deny Plaintiffs' motion for class certification. For the reasons explained in Defendants' PI Opposition, this case is moot and the Court lacks jurisdiction over Plaintiffs' claims, which necessarily precludes its consideration of the propriety of class certification. Even if the Court were to conclude that it does have jurisdiction, it should nevertheless resolve Defendants' motion to dismiss before addressing the issue of class certification (if doing so remains necessary). And Plaintiffs fail in any event to satisfy all of the prerequisites for class certification under Rules 23(a) and (b)(2).

### I.   THE COURT LACKS JURISDICTION TO CONSIDER CLASS CERTIFICATION

As a threshold matter, the Court can only reach the issue of class certification if it has jurisdiction over Plaintiffs' underlying claims. *See Steele v. United States*, 200 F. Supp. 3d 217, 222 (D.D.C. 2016) (noting that a court "cannot certify a class before making a finding that it has subject matter jurisdiction"); *Lewis v. U.S. Parole Comm'n*, 743 F. Supp. 3d 181, 201 (D.D.C. 2024) (addressing a motion for class certification only after deciding that the Court "ha[d] jurisdiction to hear the case"). Yet as explained in Defendants' Brief, this case is now moot because Congress has since rescinded all unobligated funding for the Environmental and Climate Justice Block Grant programs, thereby leaving the courts without a possible remedy for the plaintiffs should they prevail on the merits.

The Court also lacks jurisdiction because Plaintiffs' challenge to the termination of their respective grant agreements is premised on a contractual relationship with the government, implicates the government's exercise of express contractual rights, and seeks to compel the

5

government to continue paying money under those now-terminated contracts. Plaintiffs' claims thus amount, "at [their] essence," to the very sort of contract-based claims for monetary relief against the federal government over which this court lacks jurisdiction. *Crowley Gov't Servs., Inc. v. Gen. Servs. Admin.*, 38 F.4th 1099, 1106 (D.C. Cir. 2022) (citation omitted). The Court should accordingly dismiss those claims without even considering Plaintiffs' motion for class certification. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) ("Without jurisdiction the court cannot proceed at all in any cause.").

## II. THE COURT SHOULD RESOLVE DEFENDANTS' MOTION TO DISMISS BEFORE ADDRESSING CLASS CERTIFICATION

Even if the Court were to determine that it has jurisdiction over Plaintiffs' claims, it should resolve Defendants' motion to dismiss before addressing the issue of class certification. Although Rule 23 directs district courts to resolve motions for class certification "[a]t an early practicable time after a person sues . . . as a class representative," Fed. R. Civ. P. 23(c)(1)(A), the Rule nonetheless "grants district courts 'great discretion in determining the appropriate timing for such a ruling.'" *O.A. v. Trump*, 404 F. Supp. 3d 109, 154 n.16 (D.D.C. 2019) (quoting *Hyman v. First Union Corp.*, 982 F. Supp. 8, 11 (D.D.C. 1997)). The Advisory Committee notes accompanying the Rule acknowledge that there are "many valid reasons that may justify deferring the initial certification decision." Fed. R. Civ. P. 23(c) advisory committee's note to 2003 amendment. And one such reason is the prospect of resolving a case through a dispositive motion, such that the issue of class certification need not be addressed at all. *See Taylor v. Fed. Aviation Admin.*, No. 18-cv-35, 2018 WL 1967127, at *1 (D.D.C. Feb. 8, 2018) (concluding that "the wiser course" was to address the defendants' "forthcoming challenge to" the court's subject matter jurisdiction "rather than pushing forward with briefing on an issue" of class certification "that the court may never have to resolve"). Indeed, the D.C. Circuit has recognized that resolving a plaintiff's claims on the

merits can "spare both the parties and the court a needless, time-consuming inquiry into certification." *Curtin v. United Airlines, Inc.*, 275 F.3d 88, 93 (D.C. Cir. 2001) (concluding that a district court "does not abuse its discretion by resolving the merits before considering the question of class certification").

Here, Defendants have filed a motion to dismiss in conjunction with their opposition to Plaintiffs' motion for preliminary injunction. In their Brief, Defendants argue, among other things, that (1) the case is moot, (2) the Court lacks jurisdiction over Plaintiffs' contract-based claims for monetary relief against the federal government, (3) Plaintiffs' APA claims fail for various threshold and substantive reasons, and (4) Plaintiffs' other claims likewise lack merit and should be dismissed. A ruling in Defendants' favor on these potentially dispositive issues would likely moot the class certification issue entirely. *See Curtin*, 275 F.3d at 92-93; *Berriochoa Lopez v. United States*, 309 F. Supp. 2d 22, 23 n.1 (D.D.C. 2004) ("The Court shall decide defendants' Motion to Dismiss without reaching the issue of class certification."). The interests of efficiency and judicial economy thus weigh in favor of the Court resolving Defendants' motion to dismiss before turning to class certification (assuming doing so remains necessary).

### III. PLAINTIFFS FAIL TO SATISFY RULE 23(A)'S REQUIREMENTS FOR CLASS CERTIFICATION

Plaintiffs fail in any event to satisfy all of the prerequisites for class certification under Rule 23. *See Garcia v. Johanns*, 444 F.3d 625, 631 (D.C. Cir. 2006) (noting that "[f]ailure to adequately demonstrate any" of Rule 23's requirements "is fatal to class certification"). They attempt to collectively challenge multiple discrete determinations by Defendants that certain grants "no longer effectuate[] . . . agency priorities," 2 C.F.R. § 200.340(a)(4), but under Plaintiffs' theory of what constitutes appropriate review, assessing the lawfulness of those determinations would require an individualized, grant-by-grant analysis that defeats Rule 23(a)'s commonality and

7

typicality requirements. Plaintiffs also fail to demonstrate that their proposed class qualifies as one of the types of class actions specified in Rule 23(b).[2]

### A. Plaintiffs Cannot Satisfy Rule 23(a)'s Commonality and Typicality Requirements

Rule 23(a)'s commonality and typicality requirements "[b]oth serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Wal-Mart*, 564 U.S. at 349 n.5. The two requirements thus "tend to merge" in many cases. *Falcon*, 457 U.S. at 157 n.13; *see O.A.*, 404 F. Supp. 3d at 155 ("The second and third requirements, commonality and typicality, often overlap."). To meet these requirements, it is not enough to show that the complaint "raises common 'questions'" or that the putative class members "have all suffered a violation of the same provision of law." *Wal-Mart*, 564 U.S. at 349-50. Rather, a party seeking class certification must "affirmatively demonstrate" that its claims "depend upon a common contention" that is "capable of classwide resolution." *Id.* at 350. In other words, "[w]hat matters to class certification is not the raising of common 'questions'—even in droves—but, rather, the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *Id.* (cleaned up). A class may accordingly be certified only if the plaintiffs and putative class members share claims that hinge on a "central" issue, the "truth or falsity" of which can be resolved "in one stroke." *Id.*

Plaintiffs fail to meet this standard here. They allege that a common course of conduct on Defendants' part—namely, the termination of certain grant awards on the basis that those grants no longer align with agency priorities, *see* 2 C.F.R. § 200.340—affected "all proposed class members" and that several "contentions of law and fact" are "common" to the proposed class.

---

[2] For purposes of Plaintiffs' present motion for class certification, Defendants do not challenge whether the proposed class satisfies the numerosity or adequacy of representation requirements. Nor do Defendants object to the designation of Plaintiffs' counsel as class counsel, in the event the Court were to certify the class.

ECF No. 30-1 at 10. But the common legal questions Plaintiffs purport to identify—*e.g.*, "[w]hether EPA's actions to terminate the Grant programs violated the APA," *id.*—are too "overly generalized" to satisfy the commonality requirement. *Lightfoot v. District of Columbia*, 273 F.R.D. 314, 325-26 (D.D.C. 2011) (rejecting the idea that certification is appropriate "wherever class members allege a harm with some connection to the Due Process Clause"); *see Love v. Johanns*, 439 F.3d 723, 729-30 (D.C. Cir. 2006) ("[A]t a sufficiently abstract level of generalization, almost any set of claims can be said to display commonality." (citation omitted)); *Wal-Mart*, 564, U.S. at 350 (explaining that the commonality requirement "does not mean merely that" the putative class members "have all suffered a violation of the same provision of law").

Plaintiffs likewise oversimplify the specific conduct that is legally relevant to their claims. In arguing that Defendants' termination of the putative class members' respective grants was unlawful, Plaintiffs focus on the fact that the putative class members all received "near-identical termination notice letters drawn from boilerplate templates." ECF No. 30-1 at 3. But those notices were merely the end product of a review process that resulted in Defendants terminating outstanding Environmental and Climate Justice grants that, as made clear in the termination notices, "no longer effectuate[d] . . . agency priorities," 2 C.F.R. § 200.340(a)(4). And the fact-dependent nature of those multiple termination decisions render Plaintiffs' broad challenge to them unsuitable for resolution "in one stroke." *Wal-Mart*, 564 U.S. at 350.

Plaintiffs are, in essence asking this Court to determine whether each of the individual grant termination decisions was "arbitrary and capricious," as Plaintiffs claim, *see* Pls.' Mem. at 34-37. This inquiry may require the Court to assess each putative class member's unique grant award (and the unique project that the grant was awarded to fund), how federal funds were spent to effectuate the particular purposes set out in the statute governing the appropriation from which grant funds are derived, how Defendants went about reviewing each particular grant award, and the various factors that were considered and weighed in deciding whether or not the specific award in question continued to effectuate agency priorities. And even assuming for the sake of argument that such a grant-by-grant assessment were to result in a few termination decisions being deemed inadequate,

9

it is entirely possible (or even likely) that those decisions would be inadequate for different reasons unique to each particular grant under review. Moreover, some putative class members and named Plaintiffs have decided to appeal their terminations though EPA's administrative process, while others have not, once again showing the differences in the class members. The outcome of appeal proceedings could materially impact claims by individual grant recipients in ways that may render it impossible to resolve every putative class member's claim in "one stroke." *Wal-Mart*, 564 U.S. at 350; *see Menominee Indian Tribe of Wisc. v. United States*, 614 F.3d 519, 526 (D.C. Cir. 2010) (stating that the requirement that "[a] party generally must exhaust administrative remedies before seeking relief in federal court" applies to class actions). Indeed, by certifying a class, this suit could have the effect of precluding those who have administratively appealed their terminations from vindicating their rights.

Plaintiffs' "common contention" that *all* of the termination decisions involving the putative class members' grants were arbitrary and capricious or otherwise unlawful is thus unlikely to have a "common answer," which defeats in turn Plaintiffs' ability to meet Rule 23's commonality and typicality requirements. *Wal-Mart*, 564 U.S. at 350; *see Love*, 439 F.3d at 730 (finding no commonality where "the outcome of th[e] case would . . . turn on a series of individualized inquiries" into multiple decisions involving the denial of applications for farm loans). Ultimately, Plaintiffs' claims are a collection of individual final agency actions, each of which rises or falls on its own basis and its own record.

### B. Plaintiffs Also Fail to Satisfy Rule 23(b)

Class certification is not warranted here for the independent reason that Plaintiffs fail to demonstrate that "their proposed class falls into one of the categories of class actions listed in Rule 23(b)." *DL v. District of Columbia*, 860 F.3d 713, 723 (D.C. Cir. 2017).

Plaintiffs principally assert that their proposed class can be certified under Rule 23(b)(2), which applies if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Rule 23(b)(2) "impos[es]

10

two requirements: (1) that [the] defendant's actions or refusal to act are 'generally applicable to the class,' and (2) that [the] plaintiffs seek final injunctive relief or corresponding declaratory relief on behalf of the class." *Bynum v. District of Columbia*, 214 F.R.D. 27, 37 (D.D.C. 2003). "The key to the (b)(2) class," moreover, "is 'the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Wal-Mart*, 564 U.S. at 360 (citation omitted).

But here, members of Plaintiffs' proposed class are differently situated in ways that may be relevant if Defendants do not prevail on their 23(a) argument. Plaintiffs asks the Court to assess the lawfulness of the "conduct" that they challenge here—namely, Defendants' termination of the putative class members' respective grant awards. But to satisfy what Plaintiffs' would consider to be appropriate review by this Court would require an individualized inquiry into the factual circumstances of each termination decision. And the possibility that the results of such a fact-bound, grant-by-grant review would warrant a "single injunction or declaratory judgment" applicable to "*all* of the [putative] class members" is slim to none. *Id.* (emphasis added); *cf. Lightfoot*, 273 F.R.D. at 329 ("[C]ertification is generally inappropriate [under Rule 23(b)(2)] in actions raising significant individual liability or defense issues."). In *Wal-Mart Stores, Inc. v. Dukes,* for example, the Supreme Court held that the plaintiffs' Title VII claims were not suitable for certification under Rule 23(b)(2) because the success of each plaintiff's individual Title VII claim depended on the specific circumstances surrounding each respective employment action. 564 U.S. at 366. *Wal-Mart*'s reasoning with respect to the individualized nature of Title VII claims applies with equal force to Plaintiffs' individualized grant termination claims here.

Additionally, the relief Plaintiffs seek in this case would require the Court to reinstate the putative class members' terminated grants. *See* Compl. at 45 ("Pursuant to 5 U.S.C. § 706…set aside EPA's termination of federal grant programs authorized by Section 138 of the Clean Air Act….[and] [r]equire EPA to reinstate all grant awards…that were terminated"); Pls.' Mem. at 51 (asking the Court "to reinstate all grant programs and awards authorized by 42 U.S.C. § 7438 [and] enjoin EPA from any future termination of these programs and awards"). That is, Plaintiffs

11

effectively ask the Court "to enforce" Defendants' "contractual obligation[s] to pay money" pursuant to the terms of the terminated grant agreements. *Dep't of Educ. v. California*, 145 S. Ct. 966, 968 (2025) (per curiam) (quoting *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 212 (2002)).

But as Defendants make clear in their Brief, the Court lacks jurisdiction to grant that sort of contract-based relief. *Id.; see U.S. Conf. of Cath. Bishops v. U.S. Dep't of State*, -- F. Supp. 3d --, 2025 WL 763738, at *6 (D.D.C. Mar. 11, 2025) ("[T]he [plaintiff] asks the Court to order the Government to cancel the termination, pay money due, and reinstate the contracts. That is something this Court lacks the power to do."); *cf. AIDS Vaccine Advoc. Coal. v. U.S. Dep't of State*, -- F. Supp. 3d --, 2025 WL 752378, at *23 (D.D.C. Mar. 10, 2025) ("Plaintiffs' proposed relief is overbroad insofar as it would specifically order Defendants to continue to contract with them."). And Plaintiffs nowhere explain how declaratory relief alone, or any other relief short of a reinstatement of each putative class member's specific grant agreement, would meaningfully remedy the various irreparable harms that, according to Plaintiffs, flow directly from the "abrupt [] termination of their grants." Pls.' Mem. at 11.

The Court thus lacks the authority to award the very type of class-wide relief that is essential to maintaining a class action under Rule 23(b)(2). *Cf. C.G.B. v. Wolf*, 464 F. Supp. 3d 174, 206 (D.D.C. 2020) (noting that "[t]he Court's uncertainty" about its jurisdiction to issue the class-wide injunctive relief sought by the plaintiffs was "another reason to decline class certification"); *Ross v. Lockheed Martin Corp.*, No. 16-cv-2508, 2020 WL 4192566, at *8 (D.D.C. July 21, 2020) (declining to certify a Rule 23(b)(2) class in part because the district court lacked jurisdiction to grant prospective relief to class members who lacked standing, thus rendering "Rule 23(b)(2) indivisibility plainly implausible").

The divergent factual and legal issues make clear that this is not a case in which the challenged action "can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Wal-Mart*, 564 U.S. at 360 (citation omitted). Put another way, the relief that Plaintiffs seek is not "indivisible," *id.*—it can be parceled out to different class members based on

12

their particular circumstances in the form of party-specific injunctions. Those variations within the proposed class also undermine Plaintiffs' assertion of commonality. *See DaSilva v. Border Transfer of MA, Inc.*, 296 F. Supp. 3d 389, 398 (D. Mass. 2017) (noting different legal inquiries as to members of a putative class will defeat commonality).

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' motion for class certification.

DATED: July 16, 2025                                          Respectfully submitted,

                                                            BRETT A. SHUMATE
Assistant Attorney General
Civil Division

JOSEPH E. BORSON
Assistant Branch Director
Civil Division, Federal Programs Branch

*/s/ Jessica A. Lundberg*
JESSICA A. LUNDBERG
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20005
Phone: (202) 616-8467
Fax: (202) 616-8470
Email: jessica.a.lundberg@usdoj.gov

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on July 16, 2025, I electronically filed this document with the Court by using the CM/ECF system, and that this document was distributed via the Court's CM/ECF system.

/s/ *Jessica A. Lundberg*
JESSICA A. LUNDBERG (WA 60100)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20005
Phone: (202) 616-8467
Fax: (202) 616-8470
Email: jessica.a.lundberg@usdoj.gov