**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| APPALACHIAN VOICES, et al.,     ) | |
|            ) | |
|       *Plaintiffs*,          ) | Civil Action No. 1:25-cv-01982-RJL |
| *on behalf of themselves and*    ) | |
| *all others similarly situated*     ) | |
|            ) | |
| v.              ) | |
|            ) | |
| UNITED STATES         ) | |
| ENVIRONMENTAL PROTECTION   ) | |
| AGENCY, et al.,          ) | |
|            ) | |
|       *Defendants*.       ) | |

## REPLY IN SUPPORT OF PLAINTIFFS'
## MOTION FOR PRELIMINARY INJUNCTION

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................. i

TABLE OF AUTHORITIES ......................................................................................... ii

INTRODUCTION ........................................................................................................ 1

ARGUMENT .............................................................................................................. 2

I.    This case is not moot ......................................................................................... 2

II.   Plaintiffs' constitutional separation of powers claims must be heard in federal
      district court. ................................................................................................... 5

III.  This Court has subject matter jurisdiction over Plaintiffs' APA claims ................. 9

      A.   Plaintiffs seek to enforce a constitutional and statutory bar on unilaterally
           dismantling a congressionally mandated program. .................................... 10

      B.   Plaintiffs seek specific forward-looking relief to restore a terminated block
           grant program. ........................................................................................ 13

      C.   The Supreme Court's per curiam order in *California* does not defeat
           jurisdiction here. ..................................................................................... 16

      D.   Plaintiffs' APA claims are not committed to agency discretion under law. ..... 17

IV.   Plaintiffs are likely to succeed on the merits. ................................................... 19

      A.   EPA's refusal to spend congressionally mandated funds in the manner directed
           by Congress violates the Constitution. ...................................................... 19

      B.   EPA's elimination of the program violates the APA because it is contrary to
           law and not committed to agency discretion. ............................................. 20

      C.   Defendants' elimination of the program violates the APA because it was
           arbitrary and capricious. .......................................................................... 21

V.    Plaintiffs have been irreparably harmed. .......................................................... 22

VI.   The balance of the equities weighs in favor of Plaintiffs .................................... 24

VII.  This Court should not require a bond. ............................................................... 25

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aids Vaccine Advoc. Coal. v. U.S. Dep't of State*,
  770 F. Supp. 3d 121 (D.D.C. 2025)...................................................................8, 10

*In re Aiken County*,
  725 F.3d 255 ....................................................................................................9

*Albrecht v. Comm. on Emp. Benefits of the Fed. Rsrv. Emp. Benefits Sys.*,
  357 F.3d 62 (D.C. Cir. 2004)............................................................................7

*Am. Bar Ass'n v. Dep't of Just.*,
  F.Supp.3d, No. 25-cv-1263 (CRC), 2025 WL 1388891 (D.D.C. May 14,
  2025)...........................................................................................................12, 17

*Am. Ctr. for Int'l Lab. Solidarity v. Chavez-Deremer*,
  No. 25-cv-1128 (BAH), 2025 WL 1795090 (D.D.C. June 30, 2025) .........6, 10, 21

*Am. Fed'n of Gov't Emps. v. Trump*,
  No. 25-cv-03698, 2025 WL 1482511 (N.D. Cal. May 22, 2025)............................8

*Am. Forest Research. Council v. United States*,
  77 F.4th 787 (D.C. Cir. 2023).............................................................................8

*Am. Library Assoc. v. Sonderling*,
  No. 25-1050 (RJL), 2025 WL 1615771 (D.D.C. June 6, 2025) ............................12

*Aracely, R. v. Nielsen*,
  319 F. Supp. 3d 110 (D.D.C. 2018).....................................................................23

*Boaz Housing Auth. v. United States*,
  994 F.3d, 1349 (Fed. Cir. 2021).........................................................................15

*Bowen v. Massachusetts*,
  487 U.S. 879 (1988).............................................................................13, 14, 15

*California v. Dep't of Educ.*,
  769 F. Supp. 3d 72 ..............................................................................................16

*Chamber of Commerce v. Reich*,
  74 F.3d 1322 (D.C. Cir. 1996).............................................................................8

*Chicago Women in Trades v. Trump*,
No. 25-cv-2005, 2025 WL 1331743 (N.D. Ill. May 7, 2025) ...................................................8

*City & County of San Francisco v. Trump*,
897 F.3d 1225 (9th Cir. 2018) ........................................................................................9

*Climate United Fund v. Citibank, N.A.*,
No. 25-CV-698 (TSC), 2025 WL 1131412 (D.D.C. Apr. 16 2025)................................11, 18

*Community Legal Services in East Palo Alto v. U.S. Dep't of Health and Human
Servs.*,
2025 WL 1393876 (9th Cir. May 14, 2025) ........................................................................18

*Crowley Gov't Servs., Inc. v. Gen. Servs. Admin.*,
38 F.4th 1099 (D.C. Cir. 2022).................................................................................10, 11

*Dalton v. Specter*,
511 U.S. 462 (1994)..............................................................................................7, 8, 9

*De Csepel v. Republic of Hungary*,
714 F.3d 591 (D.C. Cir. 2013) ....................................................................................10

*Dep't of Army v. Blue Fox, Inc.*,
525 U.S. 255 (1999)....................................................................................................13

*Department of Education v. California*,
145 S. Ct. 966 (2025) ...........................................................................................5, 7, 16

*Does 1-26 v. Musk*,
771 F. Supp. 3d 637 (D. Md. 2025) ...............................................................................8

*FCC v. Fox Television Stations, Inc.*,
556 U.S. 505 (2009).....................................................................................................21

*Fund for Animals v. Frizzell*,
530 F.2d 982 (D.C. Cir. 1975) ....................................................................................24

*Green & Healthy Homes Initiative, Inc. v. EPA*,
No. 25-cv-1096, 2025 WL 1697463 (D. Md. June 17, 2025)................................................18

*Harris County, Texas v. Kennedy*,
No. 25-cv-1275, 2025 WL 1707665 (D.D.C. June 17, 2025) ................................................16

*Ingersoll-Rand Co. v. United States*,
780 F.2d 74 (D.C. Cir. 1985) ....................................................................................11, 16

iii

*Jacksonville Port Auth. v. Adams*,
    556 F.2d 52 (D.C. Cir. 1977) ............................................................................4

*Johnson v. Robison*,
    415 U.S. 361 (1974) .........................................................................................6

*League of United Latin Am. Citizens v. Exec. Off. Of the President*,
    No. 25-0955, 2025 WL 1187730 (D.D.C. Apr. 24, 2025) ...........................25

*League of Women Voters of U.S. v. Newby*,
    838 F.3d 1 (D.C. Cir. 2016) ...........................................................................24

*LeBlanc v. United States*,
    50 F.3d 1025 (Fed. Cir. 1995) .........................................................................6

*Lincoln v. Vigil*,
    508 U.S. 182 (1993) .......................................................................................17

*Martin Luther King Jr. Cty. v. Turner*,
    No. 25-cv-814, 2025 WL 1582368 (W.D. Wash. June 3, 2025) ...................18

*Md. Dep't of Hum. Res. v. Dep't of Health & Hum. Servs.*,
    763 F.2d 1441 (D.C. Cir. 1985) ............................................11, 12, 13, 15

*Megapulse, Inc. v. Lewis*,
    672 F.2d 959 (D.C. Cir. 1982) .............................................................9, 10, 15

*Metadure Corp. v. United States*,
    490 F. Supp 1368 (S.D.N.Y. 1980) ................................................................7

*Milk Train, Inc. v. Veneman*,
    310 F.3d 747 (D.C. Cir. 2002) ......................................................................18

*Nat'l Council of Nonprofits v. Off. of Mgmt. & Budget*,
    763 F. Supp. 3d 36 (D.D.C. Feb. 3, 2025) ...................................................22

*Nat'l Ctr. For Mfg. Sciences v. United States*,
    114 F.3d 196 (Fed. Cir. 1997)........................................................................14

*Nat'l Treasury Emps. Union v. Vought*,
    No. 25-cv-0381, 2025 WL 942772 (D.D.C. Mar. 28, 2025) ..........................8

*Nevada v. Dep't of Energy*,
    400 F.3d 9 (2005)............................................................................................5

*Open Top Sightseeing USA v. Mr. Sightseeing,*
    LLC, 48 F. Supp. 3d 87 (D.D.C. 2014) ...............................................................24

*Perry Capital LLC v. Mnuchin,*
    864 F.3d 591 (D.C. Cir. 2017) .............................................................................7

*R.I.L-R v. Johnson,*
    80 F. Supp. 3d 164 (D.D.C. 2015) ......................................................................24

*Rochester Pure Waters District v. EPA,*
    960 F.2d 180 (D.C. Cir. 1992) ..........................................................................3, 4

*Rodriguez v. Robbins,*
    715 F.3d 1127 (9th Cir. 2013) ...........................................................................24

*Rural Dev. Innovations Ltd., et al. v. Marocco,*
    No. 25-1631, 2025 WL 1807818 (D.D.C. July 1, 2025) .....................................25

*Southern Educ. Found. v. U.S. Dep't of Educ.,*
    No 25-cv-1079, 2025 WL 1453047 (D.D.C. May 21, 2025)................................16

*Spectrum Leasing Corp. v. United States,*
    764 F.2d 891 (D.C. Cir. 1985) ......................................................................15, 16

*State of Connecticut v. Schweiker,*
    684 F.2d 979 (D.C. Cir. 1982) ............................................................................4

*Suburban Mortg. Assocs. v. U.S. Dep't of Hous. & Dev.,*
    480 F.3d 1116 (Fed. Cir. 2007).............................................................................7

*Tex. Children's Hosp. v. Burwell,*
    76 F. Supp. 3d 224 (D.D.C. 2014) ...............................................................22, 23

*Tootle v. Sec'y of Navy,*
    446 F.3d 167 (D.C. Cir. 2006) ............................................................................6

*TransUnion LLC v. Ramirez,*
    594 U.S. 413 (2021).............................................................................................12

*Vartelas v. Holder,*
    566 U.S. 257 (2012).............................................................................................5

*Vera Inst. v. Dep't of Just.,*
    No. 25-cv-1643 (APM), 2025 WL 1865160 (D.D.C. July 7, 2025)..........................5

*Webster v. Doe,*
    486 U.S. 592 (1988)..................................................................................................6

*Weinberger v. Salfi,*
    422 U.S. 749 (1975)..................................................................................................6

*Widakuswara v. Lake,*
    No. 25-5144, 2025 WL 1288817 (D.C. Cir. May 3, 2025), *stay pending
    appeal vacated*, 2025 WL 1521335 (D.C. Cir. May 28, 2025) ..................................6, 11, 17

*Widakuswara v. Lake,*
    No. 25-5144, 2025 WL 1521355 (D.C. Cir. May 28, 2025) ..................................................6

*Winter v. Nat. Res. Def. Council, Inc.,*
    555 U.S. 7 (2008)..................................................................................................24

*Xiaomi Corp. v. Dep't of Def.,*
    No. 21-cv-280, 2021 WL 950144 (D.D.C. Mar. 12, 2021) ..................................................23

*Youngstown Sheet & Tube Co. v. Sawyer,*
    343 U.S. 579 (1952)..................................................................................................9

**Statutes**

5 U.S.C. § 702..................................................................................................3, 13, 14, 15

42 U.S.C. § 7438..................................................................................................2, 8, 17

**Regulations**

2 C.F.R. § 200.340(c)..................................................................................................3

2 C.F.R. § 200.342..................................................................................................3

2 C.F.R. § 200.344..................................................................................................3

**Legislative Histories**

H.R. 1, 119th Cong., Sec. 60016 (1st Sess. 2025)..................................................................2, 3, 4, 5

H.R. Rep. 94-1656 (1976)..................................................................................................14

S. Rep. No. 94-996 (1976)..................................................................................................14

**Other Authorities**

Dan B. Dobbs, *Handbook on the Law of Remedies* (1973) ...........................................................13

# INTRODUCTION

In their attempt to escape judicial review of their clearly illegal action—cancelling an entire grant program mandated with great specificity by Congress—Defendants make a series of competing and conflicting arguments about why this Court cannot check them. All fail. The grant funds remain obligated, so this case is not moot. This Court has jurisdiction to decide both Plaintiffs' constitutional and Administrative Procedure Act ("APA") claims. And Defendants did not have discretion to eliminate Congress's program.

Nowhere do Defendants grapple with the evidence Plaintiffs presented—evidence that makes clear Defendants did not make careful determinations about the merit of individual grants, but rather cancelled all grants in the Environmental and Climate Justice Block Grant program *en masse* expressly because they disagreed with Congress's aims. Indeed, Defendants' (unfounded) litigation position—that there is no more funding for this program—makes clear their intent to eliminate the program entirely. These facts make this case distinct from others that have come before courts in this Circuit. This is not a case about individual grants, it does not sound in contract, and it cannot be heard in the Court of Federal Claims. This court has jurisdiction.

Because Plaintiffs have demonstrated a likelihood of success on the merits, irreparable harm, and that an injunction against unlawful government action is in the public interest, this Court should enter a preliminary injunction.[1]

---

[1] Defendants filed their Motion to Dismiss and Memorandum in Opposition to Plaintiffs' Motion for a Preliminary Injunction twice. Once as a Motion to Dismiss (Dkt. 66), and again as a Memorandum in Opposition ("Opp.") (Dkt. 67). Plaintiffs reply here to Dkt. 67, and intend to file an opposition to Defendants' Motion to Dismiss by July 28, in accordance with LR 7(b).

**ARGUMENT**

**I.  This case is not moot.**

Plaintiffs' claims are not moot. H.R. 1 did not rescind the grant funding for the grants at issue here, and the vast majority of the $3 billion directed by Congress to the Environmental and Climate Justice Block Grant program remains obligated to the program and available. Moreover, H.R. 1 did not repeal or alter the text of Section 138 of the Clean Air Act mandating the grant program, and EPA has a continuing legal obligation to continue to operate it.

As Defendants obliquely admit, H.R. 1 directed rescission only of "unobligated balances." Opp. at 8 (quoting H.R. 1, tit. VI, § 60016). The grant funding awarded to Plaintiffs and proposed class members is not "unobligated" funding and as such was not rescinded.[2] The Congressional Budget Office ("CBO") made this clear when it estimated the budgetary effects of the Bill.[3] In its report, the CBO concluded the rescission amount would encompass a total of $561 million, a fraction of the $3 billion appropriated to this program in 2022. 42 U.S.C. § 7438.

Legislative history confirms Congress did not consider funds already awarded under the Grant program as "unobligated" and available for rescission, even if EPA had begun attempting to terminate such grants. For example, in a House Energy and Commerce Committee discussion

---

[2] "An agency incurs an obligation . . . when it . . . awards a grant . . . or takes other actions that require the government to make payments to the public or from one government account to another." U.S. Gov't Accountability Off., *A Glossary of Terms Used in the Federal Budget Process*, GAO-05-734SP, at 70 (Sept. 2005) ("Budget Glossary"), https://www.gao.gov/assets/gao-05-734sp.pdf [https://perma.cc/L9D6-FUGM].

[3] Congressional Budget Office, Estimated Budgetary Effects of an Amendment in the Nature of a Substitute to H.R. 1, the One Big Beautiful Bill Act, Relative to CBO's January 2025 Baseline (June 27, 2025), https://www.cbo.gov/publication/61534 [https://perma.cc/YA6E-G3GX].

about how H.R. 1 would affect such grants, Representative Morgan Griffith, Chair of the Environmental Subcommittee, confirmed Congress "can't rescind expenditures that have already been obligated." Rep. Griffith noted that if any awarded funds are later successfully de-obligated, their rescission would need to be addressed in a "future rescission." Ex. 1, at 4.

Defendants are incorrect that the grant funds at issue here "were effectively de-obligated at the time of termination." Opp. at 8. Termination is not synonymous with de-obligation. The termination of a grant is the start of the process that may or may not ultimately result in de-obligation. First, after a termination there is an opportunity for an administrative dispute process where a grantee may challenge the termination. 2 C.F.R. § 200.342. For the grants at issue in this litigation, grantees have 30 days to file such an appeal. *Id.* § 200.340(c). This administrative process may then be appealed to a court of law. 5 U.S.C. § 702.

In addition, once a letter of termination is issued, grantees and the government must engage in a lengthy closeout process. *Id.* § 200.344. No de-obligation of funds can occur until this process is complete, because only then can the government determine what, if any, funds remain available to de-obligate. Plaintiffs and proposed class members have contested their terminations either to EPA or through this litigation and EPA has not completed closeout procedures. The funding for their grants remained obligated when H.R. 1 became law.

Defendants' reliance on *Rochester Pure Waters District v. EPA*, 960 F.2d 180, 181 (D.C. Cir. 1992) only bolsters Plaintiffs' position. In that case, the City of Rochester was seeking EPA funding to cover legal settlements related to grant funding. Critically, this was an additional request separate from the grant EPA had issued to the City. EPA denied the request and Rochester appealed. Rochester became concerned that EPA may not ultimately have the funds

3

available to satisfy its new claim because the funding was subject to rescission by Congress, so Rochester actively sought to prevent rescission.

Congress, however, acting with full knowledge of these circumstances, rescinded the *exact amount* of unobligated funds remaining for the grant program at issue, making clear its intent to rescind all funding, including the potential funding Rochester had requested. Rochester sought a court order enjoining the rescission. The D.C. Circuit declined that request because Congress had acted with knowledge, intent, and clarity when it rescinded the funds. In doing so, the court distinguished the case from others where Congress had not clearly expressed its intent to rescind specific funds. *Id.* at 185 (distinguishing *Jacksonville Port Auth. v. Adams*, 556 F.2d 52 (D.C. Cir. 1977) and *State of Connecticut v. Schweiker*, 684 F.2d 979 (D.C. Cir. 1982)).

This case is nothing like *Rochester.* Far from acting with intent to cancel the entire grant program and expressly rescind all $3 Billion in funding, Congress left the governing statutory language intact and rescinded only "unobligated balances." H.R. 1 tit. VI, § 60016. Moreover, where *Rochester* involved a request for new funds that had never been obligated, this case involves grants that were awarded and funds that were obligated and thus unavailable for rescission. And while Defendants assert that "Congress was fully aware when it passed H.R.1 that these . . . grants had been awarded, terminated, <u>and the funds deobligated,</u>" Opp. at 9 (emphasis added), they cite no evidence to support such awareness or intent, and there could not be any because de-obligation has not yet occurred. In fact, the record shows that Congress was

largely in the dark about the termination process at EPA.[4]

To support their mootness argument, Defendants stress that Congress has "exclusive power over the federal purse." Opp. at 9 (citing *Nevada v. Dep't of Energy*, 400 F.3d 9, 13 (2005)). Plaintiffs agree, and this truism is the foundation of their separation of powers claims. In 2022, Congress directed EPA to create an Environmental and Climate Justice Block Grant program and appropriated $3 billion to fund it. Congress chose to rescind only $561 million of that funding, leaving the remaining $2.4 billion obligated and available to grantees. Congress's direction endures. *Vartelas v. Holder*, 566 U.S. 257, 266 (2012) (explaining that "courts read laws as prospective in application unless Congress has unambiguously instructed retroactivity"). Plaintiffs' claims are live, this Court has jurisdiction to review them, and Congressional appropriations remain available to provide relief to Plaintiffs and proposed class members.

## II.    Plaintiffs' constitutional separation of powers claims must be heard in federal district court.

As an initial matter, the Tucker Act is no bar to this Court's jurisdiction over Plaintiffs' constitutional separation of powers claims. Defendants have essentially conceded this, here and in other cases. *Vera Inst. v. Dep't of Just.*, No. 25-cv-1643 (APM), 2025 WL 1865160, at *6 (D.D.C. July 7, 2025) (noting government counsel acknowledged jurisdiction over "independent constitutional claims"). Nor do Defendants meaningfully argue that *Department of Education v. California*, 145 S. Ct. 966 (2025) ("*California*"), somehow bears on standalone constitutional

---

[4] In the committee meeting discussed above, *supra* 3, Rep. Griffith explained that H.R.1 would not impact grants undergoing any termination proceedings at EPA and noted "I don't know what the administration is doing, per se, to the specific" and "the administration does not always tell us everything they are doing because they are doing so many things." Ex. 1, at 4.

5

claims. Instead, Defendants insist that Plaintiffs' claims are not constitutional at all. *See, e.g.*, Opp. at 16. This is wrong. The Court has jurisdiction to decide them.

To divest this Court of jurisdiction over constitutional separation of powers claims, the Tucker Act would have to contain "clear and convincing evidence" that Congress intended that result. *Weinberger v. Salfi*, 422 U.S. 749, 762 (1975) (quoting *Johnson v. Robison*, 415 U.S. 361, 373 (1974)). That is because those claims have nowhere else to go: The Court of Federal Claims indisputably lacks jurisdiction over these constitutional challenges. *See LeBlanc v. United States*, 50 F.3d 1025, 1028 (Fed. Cir. 1995); Dkt. 29-1 at 13–14. But the Tucker Act contains no such clear evidence of congressional intent to entirely foreclose judicial review of colorable constitutional claims. *See Webster v. Doe*, 486 U.S. 592, 603 (1988). And courts "categorically reject the suggestion" that the Tucker Act deprives federal courts of jurisdiction to hear claims the Court of Federal Claims cannot. *Tootle v. Sec'y of Navy*, 446 F.3d 167, 176 (D.C. Cir. 2006).

The en banc D.C. Circuit recently reaffirmed this conclusion, overruling a stay panel's Tucker Act holding and adopting "substantially . . . the reasons explained by Judge Pillard" in dissent from the initial stay order. *Widakuswara v. Lake*, No. 25-5144, 2025 WL 1521355, at *1 (D.C. Cir. May 28, 2025). Judge Pillard's dissent explained the district court had jurisdiction over the constitutional claims in part because "the Court of Claims could not adjudicate plaintiffs' constitutional claims." *Widakuswara v. Lake*, No. 25-5144, 2025 WL 1288817, at *12 (D.C. Cir. May 3, 2025) (Pillard, J., dissenting), *stay pending appeal vacated*, 2025 WL 1521335, at *1 (D.C. Cir. May 28, 2025) (en banc).

Interpreting the Tucker Act to deny the district court jurisdiction over these claims would have "serious implications for our constitutional structure." *Id.*, *see also Am. Ctr. for Int'l Lab.*

*Solidarity v. Chavez-Deremer*, No. 25-cv-1128 (BAH), 2025 WL 1795090, at *11 (D.D.C. June 30, 2025) ("[A] federal district court cannot be deprived of jurisdiction by the Tucker Act when no jurisdiction lies in the Court of Federal Claims," given "[t]here cannot be exclusive jurisdiction under the Tucker Act if there is no jurisdiction under the Tucker Act.").

And as to *California*, that case has no relevance to freestanding constitutional claims. It concerned the interplay between the Tucker Act and "the APA's limited waiver of [sovereign] immunity"; the Court had no occasion to consider constitutional claims because the plaintiffs there never raised one. 145 S. Ct. at 968. The same is true for three of the other cases that Defendants cite in their discussion of Plaintiffs' constitutional claims—*Suburban Mortg. Assocs. v. U.S. Dep't of Hous. & Dev.*, 480 F.3d 1116, 1126 (Fed. Cir. 2007); *Perry Capital LLC v. Mnuchin*, 864 F.3d 591, 619 (D.C. Cir. 2017); and *Albrecht v. Comm. on Emp. Benefits of the Fed. Rsrv. Emp. Benefits Sys.*, 357 F.3d 62, 68 (D.C. Cir. 2004).

Defendants' citation to *Metadure Corp. v. United States*, 490 F. Supp 1368, 1371, 1373 (S.D.N.Y. 1980), is also inapposite. There, the plaintiff's claims required an interpretation of the plaintiff's contracts in the Court of Federal Claims. *Id.* The plaintiff then attempted to lump those claims together and assert them as a constitutional claim in federal district court, which the court rejected. By contrast, here Plaintiffs bring separation of powers claims that do not turn on contract terms and could not be brought in the Court of Federal Claims.

The Government's remaining argument—that Plaintiffs' separation of powers claim is somehow not a constitutional claim—rests almost exclusively on a mistaken reading of *Dalton v. Specter*, 511 U.S. 462 (1994). In *Dalton*, the Supreme Court reasoned that procedural violations by the President regarding the closure of a naval base did not give rise to a constitutional claim

because the statute at issue did not limit the President's discretion. As this Circuit has noted,

*Dalton* merely stands for the proposition that when a statute contains *no limitations* on the

President's exercise of that authority, judicial review of an abuse of discretion claim is not

available. *See Am. Forest Research. Council v. United States*, 77 F.4th 787, 797 (D.C. Cir.

2023). Certainly, *Dalton*'s "limited holding" did not "repudiate *Marbury v. Madison*"—the

foundational precedent that federal courts can review and enjoin unconstitutional executive

action. *Chamber of Commerce v. Reich*, 74 F.3d 1322, 1331 & n.5 (D.C. Cir. 1996).

This case is nothing like *Dalton*. Congress did not confer limitless discretion to the Executive

when it directed how the grant funding at issue in this case should be spent. To the contrary, the

relevant grant statute directs in specific detail to whom funding should be allocated and how

grantees should use it. 42 U.S.C. § 7438. And, as discussed below, Defendants did not employ

discretion. Rather, they attempted to cancel an entire program because they disagree with

Congress's clearly stated objectives. For these reasons, numerous courts have rejected

Defendants' *Dalton* arguments in analogous cases, and this Court should do the same.[5]

---

[5] *See, e.g.*, *Aids Vaccine Advoc. Coal. v. U.S. Dep't of State*, 770 F. Supp. 3d 121, 148 n.17 (D.D.C. 2025) (distinguishing *Dalton* because "Plaintiffs assert the Executive has attempted to usurp Congress's power over the purse"); *Am. Fed'n of Gov't Emps. v. Trump*, No. 25-cv-03698, 2025 WL 1482511, at *19 (N.D. Cal. May 22, 2025) ("Plaintiffs' [*ultra vires*] claim is not that the President exceeded his statutory authority, as the *Dalton* plaintiffs claimed."); *Chicago Women in Trades v. Trump*, No. 25-cv-2005, 2025 WL 1331743, at *4–5 (N.D. Ill. May 7, 2025) ("*Dalton* did not involve the Spending Clause."); *Nat'l Treasury Emps. Union v. Vought*, No. 25-cv-0381, 2025 WL 942772, at * 8–9 (D.D.C. Mar. 28, 2025) ("Since there is no act of Congress that empowers the President [to take challenged action] in his discretion, *Dalton* does not apply."); *Does 1-26 v. Musk*, 771 F. Supp. 3d 637, 678 (D. Md. 2025) (Unlike in *Dalton*, "Plaintiffs' Separation of Powers claim is not based only on alleged statutory violations but instead further asserts that the [challenged action] exceeds the President's Article II powers.").

Instead, this case raises the type of constitutional claim specifically sanctioned by *Dalton*—where the Executive acts "in the absence of any statutory authority" whatsoever. 511 U.S. at 473. There is a manifest difference between cases alleging a "mere excess or abuse of discretion" and those concerning "a want of [Executive] power." *Id.* at 474. Because "Congress has the exclusive power to spend and has not delegated authority to the Executive to condition … grants on compliance with [his policies,] the President's 'power is at its lowest ebb,'" and he "has none of 'his own constitutional powers' to 'rely' upon." *City & County of San Francisco v. Trump*, 897 F.3d 1225, 1233–34 (9th Cir. 2018) (citing *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 637–38 (1952) (Jackson, J., concurring). Our "constitutional system of separation of powers would be significantly altered" if courts were to allow "executive and independent agencies to disregard federal law" by "declining to spend appropriated funds" on programs mandated by Congress. *In re Aiken County*, 725 F.3d 255, 266-67 & n.1 (Kavanaugh, J.) (cleaned up).

**III.    This Court has subject matter jurisdiction over Plaintiffs' APA claims.**

Defendants mischaracterize Plaintiffs' APA claims. Plaintiffs do not allege contract claims and do not seek payouts for grant amounts past due. Rather, Plaintiffs' claims relate to broad high-level agency actions, and they seek forward looking equitable relief.

The "mere fact that a court may have to rule on a contract issue" does not "automatically transform an action" into one on contract and deprive a district court of jurisdiction. *Megapulse, Inc. v. Lewis*, 672 F.2d 959, 968 (D.C. Cir. 1982). The D.C. Circuit has "explicitly rejected the 'broad' notion 'that any case requiring some reference to or incorporation of a contract is necessarily on the contract and therefore directly within the Tucker Act' because to do so would

'deny a court jurisdiction to consider a claim that is validly based on grounds other than a contractual relationship with the government.'" *Crowley Gov't Servs., Inc. v. Gen. Servs. Admin.*, 38 F.4th 1099, 1106–07 (D.C. Cir. 2022) (quoting *Megapulse*, 672 F.2d at 967–68). Instead, whether a claim is essentially contractual turns on the "source of rights upon which the plaintiff bases its claims" and the "type of relief sought." *Megapulse*, 672 F.2d at 968. Here, the source of Plaintiffs' rights is both the Constitution and federal statutes—not grant agreements—and the relief Plaintiffs seek is forward looking and equitable. Accordingly, this Court has jurisdiction.

### A. Plaintiffs seek to enforce a constitutional and statutory bar on unilaterally dismantling a congressionally mandated program.

The source of Plaintiffs' rights here are constitutional and statutory—not contractual—as Plaintiffs claims allege that Defendants' wholesale termination of the Environmental and Climate Justice Block Grant program violated the Constitution and the APA, regardless of the terms of the individual agreements.

It is axiomatic that plaintiffs are "masters of the complaint" with the power to bring claims as they see fit. *De Csepel v. Republic of Hungary*, 714 F.3d 591, 598 (D.C. Cir. 2013). Defendants' jurisdictional challenges must be analyzed in light of the claims Plaintiffs actually brought. *Id.* at 598. Here the Complaint contains five claims—each alleging statutory or constitutional violations. Compl., Dkt. 1 ¶¶ 166–213. None of these claims seeks relief because of any term or condition of individual grant agreements. Where plaintiffs' claims "do not at all depend on whether the terms of particular awards were breached" it would be "quite extraordinary to find that plaintiffs' claims are contractual." *Am. Cntr for Int'l Labor Solidarity*, 2025 WL 1795090, at *13 (quoting *AIDS Vaccine Advoc. Coal.*, 770 F. Supp. at 137).

The key question is "what the court must examine to resolve the case"—if a claim "depends on interpretations of statutes and regulations," then the claim "is not in essence contractual." *Widakuswara,* 2025 WL 1288817, at *12 (Pillard, J., dissenting), *stay pending appeal vacated*, 2025 WL 1521335, at *1 (D.C. Cir. May 28, 2025) (en banc) (adopting Judge Pillard's reasoning in vacating the panel's stay); *see also Md. Dep't of Hum. Res. v. Dep't of Health & Hum. Servs.*, 763 F.2d 1441, 1449 (D.C. Cir. 1985) (Bork, J.).

Here, Plaintiffs' rights arise under the Constitution or statute and "exist prior to and apart from the rights created under the contract"—thus, claims asserting those rights belong in district court and not the Court of Claims. *Widakuswara*, 2025 WL 1288817, at *11 (Pillard, J., dissenting)[6]; *see also, Crowley,* at 1107 (citations omitted). Plaintiffs ask the court to "address clear regulatory and statutory questions" including whether EPA violated the APA and the Clean Air Act. *Climate United Fund v. Citibank, N.A.*, No. 25-CV-698 (TSC), 2025 WL 1131412, at *9 (D.D.C. Apr. 16 2025). These claims stand in stark contrast to claims where the meaning of contract provisions controls the outcome of a case because the dispute is "entirely contained within the terms of the contract." *Ingersoll-Rand Co. v. United States*, 780 F.2d 74, 78 (D.C. Cir. 1985). Those disputes—ones that require the court to interpret the terms of an "agreement negotiated by the parties"—are essentially contractual and belong in the Court of Federal Claims.

---

[6] Defendants attempt to distinguish *Widakuswara* on the grounds that "the D.C. Circuit understood the relevant statutes to 'require allocation of funds to the specific named' plaintiffs" and argue that the congressionally mandated grant program was a "lump sum" appropriation. Opp. at 13 (cleaned up). This both belies the facts (Congress set clear directives for these funds, which EPA violated by terminating the entire program) and misreads Judge Pillard's dissent which found that when an agency acts contrary to such a congressional directive, claims "arise from statute, not from contract." *Widakuswara*, 2025 WL 1288817, at *11.

*Md. Dep't of Hum. Res.*, 763 F.2d at 1449. But here, the Court need not look at—let alone interpret—the terms of the grant agreements to make a decision. *See id.*; *Am. Bar Ass'n v. Dep't of Just.*, --F.Supp.3d--, No. 25-cv-1263 (CRC), 2025 WL 1388891, at *5 (D.D.C. May 14, 2025) (finding Plaintiffs' constitutional right "stands independent of the cooperative agreements"). Instead, Plaintiffs' claims turn on federal statutes and the Constitution.

Finally, Defendants confuse standing to bring a claim and the source of rights from which Plaintiffs' claims stem, stating that "[i]f Plaintiffs did not have grants, they would not have claims." Opp. at 12. While the termination of Plaintiffs grants is the injury that confers standing—i.e., Plaintiffs have been concretely injured on an individualized basis—Defendants cannot use that fact to recast Plaintiffs' claims as contract disputes over their individual grant agreements. As the Supreme Court has emphasized, "an important difference exists" between a cause of action and a concrete injury. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 426 (2021). This Court should reject Defendants' attempt to conflate the two.

Plaintiffs recognize that in *American Library Association v. Sonderling*, this Court reasoned that the plaintiffs' declarations setting out harms to them from grant terminations supported the conclusion that "the source of plaintiffs' rights" in that case was contractual. No. 25-1050 (RJL), 2025 WL 1615771, at *8 (D.D.C. June 6, 2025). This Court concluded that the "plaintiffs' standing and irreparable injury largely do not exist prior to and apart from rights created under their grant agreements." *Id.* (citation omitted). Respectfully, Plaintiffs submit that to apply the same reasoning in this case would risk conflating two distinct analyses: Plaintiffs' causes of action and Plaintiffs' concrete harm, in contravention of *TransUnion*. 594 U.S. at 426.

### B. Plaintiffs seek specific forward-looking relief to restore a terminated block grant program.

Plaintiffs seek specific forward-looking relief—the restoration of unlawfully terminated grant programs—and not money damages to compensate for past harms.

Since the 1976 amendment of the APA to waive sovereign immunity, the Supreme Court and Federal Circuit have carefully interpreted the Tucker Act *in pari materia* with the APA to delineate between claims that seek *specific* relief—that is, an order requiring the United States to follow through on its payment obligations—and those that seek *substitute* relief—that is, compensation for consequential harms when the United States violates a duty. Claims seeking specific relief are governed by Section 702 of the APA and heard in district court. Claims for substitute relief are not and are heard in the Court of Federal Claims. *Bowen v. Massachusetts*, 487 U.S. 879, 894–95 (1988); *Dep't of Army v. Blue Fox, Inc.*, 525 U.S. 255, 262 (1999) (The APA's sovereign immunity waiver turns on the statutory definition of "money damages" and the distinction between "specific relief and substitute relief.").

The controlling case here is *Bowen*, in which the Supreme Court adopted an approach previously set out by Judge Robert Bork of the D.C. Circuit—carefully analyzing the definition of the term "money damages" in the text of the APA:

> We begin with the ordinary meaning of the words Congress employed. The term "money damages," 5 U.S.C. § 702, we think, normally refers to a sum of money used as compensatory relief. Damages are given to the plaintiff to *substitute* for their suffered loss, whereas specific remedies 'are not substitute remedies at all, but attempt to give the plaintiff the very thing to which he was entitled.'

*Bowen*, 487 U.S. at 894–95 (quoting *Md. Dep't of Hum. Res.*, 763 F.2d at 1446 and Dan B. Dobbs, *Handbook on the Law of Remedies*, 135 (1973)).

13

Thus, a claim under APA section 702 can result in a monetary judgment—as long as the claim seeks specific injunctive relief rather than an award that substitutes for consequential harm suffered. *Id.* at 900–01. A district court's jurisdiction "to award *complete* relief" is "not barred by the possibility that a purely monetary judgment may be entered in the Claims Court." *Id.* at 910 (emphasis added).

Here, complete relief of Plaintiffs' claims is not available in the Court of Federal Claims. *Id.* at 905 (The "court of Claims has no power to grant equitable relief"); *see also Nat'l Ctr. For Mfg. Sciences v. United States*, 114 F.3d 196, 201–02 (Fed. Cir. 1997) (explaining that grant restrictions governing future disbursal of funds made money judgement inappropriate and reversing district court's transfer order).

Congress expressly contemplated that the APA's waiver of sovereign immunity would provide such relief in the context of federal grant programs. At the time Congress amended section 702 of the APA in 1976, both the House and Senate Committee reports "indicated that Congress understood that § 702, as amended, would authorize judicial review of the 'administration of Federal grant-in-aid programs.'" *Bowen*, 487 U.S. at 898 (citing H.R. Rep. 94-1656, at 9 (1976) and S. Rep. No. 94-996, at 8 (1976) (Exs. 2-3).[7] The Supreme Court found Judge Bork's summary of this legislative history convincing, quoting his conclusion that while specific relief "in cases involving such [grant] programs will, of course, often result in the payment of money from the federal treasury"—such claims for "specific relief, albeit monetary,

---

[7] Both the House and Senate reports cite to testimony from Sovereign Immunity: Hearing on S. 3568 before the Subcommittee on Administrative Practice and Procedure of the Senate Committee on the Judiciary, 91st Cong., 2d Sess. Ex. 4, at 121.

are for relief other than money damages and therefore within the waiver of sovereign immunity in section 702." *Id.* at 900 (quoting *Maryland Dep't of Hum. Res.*, 763 F.2d at 1447–48).[8]

This Court should reject Defendants' attempt to reframe Plaintiffs' requested relief as an order for specific performance, a contractual remedy that is generally unavailable against the government. Opp. at 14. Defendants' position—that an "agency action may not be enjoined, even if in clear violation of a specific statute, simply because that action might also amount to a breach of contract"—has been roundly rejected by this Circuit. *Megapulse*, 672 F.2d at 971. The "logical inference" of such a position is that the "government could avoid injunctions against activities violative of a statutory duty simply by contracting not to engage in those activities." *Id.* Instead, for Tucker Act purposes, the "mere fact that an injunction would require the same governmental restraint that specific (non)performance might require in a contract" does not deprive the district court of jurisdiction. *Id.*; *see Md. Dep't of Hum. Res.*, 763 F.2d at 1449.

The cases cited by the Government on this point are inapt. In *Spectrum Leasing Corp. v. United States*, 764 F.2d 891, 894 (D.C. Cir. 1985), the government collected contractual liquidated damages from a firm by stopping lease payments. 764 F.2d at 892. The company complained that this violated procedures in the Debt Collection Act, and sought an "order compelling the government to pay money owed in exchange for goods procured under an

---

[8] Defendants cite *Boaz Housing Auth. v. United States* for the proposition that "claims founded on grants" belong in the court of Federal Claims. Opp. at 11. Not so. In *Boaz* plaintiffs sought compensatory damages for past-due amounts under a subsidy program—not a grant. 994 F.3d 1349, 1368 (Fed. Cir. 2021). Further, in *Boaz* the Federal Circuit carefully distinguished between compensatory damages—to "*substitute* for a suffered loss" and specific remedies which belong in federal court. *Id.* at 1367–68 (quoting *Bowen*) (emphasis in original).

15

executory contract." *Id.* at 894. This suit fundamentally sought to enforce the contract—as confirmed by the backward-looking, past-due payment sought.

Similarly, in *Ingersoll-Rand v. United States*, the government terminated the plaintiffs' contract based on a specific provision of the contract. 780 F.2d at 75. Accordingly, the case turned on whether "the text of the contract forbids termination under these conditions." *Id.* at 78. That claim belonged in the Court of Federal Claims because "it was possible to conceive of this dispute as entirely contained within the terms of the contract." *Id.* In contrast, Plaintiffs' claims do not implicate the terms of the grant agreements and cannot be resolved via reference to them.

### C.  The Supreme Court's per curiam order in *California* does not defeat jurisdiction here.

Plaintiffs' APA claims are significantly different from those at issue in the Supreme Court's per curiam stay order in *Department of Education v. California*. In that case, the district court considered solely an arbitrary and capricious claim and found procedural irregularities in the termination letters for specific grants, concluding that in those letters the government had failed to adequately explain the reasoning behind the terminations; it did not reach the plaintiffs' substantive APA claims. *California v. Dep't of Educ.*, 769 F. Supp. 3d 72, 77–78 & 78 n.3 (D. Mass. 2025). This analysis required consideration of the specific terms and conditions of the grants. *Id.*

Here, by contrast, Plaintiffs seek relief from global decisions made in direct conflict with Congressional direction. And following the Supreme Court's *California* decision, numerous courts in this district have concluded that cases raising claims like those here belong in federal district court. *See Harris County, Texas v. Kennedy*, No. 25-cv-1275, 2025 WL 1707665, at *6 (D.D.C. June 17, 2025) (*California* "does not change the Court's conclusion"); *Southern Educ.*

*Found. v. U.S. Dep't of Educ.*, No 25-cv-1079, 2025 WL 1453047, at *9 (D.D.C. May 21, 2025) (*California* "does not displace governing law"); *Am. Bar Ass'n.*, --F.Supp.3d--, 2025 WL 1388891, at *6 (*California* "does not compel a contrary result"); *see also Widakuswara,* 2025 WL 1288817, at *13 (Pillard, J. dissenting) (*California* "does not change the landscape").

**D.  Plaintiffs' APA claims are not committed to agency discretion under law.**

Defendants' final attempt to evade judicial review of Plaintiffs' APA claims is to mischaracterize the termination of a congressionally mandated grant program as simply a "funding decision" committed to agency discretion by law. Opp. at 16. Defendants rely heavily on *Lincoln v Vigil*, in which the Supreme Court held that an agency's reallocation of funds within a "lump-sum appropriation" was committed to agency discretion by law because the statute did not "restrict what can be done with those funds." 508 U.S. 182, 192–94 (1993). *Lincoln* does not apply here.

In *Lincoln*, the Supreme Court upheld the agency's decision to allocate funds from a regional program for "handicapped Indian children" to a "nationwide effort to assist such children" was committed to agency discretion. *Id.* at 184. The Court confined the "agency discretion" exception exceedingly narrowly—applying it only to those "rare circumstances" where the relevant statute is drawn so that a court would have no meaningful standard to judge the agency's exercise of discretion. *Id.* at 191.

The facts here bear no resemblance to *Lincoln.* In this case, Congress explicitly mandated that funds "shall" be spent for Environmental and Climate Justice Block Grants. 42 U.S.C. § 7438. These are not discretionary "lump sum" funds lacking any statutory restrictions—they list specific activities that "shall" be funded to advance statutory purposes. *Id.* Unlike in *Lincoln*,

17

Defendants terminated these grants not because the funds could serve other permissible statutory objectives, but precisely *because* the program advances Congress's stated purpose. *See* Dkt. 1-04 (Compl. Exs. 1-A, 1-C, and 1-F). *Lincoln* would have been a very different case if the agency had cancelled the program *because* it served the very population Congress intended it to benefit.[9]

Defendants claim that Plaintiffs "fail to wrestle" with the statutory language allowing the Administrator to define activities that "benefit disadvantaged communities." Opp. at 18. However, Defendants have made it clear through their complete elimination of the Environmental and Climate Justice Block Grant program, as well as official statements, Compl. ¶ 109, that they do not intend to benefit *any* disadvantaged communities. The mootness argument mounted in this case further confirms their intentions.

As the Ninth Circuit recently explained while rejecting an identical argument from the government, "[t]he rule announced in *Lincoln* has no application where, as here, the agency fails to carry out a program that is required by statute" through the use of language like "'shall' [that] plainly imposes a mandatory duty." *Community Legal Services in East Palo Alto v. U.S. Dep't of Health and Human Servs.*, 2025 WL 1393876, at *4–5 (9th Cir. May 14, 2025).[10]

_____

[9] For the same reasons, Defendants' comparison to *Milk Train, Inc. v. Veneman* fails. 310 F.3d 747, 751 (D.C. Cir. 2002). In that case the statute contained no "reference point" for the court other than the decisionmakers' own views of the "appropriate manner" to distribute funds "consistent with the statute's general policy." *Id.* at 751–52.

[10] Numerous other courts have rejected Defendants' *Lincoln* arguments in analogous cases. *See, e.g.*, *Green & Healthy Homes Initiative, Inc. v. EPA*, No. 25-cv-1096, 2025 WL 1697463, at *15-16 (D. Md. June 17, 2025); *Martin Luther King Jr. Cty. v. Turner*, No. 25-cv-814, 2025 WL 1582368, at *13 (W.D. Wash. June 3, 2025); *Climate United Fund*, 2025 WL 1131412, at *13.

18

IV.    **Plaintiffs are likely to succeed on the merits.**

   A.    **EPA's refusal to spend congressionally mandated funds in the manner directed by Congress violates the Constitution.**

Plaintiffs' constitutional claims are straightforward. Congress mandated that EPA award Environmental and Climate Justice Block grants. EPA—"for policy reasons"—terminated all such grants, effectively repealing a duly enacted statute by eliminating the program it creates. Pls.' Mem. in Supp. of Mot. for Prelim. Inj. ("Pls.' Mem"), Dkt. 29-1 at 17–20. Defendants now claim that because the "block grant funding was available until September 2026" they "still had a substantial amount of time to fund new activities at the time they took the challenged action." Opp. at 25. This recent "explanation" is belied by the record.

First, internal EPA communications confirm that Defendants intended to fully dismantle the Environmental and Climate Justice Grant program. Dkt. 1, Compl. ¶¶ 109–115; Dkt. 1-04, Compl. Exs 1-A, 1-C, and 1-F. And Defendants' opposition confirms they believe they accomplished this goal. Opp. at 5 (stating that "[a]s of May 2, 2025, all grants" have been terminated). Defendants' public statements further confirm their intention to flout Congress's mandate. EPA Administrator Zeldin touted "taxpayer savings" when announcing terminations of grants under this program, saying EPA was "put[ting] a stop to wasteful . . . programs."[11] Compl. ¶ 109. Administrator Zeldin has made it clear that EPA views grants for environmental justice projects as "light[ing] tax dollars on fire." Ex. 5, (Apr. 4, 2025 post on X). This, despite the fact

---

[11] EPA, *EPA Administrator Lee Zeldin Cancels 20 Grants in 2nd Round of Cuts with DOGE, Saving Americans More than $60M*, (Feb. 25, 2025), https://www.epa.gov/newsreleases/epa-administrator-lee-zeldin-cancels-20-grants-2nd-round-cuts-doge-saving-americans [https://perma.cc/KV5D-XK99].

that Defendants had taken no individualized review of the grants in question and thus had no way to know whether or not they were meritorious. Compl. ¶¶ 109–10. Defendants cannot claim to have discretion where no discretion has been employed.

Further, even if EPA wanted to repurpose this funding (and they provided no evidence they intend to do so), it would be unable to do so as a practical matter. Before awarding grants, an agency must first develop a funding program, announce that opportunity, and give applicants an opportunity to apply.[12] That process alone takes several months. Once applications arrive, those applications must be screened, reviewed, and then awardees selected and notified. At that point agencies "begin working with the award recipient to finalize the legal framework for the funding agreement." Only then are funds disbursed. This process takes well over a year. *See, e.g.,* 2°CM Decl. (Dkt. 29-5) ¶ 8 (EJCPS grant awarded in Aug. 2024, 19 months after EPA's Jan. 2023 Request for Applications); ISC Decl. (Dkt. 29-17) ¶ 15 (TCTAC grant awarded notification sent in Dec. 2023, 16 months after EPA's Aug. 2022 Request for Applications).

### B. EPA's elimination of the program violates the APA because it is contrary to law and not committed to agency discretion.

In their memorandum in support of their motion for a preliminary injunction, Plaintiffs established that Defendants' wholesale termination of the grant program was contrary to law because it violated the Constitution, the Clean Air Act, and the Impoundment Control Act. *See* Pls.' Mem., Dkt. 29-1 at 20–24. Defendants fail to meaningfully address these arguments.

---

[12] *See* Grants.gov, The Grant Lifecycle, https://www.grants.gov/learn-grants/grants-101/the-grant-lifecycle [https://perma.cc/GZ5U-GWDU].

Other than their plea for discretion, Defendants' sole response to this claim is that judicial enforcement of the Impoundment Control Act can only be brought by the Comptroller General. *See* Opp. at 24. But the "mere fact that the Impoundment Control Act affirmatively empowers the Comptroller General to sue" does not preclude review of violations of the Act under the APA. *American Center for Int'l Labor Solidarity*, 2025 WL 1795090, at *22.

### C. Defendants' elimination of the program violates the APA because it was arbitrary and capricious.

Defendants likewise fail to rebut Plaintiffs' strong showing that termination of the entire grant program was arbitrary and capricious. Pls.' Mem, Dkt. 29-1 at 24–27. First, Defendants argue that the "finite amount of tax dollars allocated to these programs" makes it "rational to pause funding on projects pending further determination whether to continue that funding in the same manner." Opp. at 21. But in this lawsuit Plaintiffs do not challenge EPA's pause; they challenge the elimination of the program. Moreover, the record makes clear EPA did not use this pause for any rational analysis of the individual grants at issue here.

Second, Defendants point to the President's executive orders—stating that "EPA's decisions are plainly attributable to the [Executive Orders]." Opp. at 22. Plaintiffs agree—but that provenance does not make the decisions any less arbitrary and capricious. The executive orders did not consider or direct agencies to consider the reliance interest of grant recipients or analyze the economic impacts of the termination of the Grant program—either in general or in relation to specific grant recipients—or do any of the other analysis required by the APA. *See, e.g.*, *FCC v. Fox Television Stations, Inc.*, 556 U.S. 505, 515–16 (2009).

**V.    Plaintiffs have been irreparably harmed.**

Plaintiffs and proposed class members have suffered clear and ongoing irreparable harm that is redressable through preliminary relief. Pls' Mem, Dkt. 29-1 at 27–38. In the face of 40 declarations detailing the harms to Plaintiffs and proposed class members, Defendants cherry-pick phrases to claim that Plaintiffs' harms are "speculative." Opp. at 26. Their attempt falls flat.

Plaintiffs' harms are not speculative. For example, while Defendants portray the harm to Plaintiff 2°C Mississippi as mere "possibility . . . and potential future harm," the organization has already stalled its work to create an overnight shelter and independent water and energy supply for use following hurricanes, power outages, and periods of extreme heat. 2°CM Decl. (Dkt. 29-05) ¶ 20. And Defendants are wrong where they claim that the "gravamen of plaintiffs' injury" is monetary and assert that these losses may be recoverable should Plaintiffs successfully dispute the terminations. Opp. at 27–28. As discussed above, the relief sought here is programmatic—the restoration of the grant program, which would allow Plaintiffs to continue to perform valuable work in their communities—not damages past due. *Supra* Section III(B). Many programs simply will be unable to continue absent preliminary relief. *See, e.g.,* Steelworks Decl. (Dkt. 29-9) ¶¶ 24, 28; HRiA Decl. (Dkt. 29-13) ¶ 45.

Defendants fail to even acknowledge the specific harms that EPA's actions have caused to Plaintiffs' programmatic work, internal operations, and reputations with partner organizations and community members—all forms of irreparable harm. *See Tex. Children's Hosp. v. Burwell*, 76 F. Supp. 3d 224, 244 n.7 (D.D.C. 2014) (finding irreparable harm where nonprofit organizations "may not be driven out of business, but programs they provide may be"); *Nat'l Council of Nonprofits v. Off. of Mgmt. & Budget*, 763 F. Supp. 3d 36, 57 (D.D.C. Feb. 3, 2025)

22

("threaten[ing] the lifeline that keeps countless organizations operational" is irreparable harm.);

*Xiaomi Corp. v. Dep't of Def.*, No. 21-cv-280, 2021 WL 950144, at *9–10 (D.D.C. Mar. 12,

2021) ("'[I]njury to reputation or goodwill' . . . is typically 'viewed as irreparable.'").

 For example, Allegheny County's grant was terminated three days before the County was

to break ground on the water diversion portion of its project to prevent severe flooding events

that have left homes uninhabitable for days to weeks at a time. Allegheny County Decl. (Dkt. 29-

06) ¶¶ 9, 16. Other organizations have enacted layoffs and furloughs—or employees working

without pay. *See, e.g.*, ISC Decl. (Dkt. 29-17) ¶ 28 (termination forced layoffs or furloughs of

nearly half the organization's staff); Lowcountry Alliance Decl. (Dkt. 29-22) ¶ 17 (CEO working

without pay). The loss of the grant programs has also resulted in a failure of organizations to

deliver on promises to their communities, leading to a loss of public confidence. *See, e.g.*,

DSCEJ Decl. (Dkt. 29-21) ¶ 18; Sacramento Decl. (Dkt. 29-28) ¶ 20.

 Finally, Defendants assert that a "delay in seeking preliminary relief weighs against

finding irreparable harm." Opp. at 26. This is not the law. Courts in this jurisdiction do not treat

delay as a bar to relief when the harm is ongoing or the circumstances are complex. *See, e.g.*,

*Texas Children's Hospital*, 76 F. Supp. 3d at 245 ("[T]ardiness is not particularly probative in

the context of ongoing, worsening injuries."); *Aracely, R. v. Nielsen*, 319 F. Supp. 3d 110, 156

(D.D.C. 2018) (rejecting argument that plaintiffs' four-month delay in filing for a preliminary

injunction was dilatory given a rapidly evolving legal and factual landscape).

 Here, any delay was reasonable. First, the final agency action was not apparent until after

March 2025, when EPA began implementing its decision to terminate the grant program, and

evidence that this decision had been made on a programmatic basis only emerged on May 6,

2025. Compl. Ex. 1-A (Dkt 1-04) (Voyles Decl.). Plaintiffs filed their lawsuit and motion for preliminary relief soon after the nature and scope of the termination process became clear.

Second, the complex factual, legal, and procedural background of this case supports the timing of Plaintiffs' motion. Given the program-wide nature of Defendants' actions, Plaintiffs seek to represent a nationwide class of all grant recipients. Preparing and filing for class certification and class-wide relief involves additional time and coordination.

The cases cited by Defendants are not to the contrary. In *Open Top Sightseeing USA*, the court characterized the delay as dilatory after plaintiffs moved to continue a scheduled hearing. 48 F. Supp. 3d 87, 90 (D.D.C. 2014). And in *Fund for Animals v. Frizzell*, the D.C. Circuit found Plaintiffs' 44-day delay in seeking a Temporary Restraining Order to be inexcusable where the harm—a bird harvest season—was nearly complete by the time the motion was filed, unlike here, where the harm is ongoing and worsening. 530 F.2d 982, 987 (D.C. Cir. 1975).

## VI. The balance of the equities weighs in favor of Plaintiffs.

In this case, "the balance of equities tips in [Plaintiffs'] favor, and [] an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The federal government "'cannot suffer harm from an injunction that merely ends an unlawful practice or reads a statute as required to avoid constitutional concerns.'" *R.I.L-R v. Johnson*, 80 F. Supp. 3d 164, 191 (D.D.C. 2015) (quoting *Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013)). And "[t]here is generally no public interest in the perpetuation of unlawful agency action." *League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016).

Here, Defendants have unlawfully exceeded their authority, violating the Constitution and federal law by flouting the directives of Congress to effectuate this grant program.

24

Defendants contend that they would suffer "a severe separation-of-powers harm" should this Court enter an injunction impeding the President's ability to terminate grants. Opp. at 29–30. But any "chilling effect" on agency spending decisions would merely deter further unlawful action. Moreover, grant recipients are paid on a reimbursement basis. It is only *after* work has been performed that the government reimburses them. A preliminary injunction would therefore not require Defendant to expend "millions of dollars" immediately. *Id.* at 30.

**VII.    This Court should not require a bond.**

This Court has recently chosen not to impose a bond on plaintiffs when, as here, "defendants have not shown that the absence of a bond would materially damage them." *Rural Dev. Innovations Ltd., et al. v. Marocco*, No. 25-1631, 2025 WL 1807818, at *6 (D.D.C. July 1, 2025). As in *Rural Development*, Defendants would not be materially damaged by continuing to operate a program that Congress appropriated them the funds to operate. This Court has "broad discretion" regarding the appropriate bond, *League of United Latin Am. Citizens v. Exec. Off. Of the President*, No. 25-0955, 2025 WL 1187730, at *61 (D.D.C. Apr. 24, 2025). The Court should not require a bond in this instance.

DATED: July 18, 2025                Respectfully submitted,

/S/ HANA V. VIZCARRA
Hana V. Vizcarra (D.C. Bar No. 1011750)
Deena Tumeh (D.C. Bar No. 1741543)
Molly Prothero (D.C. Bar No. 1779237)
Andrew Saavedra (N.Y. Bar No: 6062814)
(*Pro Hac Vice*)
Linnet Davis-Stermitz (WA Bar No. 63190)
(*Pro Hac Vice*)
EARTHJUSTICE
1001 G Street NW, Suite 1000
Washington, D.C. 20001
25

(202) 667-4500
hvizcarra@earthjustice.org
dtumeh@earthjustice.org
mprothero@earthjustice.org
asaavedra@earthjustice.org
ldavisstermitz@earthjustice.org

*Counsel for Plaintiffs Air Alliance Houston, Bessemer Historical Society (d/b/a Steelworks Center of the West), Deep South Center for Environmental Justice, Downwinders at Risk, Health Resources in Action, Institute for Sustainable Communities, Inter-Tribal Council of Michigan, PUSH Buffalo, and WE ACT for Environmental Justice and Proposed Class Counsel.*

*/s/ Ben Grillot*
Ben Grillot (D.C. Bar No. 982114)
Kimberley Hunter (N.C. Bar No. 41333)
(*Pro Hac Vice*)
Irena Como (N.C. Bar No. 51812)
(*Pro Hac Vice*)
James Whitlock (N.C. Bar No. 34304)
(*Pro Hac Vice*)
SOUTHERN ENVIRONMENTAL LAW CENTER
122 C St NW, Suite 325
Washington, DC 20001
Telephone: (202) 828-8382
Facsimile: (202) 347-6041
bgrillot@selc.org
kmeyer@selc.org
icomo@selc.org

*Counsel for Plaintiffs Appalachian Voices, 2°C Mississippi, Lowcountry Alliance for Model Communities, Parks Alliance of Louisville, Pittsburgh Conservation Corps (Landforce) and Southwest Renewal Foundation and Proposed Class Counsel.*

*/s/ Toby Merrill*
Toby Merrill (D.D.C. Bar No. MA0006)
Graham Provost (D.C. Bar No. 1780222)

26

(*Pro Hac Vice*)
Elaine Poon (VA Bar No. 91963)
(*Pro Hac Vice*)
Cassandra Crawford (NC Bar No. 45396)
(*Pro Hac Vice*)
PUBLIC RIGHTS PROJECT
490 43rd Street, Unit #115
Oakland, CA 94609
Telephone: (510) 738-6788
toby@publicrightsproject.org
graham@publicrightsproject.org
elaine@publicrightsproject.org
cassandra@publicrightsproject.org

*Counsel for Plaintiffs Allegheny County, Kalamazoo County, King County, Native Village of Kipnuk, City of Sacramento, City and County of San Francisco, City of Springfield and Treasure Island Mobility Management Agency and Proposed Class Counsel.*

/s/ Gary DiBianco
Gary DiBianco (D.C. Bar No. 458669)
Jillian Blanchard (CA Bar No. 203593)
(*Pro Hac Vice*)
Larissa Koehler (CA Bar No. 289581)
(*Pro Hac Vice*)
LAWYERS FOR GOOD GOVERNMENT
6218 Georgia Avenue NW, # 5001
Washington, D.C. 20011
(202) 258-6826
Gary@lawyersforgoodgovernment.org
Jillian@lawyersforgoodgovernment.org
Larissa@lawyersforgoodgovernment.org

*Counsel for Plaintiffs Institute for Sustainable Communities, Inter-Tribal Council of Michigan, Kalamazoo County, and Native Village of Kipnuk.*

/s/ Julie Wilensky
David Chiu (CA Bar No. 189542)
SAN FRANCISCO CITY ATTORNEY

27

Yvonne R. Meré (CA Bar No. 175394)
Chief Deputy City Attorney
(*Pro Hac Vice*)
Mollie M. Lee (CA Bar No. 251404)
(*Pro Hac Vice* pending)
Chief of Strategic Advocacy
Sara J. Eisenberg (CA Bar No. 269303)
(*Pro Hac Vice*)
Chief of Complex and Affirmative Litigation
Julie Wilensky (CA Bar No. 271765)
(*Pro Hac Vice*)

Deputy City Attorney
1390 Market Street, 7th Floor
San Francisco, CA 94102
Telephone: (415) 554-4274
yvonne.mere@sfcityatty.org
mollie.lee@sfcityatty.org
sara.eisenberg@sfcityatty.org
julie.wilensky@sfcityatty.org

*Counsel for Plaintiffs City and County of San Francisco and Treasure Island Mobility Management Agency*

*/s/ Alison Holcomb*
David J. Hackett (WA Bar No. 21234)
(*Pro Hac Vice*)
General Counsel to King County Executive & Special Deputy Prosecutor
Alison Holcomb (WA Bar No. 23303)
(*Pro Hac Vice*)
Deputy General Counsel to King County Executive & Special Deputy Prosecutor
OFFICE OF KING COUNTY PROSECUTING ATTORNEY LEESA MANION
401 5th Avenue, Suite 800
Seattle, WA 98104
(206) 477-9483
David.Hackett@kingcounty.gov
aholcomb@kingcounty.gov

28

*Counsel for Plaintiff Martin Luther King, Jr. County*