**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| APPALACHIAN VOICES, et al.,   ) | |
|   ) | |
| *Plaintiffs*,   ) | |
| *on behalf of themselves and*   ) | |
| *all others similarly situated*   ) | Civil Action No. 1:25-cv-01982-RJL |
|   ) | |
| v.   ) | |
|   ) | |
| UNITED STATES   ) | |
| ENVIRONMENTAL PROTECTION   ) | |
| AGENCY, et al.,   ) | |
|   ) | |
| *Defendants*.   ) | |

**<u>PLAINTIFFS' MEMORANDUM IN OPPOSITION
TO DEFENDANTS' MOTION TO DISMISS</u>**

# TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................ ii

INTRODUCTION ............................................................................................................ 1

BACKGROUND .............................................................................................................. 2

ARGUMENT .................................................................................................................... 6

    A.    Plaintiffs' claims are not moot............................................................................ 7

    B.    This Court has jurisdiction over Plaintiffs' constitutional claims. .................. 11

    C.    This Court has jurisdiction over Plaintiffs' APA claims. ................................ 15

        i.    Plaintiffs seek to enforce a constitutional and statutory bar on unilaterally dismantling a congressionally mandated program........................................ 16

        ii.    Plaintiffs seek specific forward-looking relief to restore a terminated block grant program........................................................................................... 19

        iii.    The Supreme Court's per curiam order in *California* does not defeat jurisdiction here. .......................................................................................... 24

    D.    Plaintiffs' APA claims are not committed to agency discretion under law...... 25

CONCLUSION.............................................................................................................. 28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aids Vaccine Advoc. Coal. v. U.S. Dep't of State*,
    770 F. Supp. 3d 121 (D.D.C. 2025) ...............................................................14, 17

*In re Aiken County*,
    725 F.3d 255 (D.C. Cir. 2013) .......................................................................15

*Albrecht v. Comm. on Emp. Benefits of the Fed. Rsrv. Emp. Benefits Sys.*,
    357 F.3d 62 (D.C. Cir. 2004) .........................................................................13

*Am. Bar Ass'n v. Dep't of Just.*,
    No. 25-cv-1263 (CRC), 2025 WL 1388891 (D.D.C. May 14, 2025) .........................16, 18, 25

*Am. Ctr. for Int'l Lab. Solidarity v. Chavez-Deremer*,
    No. 25-cv-1128 (BAH), 2025 WL 1795090 (D.D.C. June 30, 2025) .......................12, 16, 17

*Am. Fed'n of Gov't Emps. v. Trump*,
    No. 25-cv-03698, 2025 WL 1482511 (N.D. Cal. May 22, 2025)...........................14

*Am. Forest Research. Council v. United States*,
    77 F.4th 787 (D.C. Cir. 2023)........................................................................13

*Am. Library Ass'n. v. Sonderling*,
    No. 25-cv-1050 (RJL), 2025 WL 1615771 (D.D.C. June 6, 2025) .........................19

*Am. Public Health Ass'n. v. Nat'l Institutes of Health*,
    Nos. 25-1611, 15-1612, 2025 WL 2017106 (1st Cir. July 18, 2025)..16, 20, 21, 23, 24, 27, 28

*Arpaio v. Obama*,
    797 F.3d 11 (D.C. Cir. 2015) .........................................................................5

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)....................................................................................6

*Bell Atl. Corp. v Twombly*,
    550 U.S. 544 (2007)....................................................................................6

*Boaz Housing Auth. v. United States*,
    994 F.3d 1359 (Fed. Cir. 2021).....................................................................22

*Bowen v. Massachusetts*,
    487 U.S. 879 (1988)...............................................................................16, 20, 21, 22

ii

*California v. Dep't of Educ.*,
769 F. Supp. 3d 72 ........................................................................................24

*Chamber of Com. of U.S. v. Reich*,
74 F.3d 1322 (D.C. Cir. 1996) ...............................................................11, 14

*Chicago Women in Trades v. Trump*,
No. 25-cv-2005, 2025 WL 1331743 (N.D. Ill. May 7, 2025) ..................14

*City & County of San Francisco v. Trump*,
897 F.3d 1225 (9th Cir. 2018) ..................................................................15

*Climate United Fund v. Citibank, N.A.*,
No. 25cv-698 (TSC), 2025 WL 1131412 (D.D.C. Apr. 16, 2025)............18

*Cmty. Legal Servs. in East Palo Alto v. U.S. Dep't of Health and Human Servs.*,
2025 WL 1393876 (9th Cir. May 14, 2025) ...............................................27

*Crowley Gov't Servs., Inc. v. Gen. Servs. Admin.*,
38 F.4th 1099 (D.C. Cir. 2022)...........................................................15, 17

*County of Los Angeles v. Davis*,
440 U.S. 625 (1979)......................................................................................5

*Dalton v. Specter*,
511 U.S. 462 (1994)...............................................................................13, 14

*De Csepel v. Republic of Hungary*,
714 F.3d 591 (D.C. Cir. 2013) ....................................................................17

*Dep't of Army v. Blue Fox, Inc.*,
525 U.S. 255 (1999)....................................................................................20

*Dep't of Educ. v. California*,
145 S. Ct. 966 (2025)......................................................................11, 13, 24

*Does 1-26 v. Musk*,
771 F. Supp. 3d 637 (D. Md. 2025)...........................................................14

*Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*,
561 U.S. 477 (2010)......................................................................................11

*Gov't of Manitoba v. Bernhardt*,
923 F.3d 173 (D.C. Cir. 2019) .....................................................................5

*Harris County, Texas v. Kennedy*,
No. 25-cv-1275, 2025 WL 1707665 (D.D.C. June 17, 2025)...............7, 16, 19, 24

*Hettinga v. United States,*
    677 F.3d 471 (D.C. Cir. 2012) ................................................................6

*Hurd v. District of Columbia,*
    864 F.3d 671 (D.C. Cir. 2017) ................................................................6

*Ingersoll-Rand Co. v. United States,*
    780 F.2d 74 (D.C. Cir. 1985) ..........................................................18, 24

*Jacksonville Port Auth. v. Adams,*
    556 F.2d 52 (D.C. Cir. 1977) ................................................................10

*Jerome Stevens Pharms., Inc. v. Food & Drug Admin.,*
    402 F.3d 1249 (D.C. Cir. 2005) .............................................................5

*Johnson v. Robison,*
    415 U.S. 361 (1974) ...............................................................................11

*Larsen v. U.S. Navy,*
    525 F.3d 1 (D.C. Cir. 2008) ....................................................................5

*Larson v. Domestic & Foreign Com. Corp.,*
    337 U.S. 682 (1949) ...............................................................................11

*LeBlanc v. United States,*
    50 F.3d 1025 (Fed. Cir. 1995) ...............................................................12

*Lemon v. Geren,*
    514 F.3d 1312 (D.C. Cir. 2008) ..............................................................5

*Lincoln v. Vigil,*
    508 U.S. 182 (1993) .....................................................................26, 27, 28

*McKinney v. District of Columbia,*
    No. 24-7027, 2025 WL 1873334 (D.C. Cir. July 8, 2025) ......................6

*Md. Dep't of Hum. Res. v. Dep't of Health & Hum. Servs.,*
    763 F.2d 1441 (D.C. Cir. 1985) (Bork, J.) ..................17, 18, 20, 22, 23

*Megapulse, Inc. v. Lewis,*
    672 F.2d 959 (D.C. Cir. 1982) ..................................................15, 16, 22, 23

*Metadure Corporation v. United States,*
    490 F. Supp 1368 (S.D.N.Y. 1980) .......................................................13

*Milk Train, Inc. v. Veneman,*
    310 F.3d 747 (D.C. Cir. 2002) ...............................................................27

*Nat'l Ctr. For Mfg. Sciences v. United States*,
   114 F.3d 196 (Fed. Cir. 1997) .................................................................................21

*Nat'l Treasury Emps. Union v. Vought*,
   No. 25-cv-0381, 2025 WL 942772 (D.D.C. Mar. 28, 2025) ....................................14

*Nevada v. Dep't of Energy*,
   400 F.3d 9 (2005) ...................................................................................................10

*Perry Capital LLC v. Mnuchin*,
   864 F.3d 591 (D.C. Cir. 2017) ................................................................................13

*Rochester Pure Waters District v. EPA*,
   960 F.2d 180 (D.C. Cir. 1992) .............................................................................9, 10

*Schneider v. Kissinger*,
   412 F.3d 190 (D.C. Cir. 2005) ..................................................................................5

*Southern Educ. Found. v. U.S. Dep't of Educ.*,
   No 25-cv-1079, 2025 WL 1453047 (D.D.C. May 21, 2025)..............................16, 24

*Sparrow v. United Air Lines, Inc.*,
   216 F.3d 1111 (D.C. Cir. 2000) .................................................................................6

*Spectrum Leasing Corp. v. United States*,
   764 F.2d 891 (D.C. Cir. 1985) ................................................................................23

*Spencer v. Kemna*,
   523 U.S. 1 (1998) ......................................................................................................5

*State of Connecticut v. Schweiker*,
   684 F.2d 979 (D.C. Cir. 1982) ................................................................................10

*Strickland v. United States*,
   32 F. 4th 311 (4th Cir. 2022) ..................................................................................11

*Suburban Mortg. Assocs. v. U.S. Dep't of Hous. & Dev.*,
   480 F.3d 1116 (Fed. Cir. 2007)................................................................................13

*Tootle v. Sec'y of Navy*,
   446 F.3d 167 (D.C. Cir. 2006) ................................................................................12

*TransUnion LLC v. Ramirez*,
   594 U.S. 413 (2021)................................................................................................19

*Vera Inst. v. Dep't of Just.*,
   No. 25-cv-1643 (APM), 2025 WL 1865160 (D.D.C. July 7, 2025)....................11, 25

v

*Webster v. Doe*,
  486 U.S. 592 (1988)................................................................................................12

*Weinberger v. Salfi*,
  422 U.S. 749 (1975)................................................................................................11

*Widakuswara v. Lake*,
  No. 25-5144, 2025 WL 1288817 (D.C. Cir. May 3, 2025) ....................12, 17, 18, 25

*Widakuswara v. Lake*,
  No. 25-5144, 2025 WL 1521355 (D.C. Cir. May 28, 2025) ......................11, 12, 17

*Youngstown Sheet & Tube Co. v. Sawyer*,
  343 U.S. 579 (1952) (Jackson, J., concurring)....................................................15

**Statutes**

5 U.S.C. § 702........................................................................................8, 20, 21, 22

5 U.S.C. § 706................................................................................................................19

42 U.S.C. § 7438................................................................................................2, 8, 27

42 U.S.C. § 7438(a)....................................................................................................25

42 U.S.C. § 7438(a)(1)–(2)..........................................................................................2

42 U.S.C. § 7438(b)(1)................................................................................................26

42 U.S.C. § 7438(b)(2)................................................................................................14

42 U.S.C. § 7438(b)(3)................................................................................................14

**Legislative Histories**

H.R. 1, 119th Con., Sec. 60016 (1st Sess. 2025)................................................4, 7, 10

**Regulations**

2 C.F.R. § 200.340(c)....................................................................................................8

2 C.F.R. § 200.342........................................................................................................8

2 C.F.R. § 200.344........................................................................................................9

90 Fed. Reg. 8339 (Jan. 29, 2025)..........................................................................3, 26

90 Fed. Reg. 8353 (Jan 29. 2025)................................................................................3

**Rules**

Fed. R. Civ. P. 12(b)(1)..................................................................................................5

Fed. R. Civ. P. 12(b)(6)..............................................................................................5, 6

## INTRODUCTION

Continuing to avoid defending their wholesale termination of a congressionally mandated grant program on the merits, Defendants' now move to dismiss Plaintiffs' claims, arguing mootness and a lack of subject-matter jurisdiction. This effort to escape judicial review in this Court should be rejected as it mischaracterizes the evidence and fails as a matter of law. Plaintiffs' claims are not moot, and this Court has subject-matter jurisdiction here—both over Plaintiffs' freestanding constitutional claims as well as their claims under the Administrative Procedure Act ("APA").

First, Defendants argue that Plaintiffs' claims are moot based on premises that are simply untrue. As Plaintiffs explained in their reply in support of their motion for preliminary injunction, Congress did not eliminate the Environmental and Climate Justice Grant program. The grant funds at issue in this litigation remain obligated, and almost $2.5 billion of prior congressional appropriations for the program remain available to provide relief to Plaintiffs and proposed class members. Thus, Plaintiffs' claims are not moot.

Second, Defendants' argument that Plaintiffs' constitutional and statutory claims must be brought in the Court of Federal Claims has been rejected by multiple courts across the nation, and this Court should do the same. Congress gave the executive clear direction about how to administer the Environmental and Climate Justice Block Grant program and appropriated funding. EPA's failure to follow a clear congressional mandate is a violation of the Constitution's separation of powers that can only be adjudicated by this Court. Further, Plaintiffs' APA claims are properly before this Court—the source of Plaintiffs' rights to bring these claims is federal law and the Constitution, and the relief Plaintiffs seek is forward-looking

1

and equitable. As such, these claims do not belong in the Court of Federal Claims and must be properly heard by this Court.

Third, Defendants' argument that the Court lacks jurisdiction because the challenged decisions are committed to agency discretion by law misinterprets Clean Air Act section 138, mischaracterizes the evidence, and relies on readily distinguishable cases.

## BACKGROUND

As part of the Inflation Reduction Act ("IRA"), Congress amended the Clean Air Act to create a new "Environmental and Climate Justice Block Grants" program. Pub. L. No. 117-169, § 60201, 136 Stat. 1818, 2078 (2022) (codified at 42 U.S.C. § 7438) ("Clean Air Act section 138"), and appropriated $3 billion to EPA for projects to directly benefit communities across the country and for technical assistance to support grant recipients in designing and enacting these projects, 42 U.S.C. § 7438(a)(1)–(2). Plaintiffs and proposed class members are recipients of grants under one or more of the programs EPA created to fulfill this Congressional mandate.

As detailed in Plaintiffs' complaint (Dkt. 1) and motion for preliminary injunction (Dkt. 29-1), Plaintiffs and proposed class members expended substantial resources designing projects, applying for the grants, and ensuring compliance with rigorous requirements. After extensive review, EPA ultimately awarded over 350 grants across the five programs.

After the grants were awarded, grantees began to stand up their projects: They further developed plans, made operational changes to implement their projects, hired staff, worked with partners, engaged their communities, contracted for work, vetted and awarded applications for subawards, and more—all in service of benefitting the communities they serve and achieving the goals laid out by Congress.

Despite the agency's and grantees' extensive work to put these grant programs in place, EPA began to tear them apart shortly after President Trump's inauguration. On January 20, 2025,

President Trump issued the *Unleashing American Energy* Executive Order ("Energy EO")
directing "that ***no Federal funding be employed in a manner contrary to the principles outlined
in this section***." Exec. Order No. 14154 (Jan. 20, 2025), 90 Fed. Reg. 8353, 8354, § 2(i) (Jan. 29,
2025) (emphasis added). In Section 7 of the Energy EO, titled "Terminating the Green New
Deal"—referring to the Inflation Reduction Act and Infrastructure Investment and Jobs Act—the
President forbade the disbursement of any funds that the Executive branch deems
"[in]consisten[t] with . . . the policy outlined in section 2" of the Order. Energy EO, 90 Fed. Reg.
at 8357, § 7.

On January 20, the President also directed agencies to "*terminate* . . . all . . . 'equity-
related' grants or contracts" within sixty days, i.e., by March 21, 2025, among other directives.
*Ending Radical and Wasteful Government DEI Programs and Preferencing*, Exec. Order No.
14151 (Jan. 20, 2025), 90 Fed. Reg. 8339, 8339, § 2(b)(i) (Jan. 29, 2025) ("Anti-Equity EO")
(emphasis added). Under these instructions, EPA began terminating the Environmental and
Climate Justice Block Grant program.

On February 20, EPA Assistant Deputy Administrator Travis Voyles identified the
Thriving Communities Grantmakers, Thriving Communities Technical Assistance Centers
(TCTACs), and Environmental Justice Collaborative Problem-Solving programs for termination.
Compl. Ex. 1-C (T. Voyles Email re cancelling grants – Feb. 20, 2025). The remaining programs
quickly met the same fate. Voyles declared under oath that he conducted a review of EPA grant
programs "for consistency with Agency policy priorities" a few days later, on February 25, and
unilaterally—in a single day—decided to terminate all grant programs at issue in this proposed
class action "for policy reasons." Compl. Ex. 1-A at ¶¶ 3–6 (T. Voyles Decl.); *see also* Compl.
Ex. 1-E (D. Coogan Email to T. Voyles – Feb. 25, 2025). Without notice to grantees or the

public, EPA proceeded to eliminate the entire Environmental and Climate Justice Block Grant program and all grants issued under it.

After termination letters had been issued across the program, Plaintiffs came together and filed this suit as a proposed class action on June 25, 2025. Plaintiffs filed a motion for preliminary injunction on June 27, 2025.

Congress then passed, and the President signed into law, reconciliation bill H.R. 1, Pub. L. No. 119-21. The reconciliation bill left the Environmental and Climate Justice Block Grant program largely intact, not altering the statutory language requiring EPA to operate the program. The *only* change was to rescind "unobligated" funds. H.R. 1, tit. VI, § 60016. The Congressional Budget Office determined this would amount to $561 million—i.e., a fraction of the $3 billion appropriated to the program, and separate from the nearly $2.5 billion in obligated funds that Congress chose not to rescind and that are at issue in this litigation. During discussion of the bill in Congress, legislative leaders made clear that the intent was to rescind funds that had not already been obligated, not to impact grants that EPA was in the process of terminating. *See* Pls.' Reply, Ex. 1 (Dkt. 77-1). The grant funds at issue in this case have not been de-obligated and were not de-obligated at the time the reconciliation bill was signed into law. The de-obligation process cannot start until there is a "final financial report" for each grant. Ex. 1.

On July 14, Defendants moved to dismiss this case, submitting a brief identical to their response to Plaintiffs' motion for preliminary injunction in a separate document docketed as a "Motion to Dismiss." *See* Defendants' Motion to Dismiss and Memorandum in Opposition to Plaintiffs' Motion for a Preliminary Injunction (Dkt. 66) ("Mot. to Dismiss").

## STANDARD OF REVIEW

While Defendants purport to move under Rule 12(b)(6), Mot. to Dismiss at 6, their only arguments are jurisdictional – thus, this motion is properly construed as one under Rule 12(b)(1). When reviewing a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12 (b)(1), a court must "accept the well-pleaded factual allegations as true and draw all reasonable inferences from those allegations in the plaintiff's favor." *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015). Unlike a motion under Rule 12(b)(6) however, a court "may consider materials outside the pleadings in deciding whether to grant a motion to dismiss for lack of jurisdiction." *Jerome Stevens Pharms., Inc. v. Food & Drug Admin.*, 402 F.3d 1249, 1253 (D.C. Cir. 2005).

A court may find that a case has become moot only "when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome," *Larsen v. U.S. Navy*, 525 F.3d 1, 3–4 (D.C. Cir. 2008) (quoting *County of Los Angeles v. Davis*, 440 U.S. 625, 631(1979)), such as when "intervening events make it impossible to grant the prevailing party effective relief," *Lemon v. Geren*, 514 F.3d 1312, 1315 (D.C. Cir. 2008). Mootness arises only if there is nothing for the court to remedy. *Spencer v. Kemna*, 523 U.S. 1, 18 (1998).

Although Defendants recite the standard of review under Rule 12(b)(6), s*ee* Defendants' Motion to Dismiss and Memorandum in Opposition to Plaintiffs' Motion for a Preliminary Injunction (Dkt. 66) ("Mot. to Dismiss") at 6, they make no additional references to a Rule 12(b)(6) argument and provide no legal analysis, cite no authority, and identify no deficiencies in the complaint. Such cursory treatment is plainly insufficient to preserve the issue. *See Gov't of Manitoba v. Bernhardt*, 923 F.3d 173, 179 (D.C. Cir. 2019) ("[a] party forfeits an argument by mentioning it only 'in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones.'" (quoting *Schneider v. Kissinger*, 412 F.3d

190, 200 n.1 (D.C. Cir. 2005))). Because Defendants have failed to develop any cognizable argument for dismissal under Rule 12(b)(6), that argument is forfeited and should be deemed waived.

Should the Court review this motion under Rule 12(b)(6) as well, it must accept all well-pleaded allegations in the complaint as true and construe them in the light most favorable to the plaintiffs. *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012); *see also Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000). The motion must be denied if a complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *McKinney v. District of Columbia*, No. 24-7027, 2025 WL 1873334, at *3 (D.C. Cir. July 8, 2025) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("*Iqbal*")). "A claim is facially plausible when the plaintiff pleads factual content that allows the court to draw [a] reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v Twombly*, 550 U.S. 544, 556 (2007) ("*Twombly*")). In evaluating a Rule 12(b)(6) motion, courts are limited to considering "only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [the court] may take judicial notice." *Hurd v. District of Columbia*, 864 F.3d 671, 678 (D.C. Cir. 2017) (citation modified).

## ARGUMENT

Defendants' arguments for dismissal under Rule 12(b)(1) fail because the funds at issue have not been rescinded and remain available to provide relief—Plaintiffs' claims are not moot. The Tucker Act does not bar Plaintiffs' constitutional separation of powers claim, which can only be brought in federal district court. It also does not bar Plaintiffs' APA claims, for which Plaintiffs do not seek monetary damages but rather forward-looking, equitable relief.

As for Defendants' Rule 12(b)(6) arguments, should the Court consider Plaintiffs' motion under 12(b)(6), they rely not on the allegations in Plaintiffs' complaint, as required, but instead focus on Plaintiffs' separate motion, and further invoke facts outside the pleadings while ignoring uncontroverted record evidence. Aside from a single, unsupported paragraph on page six of their brief, Defendants offer no legal analysis, cite no authority, and identify no deficiencies in the complaint.

### A.  Plaintiffs' claims are not moot.

Defendants' argument that Plaintiffs' claims are moot due to the recent passage of H.R. 1 mischaracterizes the bill. H.R. 1 did not rescind the grant funding for the grants at issue here, and the vast majority of the $3 billion directed by Congress to the Environmental and Climate Justice Block Grant program remains obligated to the program and available. Moreover, H.R. 1 did not repeal or alter the text of section 138 of the Clean Air Act mandating the grant program, so EPA has a continuing legal obligation to continue to operate the program.

As Defendants admit, H.R. 1 directed rescission only of "unobligated balances." Mot. to Dismiss (Dkt. 66) at 8 (quoting H.R. 1, tit. VI, § 60016). The grant funding awarded to Plaintiffs and proposed class members is not "unobligated" funding and as such was not rescinded.[1] *See Harris County, Texas v. Kennedy*, No. 25-cv-1275, 2025 WL 1707665, at *2 (D.D.C. June 17, 2025) (in an analogous setting, finding that where "the Act rescinded only unobligated appropriations, any grants that had already been issued were left undistured"). The

---

[1] "An agency incurs an obligation . . . when it . . . awards a grant . . . or takes other actions that require the government to make payments to the public or from one government account to another." U.S. Gov't Accountability Off., *A Glossary of Terms Used in the Federal Budget Process*, GAO-05-734SP, at 70 (Sept. 2005) ("Budget Glossary"), https://www.gao.gov/assets/gao-05-734sp.pdf [https://perma.cc/L9D6-FUGM].

Congressional Budget Office ("CBO") made this clear when it estimated the budgetary effects of the Bill.[2] In its report, the CBO concluded that the rescission amount would encompass a total of $561 million, a fraction of the $3 billion appropriated to this program in 2022. *See* 42 U.S.C. § 7438.

H.R. 1's legislative history confirms that Congress did not consider funds already awarded under the Grant program as "unobligated" and available for rescission, even if EPA had begun issuing termination notices on such grants. For example, in a House Energy and Commerce Committee discussion about how H.R. 1 would affect such grants, Representative Morgan Griffith, Chair of the Environmental Subcommittee, confirmed that Congress "can't rescind expenditures that have already been obligated." Pls.' Reply, Ex. 1 (Dkt. 77-1) at 4. Representative Griffith noted that if any awarded funds are later successfully de-obligated, their rescission would need to be addressed in a "future rescission." *Id.*

Defendants are incorrect that the grant funds at issue here "were effectively de-obligated at the time of termination." Mot. to Dismiss (Dkt. 66) at 8. Termination of grants is not synonymous with de-obligation of funds: They are two separate processes. If EPA terminates a grant, the grantee has an opportunity to (but is not required to) administratively appeal the termination. 2 C.F.R. § 200.342. For the grants at issue in this litigation, grantees have 30 days to file such an appeal. *Id.* § 200.340(c). This administrative process may then be appealed to a court of law. 5 U.S.C. § 702. Once EPA issues a letter of termination, it must engage in a lengthy closeout process with the grantee, wherein the grantee submits certain reports, and the agency

---

[2] Cong. Budget Off., *Estimated Budgetary Effects of an Amendment in the Nature of a Substitute to H.R. 1, the One Big Beautiful Bill Act, Relative to CBO's January 2025 Baseline* (June 27, 2025), https://www.cbo.gov/publication/61534 [https://perma.cc/YA6E-G3GX].

pays allowable costs. 2 C.F.R. § 200.344. In a separate, internal process, EPA can de-obligate funds. However, to do so, it must consider the final financial report submitted during the closeout process to determine what, if any, funds remain available to de-obligate. Ex. 1. The de-obligation process does not begin until after the final financial report is submitted, generally up to 120 days after termination in the ordinary course. *Id.*

Plaintiffs and proposed class members have contested their grant terminations either to EPA, through this litigation, or both, and EPA has not completed closeout procedures. The funding for these grants remained obligated when H.R. 1 became law.

Defendants rely on *Rochester Pure Waters District v. EPA*, 960 F.2d 180 (D.C. Cir. 1992), but that case only bolsters Plaintiffs' position. In that case, the City of Rochester, a recipient of EPA grant funding, sought EPA funding to cover legal settlements related to grant funding. *Id.* at 182. Critically, this was an additional request for funds separate from the grant EPA had issued to the City. *Id.* EPA denied the request, and Rochester appealed. *Id.* Rochester was concerned that EPA may not ultimately have the funds available to satisfy its new request for funds because the funding was subject to rescission by Congress, so Rochester actively sought to prevent rescission. *Id.*

But in that case, unlike here, Congress, acting with full knowledge of the City's case, rescinded the *exact amount* of unobligated funds remaining for the grant program at issue and made clear its intent to rescind all funding, including the potential funding Rochester had requested. *Id.* at 183. Rochester thus moved for a court order enjoining the rescission. *Id.* The D.C. Circuit declined that motion because Congress had acted with "full knowledge" of Rochester's claims and clear intent to rescind those specific funds. *Id.* at 185. The court distinguished the case from others where Congress had not clearly expressed its intent to rescind

specific funds. *Id.* (distinguishing *Jacksonville Port Auth. v. Adams*, 556 F.2d 52 (D.C. Cir. 1977) and *State of Connecticut v. Schweiker*, 684 F.2d 979 (D.C. Cir. 1982)).

This case is nothing like *Rochester.* Far from acting with intent to cancel the entire grant program and expressly rescind all $3 billion in funding, Congress left the governing statutory language intact and rescinded only "unobligated balances." H.R. 1 tit. VI, § 60016. Moreover, where *Rochester* involved a request for new funds that had never been obligated in the first instance, this case involves grants that were awarded and funds that were obligated and thus unavailable for rescission. And while Defendants assert that "Congress was fully aware when it passed H.R.1 that these . . . grants had been awarded, terminated, *and the funds deobligated*," Mot. to Dismiss (Dkt. 66) at 9 (emphasis added), they cite no evidence to support such awareness or intent, and there could be none because de-obligation has not yet occurred. Moreover, EPA staff confirmed they had "not been instructed to deobligate without following the normal process" that requires a final financial report prior to de-obligation. Ex. 1.

To support their mootness argument, Defendants stress that Congress has "exclusive power over the federal purse." Mot. to Dismiss (Dkt. 66) at 9 (citing *Nevada v. Dep't of Energy*, 400 F.3d 9, 13 (2005)). Plaintiffs agree, and this truism is the foundation of their separation of powers claim. In 2022, Congress directed EPA to create an Environmental and Climate Justice Block Grant program and appropriated $3 billion to fund it. Congress chose to rescind only $561 million of that funding, leaving the remaining $2.4 billion obligated and available to grantees. Congress's direction endures. Plaintiffs' claims are live, this Court has jurisdiction to review them, and Congressional appropriations remain available to provide relief to Plaintiffs and proposed class members.

**B. This Court has jurisdiction over Plaintiffs' constitutional claims.**

As an initial matter, the Tucker Act is no bar to this Court's jurisdiction over Plaintiffs' constitutional separation of powers claims. Defendants have essentially conceded this, both here and in other cases. *See Vera Inst. v. Dep't of Just.*, No. 25-cv-1643 (APM), 2025 WL 1865160, at *6 (D.D.C. July 7, 2025) (noting that government counsel acknowledged jurisdiction over "independent constitutional claims"). Nor do Defendants meaningfully argue that *Department of Education v. California*, 145 S. Ct. 966 (2025) ("*California*"), somehow bears on standalone constitutional claims. Instead, Defendants insist that Plaintiffs' claims are not constitutional at all. *See, e.g.*, Mot. to Dismiss (Dkt. 66) at 16. This is wrong. The Court has jurisdiction to decide them.

Federal district courts have broad jurisdiction to consider claims seeking to enjoin federal officials from acting unconstitutionally. *See Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 491 n.2 (2010); *Larson v. Domestic & Foreign Com. Corp.*, 337 U.S. 682, 689 (1949); *see also Strickland v. United States*, 32 F. 4th 311, 363–66 (4th Cir. 2022). "[S]overeign immunity does not bar a suit" challenging acts outside an official's constitutional authority. *Chamber of Com. of U.S. v. Reich*, 74 F.3d 1322, 1329 (D.C. Cir. 1996); *see also Widakuswara v. Lake*, No. 25-5144, 2025 WL 1521355 (D.C. Cir. May 28, 2025). Because such acts "are considered individual and not sovereign actions," sovereign immunity does not apply. *Larson*, 337 U.S. at 689.

To divest this Court of jurisdiction over constitutional separation of powers claims, the Tucker Act would have to contain "clear and convincing evidence" that Congress intended that result. *Weinberger v. Salfi*, 422 U.S. 749, 762 (1975) (quoting *Johnson v. Robison*, 415 U.S. 361, 373 (1974)). That is because those claims have nowhere else to go: The Court of Federal Claims

indisputably lacks jurisdiction over these constitutional challenges. *See LeBlanc v. United States*, 50 F.3d 1025, 1028 (Fed. Cir. 1995); Pls.' Mot. for Prelim. Inj. (Dkt. 29-1) at 13–14. But the Tucker Act contains no such clear evidence of congressional intent to entirely foreclose judicial review of colorable constitutional claims. *See Webster v. Doe*, 486 U.S. 592, 603 (1988). And courts "categorically reject the suggestion" that the Tucker Act deprives federal courts of jurisdiction to hear claims the Court of Federal Claims cannot. *Tootle v. Sec'y of Navy*, 446 F.3d 167, 176 (D.C. Cir. 2006).

The en banc D.C. Circuit recently reaffirmed this conclusion, overruling a stay panel's Tucker Act holding and adopting "substantially . . . the reasons explained by Judge Pillard" in dissent from the initial stay order. *Widakuswara*, 2025 WL 1521355, at *1. Judge Pillard's dissent explained that the district court had jurisdiction over the constitutional claims in part because "the Court of Claims could not adjudicate plaintiffs' constitutional claims." *Widakuswara v. Lake*, No. 25-5144, 2025 WL 1288817, at *12 (D.C. Cir. May 3, 2025) (Pillard, J., dissenting), *stay pending appeal vacated*, 2025 WL 1521335, at *1 (D.C. Cir. May 28, 2025) (en banc).

Interpreting the Tucker Act to deny the district court jurisdiction over Plaintiffs' constitutional claims would have "serious implications for our constitutional structure." *Id.*, *see also Am. Ctr. for Int'l Lab. Solidarity v. Chavez-Deremer*, No. 25-cv-1128 (BAH), 2025 WL 1795090, at *11 (D.D.C. June 30, 2025) ("[A] federal district court cannot be deprived of jurisdiction by the Tucker Act when no jurisdiction lies in the Court of Federal Claims," given "[t]here cannot be exclusive jurisdiction under the Tucker Act if there is no jurisdiction under the Tucker Act.").

And as to *California*, that case has no relevance to freestanding constitutional claims. It concerned the interplay between the Tucker Act and "the APA's limited waiver of [sovereign] immunity"; the Court had no occasion to consider constitutional claims because the plaintiffs there never raised one. 145 S. Ct. at 968. The same is true for three of the other cases that Defendants cite in their discussion of Plaintiffs' constitutional claims—*Suburban Mortg. Assocs. v. U.S. Dep't of Hous. & Dev.*, 480 F.3d 1116, 1126 (Fed. Cir. 2007); *Perry Capital LLC v. Mnuchin*, 864 F.3d 591, 619 (D.C. Cir. 2017); and *Albrecht v. Comm. on Emp. Benefits of the Fed. Rsrv. Emp. Benefits Sys.*, 357 F.3d 62, 68 (D.C. Cir. 2004).

Defendants' citation to *Metadure Corporation v. United States*, 490 F. Supp 1368, 1371, 1373 (S.D.N.Y. 1980), is also inapposite. There, the plaintiff's claims required an interpretation of the plaintiff's contracts in the Court of Federal Claims. *Id.* The plaintiff then attempted to lump those claims together and assert them as a constitutional claim in federal district court, which the court rejected. By contrast, here, Plaintiffs bring separation of powers claims that do not turn on contract terms—and cannot be brought in the Court of Federal Claims.

The federal Government's remaining argument—that Plaintiffs' separation of powers claim is somehow not a constitutional claim—rests almost exclusively on a mistaken reading of *Dalton v. Specter*, 511 U.S. 462 (1994). In *Dalton*, the Supreme Court reasoned that procedural violations by the President regarding the closure of a naval base did not give rise to a constitutional claim because the statute at issue did not limit the President's discretion. As this Circuit has noted, *Dalton* merely stands for the proposition that when a statute contains *no limitations* on the President's exercise of that authority, judicial review of an abuse of discretion claim is not available. *See Am. Forest Research. Council v. United States*, 77 F.4th 787, 797 (D.C. Cir. 2023). Certainly, *Dalton*'s "limited holding" did not "repudiate *Marbury v.*

*Madison*"—the foundational precedent that federal courts can review and enjoin unconstitutional executive action. *Reich*, 74 F.3d at 1331 & n.5.

This case is nothing like *Dalton*. Congress did not confer limitless discretion to the Executive when it directed how the grant funding at issue in this case should be spent. To the contrary, the relevant grant statute directs in specific detail to whom funding should be allocated and how grantees should use it. 42 U.S.C. § 7438(b)(2) (activities eligible for grant funding); *id.* § (b)(3) (entities eligible for grant funding). And, as discussed below, Defendants did not employ discretion. Rather, they attempted to cancel an entire program because they disagree with Congress's clearly stated objectives. For these reasons, numerous courts have rejected Defendants' *Dalton* arguments in analogous cases, and this Court should do the same.[3]

Instead, this case raises the type of constitutional claims specifically sanctioned by *Dalton*—where the Executive acts "in the absence of any statutory authority" whatsoever. 511 U.S. at 473. There is a manifest difference between cases alleging a "mere excess or abuse of discretion" and those concerning "a want of [Executive] power." *Id.* at 474. Because "Congress has the exclusive power to spend and has not delegated authority to the Executive to condition

---

[3] *See, e.g.*, *Aids Vaccine Advoc. Coal. v. U.S. Dep't of State*, 770 F. Supp. 3d 121, 148 n.17 (D.D.C. 2025) (distinguishing *Dalton* because "Plaintiffs assert the Executive has attempted to usurp Congress's power over the purse"); *Am. Fed'n of Gov't Emps. v. Trump*, No. 25-cv-03698, 2025 WL 1482511, at *19 (N.D. Cal. May 22, 2025) ("Plaintiffs' [*ultra vires*] claim is not that the President exceeded his statutory authority, as the *Dalton* plaintiffs claimed."); *Chicago Women in Trades v. Trump*, No. 25-cv-2005, 2025 WL 1331743, at *4–5 (N.D. Ill. May 7, 2025) ("*Dalton* did not involve the Spending Clause."); *Nat'l Treasury Emps. Union v. Vought*, No. 25-cv-0381, 2025 WL 942772, at * 8–9 (D.D.C. Mar. 28, 2025) ("Since there is no act of Congress that empowers the President [to take challenged action] in his discretion, *Dalton* does not apply."); *Does 1-26 v. Musk*, 771 F. Supp. 3d 637, 678 (D. Md. 2025) (Unlike in *Dalton*, "Plaintiffs' Separation of Powers claim is not based only on alleged statutory violations but instead further asserts that the [challenged action] exceeds the President's Article II powers.").

. . . grants on compliance with [his policies,] the President's 'power is at its lowest ebb,'" and he "has none of 'his own constitutional powers' to 'rely' upon." *City & County of San Francisco v. Trump*, 897 F.3d 1225, 1233–34 (9th Cir. 2018) (quoting *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 637–38 (1952) (Jackson, J., concurring)). Our "constitutional system of separation of powers would be significantly altered" if courts were to allow "executive and independent agencies to disregard federal law" by "declining to spend appropriated funds" on programs mandated by Congress. *In re Aiken County*, 725 F.3d 255, 266–67 & n.1 (D.C. Cir. 2013) (Kavanaugh, J.) (citation modified).

### C.  This Court has jurisdiction over Plaintiffs' APA claims.

Defendants largely repeat their jurisdictional arguments as to Plaintiffs' APA claims–those arguments fail because they mischaracterize those claims. Plaintiffs do not allege contract claims: They do not seek backward-looking, money damages for grant amounts past due. Rather, Plaintiffs' claims challenge broad high-level agency actions, and they seek forward-looking, equitable relief. Those claims belong only in federal district court.

The "mere fact that a court may have to rule on a contract issue" does not "automatically transform an action" into one on contract and deprive a district court of jurisdiction. *Megapulse, Inc. v. Lewis*, 672 F.2d 959, 968 (D.C. Cir. 1982). The D.C. Circuit has "explicitly rejected the 'broad' notion 'that any case requiring some reference to or incorporation of a contract is necessarily on the contract and therefore directly within the Tucker Act' because to do so would 'deny a court jurisdiction to consider a claim that is validly based on grounds other than a contractual relationship with the government.'" *Crowley Gov't Servs., Inc. v. Gen. Servs. Admin.*, 38 F.4th 1099, 1106–07 (D.C. Cir. 2022) (quoting *Megapulse*, 672 F.2d at 967–68). Instead,

whether a claim is essentially contractual turns on the "source of rights upon which the plaintiff bases its claims" and the "type of relief sought." *Megapulse*, 672 F.2d at 968.

Here, the source of Plaintiffs' rights is both the Constitution and federal statutes—not grant agreements—and the relief Plaintiffs seek is forward looking and equitable. Accordingly, this Court has jurisdiction.

The First Circuit's recent decision in *American Public Health Association v. National Institutes of Health*, Nos. 25-1611, 15-1612, 2025 WL 2017106 (1st Cir. July 18, 2025) ("*APHA*") (denying a motion to stay) (appeal pending before Supreme Court, *Nat'l Institutes of Health, et al., v. APHA, et al.*, Case No. 25A103 (July 24, 2025)) is instructive and on point. Like in that case, here, Plaintiffs' claims are not contractual because (1) Plaintiffs seek injunctive and declaratory relief, not past due sums, their requested belief is unavailable in the Court of Federal Claims, Compl. (Dkt. 1) Prayer for Relief ¶ B; and (2) "neither the [P]laintiffs' claims nor [this Court's] analysis of [the claims] depend on the terms or conditions of any contract," 2025 WL 2017106, at *6 (1st Cir. July 18, 2025). *See also Am. Ctr. for Int'l Lab. Solidarity*, 2025 WL 1795090 at *12, *18; *Am. Bar Ass'n v. Dep't of Just.*, No. 25-cv-1263 (CRC), 2025 WL 1388891, at *5-6 (D.D.C. May 14, 2025); *Harris County*, 2025 WL 1707665, at*5-6; *Southern Educ. Found. v. U.S. Dep't of Educ.*, No 25-cv-1079, 2025 WL 1453047, at *7 (D.D.C. May 21, 2025). This case is like *APHA* and *Bowen* and unlike *California.*

### i. Plaintiffs seek to enforce a constitutional and statutory bar on unilaterally dismantling a congressionally mandated program.

The source of Plaintiffs' rights here are constitutional and statutory—not contractual—as Plaintiffs claims allege that Defendants' wholesale termination of the Environmental and Climate Justice Block Grant program violated the Constitution and the APA, regardless of the terms of any individual agreements.

16

It is axiomatic that plaintiffs are "masters of the complaint" with the power to bring claims as they see fit. *De Csepel v. Republic of Hungary*, 714 F.3d 591, 598 (D.C. Cir. 2013). Defendants' jurisdictional challenges must be analyzed in light of the claims Plaintiffs actually brought. *Id*. Here, the Complaint contains five claims—each alleging statutory or constitutional violations. Compl. (Dkt. 1) ¶¶ 166–213. None of these claims seeks relief because of or based on any term or condition of individual grant agreements. Where plaintiffs' claims "do not at all depend on whether the terms of particular awards were breached," it would be "quite extraordinary to find that plaintiffs' claims are contractual." *Am. Ctr. for Int'l Labor Solidarity*, 2025 WL 1795090, at *13 (quoting *AIDS Vaccine Advoc. Coal.*, 770 F. Supp. at 137).

The key question is "what the court must examine to resolve the case"—if a claim "depends on interpretations of statutes and regulations," then the claim "is not in essence contractual." *Widakuswara,* 2025 WL 1288817, at *12 (Pillard, J., dissenting), *stay pending appeal vacated*, 2025 WL 1521335, at *1 (D.C. Cir. May 28, 2025) (en banc) (adopting Judge Pillard's reasoning in vacating the panel's stay); *see also Md. Dep't of Hum. Res. v. Dep't of Health & Hum. Servs.*, 763 F.2d 1441, 1449 (D.C. Cir. 1985) (Bork, J.).

Here, Plaintiffs' rights arise under the Constitution and statute and "exist prior to and apart from the rights created under the contract"—thus, claims asserting those rights belong in district court and not the Court of Claims. *Widakuswara*, 2025 WL 1288817, at *11 (Pillard, J., dissenting);[4] *see also Crowley*, at 1107 (citations omitted). Plaintiffs ask this Court to "address

_____

[4] Defendants attempt to distinguish *Widakuswara* on the grounds that "the D.C. Circuit understood the relevant statutes to 'require allocation of funds to the specific named' plaintiffs"

clear regulatory and statutory questions," including whether EPA violated the APA and the

Clean Air Act. *Climate United Fund v. Citibank, N.A.*, No. 25cv-698 (TSC), 2025 WL 1131412,

at *9 (D.D.C. Apr. 16, 2025). These claims stand in stark contrast to claims where the meaning

of contract provisions controls the outcome of a case because the dispute is "entirely contained

within the terms of the contract." *Ingersoll-Rand Co. v. United States*, 780 F.2d 74, 78 (D.C. Cir.

1985). Those disputes—ones that require the court to interpret the terms of an "agreement

negotiated by the parties"—are essentially contractual and belong in the Court of Federal Claims.

*Md. Dep't of Hum. Res.*, 763 F.2d at 1449. But here, the Court need not look at—let alone

interpret—the terms of the grant agreements to make a decision. *See id.*; *Am. Bar Ass'n v. Dep't

of Just.*, No. 25-cv-1263 (CRC), 2025 WL 1388891, at *5 (D.D.C. May 14, 2025) (finding

Plaintiffs' constitutional right "stands independent of the cooperative agreements"). Instead,

Plaintiffs' claims turn on federal statutes and the Constitution.

Finally, Defendants confuse standing to bring a claim and the source of rights from which

Plaintiffs' claims stem, stating that "[i]f Plaintiffs did not have grants, they would not have

claims." Mot. to Dismiss (Dkt. 66) at 12. While the termination of Plaintiffs grants is the injury

that confers standing—i.e., Plaintiffs have been concretely injured on an individualized basis—

Defendants cannot use that fact to recast Plaintiffs' claims as contract disputes over their

individual grant agreements. As the Supreme Court has emphasized, "an important difference

---

and argue that the congressionally mandated grant program was a "lump sum" appropriation. Mot. to Dismiss (Dkt. 66) at 13 (cleaned up). This both belies the facts (Congress set clear directives for these funds, which EPA violated by terminating the entire program) and misreads Judge Pillard's dissent, which found that when an agency acts contrary to such a congressional directive, claims "arise from statute, not from contract." *Widakuswara*, 2025 WL 1288817, at *11.

exists" between a cause of action and a concrete injury. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 426 (2021). This Court should reject Defendants' attempt to conflate the two.

Plaintiffs recognize that in *American Library Association v. Sonderling*, this Court reasoned that the plaintiffs' declarations setting out harms to them from grant terminations supported the conclusion that "the source of plaintiffs' rights" in that case was contractual. No. 25-cv-1050 (RJL), 2025 WL 1615771, at *8 (D.D.C. June 6, 2025). This Court concluded that the "plaintiffs' standing and irreparable injury largely do not exist prior to and apart from rights created under their grant agreements." *Id.* (citation modified). Respectfully, Plaintiffs submit that to apply the same reasoning in this case would risk conflating two distinct analyses: Plaintiffs' causes of action and Plaintiffs' concrete harm, in contravention of *TransUnion*. 594 U.S. at 426. Here, as in *Harris County*, the termination of grant agreements "suppl[ies] the link" to Defendants' "allegedly unlawful decision not to spend appropriated funds. The grants do not, however, transform a claim anchored in the Constitution into one 'founded in contract.'" 2025 WL 1707665, at *5 (observing that "standing is analytically distinct from the plaintiff's legal rights").

**ii.    Plaintiffs seek specific forward-looking relief to restore a terminated block grant program.**

Under the APA, Plaintiffs seek specific forward-looking relief: a declaratory judgment that the termination of grant programs violates the APA, 5 U.S.C. § 706, and a ruling that the terminations were unlawful and should be set aside. These remedies are not money damages to compensate for past harms.

Since the 1976 amendment of the APA to waive sovereign immunity, the Supreme Court and Federal Circuit have carefully interpreted the Tucker Act *in pari materia* with the APA to delineate between claims that seek *specific* relief—that is, an order requiring the United States to

19

follow through on its payment obligations—and those that seek *substitute* relief—that is, compensation for consequential harms when the United States violates a duty. Claims seeking specific relief are governed by Section 702 of the APA and heard in district court. Claims for substitute relief are not and are heard in the Court of Federal Claims. *Bowen v. Massachusetts*, 487 U.S. 879, 894–95 (1988); *Dep't of Army v. Blue Fox, Inc.*, 525 U.S. 255, 262 (1999) (The APA's sovereign immunity waiver turns on the statutory definition of "money damages" and the distinction between "specific relief and substitute relief.").

      The controlling case here is *Bowen*, in which the Supreme Court adopted an approach previously set out by Judge Robert Bork of the D.C. Circuit—carefully analyzing the definition of the term "money damages" in the text of the APA:

> We begin with the ordinary meaning of the words Congress employed. The term "money damages," 5 U.S.C. § 702, we think, normally refers to a sum of money used as compensatory relief. Damages are given to the plaintiff to *substitute* for their suffered loss, whereas specific remedies 'are not substitute remedies at all, but attempt to give the plaintiff the very thing to which he was entitled.'

*Bowen*, 487 U.S. at 894–95 (quoting *Md. Dep't of Hum. Res.*, 763 F.2d at 1446 and Dan B. Dobbs, *Handbook on the Law of Remedies*, 135 (1973)).

      Thus, a claim under APA section 702 can result in a monetary judgment—as long as the claim seeks specific injunctive relief rather than an award that substitutes for consequential harm suffered. *Id.* at 900–01. A district court's jurisdiction "to award *complete* relief" is "not barred by the possibility that a purely monetary judgment may be entered in the Claims Court." *Id.* at 910 (emphasis added). The First Circuit's opinion denying a stay in *APHA* correctly follows this reasoning:

> *Bowen* made clear that this kind of 'specific relief,' the effect of which is to 'undo the [Department's] refusal to reimburse the [plaintiffs],' is not equivalent to 'money damages.' Instead, it is a type of declaratory relief that will guide an agency as it

> decides upon its future course of conduct, and such relief is available only in the
> district court, not in the Court of Federal Claims.

*Am. Pub. Health Ass'n*, 2025 WL 2017106, at *6 (quoting *Bowen*, 487 U.S. at 910) (citation

modified).

Plaintiffs' claims are on all fours with those in *APHA*. In two cases informally

consolidated by the district court, the plaintiffs sued the National Institute of Health ("NIH"),

alleging that NIH's termination of grant funding violated the APA and the Constitution. *Id.* at

*1–3. Plaintiffs have similar claims here and have asked the Court to declare unlawful EPA's en

masse terminations of the section 138 grant programs. As in *APHA* and *Bowen*, complete relief

of Plaintiffs' claims is not available in the Court of Federal Claims. Indeed, the Supreme Court

reasoned in *Bowen* that "the Court of Federal Claims could not be an adequate alternative forum

because it lacked the 'general equitable powers of a district court' to grant the relief requested by

Massachusetts." *Am. Pub. Health Ass'n*, 2025 WL 2017106 at *5 (quoting *Bowen*, 487 U.S. at

905); *see also Nat'l Ctr. For Mfg. Sciences v. United States*, 114 F.3d 196, 201–02 (Fed. Cir.

1997) (explaining that grant restrictions governing future disbursal of funds made money

judgement inappropriate and reversing district court's transfer order).

Congress expressly contemplated that the APA's waiver of sovereign immunity would

provide such relief in the context of federal grant programs. At the time Congress amended

section 702 of the APA in 1976, both the House and Senate Committee reports "indicated that

Congress understood that § 702, as amended, would authorize judicial review of the

'administration of Federal grant-in-aid programs.'" *Bowen*, 487 U.S. at 898 (citing H.R. Rep. 94-

1656, at 9 (1976) and S. Rep. No. 94-996, at 8 (1976) (Pls.' Reply Exs. 2-3 (Dkts. 77-2, 77-3)).[5]

The Supreme Court found Judge Bork's summary of this legislative history convincing, quoting

his conclusion that while specific relief "in cases involving such [grant] programs will, of course,

often result in the payment of money from the federal treasury"—such claims for "specific relief,

albeit monetary, are for relief other than money damages and therefore within the waiver of

sovereign immunity in section 702." *Id.* at 900 (quoting *Md. Dep't of Hum. Res.*, 763 F.2d at

1447–48).[6]

This Court should reject Defendants' attempt to reframe Plaintiffs' requested relief as an

order for specific performance, a contractual remedy that is generally unavailable against the

government. Mot. to Dismiss (Dkt. 66) at 14. Defendants' position—that an "agency action may

not be enjoined, even if in clear violation of a specific statute, simply because that same action

might also amount to a breach of contract"—has been roundly rejected by this Circuit.

*Megapulse*, 672 F.2d at 971. The "logical inference" of such a position is that the "government

could avoid injunctions against activities violative of a statutory duty simply by contracting not

to engage in those activities." *Id.* Instead, for Tucker Act purposes, the "mere fact that an

injunction would require the same governmental restraint that specific (non)performance might

---

[5] Both the House and Senate reports cite to testimony from Sovereign Immunity: Hearing on S.3568 before the Subcommittee on Administrative Practice and Procedure of the Senate Committee on the Judiciary, 91st Cong., 2d Sess. Pls.' Reply Ex. 4 (Dkt. 77-4) at 121.

[6] Defendants cite *Boaz Housing Auth. v. United States* for the proposition that "claims founded on grants" belong in the court of Federal Claims. Mot. to Dismiss (Dkt. 66) at 11. Not so. In *Boaz*, the plaintiffs sought compensatory damages for past-due amounts under a subsidy program, not a grant. 994 F.3d 1359, 1368 (Fed. Cir. 2021). Further, in *Boaz*, the Federal Circuit carefully distinguished between compensatory damages—to "*substitute* for a suffered loss"—and specific remedies, which belong in federal court. *Id*. at 1367–68 (quoting *Bowen*).

require in a contract" does not deprive the district court of jurisdiction. *Id.*; *see also Md. Dep't of Hum. Res.*, 763 F.2d at 1449.

Again, the First Circuit's analysis in denying a stay in *APHA* is directly applicable: "[T]he plaintiffs argued that the Challenged Directives are unlawful agency-wide policies because they violate various federal statutes and the Constitution -- classic examples of claims that belong in federal district court -- and that the terminations flowed directly from those unlawful policies. And the district court's judgments hinge entirely on intragovernmental communications -- the type of administrative record at the heart of the APA." *Am. Pub. Health Ass'n*, 2025 WL 2017106, at *7 (citation modified).

So too here: Plaintiffs' Complaint alleges that Defendants terminated the entire grant program at issue in violation of federal statutes and the Constitution and failed to engage in the reasoned analysis required by the APA. Thus, Plaintiffs' APA claims depend upon intergovernmental communications and internal EPA records documenting the process (or lack thereof) used to terminate this grant program—the type of administrative record at the heart of the APA. Plaintiffs do not allege that any grants were terminated pursuant to their terms or conditions. Compl. (Dkt. 1) ¶¶ 101–15.

The cases cited by Defendants on this point are inapposite. In *Spectrum Leasing Corp. v. United States*, 764 F.2d 891, 892 (D.C. Cir. 1985), the government collected contractual liquidated damages from a firm by stopping lease payments. The company complained that this violated procedures in the Debt Collection Act, and sought an "order compelling the government to pay money owed in exchange for goods procured under an executory contract." *Id.* at 894. This suit fundamentally sought to enforce the contract—as confirmed by the backward-looking, past-due payment sought.

Similarly, in *Ingersoll-Rand*, the government terminated the plaintiffs' contract based on a specific provision of the contract. 780 F.2d at 75. Accordingly, the case turned on whether "the text of the contract forbids termination under these conditions." *Id.* at 78. That claim belonged in the Court of Federal Claims because "it was possible to conceive of this dispute as entirely contained within the terms of the contract." *Id.* In contrast, Plaintiffs' claims do not implicate the terms of the grant agreements and cannot be resolved via reference to them.

### iii.    The Supreme Court's per curiam order in *California* does not defeat jurisdiction here.

Plaintiffs' APA claims are significantly different from those at issue in the Supreme Court's per curiam stay order in *California*. In that case, the district court considered solely an arbitrary and capricious claim and found procedural irregularities in the termination letters for specific grants, concluding that in those letters, the government had failed to adequately explain the reasoning behind the terminations; it did not reach the plaintiffs' substantive APA claims. *California v. Dep't of Educ.*, 769 F. Supp. 3d 72, 77–78 & 78 n.3 (D. Mass. 2025). As the First Circuit recently explained, the Supreme Court in *California* "construed the district court as having ordered 'the Government to pay out past-due grant obligations.'" *Am. Pub. Health Ass'n*, 2025 WL 2017106, at *7 (quoting *California*, 145 S. Ct. at 968).

Here, by contrast, as in *APHA*, Plaintiffs seek declaratory relief from global decisions made in direct conflict with Congressional direction. *See id.* (The district court "simply declared that the department unlawfully terminated certain grants. Such relief does not constitute 'money damages.'"). In addition to the First Circuit's decision in *APHA*, following the Supreme Court's *California* decision, numerous courts in this district have concluded that cases raising claims like those here belong in federal district court. *See Harris County*, 2025 WL 1707665, at *6 (*California* "does not change the Court's conclusion"); *Southern Educ. Found.*, No 25-cv-1079,

2025 WL 1453047, at *9 (D.D.C. May 21, 2025) (*California* "does not displace governing law"); *Am. Bar Ass'n.*, 2025 WL 1388891, at *6 (*California* "does not compel a contrary result"); *see also Widakuswara,* 2025 WL 1288817, at *13 (Pillard, J., dissenting) (*California* "does not change the landscape"); *but see Vera Inst.*, 2025 WL 1865160, at *14.

 **D.  Plaintiffs' APA claims are not committed to agency discretion under law.**

 Defendants' final jurisdictional argument is that EPA's actions were committed to agency discretion and, therefore, their review is precluded by the APA. Mot. to Dismiss (Dkt. 66) at 16–18. Their arguments fail—they misinterpret Clean Air Act section 138, are wholly unsupported by the facts, and rely on readily distinguishable cases.

 Under Defendants' mistelling, Defendants are (or at least were) simply exercising their "discretion" to spend the funds Congress appropriated on a set of different projects more in line with their priorities. This characterization of EPA's decision making is unsupported and belied by the uncontroverted record.

 EPA cancelled the entire Environmental and Climate Justice Block Grant program without any individualized review of specific grants, and without any intention to spend the funds Congress appropriated on any other grantees, and Plaintiffs provided evidence to support those claims. Compl. (Dkt. 1) ¶¶ 166–213. As Plaintiffs noted in their Complaint, Defendants have repeatedly referred to terminated grants as "taxpayer savings," *id.* ¶¶ 109, 210, confirming that they will not spend the money Congress appropriated at all. Moreover, Congress directed that the grants for the Environmental and Climate Justice Grant program should be in place by 2026. 42 U.S.C. § 7438(a). Reallocating the funding would entail complex processes that could take months or even years, yet Defendants have made no attempt to start this work. Indeed,

Defendants have done the opposite, eliminating all staff that support the Environmental and Climate Justice Block Grant program.[7]

Even if Defendants intended to re-award the funding (they do not), and even if it were feasible to do so consistent with the statutory timeline (it is not), it would still not be possible for Defendants to spend the appropriated funding as required by Congress while also complying with the President's Executive Orders. The limited discretion Congress bestowed upon the Administrator in section 138 is to define "disadvantaged communities." 42 U.S.C. § 7438(b)(1). Any grant award "that benefit[s] disadvantaged communities," as required under IRA § 60201(b)(1), would necessarily conflict with the Anti-Equity EO's prohibition on "equity-related grants," Anti-Equity EO § 2(b)(i).

Defendants rely primarily on *Lincoln v Vigil*, in which the Supreme Court held that an agency's reallocation of funds within a "lump-sum appropriation" was committed to agency discretion by law because the statute did not "restrict what can be done with those funds." 508 U.S. 182, 192–94 (1993). In *Lincoln*, the Supreme Court held that the agency's decision to allocate funds from a regional program for "handicapped Indian children" to a "nationwide effort to assist such children" was committed to agency discretion. *Id*. at 184. The Court confined the

---

[7] Administrator Zeldin announced in March 2025 that EPA would terminate all "Environmental Justice and Diversity, Equity, and Inclusion arms of the agency," placing all staff on administrative leave. EPA, *EPA Terminates Biden's Environmental Justice, DEI Arms of Agency* (Mar. 12, 2025), https://www.epa.gov/newsreleases/epa-terminates-bidens-environmental-justice-dei-arms-agency [https://perma.cc/Q5WB-HQEL]. Further reporting indicates that Zeldin told EPA leaders in an internal memorandum that he was "directing 'the reorganization and elimination' of the offices of environmental justice at all 10 E.P.A. regional offices as well as the one in Washington." Lisa Friedman, *E.P.A. Plans to Close All Environmental Justice Offices*, N.Y. TIMES, at 1 (Mar. 11, 2025), https://www.nytimes.com/2025/03/11/climate/epa-closure-environmental-justice-offices.html [https://perma.cc/ZDK3-GRKL].

"agency discretion" exception exceedingly narrowly—applying it only to those "rare circumstances" where the relevant statute is drawn so that a court would have no meaningful standard to judge the agency's exercise of discretion. *Id.* at 191.

The facts here bear no resemblance to *Lincoln.* In this case, as explained above, Congress explicitly mandated that funds "shall" be spent for Environmental and Climate Justice Block Grants. 42 U.S.C. § 7438. These are not discretionary "lump sum" funds lacking any statutory restrictions—they list specific activities that "shall" be funded to advance statutory purposes. *Id.* Unlike in *Lincoln*, Defendants terminated these grants not because the funds could serve other permissible statutory objectives, but precisely *because* the program advances Congress's stated purpose. *See* Compl. Exs. 1-A, 1-C, and 1-F (Dkt. 1-4). *Lincoln* would have been a very different case if the agency had cancelled the program *because* it served the very population Congress intended it to benefit.[8]

As the Ninth Circuit recently explained when rejecting an identical argument from the federal government, "[t]he rule announced in *Lincoln* has no application where, as here, the agency fails to carry out a program that is required by statute" through the use of language like "'shall' [that] plainly imposes a mandatory duty." *Cmty. Legal Servs. in East Palo Alto v. U.S. Dep't of Health and Human Servs.*, 2025 WL 1393876, at *4–5 (9th Cir. May 14, 2025). Similarly, in *APHA*, the First Circuit reasoned that *Lincoln* has no applicability where (as there and here) Congress has "circumscribe[d] agency discretion to allocate resources by putting

---

[8] For the same reasons, Defendants' comparison to *Milk Train, Inc. v. Veneman* fails. 310 F.3d 747, 751 (D.C. Cir. 2002). In that case the statute contained no "reference point" for the court other than the decisionmakers' own views of the "appropriate manner" to distribute funds "consistent with the statute's general policy." *Id*. at 751–52.

restrictions in the operative statutes." 2025 WL 2017106, at *9 (quoting *Lincoln*, 508 U.S. at 193).

Defendants' unsupported and inaccurate factual telling in which they were simply exercising their "discretion" underlies many of their jurisdictional arguments. This theory forms the basis for Defendants' constitutional defenses, as they argue that Defendants are not breaching separation of powers, but merely engaging with the statutory scheme in a different way. Mot. to Dismiss (Dkt. 66) at 16. It also underlies their APA defenses, as they attempt to turn the case into one about individual grants, rather than the cancellation of an entire grant program. *Id*. at 11–12. Defendants' telling, however, bears no resemblance to the facts of this case and Defendants have produced no record evidence supporting their narrative. Even if Defendants' alleged facts were supported, they would not establish that Defendants exercised permissible discretion. In this case Defendants terminated the entire statutory program without making any discretionary judgments. Clean Air Act section 138 simply does not provide Defendants with the discretion to withhold all appropriated funds.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss should be denied.

DATED: July 28, 2025                    Respectfully submitted,

                                        /S/ HANA V. VIZCARRA
                                        Hana V. Vizcarra (D.C. Bar No. 1011750)
                                        Deena Tumeh (D.C. Bar No. 1741543)
                                        Molly Prothero (D.C. Bar No. 1779237)
                                        Andrew Saavedra (N.Y. Bar No: 6062814)
                                        (*Pro Hac Vice*)
                                        Linnet Davis-Stermitz (WA Bar No. 63190)
                                        (*Pro Hac Vice*)
                                        EARTHJUSTICE
                                        1001 G Street NW, Suite 1000

Washington, D.C. 20001
(202) 667-4500
hvizcarra@earthjustice.org
dtumeh@earthjustice.org
mprothero@earthjustice.org
asaavedra@earthjustice.org
ldavisstermitz@earthjustice.org

*Counsel for Plaintiffs Air Alliance Houston,
Bessemer Historical Society (d/b/a Steelworks
Center of the West), Deep South Center for
Environmental Justice, Downwinders at Risk,
Health Resources in Action, Institute for
Sustainable Communities, Inter-Tribal Council
of Michigan, PUSH Buffalo, and WE ACT for
Environmental Justice and Proposed Class
Counsel.*

*/s/ Ben Grillot*
Ben Grillot (D.C. Bar No. 982114)
Kimberley Hunter (N.C. Bar No. 41333)
(*Pro Hac Vice*)
Irena Como (N.C. Bar No. 51812)
(*Pro Hac Vice*)
SOUTHERN ENVIRONMENTAL LAW CENTER
122 C St NW, Suite 325
Washington, DC 20001
Telephone: (202) 828-8382
Facsimile: (202) 347-6041
bgrillot@selc.org
kmeyer@selc.org
icomo@selc.org

*Counsel for Plaintiffs Appalachian Voices, 2°C
Mississippi, Lowcountry Alliance for Model
Communities, Parks Alliance of Louisville,
Pittsburgh Conservation Corps (Landforce) and
Southwest Renewal Foundation and Proposed
Class Counsel.*

*/s/ Toby Merrill*
Toby Merrill (D.D.C. Bar No. MA0006)
Graham Provost (D.C. Bar No. 1780222)
(*Pro Hac Vice*)
Elaine Poon (VA Bar No. 91963)

29

(*Pro Hac Vice*)
Cassandra Crawford (NC Bar No. 45396)
(Pro Hac Vice)
PUBLIC RIGHTS PROJECT
490 43rd Street, Unit #115
Oakland, CA 94609
Telephone: (510) 738-6788
toby@publicrightsproject.org
graham@publicrightsproject.org
elaine@publicrightsproject.org

*Counsel for Plaintiffs Allegheny County,
Kalamazoo County, King County, Native Village
of Kipnuk, City of Sacramento, City and County
of San Francisco, City of Springfield and
Treasure Island Mobility Management Agency
and Proposed Class Counsel.*

<u>/s/ Gary DiBianco</u>
Gary DiBianco (D.C. Bar No. 458669)
Jillian Blanchard (CA Bar No. 203593)
(*Pro Hac Vice*)
Larissa Koehler (CA Bar No. 289581)
(*Pro Hac Vice*)
LAWYERS FOR GOOD GOVERNMENT
6218 Georgia Avenue NW, # 5001
Washington, D.C. 20011
(202) 258-6826
Gary@lawyersforgoodgovernment.org
Jillian@lawyersforgoodgovernment.org
Larissa@lawyersforgoodgovernment.org

*Counsel for Plaintiffs Institute for Sustainable
Communities, Inter-Tribal Council of Michigan,
and Kalamazoo County, and Native Village of
Kipnuk.*

<u>/s/ Julie Wilensky</u>
David Chiu (CA Bar No. 189542)
SAN FRANCISCO CITY ATTORNEY
Yvonne R. Meré (CA Bar No. 175394)
(*Pro Hac Vice*)
Chief Deputy City AttorneyMollie M. Lee (CA
Bar No. 251404)
(*Pro Hac Vice*)

30

Chief of Strategic Advocacy
Sara J. Eisenberg (CA Bar No. 269303)
(*Pro Hac Vice*)
Chief of Complex and Affirmative Litigation
Julie Wilensky (CA Bar No. 271765)
(*Pro Hac Vice*)
Deputy City Attorney
1390 Market Street, 7th Floor
San Francisco, CA 94102
Telephone: (415) 554-4274
yvonne.mere@sfcityatty.org
mollie.lee@sfcityatty.org
sara.eisenberg@sfcityatty.org
julie.wilensky@sfcityatty.org

*Counsel for Plaintiffs City and County of San Francisco and Treasure Island Mobility Management Agency.*

*/s/ Alison Holcomb*
David J. Hackett (WA Bar No. 21234)
(*Pro Hac Vice*)
General Counsel to King County Executive & Special Deputy Prosecutor
Alison Holcomb (WA Bar No. 23303)
(*Pro Hac Vice*)
Deputy General Counsel to King County Executive & Special Deputy Prosecutor
OFFICE OF KING COUNTY PROSECUTING ATTORNEY LEESA MANION
401 5th Avenue, Suite 800
Seattle, WA 98104
(206) 477-9483
David.Hackett@kingcounty.gov
aholcomb@kingcounty.gov

*Counsel for Plaintiff Martin Luther King, Jr. County.*