IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Appalachian Voices, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> United States Environmental Protection Agency, *et al.*, <br><br> Defendants. | Case No. 25-cv-01982 (RJL) |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS**

## INTRODUCTION

Plaintiffs' claims should be dismissed (1) because they are moot and (2) because they sound entirely in contract and accordingly must be heard in the Court of Federal Claims. This case is moot because Congress passed—and the President signed into law—a reconciliation bill that included rescission of all unobligated funds for the grants at issue in this case. All environmental and climate justice block grants had been terminated by early May 2025, de-obligating those grants by operation of law and the grant terms themselves. Two months later, in early July, Congress rescinded all unobligated funds, which includes funds that formerly had been obligated to the terminated awards, but which were now unobligated because of those terminations. Funds remain available to pay any allowable close-out costs or obligations incurred before termination, but following Congress's rescission action, no funds are available to re-award grants. Plaintiffs' entire case is built around their demand that grants be reinstated. Without congressional appropriations for said grants, the Executive has no funding for the grants, and this Court is left with no remedy for Plaintiffs. This reality alone is sufficient justification for the Court to dismiss the Complaint.

Mootness aside, this Court also lacks subject matter jurisdiction over Plaintiffs' claims, which, at a fundamental level, seek to enforce contractual grant agreements. As the Supreme Court has explained, and courts in this Circuit have found in similar instances, the rights upon which Plaintiffs request relief are based solely in the terms of their contract with the government and can be heard only in the Court of Federal Claims. Plaintiffs are asking for the classic contractual remedy of specific performance when they demand that EPA reinstate the terminated grants. This Court does not have authority to require the government to contract with particular parties, and a request to pay money under the contract—which is what Plaintiffs are functionally asking for—belongs in the Court of Federal Claims. Because Plaintiffs' claims are before the wrong court, this Court should dismiss the Complaint.

# ARGUMENT

**I.    PLAINTIFFS' CLAIMS ARE MOOT.**

When EPA terminated each of the grant awards at issue in this case, the funds for those awards were de-obligated and made available for any future award that EPA chose to make under the Environmental and Climate Justice block grant. *See* Off. of Mgmt. & Budget, Exec. Off. of the President, OMB Circular No. A-11, Preparation, Submission, and Execution of the Budget § 20.5 (2024) (defining obligation as a "legally binding agreement that will result in outlays, immediately or in the future"); *see also* Community Change Grant Terms and Conditions, section H.3 Termination ("If EPA…terminates the assistance agreement, EPA must: [d]e-obligate uncommitted funds and re-obligate them by an award to another Community Change Grant recipient receiving an award…"). In early July, however, Congress chose to rescind all unobligated funds for this program. *See* An Act to Provide for Reconciliation, H.R. 1, 119th Cong., tit. VI, § 60016, Rescission of funding for environmental and climate justice block grants (2025). This means that, apart from any reimbursable close-out costs or obligations incurred prior to a grant's termination, the funds for each terminated grant are no longer available for award. Because the funds are no longer available, the Court cannot grant the relief Plaintiffs are seeking—namely, reinstatement of funding for each terminated grant—and, thus, this case is necessarily moot.

Plaintiffs' arguments against mootness appear to misunderstand the relevant grantmaking and appropriations processes, perhaps due to the inartful terminology used by EPA employees in Plaintiffs' Exhibit 1 to their Opposition memorandum. The employees in the email chain confirmed that the funds should not yet be "de-obligated," but what they were referring to is the recording process, wherein the award funds remain on the agency's books until the completion of

close-out. This practice ensures the agency does not run afoul of the Antideficiency Act, which prohibits agencies from spending money beyond what Congress has appropriated. *See* 31 U.S.C. § 1341(a)(1)(A). EPA cannot formally transfer the money to another award or return it to the Treasury until it determines exactly how much it may owe to the former awardee for any allowable costs. While that reimbursement process plays out, each award is essentially over-recorded, which means the account for each grant appears to have more money available to it than is still legally obligated. But this internal bookkeeping process does not mean that the funds formally appropriated to block grants can now be obligated to new grants (or formally terminated grants).

While Plaintiffs are correct that Congress has not rescinded funds that are obligated, *see* Pls.' Mem. in Opp'n to Defs.' Mot. to Dismiss ("Pls. Mem.") at 7, ECF No. 87, the terminated awards that Plaintiffs seek to reinstate are no longer obligated because they were terminated months ago. Plaintiffs acknowledge as much in their Complaint, as their understanding that the awards have been de-obligated appears to partially underpin their decision to bring this suit. Indeed, Plaintiffs' title for their Count V is "De-Obligation of All Environment and Climate Justice Block Grants." Class Action Compl. For Declaratory & Injunctive Relief ("Compl.") at 43, ECF No. 1. In this Count, Plaintiffs give an example of the Community Change Grant Program terms, which "stipulate that if EPA deobligates any awarded funds it must 're-obligate them by an award to another Community Change Grant recipient receiving an award . . . within 90 days of the de-obligation.'" *Id.* ¶209. Plaintiffs go on to allege that "EPA's termination of the grant programs at issue here includes *no effort to comply with Congress's requirement that the funds remain obligated* to the Environmental and Climate Justice Block Grant program. Instead, EPA viewed these terminations as 'immediate taxpayer savings,' evidencing its *intent to specifically not obligate the funds*." *Id.* ¶210 (emphases added). These allegations plainly spell out that Plaintiffs

3

knew and still know that once the grants were terminated, funding for those grants was no longer obligated; otherwise, they could not be "re-obligate[d]" to another recipient as required by the program terms. *See id.* ¶209. Indeed, that is the basis for some of their claims.

Plaintiffs argue that because the funds for the Environmental and Climate Justice block grant program have not yet been returned to the Treasury, the money remains available to spend on the terminated grants. *See* Pls.' Mem. at 8-10. This is incorrect. These funds were no longer obligated to any award when Congress passed its rescission bill. Congress did not instruct EPA to spend as much of the previously appropriated $3 billion that it could and then return the remaining funds. It instructed EPA not to spend, but rather to return, any funds that were unobligated as of the day the rescission bill became law. Because the grant awards have been de-obligated and their funding rescinded by Congress, this case is moot, and Plaintiffs' Complaint should be dismissed.

## II.     PLAINTIFFS' CLAIMS MUST BE BROUGHT IN THE COURT OF FEDERAL CLAIMS.

Even if this case were not moot, this Court lacks subject matter jurisdiction to hear Plaintiffs' claims, because the Tucker Act "confer[s] exclusive jurisdiction over breach of contract claims against the United States seeking more than $10,000 in damages on the Court of Federal Claims." *See Hammer v. United States*, 989 F.3d 1, 2 (D.C. Cir. 2021); 28 U.S.C. §§ 1346(a), 1491(a). Application of the Tucker Act depends on whether the case is "at its essence" contractual. *Crowley Gov't Servs., Inc. v. Gen. Servs. Admin.*, 38 F.4th 1099, 1106 (D.C. Cir. 2022) (quoting *Megapulse, Inc. v. Lewis,* 672 F.2d 959, 968 (D.C. Cir. 1982)). "Whether a claim is 'at its essence' contractual for the Tucker Act 'depends both [1] on the source of the rights upon which the plaintiff bases its claims, and [2] upon the type of relief sought (or appropriate).'" *Id.* (quoting *Megapulse,* 672 F.2d at 968).

4

Here, the source of the rights upon which Plaintiffs base their claims is wholly based in contract. *See* Defs.' Mot. to Dismiss at 21-22, ECF No. 66. They are seeking to enforce their right to payment under a contractual agreement. Plaintiffs' opposition brief attempts to argue that the grantees' claims do not derive from grant contracts (Pls.' Mem. at 15-19), but rather that their claims are based on Defendants' conduct that allegedly violates the separation of powers, the presentment clause, and the APA. *See* Compl. at 37-44 (Counts I-V). They purportedly allege that Defendants have failed to comply with Congress's statutory mandates for EPA. *See, e.g., id*. ¶¶ 3, 171-76, 193, 200-02, 204-05. This artful pleading is simply reframing contractual claim: the main mechanism through which Defendants allegedly violated those mandates is by terminating grants. *Id.* ¶¶ 14, 46, 114-15, 157, 163.

As courts have repeatedly concluded, Plaintiffs' framing of their contractual claims for relief under the Constitution and the APA do not take this case out of the domain of the Tucker Act. *See Am. Libr. Ass'n v. Sonderling*, No. 25-1050, 2025 WL 1615771, at *7 (D.C. Cir. June 6, 2025); *see also Sustainability Inst. v. Trump*, No. 25-1575, 2025 WL 1587100, at *1 (4th Cir. June 5, 2025) (granting stay of preliminary injunction pending appeal because Government was likely to succeed in showing the court lacked jurisdiction under Tucker Act); *Widakuswara v. Lake*, No. 25-5144, 2025 WL 1288817 at *3-5 (D.C. Cir. May 3, 2025) ("USAGM Panel Decision") (per curiam); *U.S. Conf. of Cath. Bishops v. U.S. Dep't of State*, 770 F.Supp.3d 155, 165 (D.D.C. Mar. 11, 2025). The Supreme Court has also found that the "APA's limited waiver of immunity does not extend to orders 'to enforce a contractual obligation to pay money' along the lines of what the District Court" had done in granting injunctive relief. *Dep't of Educ. v. California*, 145 S. Ct. 966, 968 (2025) (issuing stay pending appeal because the Government was "likely to succeed in showing the District Court lacked jurisdiction to order the payment of money").

A focus on grants is woven into each of the claims for relief. *See, e.g.,* Compl. ¶179 (Count I) ("EPA's decision to terminate the grant programs authorized by 42 U.S.C. § 7438 . . . violates the separation of powers."); *id*. ¶183 (Count II) ("In purpose and in effect, EPA's termination of grant programs required by 42 U.S.C. § 7438 unlawfully amends the spending provisions of the IRA by ending grant programs mandated by Congress . . . ."); *id*. ¶189 (Count III) ("EPA's termination of the grant programs, and its subsequent termination of all grants, is arbitrary and capricious for multiple reasons."); *id*. ¶205 (Count IV) ("By terminating the grant programs and individual grants, Defendants have unlawfully withheld the expenditure of funds"); and *id.* ¶213 (Count V) ("EPA's termination of the grant programs authorized by 42 U.S.C. § 7438 and intention to de-obligate the previously awarded funds is in excess of the agency's statutory authority, unconstitutional, and not in accordance with law.").

Plaintiffs fail under both prongs of *Crowley.* The D.C. Circuit instructs the Court to consider "whether the plaintiffs' rights 'exist[] prior to and apart from rights created under the contract[s.]'" 38 F.4th at 1107 (first alteration in original) (citation omitted). Here, Plaintiffs' injuries largely do not exist prior to and apart from rights created under their grant agreements. If Plaintiffs had not been grant awardees, they would not—and could not—have brought this suit, because their entitlement to funds comes only from the terms of their contract, rather than from independent statutory entitlement. *See Am. Libr. Ass'n*, 2025 WL 1615771, at *5-7. Plaintiffs cannot overcome the first prong of the Tucker Act analysis.

Plaintiffs also fail the second prong of the Tucker Act test: the relief sought. *See Crowley,* 38 F.4th at 1107. This inquiry "boils down to whether the plaintiff effectively seeks to attain monetary damages in the suit." *Id.* Plaintiffs here do seek a type of injunctive relief. *See* Compl. at 44-45 (Prayer for Relief). However, the relief sought repeatedly references reinstating grants.

6

Plaintiffs ask this Court to declare that "the termination of legally-obligated grant awards issued under [Section 138 of the Clean Air Act, 42 U.S.C. § 7438] violate[s] the United States Constitution and the APA, 5 U.S.C. § 706"; to "enjoin EPA from . . . terminat[ing] grant programs"; and to "[r]equire EPA to reinstate all grant awards previously authorized by Section 138 of the Clean Air Act, 42 U.S.C. § 7438, for all class members, that were terminated beginning in February 2025." *See id.* In other words, Plaintiffs ask the government to pay money purportedly due under the contract.

The Supreme Court and members of this Circuit have rejected attempts by litigants to enforce contractual obligations against the Government in district court. *See Dep't of Educ. v. California,* 145 S. Ct. at 968 ("[A]s we have recognized, the APA's limited waiver of immunity does not extend to orders 'to enforce a contractual obligation to pay money' along the lines of what the District Court did here." (citation omitted)); USAGM Panel Decision, 2025 WL 1288817 at *4 ("[T]he injunction in substance orders specific performance of the grant agreements—a quintessentially contractual remedy. And it is the inherently contractual nature of the relief afforded . . . that makes the [Court of Federal Claims] the exclusive forum for this suit." (citations omitted)).

Plaintiffs ask the Court to order defendants to "[r]equire EPA to reinstate all grant awards previously authorized by Section 138 of the Clean Air Act, 42 U.S.C. § 7438, for all class members, that were terminated beginning in February 2025." Compl. at 45. The practical effect of such relief would be to order specific performance of these grant agreements; this, of course, is the "quintessential contract remedy" which prompted the panel in the USAGM cases to question the district court's jurisdiction. *See* USAGM Panel Decision*,* 2025 WL 1288817 at *4. Even though the en banc panel ultimately decided against staying the injunction while Defendants pursued appeal, this was in part because of concerns about the specific irreparable harm of the plaintiffs in

7

that case that are not present here, and are not relevant to a motion to dismiss in any event. No. 25-5144, 2025 WL 1521355 (D.C. Cir. May 28, 2025).

This Court should also be persuaded by Judge Mehta's ruling in *Vera Institute of Justice v. DOJ*, where he found that the district court lacked subject matter jurisdiction over the plaintiffs' APA claims. Plaintiffs believe *Vera Institute* is inapposite because the court found it had jurisdiction over the constitutional claims, but they leave out the fact that the court still dismissed those claims for failure to state a claim that is plausible on its face. Even if this Court determines that it has jurisdiction over these constitutional claims, and it should not (*see Sustainability Inst.*, 2025 WL 1587100, at *1; *Am. Libr. Ass'n*, 2025 WL 1615771, at *7), Defendants have also raised a 12(b)(6) challenge against the constitutional claims. *See* Defs.' Mot. to Dismiss at 15-16, 24. While Defendants' brief may not have placed its 12(b)(6) argument in its own section, this Court undoubtedly can see that Plaintiffs have not asserted truly independent constitutional claims, and thus those claims cannot be deemed plausible on their face. Plaintiffs' constitutional claims instead are more accurately viewed as claims that the Executive acted "in excess of [its] statutory authority." *Dalton v. Specter*, 511 U.S. 462, 472 (1994). Any statutory claim could be recharacterized as a violation of the constitutional separation of powers, or as amending the relevant statutes in violation of the Presentment Clause, but that is the type of artful pleading *Dalton* cautions against. Plaintiffs have not shown a statutory or constitutional provision that gives them the right to these grants. The Court should dismiss these claims.

Because Plaintiffs' claims sound in contract, seek specific performance of grant agreements, and effectively seek money damages in the form of reinstated grants and their accompanying funding, Plaintiffs' Complaint belongs in the Court of Federal Claims and this Court should dismiss for lack of subject matter jurisdiction.

## CONCLUSION

For the reasons discussed in the Defendants' Motion to Dismiss and in the instant Reply, the Court should dismiss Plaintiffs' Complaint.

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

JOSEPH E. BORSON
Assistant Branch Director
Civil Division, Federal Programs Branch

*/s/ Jessica A. Lundberg*
JESSICA LUNDBERG (WA Bar No. 60100)
Trial Attorney, U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C. 20005
Tel.: (202) 305-3246
Email: jessica.a.lundberg@usdoj.gov

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on August 4, 2025, I electronically filed this document with the Court by using the CM/ECF system, and that this document was distributed via the Court's CM/ECF system.

*/s/ Jessica A. Lundberg*

JESSICA LUNDBERG (WA Bar No. 60100)
Trial Attorney, U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C. 20005
Tel.: (202) 305-3246
Email: jessica.a.lundberg@usdoj.gov