IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Appalachian Voices, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> United States Environmental Protection Agency, *et al.*, <br><br> Defendants. | Case No. 25-cv-01982 (RJL) |

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' EMERGENCY MOTION FOR INJUNCTION PENDING APPEAL**

In this suit, Plaintiffs seek a judicial order invalidating the Government's termination of their grant agreements and requiring the Government to continue to perform its obligations under those agreements. But the Supreme Court has recently held twice in no uncertain terms that the Administrative Procedure Act's waiver of sovereign immunity "does not provide [district courts] with jurisdiction to adjudicate claims based on [federal] grants or to order relief designed to enforce any obligation to pay money pursuant to those grants." *Nat. Instit. of Health ("NIH") v. Am. Pub. Health Ass'n*, 606 U.S. ___, 2025 WL 2415669, at *1 (Aug. 21, 2025); *see also Dep't of Educ. v. California*, 604 U.S. 650, 651 (2025) (per curiam) (same). In denying Plaintiffs' motion for a preliminary injunction and dismissing their complaint, this Court correctly applied those two recent Supreme Court decisions to the materially identical facts presented in this case.

Plaintiffs now seek an injunction pending appeal, but they offer no compelling basis for that extraordinary relief. On the merits, Plaintiffs have failed to raise any significant facts or legal arguments that undermine this Court's previous conclusion that *California* and *NIH* control here.

1

Instead of offering any such new or overlooked arguments, Plaintiffs primarily rehash the points that this Court has already rejected. And when they attempt to break new legal ground, they focus on distinctions without difference, noting that one of the opinions that this Court relied on was revised after this Court's decision—without acknowledging that the revisions relate only to portions of the opinion that have no relevance here.

Plaintiffs fare no better on the equities. There, Plaintiffs assert that EPA's continued processing of the grant terminations may lead to the relevant funds becoming unavailable if they ultimately prevail. That may be true, but Plaintiffs overlook what the Government has been saying all along: the proper recourse for their assertion that the Government has violated their contractual rights is to bring a contract suit in the Court of Federal Claims. In such a suit, Plaintiffs could receive any money to which they are legally entitled as damages, whether or not the specific funds at issue here remain available. Beyond that, Plaintiffs fail to grapple with the fact that the funds in this case will only become unavailable because Congress has rescinded them. Any injunction will thus not only harm the Executive Branch but will also undermine Congress's determination.

As the Court already stated in its opinion, Plaintiffs' claims cannot proceed in this forum, and Plaintiffs have not met their burden for justifying immediate relief. Plaintiffs' emergency motion for relief must be denied.

**ARGUMENT**

I.  **This Court Has Correctly Held That Plaintiffs Cannot Proceed in District Court and Plaintiffs Provide No Basis for Second-Guessing That Conclusion**

Plaintiffs acknowledge that to secure the extraordinary relief of an injunction pending appeal, they must demonstrate—at the least—a "serious legal question on the merits." Pls.' Mot. at 2, ECF No. 101 (citation omitted). But here, the Court not only denied Plaintiffs' first motion

2

for preliminary injunction—it dismissed their entire case. *See* Mem. Op. at 7-8, ECF No. 98. The Court's recent opinion provided clear reasoning relying on Supreme Court precedent as to why the Tucker Act divested it of jurisdiction over Plaintiffs' Administrative Procedure Act (APA) claims. *See generally id.* And it provided similarly comprehensive and persuasive reasoning—backed by Supreme Court and D.C. Circuit precedent—explaining why Plaintiffs cannot circumvent that jurisdictional limitation by reframing their claims as "constitutional." Plaintiffs do not establish why the Court should rule that Plaintiffs' claims may now proceed. The facts in the case have not changed and the relevant law has not changed. Plaintiffs' motion should be denied.

As for Plaintiffs' APA claims, Plaintiffs barely contend that new legal or factual developments could generate a serious legal question where none existed before. Instead, they spend substantial space rehashing arguments that this Court has already rejected. *See* Pls.' Mot. at 10-11. For example, Plaintiffs return to Justice Barrett's concurrence in *NIH*, attempting to leverage her narrow conclusion that a decision to issue specific guidance documents was reviewable in district court as an APA claim into a warrant to seek review of *any* policy decision to terminate a grant. Pls.' Mot. at 10. But in *NIH*, Justice Barrett found that the policy decision to issue the guidance documents was independent of the decision to terminate the grants and should be treated separately. *See* NIH at *4. Here, there is no separate decision at issue apart from the decision to terminate the grants, as this Court has already correctly explained. *See* Mem. Op. at 13. Plaintiffs' claims have always been and continue to be challenges to EPA's decision to terminate the grants. Plaintiffs' original claim for relief through the reinstatement of individual grants is the exact relief that the controlling opinion in *NIH* does not sanction. *See* Compl. at 45.

Plaintiffs fare no better when they argue that this Court improperly failed to "address Plaintiffs' claims that terminating the Environmental and Climate Justice Block Grant program

3

was contrary to law because it violated the Constitution and the Impoundment Control Act." Pls.' Mot. at 9. This Court explained—in detail—why Plaintiffs' asserted constitutional claims could not proceed. *See* Mem. Op. at 19-21. And the D.C. Circuit has just made clear—in the opinion cited throughout Plaintiffs' motion—that private parties like Plaintiffs cannot bring APA claims for a violation of the Impoundment Control Act (ICA). *See Glob. Health Council v. Trump,* No. 25-5097*,* 2025 WL 2480618, at *1 (D.C. Cir. Aug. 13, 2025).

Finally, Plaintiffs provide no reason to reconsider this Court's previous conclusion that their asserted "constitutional" claims were statutory. In dismissing those claims, this Court correctly held—relying in large part on the D.C. Circuit's recent *Global Health Council* decision— that "claims alleging that [an agency] has exceeded [its] statutory authority are not constitutional claims," Mem. Op. at 20 (citations omitted). Plaintiffs state that this reliance "raises a serious question of law as that opinion has since been revised." Pls.' Mot. at 6. But the D.C. Circuit's revisions were unrelated to the Court's analysis of whether the Plaintiffs properly presented a constitutional claim and did not alter its holding that the plaintiffs could not reframe a statutory dispute as a contrary-to-law claim. Instead, the revisions addressed an entirely different question— not relevant here—regarding the extent to which the ICA independently precludes APA review of appropriations-related statutory claims.

Plaintiffs also suggest that the Court's reliance on *Global Health Council* is misplaced because it addressed "narrow" issues involving the ICA and Anti-Deficiency Act and not the larger question of whether the grant terminations were lawful. Pls.' Mot. at 7. But *Global Health Council* did address similarly broad assertions that the Executive had acted unlawfully by refusing to expend appropriated funds. *See* 2025 WL 2480618 at *1. And regardless, facts and questions raised in a case need not be identical to the one before the court to be persuasive. Plaintiffs have not

4

raised any new, independent constitutional claims in their emergency motion. The Court's original holding that Plaintiffs' claims are not properly regarded as constitutional therefore still applies.

## II. Plaintiffs Have Not Met the Standard for Emergency Relief

While Plaintiffs have no likelihood of success, as discussed above, the motion should be denied on the independent grounds that Plaintiffs have not met their considerable burden of showing immediate relief is needed or justified. "An injunction pending appeal is an extraordinary remedy [that, b]ecause it is an intrusion into the ordinary process[es] of administration and judicial review, [] is not a matter of right, even if irreparable injury might otherwise result to the appellant." *United States v. Facebook, Inc.*, No. 19-cv-2184 (TJK), 2024 WL 291739, *2 (D.D.C. Jan. 12, 2024) (internal quotation marks omitted). Plaintiffs point to Federal Rule of Civil Procedure 62(d) as the basis for their motion but acknowledge that the standard for relief under 62(d) is "'substantially the same' as that for a motion for a preliminary injunction." Pls.' Mot. at 2. To overcome the district court's finding that the Plaintiffs are not likely to succeed on the merits, Plaintiffs must demonstrate the "rare case[]" where "the threat of irreparable harm may be so grave and the balance of equities may favor the movant so decisively" that it may be proper for a court to issue an injunction if the equitable factors "tip sharply in its favor." *Facebook*, 2024 WL 291739 at *1 (internal quotation marks omitted). These are high burdens and Plaintiffs have not met any of them.

### A. Plaintiffs Have Not Demonstrated a Likelihood of Grave Irreparable Harm

First, Plaintiffs' claim that "grave" irreparable harm will result if their motion is denied is not supported by facts or law. To establish irreparable harm, Plaintiffs must show that they will "suffer an injury that is 'both certain and great, actual and not theoretical, beyond remediation, and

of such imminence that there is a clear and present need for equitable relief to prevent irreparable harm.'" *Id.* at *2 (citation omitted).

Plaintiffs fail to make any such showing. The only new fact Plaintiffs present is EPA's recent efforts to close out the terminated grants as it always intended and has the right to do. *See* Pls.' Mot. Ex. 2, ECF No. 101-2. According to the terms and conditions of the grants, grantees were required to submit costs for reimbursement within 120 days of their grants' termination. For most grant recipients, this deadline to submit costs would have been on or around September 1, 2025, 120 days after most grants were terminated on May 1, 2025. EPA voluntarily held off on requiring grantees to submit their costs while this litigation proceeded in district court. Completing this closeout process does not change the legal status of the funds from obligated to unobligated. As explained in Defendants' Reply In Support of Their Motion to Dismiss, as a legal matter the grant funds became unobligated upon termination, except for funds allocable to grantees' pre-termination and closeout costs. *See* ECF No. 91 at 3.

But regardless of the funds' obligation status, Plaintiffs' alleged harms are not irreparable because they can be made whole through the payment of money damages in the Court of Federal Claims. Whether the money comes from the grant program, the judgment fund, or some other source, is immaterial. Plaintiffs' analogy from *MediNatura, Inc. v. FDA*, No. 20-cv-2066 (RDM), 2021 WL 1025835 at *6 (D.C. Cir. 2021) that "[o]nce a tree has been felled and sent to the sawmill" the "pine is gone forever" does not apply here. *See* Pls.' Mot. at 3. While the grant program "tree" may have been "felled," a nearly identical "tree" still stands in the form of monetary relief from the Court of Federal Claims, should the proper court with jurisdiction determine that the grants were terminated improperly and damages are warranted.

B.  **The Public Interest and Balance of Equities Do Not Favor Plaintiffs**

For many of the same reasons that Plaintiffs' alleged harms are not irreparable, the balance of the equities does not tip *decisively* in favor of Plaintiffs as required by *Facebook*. 2024 WL 291739 at *4. As this Court has already determined that Plaintiffs' claims belong in the Court of Federal Claims, it need not address whether the funds for the grant programs are unobligated, rescinded, or remain available. The "emergency" Plaintiffs envision is only so if the district court is the sole avenue for relief. Because it is not, the present status of the grant funds does not tip the balance in favor of Plaintiffs. By contrast, the balance of the equities and the public interest more decisively favors the Government in this instance. Congress has shown through its rescission action that it no longer considers the Environmental and Climate Justice Block Grant program a priority but instead wishes to spend taxpayer funds on other projects. *See* One Big Beautiful Bill Act, Pub. L. No. 119-21, tit. VI, § 60016, 139 Stat. 72 (2025). Preventing the Government from releasing these funds undermines Congress's legislative and fiscal objectives. *See, e.g., Climate United Fund v. Citibank, N.A.*, 2025 WL 2502881, *32-33 ("The injunction harms the government and the public interest by preventing the Executive Branch from properly and prudently managing billions of dollars in public funds. The grantees have an interest in continued access to government funding. But the government and the public have a stronger interest in protecting the public fisc….").

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' motion for injunction.

Dated: September 19, 2025

                Respectfully submitted,

                BRETT A. SHUMATE
                Assistant Attorney General

Civil Division

JOSEPH E. BORSON
Assistant Branch Director
Civil Division, Federal Programs Branch

*/s/ Jessica A. Lundberg*
JESSICA LUNDBERG (WA Bar No. 60100)
Trial Attorney, U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C. 20005
Tel.: (202) 305-4688
Email: jessica.a.lundberg@usdoj.gov

*Attorneys for Defendants*