IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| APPALACHIAN VOICES, et al., ) <br> ) <br> *Plaintiffs*, ) <br> ) <br> v. ) <br> ) <br> UNITED STATES ) <br> ENVIRONMENTAL PROTECTION ) <br> AGENCY, et al., ) <br> ) <br> *Defendants*. ) | Civil Action No. 1:25-cv-01982-RJL |

**PLAINTIFFS' REPLY IN SUPPORT OF
EMERGENCY MOTION FOR INJUNCTION PENDING APPEAL**

Defendants boldly claim that "Congress has rescinded" Plaintiffs' funds, and in the next breath admit that they intend to return those funds to the Treasury, making them "unavailable" should Plaintiffs succeed on appeal. Dkt. No. 104 ("Opp'n") at 2. This assertion misconstrues appropriations law, ignores EPA's own regulations and polices, and, if allowed to proceed could endanger meaningful relief pending appeal.

Beyond this harm, Plaintiffs have established—at minimum—a serious question on the merits warranting an injunction pending appeal. Defendants mischaracterize Plaintiffs' claims as challenging EPA's "decision to terminate the grants." Opp'n at 4. Not so. Plaintiffs challenge EPA's decision to terminate the *entire* Environmental and Climate Justice Block Grant Program for policy reasons. Plaintiffs have raised viable constitutional and Administrative Procedure Act ("APA") claims that belong in federal district court.

The law on these issues continues to evolve. Plaintiffs merely seek to preserve the status quo and prevent Defendants from taking actions in this fast-changing landscape that could foreclose meaningful relief should they ultimately prevail on the merits.

1

Finally, the balance of the equities tips decisively in Plaintiffs' favor. The availability of potential monetary relief for individual grantees in the Court of Federal Claims does not restore the Congressionally mandated Environmental and Climate Justice Block Program and would not provide full relief for Plaintiffs here. Thus, an injunction pending appeal is warranted.

## ARGUMENT

Defendants' arguments against the narrow injunction sought here fail for three reasons. First, Defendants misunderstand the scope and effect of H.R. 1 – and if allowed to act on this misunderstanding, the consequences could gravely and irreparably harm Plaintiffs. Second, Defendants misunderstand the nature of Plaintiffs' claims – ignoring Defendants' challenge to EPA's policy-driven decision to terminate the entirety of the congressionally mandated Environmental and Climate Justice Block Grant Program. Finally, Defendants' efforts to claim that monetary relief in an Article I Court is "nearly identical" to the relief sought here ignores the fact that such relief is limited to monetary damages for individual grantees and would not restore the Environmental and Climate Justice Block Grant program created by Congress. Opp'n at 6.

I.  **If EPA is permitted to improperly treat Plaintiffs funds as rescinded, Plaintiffs will be gravely and irreparably harmed.**

As a matter of law, Congress did not – and could not have – rescinded the Environmental and Climate Justice Block Grant funds at issue here when it passed H.R. 1. EPA's efforts to treat those funds as rescinded should be rejected by this Court, ensuring that the funds remain available to carry out Congress' mandate in Section 138 of the Clean Air Act should Plaintiffs succeed on appeal. Importantly, Plaintiffs do not seek to prevent EPA from closing out these grants in accordance with their regular procedures and deobligating the funds. Plaintiffs only seek an injunction prohibiting EPA from treating these funds as rescinded and returning them to

2

the Treasury – or taking any steps that would make the funds unavailable to Plaintiffs should they prevail. Dkt. No. 101-3 (Proposed Order).

The parties agree that Congress appropriated nearly $3 billion to the Environment and Climate Justice Block Grant program when it enacted Section 138 of the Clean Air Act. 42 U.S.C. § 7438. The parties also agree that those appropriated funds were obligated at the time that EPA awarded these grants. Dkt. No. 87 at 7 & n.1 (Pls.' Opp'n to Mot. to Dismiss) (defining "obligation"); Dkt. No. 91 at 3 (Defs.' Reply in Supp. of Mot. to Dismiss) (defining "obligation"). Finally, the parties agree that H.R. 1 only rescinded "unobligated balances" within the Environmental and Climate Justice Block Grant program. *See* H.R. 1 tit. VI, § 60016.

The crux of the dispute is whether awarded grant funds remained "obligated" on July 4, 2025, when H.R. 1 passed, despite EPA's purported termination of those grants in preceding months. They did and were thus not subject to H.R.1's rescission.

While Defendants assert that "as a legal matter the grant funds became unobligated upon termination," they cite no law in support of this claim. Opp'n at 6, *citing* Dkt. No. 91 at 2 (quoting OMB Circular No. A-11's definition of "obligation"). Defendants also fail to grapple with the countervailing arguments raised in Plaintiffs' opening brief—nor could they—because Defendants' assertion is directly contrary to both federal appropriations law and EPA's own policies and procedures, as explained below.[1] *See* 2 C.F.R. § 200.340 *et. seq.*; 2 C.F.R. § 1500 *et. seq.*; Dkt. No. 101-2 (Director of EPA's Office of the Controller explaining deobligation process).

---

[1] Defendants appear to have recognized this important distinction in their Motion to Dismiss, stating there only that the funds "were ***effectively*** de-obligated at the time of termination." Dkt. No. 66 at 8 (emphasis added). Such nuance disappears in later filings.

The termination of a grant does not result in those funds immediately becoming de-obligated. First, grantees have the opportunity to challenge that termination through an administrative appeal process (2 C.F.R. § 200.342) – a process that can then be appealed to a court of law. 5 U.S.C. § 702. Grant funds remain obligated during this period in the event the grantee's challenge is successful.

Even if a grantee does not challenge the termination, deobligation only occurs after a grantee submits a final financial report at the end of EPA's grant close out procedure, generally up to 120 days after termination. 2 C.F.R. § 200.344. As explained by Vonda Jennette, director of EPA's Office of the Controller, EPA "won't process a deobligation" until they receive a "final financial report" as shown in the email exchange below:

> From: Jennette, Vonda <Jennette.Vonda@epa.gov>
> Sent: Monday, March 10, 2025 1:37 PM
> To: Lane, Gary <Lane.Gary@epa.gov>
> Cc: Henry, Latonya <Henry.Latonya@epa.gov>; Gulamali, Adil <Gulamali.Adil@epa.gov>
> Subject: RE: Place Hold/ Control in ASAP - 8 programs
>
> Hi Gary. We don't process a deobligation until we get the final financial report. We have not been instructed to deobligate without following the normal process.
>
> *Vonda K. Jennette*, Director
> OCFO, Office of the Controller, RTP Finance Division
> 109 TW Alexander Dr
> Mail Code AA 216-01

Dkt. No. 87-1 (internal EPA email re deobligation).

These facts were known to Congress when it passed H.R. 1. As the Chair of the Environment Subcommittee of the House Committee on Energy & Commerce stated during a hearing on H.R. 1, Congress "could not rescind expenditures that have already been obligated." Dkt. No. 77-1 at 4. The Congressional Budget Office made this clear when it estimated the budgetary effects of H.R. 1, concluding that the recission amount would only encompass $561

4

million, a fraction of the $3 billion appropriated in 2022.[2] This is the information Congress had when it passed H.R. 1 – making it clear that these funds were not yet deobligated on July 4, 2025, and thus not affected by H.R. 1's recission of "unobligated funds." *See Harris Cnty., Texas v. Kennedy*, No. 25-cv-1275, 2025 WL 1707665, at *2 (D.D.C. June 17, 2025) (in an analogous setting finding that where "the Act rescinded only unobligated appropriations, any grants that had already been issued were left undisturbed.").

EPA's intent to ignore federal appropriations law and EPA's own policies and procedures and proceed as though H.R. 1 had rescinded these funds threatens irreparable harm, making it significantly more difficult to restore the Environmental and Climate Justice Block Grant program should Plaintiffs succeed on appeal.

Defendants' contention that "Plaintiffs alleged harms are not irreparable because they can be made whole through payment of money damages in the Court of Federal Claims[,]" Opp'n at 6, falls flat. While individual grantees may file in the Court of Federal Claims to seek damages for the breach of their grant agreement – that relief will not restore the entire Environment and Climate Justice block grant program which Congress created to provide funding for vital projects across the country. *See Me. Cmty. Health Options v. United States*, 590 U.S.296, 327 (2020) ("the Court of Federal Claims 'does not have the general equitable powers of a district court to grant prospective relief,'" (quoting *Bowen*, 487 U.S. at 905)).

If the funds are returned to the Treasury, they would be difficult to recover should Plaintiffs prevail on appeal and obtain an order restoring the entire Environmental and Climate

---

[2] Cong. Budget Off., Estimated Budgetary Effects of an Amendment in the Nature of a Substitute to H.R. 1, the One Big Beautiful Bill Act, Relative to CBO's January 2025 Baseline (June 27, 2025), https://www.cbo.gov/publication/61534 [https://perma.cc/YA6E-G3GX].

Justice Block Grant program. Defendants should not be permitted to take any steps that would make the funds unavailable should Plaintiffs' prevail on appeal.

**II.     Plaintiffs' claims on appeal raise serious legal questions on the merits.**

Defendants recognize that when, as here, the threat of irreparable harm is "grave," Plaintiffs need only establish a "serious legal question" on the merits to obtain an injunction pending appeal. Opp'n at 2. This relief is appropriate even when – as here – questions of jurisdiction remain pending. *United States v. United Mine Workers of Am.*, 330 U.S. 258, 290 (1947).

Here, Plaintiffs have established serious legal questions on the merits on appeal for both their constitutional claims and claims under the APA. These are "admittedly difficult legal questions" in a rapidly evolving legal landscape. *See Protect Our Water v. Flowers*, 377 F. Supp. 2d 882, 884 (E.D. Cal. 2004). As this Court recognized at oral argument, "this is a complex matter" that is not "easily understandable." Aug. 5, 2025, Hearing Tr. at 37:20-25. And even if this Court believes "its analysis in denying" a preliminary injunction was correct – it should grant limited relief to preserve the status quo pending appeal under Fed. R. Civ. P. 62(d). *United States v. Facebook, Inc.,* No. 19-cv-2184, 2024 WL 291739, at *1 (D.D.C. Jan. 12, 2024) (citation modified).

> **A.  Plaintiffs' constitutional claims raise serious legal questions as they are not statutory and do not require a waiver of sovereign immunity.**

Plaintiffs' constitutional claims raise serious legal questions. These claims do not require a waiver of sovereign immunity – and because they are not based on the violation of a statute giving certain powers to the president, they are not foreclosed by *Dalton v. Specter*, 511 U.S. 462 (1994). Plaintiffs' claims regarding EPA's decision to terminate an entire congressionally-mandated grant program due to policy objections are more like those at issue in the D.C.

6

Circuit's prior panel opinion in *In re Aiken County* – where the Court held that the executive branch "may not decline to follow a statutory mandate . . . simply because of policy objections." *In re Aiken County*, 725 F.3d 255, 259 (D.C. Cir. 2013).

Neither this Court's Order (Dkt. No. 98), nor the D.C. Circuit's recent opinion in *Global Health Council* reached this issue regarding a decision to terminate an entire congressionally-mandated grant program due to policy objections. Notably, the scope of the application of *Dalton* remains a contested legal issue in the D.C. Circuit. Order, *Glob. Health Council*, No. 25-5097, Doc. No. 213525 at 5 (D.C. Cir. Aug. 28, 2025 (denying rehearing en banc) (J. Pan, dissenting) ("because the *Dalton* issue will likely recur, our en banc court may have another opportunity to correct the panel opinion's erroneous reasoning . . . [s]hould the *Dalton* issue come before us again, we should take the first opportunity to revisit and correct the mistake the court has made."). Thus, Plaintiffs have established—at least—a serious question on the merits on appeal.

### B. Plaintiffs' APA claims raise serious questions of law because they are not foreclosed by *Global Health Council* and *NIH*.

Regarding Plaintiffs' claims that EPA's decision to terminate the Environmental and Climate Justice Block Grant program was contrary to law, Defendants ignore the fact that the D.C. Circuit – in an amended opinion issued the day before this Court's Order - expressly *allowed* contrary to law APA claims like the ones raised here to proceed. Opp'n at 4 (citing Aug. 13, 2025 *Global Health Council* opinion); *but see Glob. Health Council v. Trump*, No. 25-5097, 2025 WL 2480618 at *11, n. 17 (D.C. Cir. Aug. 28, 2025) ("we need not and do not decide whether the [Impoundment Control Act] precludes suits under the APA to enforce appropriations acts.").

This revision, as emphasized by Judge Garcia in a statement on the denial of rehearing en banc, provides a "meaningful avenue to test the legality of the Executive Branch's unilateral

action." Order, *Glob. Health Council*, No. 25-5097, Doc. No. 213525 at 8 (D.C. Cir. Aug. 28, 2025) (Garcia, J. joined by Millett, J.; statement respecting the denial of rehearing en banc). Plaintiffs pled the claim that the Executive's unilateral decision to eliminate a program that Congress created is contrary to the act appropriating those funds and thus violates the APA. Dkt. No. 1, Compl. ¶ 204. Accordingly, Plaintiffs' contrary to law APA claims here remain viable.

As for the arbitrary and capricious APA claims, Defendants assert that Justice Barrett's concurrence in *National Institutes of Health v. American Public Health Association* was limited to a "narrow conclusion" that a "decision to issue specific guidance documents" was reviewable in district court. Opp'n at 3. Defendants then attempt to distinguish *NIH* by asserting that in that case "the policy decision to issue the guidance documents was independent of the decision to terminate the grants" whereas EPA made "no separate decision" here "apart from the decision to terminate the grants." *Id.* Not so.

As Assistant Deputy Administrator Voyles made clear in his declaration, the EPA made a decision to terminate the entire Environmental and Climate Justice Block Grant *program* for "policy reasons" – not individual grants:

> 3. On February 25, 2025, I conducted an individualized review of EPA grant programs for consistency with Agency policy priorities. That day, I decided that certain grant programs, identified by "Assistance Number Listing," should be terminated for policy reasons. I orally communicated my decision to Daniel Coogan, Deputy Assistant Administrator for Infrastructure and Extramural Resources in the Office of Mission Support. That evening, Mr. Coogan sent an

Dkt. No. 1-4 (Compl. Ex. 1) at 4 (Voyles Decl.) (emphasis added)

While EPA then effectuated that decision by terminating individual grants – those decisions are not the final agency action challenged in this litigation. Instead, Plaintiffs challenge

EPA's policy-level determination to terminate the entire program – a decision directly analogous to the implementation of the guidance documents in *NIH*. *See* Dkt. No. 1, Compl. ¶¶ 109-112. As Justice Barrett explained, a challenge to an agency action that involves "policies related to grants" should not be transformed "into a claim 'founded … upon' contract that only the [Court of Federal Claims] can hear." *Nat. Instit. Of Health v. Am. Pub. Health Ass'n*, 145 S.Ct. 2658, 2661 (2025) (Barrett, J.). At the very least, Plaintiffs have raised a serious question of law on their arbitrary and capricious Administrative Procedure Act claims.

**III.  The balance of the equities tips decisively in favor of the Plaintiffs.**

Defendants assert that because Plaintiffs can purportedly be "made whole" in the Court of Federal Claims, the balance of equities does not tip in their favor. Opp'n at 6-7 (asserting that monetary relief in the Court of Federal Claims is "nearly identical" to relief sought in district court). Defendants are mistaken.

The Court of Federal Claims cannot order the restoration of the congressionally-mandated Environmental and Justice Climate Block grant program nor require EPA to carry that program out. Nor can it hear Plaintiffs' constitutional claim that EPA's decision to countermand the clear intent of Congress violates the separation of powers. *LeBlanc v. United States*, 50 F.3d 1025, 1028 (Fed. Cir. 1995) (Court of Federal Claims does not have jurisdiction over separation of powers claims); *see also Tootle v. Secy' of Navy*, 446 F.3d 167, 176 (D.C. Cir. 2006) (categorically "reject[ing] the suggestion that a federal district court can be deprived of jurisdiction by the Tucker Act when no jurisdiction lies in the Court of Federal Claims.").

At most, individual grantees may seek money damages for breach of their grant agreements, not restoration of the entire grant program. And if EPA is permitted to treat the appropriated funds as rescinded and return those funds to the Treasury – or otherwise make the

9

funds unavailable, Plaintiffs face the prospect of a toothless victory should they prevail on appeal.

In contrast, Defendants face no cognizable harm by an injunction preventing them from disrupting the status quo. As the D.C. Circuit held in *MediNatura*, an injunction to preserve the subject matter of an appeal is appropriate as "a short delay . . . does little prejudice to the government." *MediNatura, Inc.*, 2021 WL 1025835 at *6. Recently, another federal court granted nearly identical relief in *Nat'l Family Planning & Reproductive Health Ass'n v. Kennedy*, No. 25-cv-1265 (D.D.C. Sept. 12, 2025), suspending the lapse of appropriated funds and directing HHS to hold them pending a final ruling on the merits, underscoring how such relief is available and appropriate here.

## CONCLUSION

For these reasons, the Court should grant Plaintiffs' motion and enter an injunction prohibiting EPA from treating as rescinded any funds appropriated by Congress for Environmental and Climate Justice Block Grants through Section 138 of the Clean Air Act (42 U.S.C. § 7438) and returning those funds to the Treasury, or otherwise making the funds unavailable to Plaintiffs should they prevail on appeal.

Dated: September 22, 2025                    Respectfully submitted,

*/s/ Ben Grillot*
Ben Grillot (D.C. Bar No. 982114)
Kimberley Hunter (N.C. Bar No. 41333)
(*Pro Hac Vice*)
Irena Como (N.C. Bar No. 51812)
(*Pro Hac Vice*)
James Whitlock (N.C. Bar No. 34304)
(*Pro Hac Vice*)
SOUTHERN ENVIRONMENTAL LAW CENTER
122 C St NW, Suite 325
Washington, DC 20001

Telephone: (202) 828-8382
Facsimile: (202) 347-6041
bgrillot@selc.org
kmeyer@selc.org
icomo@selc.org
jwhitlock@selc.org

*Counsel for Appalachian Voices, 2°C Mississippi, Lowcountry Alliance for Model Communities, Parks Alliance of Louisville, Pittsburgh Conservation Corps (d/b/a Landforce) and Southwest Renewal Foundation and Proposed Class Counsel.*


*/s/ Hana V. Vizcarra*
Hana V. Vizcarra (D.C. Bar No. 1011750)
Deena Tumeh (D.C. Bar No. 1741543)
Linnet Davis-Stermitz (WA Bar No. 63190)
(*Pro Hac Vice*)
Molly Prothero (D.C. Bar No. 1779237)
Andrew Saavedra (N.Y. Bar No. 6062814)
(*Pro Hac Vice*)
EARTHJUSTICE
1001 G Street NW, Suite 1000
Washington, D.C. 20001
(202) 667-4500
hvizcarra@earthjustice.org
dtumeh@earthjustice.org
ldavisstermitz@earthjustice.org
mprothero@earthjustice.org
asaavedra@earthjustice.org

*Counsel for Air Alliance Houston, Bessemer Historical Society (d/b/a Steelworks Center of the West), Deep South Center for Environmental Justice, Downwinders at Risk, Health Resources in Action, Inter-Tribal Council of Michigan, PUSH Buffalo, and WE ACT for Environmental Justice and Proposed Class Counsel.*


*/s/ Toby Merrill*
Toby Merrill (D.D.C. Bar ID MA0006)
Graham Provost (D.C. Bar No. 1780222)
(*Pro Hac Vice*)
Elaine Poon (VA Bar No. 91963)
(*Pro Hac Vice*)
Cassandra Crawford (N.C. Bar No. 45369)

11

(*Pro Hac Vice*)
PUBLIC RIGHTS PROJECT
490 43rd Street, Unit #115
Oakland, CA 94609
Telephone: (510) 738-6788
toby@publicrightsproject.org
graham@publicrightsproject.org
elaine@publicrightsproject.org
cassandra@publicrightsproject.org

*Counsel for Allegheny County, Kalamazoo County, King County, Native Village of Kipnuk, City of Sacramento, City and County of San Francisco, City of Springfield and Treasure Island Mobility Management Agency, and Proposed Class Counsel.*

<u>/s/ Gary DiBianco</u>
Gary DiBianco (D.C. Bar No. 458669)
Jillian Blanchard (CA Bar No. 203593)
(*Pro Hac Vice*)
Larissa Koehler (CA Bar No. 289581)
(*Pro Hac Vice*)
LAWYERS FOR GOOD GOVERNMENT
6218 Georgia Avenue NW, # 5001
Washington, D.C. 20011
(202) 258-6826
Gary@lawyersforgoodgovernment.org
Jillian@lawyersforgoodgovernment.org
Larissa@lawyersforgoodgovernment.org

*Co-Counsel for Native Village of Kipnuk, Inter-Tribal Council of Michigan, and Kalamazoo County.*

<u>/s/ Yvonne R. Meré</u>
David Chiu (CA Bar No. 189542)
*San Francisco City Attorney*
Yvonne R. Meré (CA Bar No. 175394)
(*Pro Hac Vice*)
*Chief Deputy City Attorney*
Mollie M. Lee (CA Bar No. 251404)
(*Pro Hac Vice*)
*Chief of Strategic Advocacy*
Sara J. Eisenberg (CA Bar No. 269303)
(*Pro Hac Vice*)
*Chief of Complex and Affirmative Litigation*

12

*Deputy City Attorney*
1390 Market Street, 7th Floor
San Francisco, CA 94102
Telephone: (415) 554-4274
yvonne.mere@sfcityatty.org
mollie.lee@sfcityatty.org
sara.eisenberg@sfcityatty.org

*Counsel for Plaintiffs City and County of San Francisco and Treasure Island Mobility Management Agency.*

*/s/ Alison Holcomb*
David J. Hackett
(*Pro Hac Vice*)
General Counsel to King County Executive &amp;
Special Deputy Prosecutor
Alison Holcomb
(*Pro Hac Vice*)
Deputy General Counsel to King County Executive and Special Deputy Prosecutor
OFFICE OF KING COUNTY PROSECUTING ATTORNEY LEESA MANION
401 5th Avenue, Suite 800
Seattle, WA 98104
(206) 477-9483
*David.Hackett@kingcounty.gov*
*aholcomb@kingcounty.gov*

*Counsel for Plaintiff Martin Luther King, Jr. County.*

13