**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| APPALACHIAN VOICES, *et al*.,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, *et al*.,<br><br>Defendants. | Case No. 25-cv-01982 (RJL) |

**DEFENDANTS' SUPPLEMENTAL BRIEFING IN SUPPORT OF
THEIR MOTION TO DISMISS**

## INTRODUCTION

Plaintiffs' case is moot. Plaintiffs' Environmental and Climate Justice block grant ("ECJ") agreements were terminated in the first half of 2025. When EPA terminated Plaintiffs' grant agreements, any funds beyond allowable pre-termination, termination, and closeout costs became unobligated. Congress then rescinded all unobligated balances under the ECJ program in July 2025, extinguishing the relief Plaintiffs seek—restored access to the full amounts of their terminated awards. Even if that was not itself dispositive, because the original ECJ block grant appropriation expired on September 30, 2026, the funds are no longer available to EPA to obligate. Because courts lack authority to order the obligation of funds that Congress has withdrawn or that have no active appropriation, no live controversy remains. A decision on Plaintiffs' claims "will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future." *Pub. Citizen, Inc. v. FERC*, 92 F.4th 1124, 1128 (D.C. Cir. 2024) (citation omitted). The case is therefore moot, and the Court should dismiss on that basis.

## BACKGROUND

In 2022, Congress appropriated $2.8 billion[1] for a new grant program called Environmental and Climate Justice block grants. *See* 42 U.S.C. § 7438. Congress provided that the EPA Administrator "shall use" the appropriated funds "to award grants" to eligible entities "to carry out" specified activities "that benefit disadvantaged communities, as defined by the Administrator." *Id.* § 7438(a)-(b). The funds appropriated by Congress were originally "to remain available until September 30, 2026." *Id.* § 7438(a).

At the start of his second term beginning in January 2025, President Trump issued several Executive Orders setting forth his Administration's priorities and instructing agencies to pause

[1] Plus $200 million in technical assistance.

funding where permissible to permit review of whether the funding aligns with those priorities. He also instructed agencies to terminate certain funding that did not align with those priorities where legally permissible. One Executive Order instructs agencies to "pause the disbursement of funds" under two statutes—including the statute that originally appropriated ECJ funds. Exec. Order No. 14,154, § 7(a), 90 Fed. Reg. 8353, 8557 (Jan. 29, 2025). And another directs agencies to "terminate to the maximum extent allowed by law, all" "'equity-related' grants," Exec. Order No. 14,151, § 2(b)(1), 90 Fed. Reg. 8339 (Jan. 29, 2025).

In February 2025, EPA paused the obligation and disbursement of funds for ECJ grants pending policy review. In March 2025, the agency determined that the ECJ grants "should be terminated for policy reasons," and EPA began terminating the grants. Compl. Ex. 1-A, Decl. of Travis Voyles, at 4-5, ECF No. 1-4. Once a grant is terminated, its funds become unobligated by operation of law (less certain defined costs for contract close out). At the same time, Congress began its work to rescind the funding underlying the ECJ program. On July 4, 2025, the Working Families Tax Cuts Act (WFTCA) was enacted, stating that all "unobligated balances of amounts made available to carry out" the ECJ program "are rescinded." Pub. L. No. 119-21, tit. VI, § 60016, 139 Stat. 72, 156 (2025). On September 30, 2026, the appropriation that funded the ECJ program expired. 42 U.S.C. § 7438(a).

Plaintiffs in this case are 23 nonprofit organizations and local governments that were awarded ECJ grants. Plaintiffs sued to challenge the freeze or termination of their grants; they claimed that those actions violated the APA as well as constitutional provisions. *See generally,* Complaint, ECF No. 1. Defendants moved to dismiss, arguing two primary grounds: (1) that the rescission had mooted Plaintiffs' claims and (2) that the district court lacked subject matter jurisdiction because Plaintiffs' claims were subject to the Tucker Act and belonged in the Court of

Federal Claims. *See* Defs.' Mot. to Dismiss at 8, 10, ECF No. 66. In August 2025, this Court granted Defendants' motion to dismiss on Tucker Act grounds. Mem. Op., Aug. 29, 2025, ECF No. 98. The Court's opinion did not include a discussion of the mootness issue. Plaintiffs appealed, and the D.C. Circuit remanded for the Court to first consider whether it could dismiss based on mootness alone and need not reach the Tucker Act issue. On September 15, 2026, the Court ordered the parties to submit a joint status report opining whether supplemental briefing was needed. The parties recommended additional briefing and submitted a proposed briefing schedule, which the Court entered on October 23, 2026.

**ARGUMENT**

Plaintiffs' case must be dismissed because their claims are moot. A case is moot when "the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013). For there to be a live issue, "a litigant must have suffered some actual injury that can be redressed by a favorable judicial decision." *Iron Arrow Honor Soc'y v. Heckler*, 464 U.S. 67, 70 (1983).

Plaintiffs' alleged injuries cannot be redressed by the Court because the funds they seek are unavailable. "Funds appropriated for an agency's use can become unavailable in three circumstances: if the appropriation lapses; if the funds have already been awarded to other recipients; or if Congress rescinds the appropriation." *City of Houston v. Dep't of Hous. & Urb. Dev.*, 24 F.3d 1421, 1426 (D.C. Cir. 1994). Here, the ECJ funds became unavailable both 1) through the rescission of the funds in July 2025; and 2) due to the lapse in the ECJ appropriation on September 30, 2026. "It is beyond dispute that a federal court cannot order the obligation of funds for which there is no appropriation." *Rochester Pure Waters Dist. v. EPA*, 960 F.2d 180, 184 (D.C. Cir. 1992) (citing *Reeside v. Walker*, 52 U.S. (11 How.) 272, 291 (1850)); *see also City of Houston,* 24 F.3d at 1424 ("It is a well-settled matter of constitutional law that when an

appropriation has lapsed or has been fully obligated, federal courts cannot order the expenditure of funds that were covered by that appropriation."); *Promundo-US v. Dep't of Health & Hum. Servs.*, No. 18-CV-2261 (CRC), 2019 WL 3239245, at *7 (D.D.C. July 18, 2019) (finding that "because the [] appropriation is no longer available for obligation, the Court will dismiss as moot plaintiff's claims…."). "Nor can it be contended that a court may appropriate funds from which an obligation may be made." *Rochester Pure Waters Dist.*, 960 F.2d at 184 (citing U.S. Const., art. I, § 9, cl. 7; *Cincinnati Soap Co. v. United States*, 301 U.S. 308, 321 (1937)); K. Stith, Congress' Power of the Purse, 97 Yale L.J. 1343 (1988) (examining Congress's exclusive power to appropriate)). Thus, because the unobligated ECJ grant funds have been rescinded "[the] court cannot reach [the funds] in order to award relief." *City of Houston*, 24 F.3d at 1426. Plaintiffs' case must be dismissed as moot.

There is no dispute that Plaintiffs' agreements were all formally terminated by June 2025. Compl. ¶ 114. And there is no dispute that, following these terminations, Congress expressly rescinded "[t]he unobligated balances of amounts made available to carry out" the ECJ program. Pub. L. No. 119-21, tit. VI, § 60016, 139 Stat. at 156. The dispositive question for mootness is thus narrow and purely legal: whether the funds initially obligated to Plaintiffs under their grant agreements became "unobligated" upon termination.

When an agency "award[s] a grant . . . that require[s] the Government to make payments to the public," it "incur[s] an obligation." OMB, OMB Circular No. A-11, Preparation, Submission, and Execution of the Budget § 20.5 at 25 (2025). That obligation endures only so long as the legally binding agreement that created it remains in force. Accordingly, when an agency terminates a "legally binding agreement" that obligated grant funds, *id.*, the quantum of funds that remain obligated is only the amount necessary to reimburse recipients for "costs result[ing] from"

expenditures "which were properly incurred by the recipient . . . before the effective date of . . . termination," 2 C.F.R. § 200.343(a), as well as termination and closeout costs, *see id.* § 200.472. All remaining funds are no longer subject to any continuing legal commitment. This remaining portion of the award therefore necessarily becomes "unobligated" upon termination, as there is no longer any legal obligation committing those funds to the terminated grant recipient.

After EPA terminated Plaintiffs' grant agreements, the only legal obligation remaining on the grants was for any allowable costs incurred before termination, termination costs, and reasonable closeout expenses, as stated in the termination letters and set out in OMB regulations. *See* Compl. Ex. 1-J at 56, ECF No. 1-4 (sample termination letter) (citing 2 C.F.R. §§ 200.343, 200.472). Beyond those limited amounts, EPA had no continuing legal obligation—contractual or otherwise—to disburse funds to Plaintiffs. The remaining amounts initially awarded to Plaintiffs (*i.e.*, the funds Plaintiffs asked this Court to restore) thus became "unobligated" upon termination.

Congress then expressly rescinded all unobligated funds appropriated for the ECJ program. Pursuant to the grant terms and conditions covering closeout, EPA has already agreed to reimburse Plaintiffs for all allowable costs incurred before termination, termination costs, as well as reasonable closeout costs. What Plaintiffs have sought—disbursement of the remaining, unobligated portions of their awards—are the very funds that Congress has withdrawn. That is relief that this Court cannot provide. A court cannot order the obligation of, or otherwise make available, funds that Congress has rescinded. *Rochester Pure Waters Dist.*, 960 F.2d at 184. Because a decision on the merits would thus have no effect on the parties' rights, the case presents no live controversy and must be dismissed as moot.

Further, Plaintiffs' claims are moot because the appropriation of funds for the ECJ program has lapsed. This Court's equitable authority does not extend to countermanding Congress's

statutory command that ECJ program funds must expire at the end of the fiscal year (even assuming that any such funds remain available notwithstanding the 2025 rescission). Any equitable remedy "must track remedies traditionally afforded by the equity courts." *Goodluck v. Biden*, 104 F.4th 920, 924 (D.C. Cir. 2024), *reh'g en banc denied*, No. 21-5263, 2024 WL 4092894 (D.C. Cir. Sep. 3, 2024). And one clear and traditional limitation on courts sitting in equity is that they may not "override clear statutory limits"—such as the September 30 appropriation expiration—unless they can identify "some other statutory authority" permitting such action. *Id.* at 928. Accordingly, in an analogous context, the D.C. Circuit recently held that it was inappropriate for district courts to invoke "a supposed equitable power to override an 'explicit cutoff date' established by Congress." *Id.* at 925; *see also, e.g.*, *United States v. Oakland Cannabis Buyers' Co-op*, 532 U.S. 483, 497 (2001) (holding that "a court sitting in equity cannot ignore the judgment of Congress, deliberately expressed in legislation"); *Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc.*, 527 U.S. 308, 332 (1999). And the Supreme Court has expressly held in the context of appropriations disputes that courts in equity "cannot grant" a "money remedy that Congress has not authorized." *OPM v. Richmond*, 496 U.S. 414, 426 (1990).

Here, when Congress first appropriated funds for the ECJ program, it determined that those appropriations should expire at the end of this fiscal year—a common exercise of Congress's own constitutional authority over appropriations and one that is expressly written into the statute. Overriding that decision would exceed the Court's equitable authority and conflict with the Appropriations Clause's mandate that "[n]o Money shall be drawn from the Treasury, but in Consequence of Appropriations made by Law." U.S. Const., Art. I, § 9, cl. 7.

Plaintiffs' arguments at the dismissal stage are unavailing. These arguments hinged on a theory that the funds for Plaintiffs' grants remained obligated even after the grants were

terminated. In Plaintiffs' view, because some funds remain following a grant termination to reimburse allowable incurred costs, *all* funds are not unobligated and the Court can somehow restore the entire balance of Plaintiffs' grants. They point to a Congressional Budget Office report[2] estimating that the rescission would total $561 million rather than the full $3 billion that had been appropriated. *See* Pls.' Mem. in Opp. to Defs.' Mot. to Dismiss ("Pls.' Mem.") at 8, ECF No. 87. But CBO would not have been able to calculate the final total when the report was released in June 2025, because the closeout process for the terminated grants had not yet been completed. Plaintiffs also confuse the internal EPA de-obligation process that commences after the closeout period with the conversion of funds from obligated to legally unobligated upon termination.[3] *See id.* at 9. And the appeals process available to grant recipients following a termination does not change the legal status of the funds. *See id.* at 8. Plaintiffs' obligation theory misunderstands appropriations law and grant rules and cannot overcome the well-settled precedent that courts cannot obligate or otherwise order the expenditure of funds lacking an appropriation. Because Plaintiffs' grants were terminated and therefore unobligated at the time Congress rescinded the unobligated ECJ balances, there are no funds available to redress Plaintiffs' injury. Their case is moot.

**CONCLUSION**

For the foregoing reasons, this Court should grant Defendants' motion to dismiss the case on mootness grounds.

Dated: October 28, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

---

[2] Cong. Budget Off., Estimated Budgetary Effects of an Amendment in the Nature of a Substitute to H.R. 1, the One Big Beautiful Bill Act, Relative to CBO's January 2025 Baseline (June 27, 2025), https://www.cbo.gov/publication/61534.

[3] *See* Declaration of Gregg A. Treml, Filed in 2:25-cv-2152, *Sustainability Institute v. Trump*, 05/05/2026, ECF No. 205.

Civil Division

JOSEPH E. BORSON
Assistant Branch Director
Civil Division, Federal Programs Branch

*/s/ Jessica A. Lundberg*
JESSICA LUNDBERG (WA Bar No. 60100)
Trial Attorney, U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C. 20005
Tel.: (202) 305-4688
Email: jessica.a.lundberg@usdoj.gov

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 28, 2026, I electronically filed this document with the Court by using the CM/ECF system, and that this document was distributed via the Court's CM/ECF system.

*/s/ Jessica A. Lundberg*

JESSICA LUNDBERG (WA Bar No. 60100)
Trial Attorney, U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C. 20005
Tel.: (202) 305-4688
Email: jessica.a.lundberg@usdoj.gov