# EXHIBIT 1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| The Sustainability Institute, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*,<br><br>Defendants. | Case No. 2:25-cv-02152-RMG<br><br>**DECLARATION OF TRAVIS VOYLES** |

**DECLARATION OF TRAVIS VOYLES**

1. I, Travis Voyles, hereby declare that the following statements are true and correct to the best of my knowledge, and are based on my personal knowledge, information acquired by me in the course of performing my duties, information contained in the records of the United States Environmental Protection Agency ("EPA" or "Agency"), and information supplied to me by EPA employees including employees under my direction.

2. As Associate Deputy Administrator for the Agency, I am responsible for providing executive and logistical support for the EPA Administrator. I have held this position since April 2025.

3. In its June 11, 2026, Order, this Court "declare[d] that the agency guidance closing the [Environmental and Climate Justice Block Grant (ECJ)] Program is illegal and vacat[ed] this guidance." (Dkt. No. 217 at 11).

4. In its July 22, 2026, Order, this Court expressed its view that, in light of its previous vacatur, "EPA must comply with its statutory obligations to administer the ECJ Program through September 30, 2026." Dkt. No. 227 at 2. This declaration provides information regarding steps EPA has begun taking and/or would need to take to prudently and effectively "administer the ECJ Program."

**Identifying Amounts Available for Obligation**

5. First, EPA would need to work with the Office of Management and Budget (OMB) to seek apportionment of funding that has been rescinded from EPA's financial systems.[1] The Antideficiency Act states in relevant part that an employee of the U.S. government may not make or authorize an obligation exceeding an apportionment from OMB. 31 U.S.C. § 1517(a). Therefore, before making any new financial obligations, EPA is legally required to obtain an apportionment.

6. Since enactment of Section 60016 (Rescission of Funding for Environmental and Climate Justice Block Grants) of the Working Families Tax Cut Act (WFTCA), EPA has understood that statute to rescind not only balances unobligated as of the WFTCA's July 4, 2025, date of enactment, but also all balances that became subsequently unobligated (*e.g.*, as a result of later grant terminations). Treml Decl., Dkt No. 205-2. For that reason, between July 4, 2025, and April 11, 2026, at EPA's request, OMB executed quarterly rescissions for a total of $1,589,132,739.34 in ECJ funding from EPA's financial systems.

7. Of the total $1,589,132,739.34 in ECJ funding that has been rescinded from EPA's financial systems, $479,450,776.11 was recorded as unobligated in EPA's financial systems on July 4, 2025. Therefore, as EPA understands the Court's June 11 and July 22, 2026, Orders, such approximately $479 million were rescinded consistent with the Court's holdings.[2] Dkt. No. 217, Dkt No. 227. That

---

[1] In relevant part, an apportionment is "[t]he action by which the Office of Management and Budget (OMB) distributes amounts available for obligation, including budgetary reserves established pursuant to law, in an appropriation or fund account." Government Accountability Office, *Glossary of Terms Used in the Federal Budget Process* at 12 (Sept. 2005), *available at* https://www.gao.gov/assets/gao-05-734sp.pdf.

[2] In addition to the approximately $479 million rescinded because it was recorded as unobligated on July 4, 2025, there is up to an additional $376 million that, in EPA's view, were legally unobligated as of July 4, 2025. Specifically, up to approximately $376 million recorded as obligated in EPA's financial system on July 4, 2025, may have been attributable to amounts that exceeded or may exceed (pending closeout) recipients' final allowable pre-termination, termination, and closeout costs for ECJ grants terminated prior to July 4, 2025. Therefore, in EPA's view, notwithstanding such amounts having been *recorded* as obligated, this up to approximately $376 million were also *legally* unobligated as of July 4, 2025, and would be properly rescinded. Treml Decl., Dkt No. 205-2. That amount is still fluctuating as closeouts continue.

leaves approximately $1.109 billion that EPA would need to request for apportionment.

8. Taking Paragraphs 5 through 7 above into account, the first step to "administer the ECJ program" is for EPA to request an apportionment from OMB so that EPA has the legal authority necessary to make new financial obligations in accordance with the Antideficiency Act, 31 U.S.C. § 1517(a). Considering the amount at issue and the need to perform due diligence on both the part of EPA and OMB, the Agency expects the reapportionment process to take several weeks.

9. In addition, as of July 28, 2026, EPA's financial systems reflect $445,664,391.57 in recently deobligated ECJ funding due, in large part, to ongoing grant closeouts. Because such amount has not yet been rescinded from EPA's financial systems, apportionment by OMB is not legally necessary for EPA to make new financial obligations using those funds. Thus, EPA would add this approximately $450 million in recently deobligated funds to the $1.109 billion apportionment from OMB described in paragraph 8 above to for a total of approximately $1.56 billion. Furthermore, if ECJ grant closeouts continue, additional funds may become available for obligation.

10. In total, as the Agency understands the Court's June 11 and July 22, 2026, Orders, once the Agency receives an apportionment of funds from OMB, EPA estimates the Agency would be restarting a grant program worth approximately $1.56 billion in the span of two months.

**Identifying Staff and Contractor Support Resources**

11. During the prior presidential administration, the ECJ program was administered primarily by EPA's Office of Environmental Justice and External Civil Rights (OEJECR) and was staffed by employees in EPA Headquarters and the ten EPA regions. In 2025, as part of the Agency's reorganization efforts, EPA eliminated environmental justice offices agency-wide and removed OEJECR as a National Program Manager (NPM). Accordingly, EPA would need to assign the ECJ program to a new NPM to restart and otherwise implement the program. Making such a decision would likely require, in pertinent part, considering which other Agency work will be deprioritized to accommodate this new work, taking

into account the fact that any decision is likely to impact EPA's ability to meet other statutory obligations, as well as timely obligate appropriated funds other than those at issue in this case. For example, as of July 28, 2026, EPA's financial systems reflect approximately $56 million in funding from the Agency's annual Environmental Programs and Management and Science and Technology appropriation accounts committed to grants that must be awarded before September 30, 2026, or the funds will expire and become unavailable for new obligations.[3] If EPA redirects resources away from awarding those grants to administering the ECJ program instead, some or all of those resources may ultimately be forfeited to expiration.

12. While EPA could theoretically hire new employees and/or obtain contractor support to assist with administering the ECJ program without rediverting existing staff time and resources from other programs, such hiring and contracting is likely to take far more than the two months given by the Court's Orders to administer the ECJ Program. For example, over the life of the original $2.8 billion ECJ program, EPA charged a total of 218 full-time equivalents (FTE) in staff to the appropriation available for ECJ program administration. In Fiscal Year 2026, EPA hiring averages 87 days from the time a recruit is initiated to the time a tentative offer is made, and an additional 39 days until the employee is onboarded. The total time to hire averages 126 days. Additionally, for contractor support over the life of the original $2.8 billion ECJ program, EPA obligated a total of $97.5 million. Based on EPA's average procurement action lead times, which in large part are necessary to implement statutory and regulatory procurement requirements, acquiring new contractor support would likely take between 25 days at a minimum (if EPA was able to limit itself to micro-purchase simplified acquisitions of $15,000 or less while remaining consistent with 48 C.F.R. Part 13) up to 360 days for a fully competed contract award of over $10 million, with the latter being more the type of contract support typically needed to support a $2 billion program.

[3] In relevant part, a "commitment" is "[a]n administrative reservation of allotted funds, or of other funds, in anticipation of their obligation." Government Accountability Office, *Glossary of Terms Used in the Federal Budget Process* at 32 (Sept. 2005), *available at* https://www.gao.gov/assets/gao-05-734sp.pdf.

**ECJ Grant Program Implementation – New Awards**

13. If EPA were to administer the ECJ program by making new awards, several steps would typically be followed to prudently implement a new grant program. First, because OEJECR was eliminated in the 2025 reorganization, the Agency would need to prepare a new delegation to allow the authority currently vested in the Administrator by Clean Air Act section 138 to be exercised by the new NPM responsible for implementing the ECJ Program. *See* 42 U.S.C. § 7438(b) ("the Administrator shall…award grants…."). Delegations are required by law for actions taken by subordinates to be legally valid. *See e.g.*, *American Vanguard Corp. v. Jackson*, 803 F. Supp. 2d 8 (D.D.C. 2011). Based on historical information regarding delegations of authority, we expect preparing the delegation and obtaining the Administrator's signature would take one week.

14. Second, consistent with EPA Order 5700.7A1, EPA's Policy for Environmental Results under EPA Assistance Agreements,[4] and as required by 2 C.F.R. § 200.202, an NPM would typically link the grant program being designed to the Agency's Strategic Plan.[5] EPA's prior Strategic Plan covered only fiscal years 2022 through 2026. EPA's next Strategic Plan, covering fiscal years 2026 through 2030, is still in development.[6] Therefore, an NPM designing a new grant program within the next two months would be unable to perform this important aspect of policy development.

15. Third, EPA would need to activate, create, and/or update a Federal Assistance Listing on SAM.gov, a website operated by the General Services Administration (GSA). *See* 31 U.S.C. § 6101 *et*

---

[4] *Available at* https://www.epa.gov/grants/epa-order-57007a1-epas-policy-environmental-results-under-epa-assistance-agreements

[5] A Strategic Plan is "a Federal agency plan containing the organization's comprehensive mission statement, general goals and objectives, description of how the goals and objectives are to be achieved, description of how performance goals are related to the general goals and objectives, identification of key external factors, and description of program evaluations used to establish the general goals and objectives. Strategic plans must cover a period of not less than 5 years and must be updated and revised at least every 3 years." Government Accountability Office, *Glossary of Terms Used in the Federal Budget Process* at 77 (Sept. 2005), *available at* https://www.gao.gov/assets/gao-05-734sp.pdf.

[6] *See* Environmental Protection Agency, EPA Strategic Plan, *available at* https://www.epa.gov/planandbudget/strategicplan (last visited July 29, 2026).

*seq*.; 2 C.F.R. § 200.203. An Assistance Listing is a detailed public description of a federal program that provides grants or other types of financial assistance awards. Agencies are required by 2 C.F.R. § 200.202 to create an Assistance Listing before announcing a funding opportunity. Based on historical information regarding updating Assistance Listings through GSA, we expect this process would take approximately two weeks.

16. Fourth, EPA would typically compete a new grant opportunity in accordance with EPA Order 5700.5A1, EPA's Policy for Competition of Assistance Agreements.[7] EPA Order 5700.5A1 implements the Federal Grant and Cooperative Agreement Act, which expresses the United States Government's policy to "encourage competition in making grants and cooperative agreements." 31 U.S.C. § 6301 *et seq*. Based on historical information, a typical grant competition of this scale would require at least nine months. Under the circumstances, EPA could seek a waiver of this policy from the EPA Grants Competition Advocate, which, if granted, would allow the Agency to implement a non-competitive program consistent with Agency policy. Based on historical information, we expect the process of preparing and obtaining a waiver will take approximately one week.

17. Fifth, regardless of whether the grant program is competitive, EPA would need to prepare and publish a Notice of Funding Opportunity (NOFO), sometimes known as a Funding Opportunity Announcement (FOA). A NOFO is a publicly available document by which a federal agency makes known its intentions to award discretionary grants or cooperative agreements. EPA's NOFOs are typically published on Grants.gov. A typical NOFO would include, explicitly or via incorporation by reference, all information a potential applicant would need to apply for financial assistance. For example, a NOFO issued on August 6, 2024, as part of the original ECJ Program was 95 pages of dense information.[8] To

[7] *Available at* https://www.epa.gov/grants/epa-order-57005a1-epas-policy-competition-assistance-agreements.

[8] *Available at* https://www.epa.gov/system/files/documents/2024-08/environmental-and-climate-justice-community-change-grants-program-nofo-august-2024.pdf.

Case 2:25-cv-01982-RJC Document 120-1 Filed 11/18/25 Page 7 of 34

allow time for applications to be submitted, EPA typically leaves a NOFO open for a minimum of 45 calendar days, and often longer.

18. Sixth, upon a NOFO closing to any further applications, an NPM would typically begin threshold reviews to determine eligibility of the submitted applications. An NPM would typically provide applicants whose applications are eliminated during threshold review written notification of ineligibility, as well as the opportunity for a debriefing. The estimated duration of threshold review depends on multiple factors, including how many applications EPA receives and the complexity of the applications.

19. Seventh, an NPM would typically begin merit reviews of the eligible applications that passed threshold review. The duration of the merits review stage depends on, among other factors, how many applications EPA receives and the complexity of the applications. Based on historical information, for a program exceeding $1 billion, we estimate the merits review stage would take at least several months.

20. Eighth, an NPM would typically notify successful applicants that they were selected for award and begin the "award phase," which is the process of finalizing a formal grant award. The award phase typically involves the NPM creating a Funding Recommendation, which then, consistent with the delegation of authority described in paragraph 13 above, must be signed by a program Approval Official.

21. Ninth, following signature by the program Approval Official, an NPM typically routes the Funding Recommendation package to an EPA Grants Management Official (GMO). Under the GMO's supervision, an EPA Grants Specialist would normally conduct a Comprehensive Administrative Review of the application and Funding Recommendation package to ensure the recommended award meets all statutory, regulatory, and policy requirements. *See* Exhibit A. This review period typically takes up to 45 days. As of July 7, 2026, EPA has approximately 123 Grant Specialists on staff across Headquarters and all ten EPA Regions that could perform this work.

22. Tenth, if the Funding Recommendation package passes the review described in the previous paragraph, it is typically routed to an EPA Award Official. The EPA Award Official then

typically reviews the package, and, if satisfied that all statutory, regulatory, and policy requirements are met, approves the award. EPA currently has approximately 12 Award Officials across EPA Headquarters and the ten EPA Regions that could perform this work. Increasing the number of Award Officials would typically require personnel to take additional training, as well as changes to EPA's grants information technology system that would take approximately one week. When an EPA Award Official signs the award, EPA has created a financial obligation to the recipient.

23. Taking the information in paragraphs 5-22 above into account, I believe it would be extremely unlikely that EPA would be able to prudently implement the ECJ Program by issuing new awards by September 30, 2026.

**ECJ Grant Program Implementation – Reinstatement**

24. If EPA were to administer the ECJ program by reinstating previously-terminated ECJ grants, EPA would still have several steps to take that could make compliance by September 30, 2026, extremely difficult.

25. First, EPA would need to determine the universe of ECJ grants to be reinstated, if a given recipient desires reinstatement. Based on data in EPA's financial systems, the number of grants awarded with at least some ECJ Program funding was approximately 306.[9] As of July 28, 2026, approximately 73 of those 306 grants are still financially "open" in EPA's financial system, meaning closeout has not concluded and deobligation of amounts in excess of the recipients' allowable pre-termination, termination, and closeout costs has not been completed. *See* Treml Decl., Dkt No. 205-2. On the other hand, approximately 233 of those 306 grants are reflected as "closed" in EPA's financial system, meaning closeout has concluded and deobligations of amounts in excess of the recipients' allowable pre-termination, termination, and closeout costs has been completed. *See* Treml Decl., Dkt No. 205-2. Based

[9] Some grants were funded with multiple lines of accounting, including funds from other, non-ECJ programs. Accordingly, it is difficult to strictly identify some grants as being clearly "an ECJ grant" or "not an ECJ grant."

on historical information, we estimate that reinstating the approximately 73 open grants would require approximately three weeks. Because funding would need to be restored to the approximately 233 closed grants, assuming EPA has obtained an apportionment from OMB as described in paragraph 5 above, we estimate reinstatement of those closed grants would require at least two months.

26. Second, as described in paragraphs 11 and 12 above, EPA would need to assign or obtain staff and/or contractor support. It would be imprudent and impractical to reinstate between 73 and 306 grants without any dedicated EPA staff and/or contractors in place to provide recipients with necessary communication regarding oversight and logistics.

27. Third, as part of reinstatement, EPA needs to consider that, of the 306 grants identified in paragraph 25 above, approximately 37 are involved in litigation other than *Sustainability Institute*. For comparison, the total dollar amount awarded to the grants at issue in *Sustainability Institute* was approximately $63.7 million, whereas the total dollar amount awarded to grants with at least some ECJ Program funding involved in litigation other than *Sustainability Institute* is approximately $508 million. This puts EPA at significant risk of being unable to comply with potentially conflicting future court orders regarding the same funding.

I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct to the best of my knowledge.

TRAVIS VOYLES
Digitally signed by TRAVIS VOYLES
Date: 2026.07.31 14:00:55 -04'00'

Travis Voyles
Associate Deputy Administrator
United States Environmental Protection Agency

# Exhibit A to Declaration of Travis Voyles

**U.S. ENVIRONMENTAL PROTECTION AGENCY**

**COMPREHENSIVE ADMINISTRATIVE REVIEW**

Use for Processing Grants/Cooperative Agreements

New/ Supplemental Awards

as of May 2025

| **I. GENERAL INFORMATION** | |
|---|---|
| **Applicant Name:** | |
| **EPA Grant Number:** | |
| **Type of Applicant:** | ☐ **State** ☐ **Local** ☐ **Non-Profit** ☐ **University** ☐ **Tribe** ☐ **Foreign Government** ☐ **Other** |
| **Type of Action:** | ☐ **New** ☐ **Supplemental** |
| **Applicable Regulations:** | 2 CFR 200 and 2 CFR 1500 and 40 CFR 33<br>Other 40 CFR Parts as necessary:<br>☐ 35 Subpart: ________ ☐ 40 Research<br>☐ 45 Training ☐ 47 Env. Ed<br>☐ 49 Tribal Air Quality |
| **Additional Requirements:**<br><br>NOTE: Consult National Program Manager (NPM) Guidance documents and FR Templates for additional information | Does the grant program have additional restrictions/requirements that have to be satisfied prior to award? ☐ **YES** ☐ **NO**<br>Programs with Additional Restrictions/Requirements include (but are not limited to) the following:<br>☐ Air Pollution Control Program ☐ National Environmental Education<br>☐ Brownfields ☐ Water Pollution Control (106)<br>☐ Chesapeake Bay ☐ Water Quality Mgmt. Planning (604b)<br>☐ Clean Water/Drinking Water SRF Indian ☐ State Indoor Radon<br>☐ Environmental General Assistance ☐ Training Assistance<br>☐ Non-Point Source Management Grants ☐ Superfund, Subpart M & O<br>☐ Water Infrastructure Congressional Earmarks (cannot be awarded without NEPA clearance) |
| **Statutory Authority (or Statutory Authorities, as appropriate):** | |
| **Assistance Listing Number:** | |
| **For more information about Statutory Authorities, Assistance Listings, and Delegations of Authority, refer to: Grants Crosswalk** | |

| II. ELIGIBILITY AND PRE-AWARD CAPABILITY REVIEW | YES | NO | REFERENCES & NOTES |
|---|---|---|---|
| **1.** Is the Applicant eligible to receive assistance based on the statutory authority, assistance listing number (CFDA), competitive solicitation and/or regulations? | ☐ | ☐ | **If NO, the award cannot be made. Please alert your Grants Management Officer (GMO) to notify the applicant.**<br><br>*NOTE- Sam.gov and/or the competitive solicitation are the recommended sources for this determination.* |
| **2A.** For this application, does the HQ/Regional office have Approval Authority?<br><br>• Are there any limitations contained in the Approval Delegation?<br>○ If YES, were they met?<br>☐ Yes<br>☐ No | ☐<br><br>☐ | ☐<br><br>☐ | **If NO to any question, the award cannot be made**<br><br>**APPROVAL** Delegation Number: ______________<br><br>Approval Official:<br>☐ AA/RA<br>☐ Division Director (name)__________________<br>☐ Other: ____________________________ |
| **2B.** For this application, does the HQ/Regional office have Award Authority?<br><br>***REMINDER:*** *Approval and Award Authorities can never be the same. Standard Award Authority is found at: 1-14-A.* | ☐ | ☐ | **AWARD** Delegation Number if other than 1-14-A: ________<br>Award Official: ____________________________<br><br>*NOTE- Limitations contained in the Delegation of Authority must be satisfied prior to assistance.* |
| **3A**. Does the applicant have a valid registration in the System for Award Management (SAM)? Website: SAM.gov<br><br>Expiration Date: _______________<br><br>*NOTE- The applicant **MUST** have a valid registration at the time of award or the award will be rejected by other federal systems. If this applicant's registration expires within 30 days of your review, contact the applicant to remind them to renew their registration so that it is current when the award is signed.* | ☐ | ☐ | Applicant must be registered before award can be made for new awards and supplemental amendments. The registration date must be current.<br><br>**If NO, applicant must be advised to register/re-register at SAM.gov and that no award can be issued until proof of registration is provided.**<br><br>See also: PN-2016-G03 "Verification of Applicant Organization and DUNS Number"<br><br>*NOTE- In order to access the most current data, you **MUST** log into SAM.gov using your Government credentials when checking applicant information. For information on using SAM,* See:<br>SOP-2022-G01 |
| **3B.** Does the Organization *Name* or *Doing Business As* in SAM agree with the Legal Name on the SF-424 and in the NGGS Public Address Book (PAB)? | ☐ | ☐ | |
| **3C.** Does the *Entity Mailing Address* in SAM agree with the Address on the SF-424 and in the PAB? | ☐ | ☐ | **3B., 3C. & 3.D Related Reference Notes:** *Acronyms of Grantee information in the PAB entry should not be changed. If the applicant information does not match in SAM and the PAB, Grant Specialists should work with their Grant Automation Coordinators (GAC) to upd#ate the PAB entry with any necessary changes. The UEI, Entity Name, and Address in the award document must match SAM.gov or else the award cannot be made.* |
| **3D.** Does the Unique Entity Identifier (UEI) on the SF-424 agree with the information in PAB for this applicant? | ☐ | ☐ | |
| **3E.** Does the applicant or any entity or person identified in the application have any exclusions listed in the System for Award Management?<br>Website: SAM.gov<br>Quick Start Guide for Exclusions Search & View<br><br>Date Checked: _______________ | ☐ | ☐ | **3E. Related Reference Note: Award may not be made to entities or persons excluded from participation in Federal Assistance programs. If applicant is listed, notify GMO and Program Office.**<br>See Grants Policy Issuance (GPI) 18-01 – Suspension and Debarment |

| | | | | |
|---|---|---|---|---|
| **4.** Is the expected total amount of the award >$250K?<br>If Yes, a review of Federal Awardee Performance Integrity Information System (FAPIIS) is required within 30 days prior to award. FAPIIS information is available through the Entity Information in SAM.gov.<br><br>The FAPIIS data in SAM.gov is named responsibility/ qualification, or R/Q for short, and is part of the entity information domain in SAM.gov.<br><br><br>Agencies will continue to submit responsibility and qualification data through the FAPIIS Module in the Contract Performance Assessment Reporting System (CPARS). See FAPIIS Instructions in the CPARS Guide<br><br>Date Checked: ____________ | ☐ | ☐ | | If YES, include a screenshot in the grant file from the Responsibility/Qualification screen in SAM.gov, showing the search results and date of search. If there are any negative findings, please address with the GMO and Award Official immediately. If an award is not made, the AO/GMO must work with the National Policy Training and Compliance Division (NPTCD). See Policy Notice 2016-G02-R2<br><br>*NOTE- In order to access the most current data, you **MUST** log into SAM.gov using your Government credentials when checking applicant information.* |
| **NON-PROFIT APPLICANTS** ☐ **N/A**<br>**(If N/A, skip to Section III, [No. 7] in this document)** | **YES** | **NO** | **N/A** | **REFERENCES & NOTES** |
| **5.** Is the Applicant an eligible Non-Profit organization? | ☐ | ☐ | ☐ | If NO, contact your GMO and Program Office to discuss. |
| **5A.** How was the applicant's 501(c) status verified? Check appropriate box below:<br><br>IRS Letter, Articles of Incorporation or State incorporation (Include in the grant file)<br>☐ IRS Website: IRS Non-Profits (Include screenshot of website in grant file) | ☐ | ☐ | ☐ | Reference: IRS Tax Exempt Status For Your Organization<br><br>**5A. Related Reference Notes:**<br>Note: If the applicant's tax status indicates a status other than 501(c)(3), 501(c)(4), 501(c)(6), consult with your HQ or Regional Counsel. |
| **5B.** If the Non-Profit organization is a 501(c)(4), has it confirmed via email or otherwise that it does not lobby? | ☐ | ☐ | ☐ | **5B. Related Reference Notes:**<br>**If NO, this application may not be funded because award of assistance is prohibited to organizations which lobby or use Federal funds to lobby.** |
| **6.** Has this applicant applied for more than **$200K** federal funds for this action?<br><br>*Note: Pre-award certifications are **NOT** required for awards of $200K or less.* | ☐ | ☐ | | If YES, applicant must be certified prior to award. Check COMPLY to determine if certification requirements have been met. If No, go to 7B.<br><br>**See EPA Order 5700.8** |
| **6A.** Does the applicant have an active Pre-Award Certification?<br><br>Expiration Date of Certification: ____________<br><br>If the certification expires during the life of the award there is NO need to request a pre-award recertification. | ☐ | ☐ | | **6A. Related Reference Notes: If NO, the Pre-award Certification process should be completed prior to award.** In rare instances, a conditional award can be made with proper approvals and written notice to the NPTCD Director, see EPA Order 5700.8 section 10(d). If a current certification is set to expire within approximately 30 days of the anticipated signature date, it is recommended to refer the grantee for re-certification. |

| | | | |
|---|---|---|---|
| The recipient would only need to be re-certified if it is slated to receive a NEW award. | | | Request Non-Profit Pre-Award Review Capability Certification at: Non-Profit Pre-Award Certification Review Request |
| **III. RISK REVIEW** | **YES** | **NO** | **REFERENCES & NOTES** |
| **7A.** Is this a new recipient (defined as not having received an award from EPA on or after October 1, 2014 (FY 2015)? If No, skip to Question 8.<br><br>**7B.** If Yes, has recipient completed the mandatory training requirement outlined in PN-2024-G02? If yes, skip to question 8. | ☐<br><br>☐ | ☐<br><br>☐ | Use this walkthrough for instructions on how to look up a recipient's award history in USASpending.gov.<br><br>Use these instructions to check for completion of the training requirement in Applicant and Recipient Training Report - Power BI (powerbigov.us)<br><br>**IF NO:**<br>• Add the New Recipient Training Requirement term and condition to the award<br>• Use "ADDITIONAL FOLLOW-UP ACTIONS" section of this checklist to note the Special Condition and follow-up needed with the recipient to ensure completion of the training |
| **8.** Are there any unresolved reports in COMPLY and/or overdue closeouts identified in the "EPA GRIP Tool" for this applicant?<br><br>**If yes, which cost categories does it affect?**<br>☐ **All**<br>or select specific ones:<br>☐ Personnel ☐ Fringe benefits<br>☐ Travel ☐ Supplies<br>☐ Equipment ☐ Contractual<br>☐ Indirects ☐ Other (e.g., Subawards or Participant Support Costs)<br><br>Reminder: verify that the applicant's corrective action plan is being implemented properly and/or include a special T&C in the award. | ☐ | ☐ | If YES, this application may not move forward until: 1) all unresolved administrative findings are remedied, 2) a special term and condition has been added to the award, and/or 3) the applicant has a corrective action in place that addresses the concern. In the event that this matter cannot be resolved and the award is denied, the GMO must notify the NPTCD Director.<br><br>See Section 10 of EPA Order 5700.8 for further guidance and GS should consult with your Grants Management Officer, as appropriate.<br><br>If you answered YES, you must add a comment in the "ADDITIONAL FOLLOW-UP ACTIONS" section of this checklist explaining what the findings are and what steps you took to resolve. |
| **9.** Are there performance, technical, management and/or administrative issues that affect the risks posed by the applicant if it gets an award? For example:<br><br>• Are there issues that the program office has informed the grants office about, or that the grants office is otherwise aware of, that impact the applicant's financial stability and/or management systems that could adversely impact successful performance of the grant?<br>• Are there past performance or audit issues that could affect the ability of the applicant to successfully perform the grant and ability to effectively implement grant requirements?<br>• Are there other performance, technical, management or administrative issues that may impact the applicant's ability to successfully perform the grant-if so, explain them. | ☐ | ☐ | If you answered YES, you must add a comment in the "ADDITIONAL FOLLOW-UP ACTIONS" section of this checklist explaining what the findings are, whether it increases risks to the Agency if the applicant receives an award, and what steps you took to resolve the issues or address the risks. |

| IV. ADMINISTRATIVE REVIEW | YES | NO | REFERENCES & NOTES |
|---|---|---|---|
| **10.** Was the application for Federal Assistance (SF-424) signed by the Authorized Certifying Official or was the application submitted by an Authorized Organizational Representative through GRANTS.gov?<br><br>**10A.** Have all of the required forms and documents been signed and submitted with the application?<br>☐ Key Contact Form (EPA Form 5700-54)<br>☐ Certification Regarding Lobbying - EPA Form 6600-06 (> $100K), as applicable ☐ N/A<br>☐ Budget Information for Non-Construction Programs – SF-424A<br>☐ Budget Detail Narrative<br>☐ Workplan/Scope of Work<br>☐ Pre-Award Compliance (EPA Form 4700-4) ☐ N/A (for supplemental actions)<br>☐ Indirect Cost Rate* as applicable ☐ N/A<br><br>*Negotiated Rate, Approved Cost Allocation Plan, or indication by the applicant that the default 10% de minimis rate will be used. | ☐ | ☐ | **9. Related Reference Notes:**<br>**If not signed by an authorized representative, the GS must contact the applicant and obtain the appropriate signatures via the revised application with accurate signatures or a verification via email that the signatory is authorized by the organization.**<br><br>Note: Digital signatures on forms received through Grants.gov are acceptable even if the signer is not listed among the Key Contacts. Grants.gov ensures that all persons who digitally sign application forms are authorized to submit them on behalf of the applicant organization.<br><br>Refer to [PN-2018-G12 and guidance] & [GPI 09-01] & PN-2020-G04-R2<br><br>**9A. Related Reference Notes:** Ensure that you obtain any missing documents or revisions to existing documents via email (not through Grants.gov) and distribute to appropriate EPA staff.<br><br>For additional information, see the GPIs listed above, as well as<br>• GPI-14-01 Electronic Submission of Initial Grant Applications and<br>• PN-2015-G06 Mandatory Use of Pre-award System for All Applications and<br>• PN-2016-G03 "Verification of Applicant Organization and DUNS Number" |
| **11.** Have you reviewed sections I.A., I.B. and I.C. of EPA Form 4700-4 (Pre-award Compliance Review Report) in accordance with the following SOP: https://work.epa.gov/sites/default/files/2024-06/sop_2023_g01.pdf and forwarded it to the OECRC designated reviewer using the EPA Grant File system?<br><br>Has the applicant submitted the most current version of the Form?<br><br>Has the 4700-4 Form has been signed and dated by an applicant's Authorized Representative? Note: Digital signatures on forms received through Grants.gov are acceptable even if the signer is not listed among the Key Contacts. Grants.gov ensures that all persons who digitally sign application forms are authorized to submit them on behalf of the applicant organization.<br><br>Date forwarded to OECRC designated reviewer: ________<br><br>**11A. Has the designated reviewer approved the 4700-4 and has the approval been recorded in the EPA Grant File system?** | ☐<br><br>☐<br><br>☐<br><br>☐ | ☐<br><br>☐<br><br>☐<br><br>☐ | ☐ ☐ ☐ ☐<br>For new awards only, the GS must verify the information in sections I.A. through I.C. of the 4700-4 Form (Address Information and Unique Entity Identifier). The GS must also ensure that it has been signed by an applicant's Authorized Representative prior to submitting the Form to the reviewer through the EPA Grant File System.<br>If:<br>• section I.A. and/or I.B. does not match the SF-424 information, or<br>• section I.C. is not properly completed<br>• the form has not been signed and dated by an authorized representative, or<br>• the version of the 4700-4 is outdated,<br>the GS must request a new Form from the applicant.<br><br>This application may not be funded until the form has been approved by the OECRC designated reviewer. In rare cases, a conditional award may be necessary prior to a decision to prevent the loss of expiring funds. See Appendix I of the SOP for the T&C for Conditional Awards |

| | | | |
|---|---|---|---|
| Date of OECRC designated reviewer approval: __________ | | | If the form is not approved, the award cannot be made.<br>Refer to the [Job Aid for Obtaining, Transmitting and Documenting EPA Form 4700-4 Reviews For Grant Specialists and OECRC Designated Reviewers]() for details on how to obtain, transmit and document the 4700-4 form.<br><br>It is OECRC's responsibility to inform the GS, the GMO, the Program Office and RTP Finance Office of all decisions relating to non-compliance findings and actions taken. Communications regarding OECRC's review and determination must be retained in both the OECRC and EPA Grant File System. |
| **12.** Has the applicant indicated it is delinquent on any Federal debt?<br><br>If Yes, is the applicant a Non-Profit or For-Profit?<br><br>Debt is a potentially complex issue. Grant Specialists must be sure to consult with OGC/ORC and their GMOs to be sure there are no prohibitions to making a grant award.<br><br>There are differences by type of recipient and debt. To provide assistance OGD has developed a Guidance document entitled: ["Unpaid/Delinquent Federal Debt"]() which details the recommended procedures for staff to follow. | ☐<br><br>☐ | ☐<br><br>☐ | If the applicant has checked Yes on the SF-424 form, then the GS must contact the applicant to determine if the matter has been resolved and request supporting documentation. If the matter has not been resolved or if the applicant is unable to provide adequate documentation regarding this matter, the GS must bring this to the attention of the GMO for next steps and/or resolution, which may include debt offsets included in an award made to other than non-profits and for-profits.<br><br>NOTE- Federal assistance cannot be granted to non-profit and for-profit applicants that are delinquent on Federal debt. |
| **13.** According to section "**Preapplication Coordination**" of the Assistance Listing and EPA's list of programs subject to Intergovernmental Review [https://www.epa.gov/grants/epa-financial-assistance-programs-subject-executive-order-12372-and-section-204-demonstration]() is the application subject to the Intergovernmental Review ([E.O. 12372]()) & [Section 204 Demonstration Cities & Metropolitan Development Act (DCMDA)]() requirements contained in [40 CFR 29]()?<br>Select the language from the list of programs subject to Intergovernmental Review:<br>☐ Excluded ("This program is excluded from coverage under E.O. 12372")<br>☐ Eligible ("This program is eligible for coverage under Executive Order (EO) 12372, Intergovernmental Review of Federal Programs")<br><br>If eligible, what was the date submitted for review either to a participating Single Point of Contact (SPOC) or directly to affected areas by the applicant: ______________<br>See Q.19 of the SF-424<br>* 19. Is Application Subject to Review By State Under Executive Order 12372 Process?<br>☐ a. This application was made available to the State under the Executive Order 12372 Process for review on ________.<br>☐ b. Program is subject to E.O. 12372 but has not been selected by the State for review.<br>☐ c. Program is not covered by E.O. 12372. | ☐ | ☐ | If NO (Excluded), then no action is required by the applicant. If YES, ensure the sub questions on the left-side of this Checklist are completed adequately.<br><br>**REVIEW PERIOD TIMEFRAMES:**<br>• Continuing Grants- Waiting period is 30 days<br>• Project Grants- Waiting period is 60 days<br>• DCMDA- Waiting period is 60 days<br><br>***NOTE 1:*** *Intergovernmental review does not apply to tribal governments*<br><br>***NOTE 2:*** The EO 12372 process should be completed prior to award. In rare instances, a conditional award (a special award term and condition must be applied) can be made with proper approvals. An example of the Administrative term and condition is as follows:<br><br>***"INTERGOVERNMENTAL REVIEW PERIOD***<br>*In accordance with 40 CFR Part 29, EPA must allow for an intergovernmental review comment period on this grant program. Accordingly, the recipient may incur costs at its own risk but shall not draw down any funds associated with this award until the process is completed. This includes successful resolution of any issues identified during the comment period. The recipient must provide evidence of* |

| | | | |
|---|---|---|---|
| Note: In the absence of a SPOC, applicants must directly notify affected localities.<br><br>Has the timeframe for comment expired? ☐ Yes ☐ No<br>Were comments submitted? ☐ Yes ☐ No<br>Were comments addressed? ☐ Yes ☐ No ☐ N/A<br><br>☐ Program is eligible but affected area organizations do not participate. Documentation must be in the file. | | | *submission of the project for intergovernmental review. This submission must be sent by email to the EPA Grants Specialist with a courtesy copy to the Project Officer. The comment period will end* ***{INSERT APPROPRIATE NUMBER BASED ON ABOVE REVIEW PERIOD TIMEFRAMES}*** *days from the aforementioned submission."* |
| **14.** Has the applicant included Pre-Award Costs in its budget/work plan/SF-424?<br><br>**NOTE-** Pre-Award costs are defined as costs incurred prior to the award date, but on or after the start date of the budget/project period. All eligible costs must be incurred during the budget/project period as defined by the start and end date shown on the grant award.<br><br>**If YES, are the Pre-Award Costs allowable?**<br>• **Must be included in the budget/work plan/SF-424or revision thereto**<br>• **Must be allowable by regulations/statute/policy**<br>• **Must be approved by the Project Officer via the FR or revision thereto.**<br>• **If over 90 days, a justification is required in Question E.2.a of the FR or revision thereto.**<br>• **No justification is required for pre-award costs up to 90 days** | ☐<br><br><br><br><br><br><br><br>☐ | ☐<br><br><br><br><br><br><br><br>☐ | If YES, GS must add pre-award term & condition (provided below) for any costs incurred prior to the award start date:<br><br>***"PRE-AWARD COSTS***<br>*In accordance with 2 CFR 1500.9, the grantee may charge pre-award costs (both Federal and non-Federal matching shares) incurred from* ***{INSERT START DATE}*** *to the actual award date provided that such costs were contained in the approved application and all costs are incurred within the approved budget period."*<br><br>Pre-award costs are not always authorized or may be limited.<br><br>See additional guidance and restrictions at:<br>**2 CFR 200.458**<br>**2 CFR 200.308(d)(1)**<br>**2 CFR 1500.9**<br>**40 CFR 35 Subparts A, B, M and O section 35.6275.** |
| **15.** Is the proposed timeframe for the project within the statutory/regulatory/policy time constraint requirements?<br><br>All project and budget period waivers can be found on OGD's intranet waiver page | ☐ | ☐ | Check Statutory/Regulatory/Policies/CFDA Limitations Budget and project period timeframes may not exceed limitations imposed by **M Accounts** (see page "2-14" of the linked document).<br><br>See PN-2018-G11, and GPI 11-01, & GPI 12-06.<br><br>• **Earmark Duration not limited**<br>• **7 years Discretionary Grants, Part 35 Subpart O, SRFs**<br>• **5 years STAG-CEP & LUST**<br>• **4 years Indian General Assistance Program**<br>• **3 years Training** |

| V. FINANCIAL REVIEW | YES | NO | N/A | REFERENCES & NOTES |
|---|---|---|---|---|
| **16.** For State and Tribal grants under Part 35 Subparts A & B, has the State/Tribe requested a simplified cost review? If Yes, has the State/Tribe provided annual budgets and self-certified its internal controls system? See Column "N" of the Grants Crosswalk which identifies eligible grant programs.<br><br>[NOTE: Check the "Recipient Summary" of the COMPLY system to confirm previous submittal of State Cost Review Assurance] | ☐ | ☐ | ☐ | If the answer to all questions is Yes, then the cost review template for 40 CFR Part 35 Subpart A or B can be used.<br><br>If any of the answers are NO, or the recipient is high risk, then the Project Grant Cost Review template must be used.<br><br>See Interim Guidance on Cost Review of Grants/Performance Partnership Grants Awarded under 40 CFR Part 35 Subpart A |

| | | | | |
|---|---|---|---|---|
| <br>Recipient Information<br>Basics<br>Name: ENVIRONMENTAL CONSERVATION, NEW YORK DEPARTMENT OF<br>Abbreviation: NYSDEC<br>DUNS: 806780912<br>Region: EPA R2<br>Recipient Type(s) [SAM.Gov]: U.S. State Government<br>Website:<br>State Cost Review Assurances on File: Yes | | | | See also GPI 08-04 State Grant Cost Review and GPI 13-02 Streamlining Tribal Grants Management. For Certification template, see Attachment 1 (page 6) of GPI 08-04. |
| **17.** Have you completed the appropriate cost review form?<br>• Cost Review Template For GRANT SPECIALISTS - Continuing Environmental Program/Gap Or Project Grants (DOCM)<br>• Cost Review Template For Grant Specialists - Project Grants And All Other Grants Subject To This Cost Review - Required Use Oct 1, 2008<br>• Cost Review Template and Guidance for Grant Specialists Special Appropriations Act Projects* and CWSRF & DWSRF Grants for DC and Territories<br>• Cost Review Template and Guidance for Grant Specialists Clean Water & Drinking Water State Revolving Fund (CWSRF and DWSRF) Grants<br>• Cost Review Template And Guidance For Grant Specialists - Grants Under 40 CFR Part 35 Subpart A (to be used in accordance with GPI 08-04)<br>• Cost Review Template for Grants Specialists – Grants under 40 CFR Part 35 Subpart B (to be used in accordance with GPI 13-02) | ☐ | ☐ | ☐ | See also Internal Interim Final General Cost Review Guidance for Assistance Agreements (PDF) (for POs and GSs)<br><br>Cost review templates and guidance, as well as indirect cost and cost share calculators are available here:<br>https://work.epa.gov/grants/cost-review<br><br>REMINDER: use of the combined CEP/Project Grant template is strongly encouraged but optional for all grants except for Congressionally Directed Spending awards under program code CG. For this program, the use of **Project Grant Option** of this form is **Mandatory**. |
| **18.** Are there Statutory/Regulatory/Programmatic Cost Share requirements for this award?<br>If NO, Proceed to Question No.18.<br>If YES, complete Questions below:<br><br>Cost-share/match is based on:<br>☐ Statute<br>☐ Regulation<br>☐ Other (e.g., required under a competition or voluntary)<br><br>**What is the Cost-share requirement (specify the percentage(s), and the types of costs to which it applies and explain any exclusions):**<br>☐ | ☐ | ☐ | ☐ | If the match provided by the applicant is insufficient, the application must be revised to provide for adequate cost-sharing or the award cannot be made (or a lower federal amount corresponding to the lower cost-share may be possible to award).<br><br>NOTE: If the project includes EPA In-Kind costs, then ensure that the Cost-share/Match is based on the total EPA Contribution, including EPA In-Kind.<br><br>See Grants Crosswalk for cost share requirements for each program and OGD Cost Share Training<br><br>Cost-share may be based on total project costs, amount of Federal funds provided, or something else; for example, only certain types of costs may be subject to the match such as equipment in some DERA grants or set asides in DWSRF. However, the calculation shown in the award document is always the result of dividing line 12 by line 11 on the budget “approved budget” table in the draft award document. percentages should be shown with two (2) decimal places [e.g., 50.67%]<br><br>**17A. Related Reference Notes:**<br>• **Air 105 MOE:** No agency shall receive any grant under this section during any fiscal year when its expenditures of non-Federal funds for recurrent expenditures for air pollution control programs will be less than its expenditures were for such programs during the |

| | | | | |
|---|---|---|---|---|
| **18A.** Does the application have a maintenance of effort/level of effort requirement (See guidance in Reference/Notes if applicable for Air 105, Water 106 & Nonpoint Source 319)?<br><br>**18B.** What is the source of the Cost-share/Match?<br>☐ **Other Federal Funds *(see reference note)**<br>☐ **Recipient Contribution**<br>☐ **State Contribution (for agreements where the State is not the Recipient)**<br>☐ **Local Government/Authority Contribution (for agreements where the Local Government/ Authority is not the Recipient)**<br>☐ **Other Contribution** | ☐ | ☐ | ☐ | preceding fiscal year. In order for the Administrator to award grants under this section in a timely manner each fiscal year, the Administrator shall compare an agency's prospective expenditure level to that of its second preceding fiscal year.<br><br>• **Water 106 LOE:** To receive a Section 106 Water Pollution Control grant, a State or interstate agency must expend annually for recurrent Section 106 program expenditures an amount of non-federal funds at least equal to expenditures during the fiscal year ending June 30, 1971.<br><br>• **Nonpoint Source 319 LOE:** No grant may be made to a State under this subsection in any fiscal year unless such State enters into such agreements with the Administrator as the Administrator may require to ensure that such State will maintain its aggregate expenditures from all other sources for programs for controlling pollution added to the navigable waters in such State from nonpoint sources and improving the quality of such waters at or above the average level of such expenditures in its two fiscal years preceding February 4, 1987 |
| If any of the Cost-share/Match is being met through Recipient or third-party In-Kind contribution, has the recipient provided adequate information within the budget detail and narrative documentation demonstrating the value of the proposed In-Kind costs? | ☐ | ☐ | ☐ | **<u>17B. Related Reference Notes:</u>**<br>*Using Federal funds for Cost-share is generally prohibited except for Community Development Block Grants & General Revenue Sharing funds or unless the other Federal agency has specific authorizing legislation which permits their funds to be used as cost-share/matching costs.<br><br>If NO, follow up with the recipient to obtain additional budget details. Refer to 2 CFR 200.306(d) - (j) for guidance on what to expect when reviewing In Kind budget information. |
| **18C.** Is the applicant proposing leveraging? | ☐ | ☐ | ☐ | **17C. Related Reference Notes:**<br>If YES, the "leveraging" term and condition must be included in all competitive awards where the recipient proposed and was evaluated based on leveraging. If the leveraging included a voluntary cost-share or overmatch component, then the "voluntary cost-share or overmatch" term and condition must also be included in the competitive award.<br><br>For additional information and guidance see Cost-Share Leveraging Guidance |
| **VI. GRANTS SPECIALIST WORKPLAN REVIEW** | **YES** | **NO** | | **REFERENCES & NOTES** |
| **19.** Do all the activities contained in the workplan appear consistent and allowable with authorizing statute(s)?<br><br>Do the activities align with the proposed budget? | ☐<br><br>☐ | ☐<br><br>☐ | | Grants Specialists should conduct a cursory review of the work plan to check for any potentially unallowable activities or procurements. If any are identified the GS should consult with the PO, GMO, and OGC/ORC as appropriate to make a final determination. Then the PO should follow-up with the applicant to obtain a revised application package that removes unallowable items and associated budget entries.<br><br>The GS should look for any obvious inconsistencies and follow-up with the PO and/or GMO to determine appropriate resolution with the applicant. |

| | | | |
|---|---|---|---|
| **20.** Does the workplan include any of the following items?<br>☐ Program Income<br>☐ Sole source procurements<br>☐ International activities/travel<br>☐ Conferences/workshops<br>☐ Food/Refreshments Participant support costs<br>☐ Subawards<br>☐ Participant support costs<br>☐ Data collection/measurement requiring QA<br>☐ Equipment<br>☐ Planned surveys requiring OMB approval<br>☐ EPA In-Kind Support | ☐ | ☐ | Each of these items has special requirements and restrictions that must be specifically addressed by the Project Officer in the funding recommendation and/or cost review. The GS needs to be aware of these in advance of conducting a review of the FR to ensure that the PO didn't overlook any.<br><br>See also: Internal Interim Final General Cost Review Guidance for Assistance Agreements (PDF) (for POs and GSs)<br><br>The latest drafts (as of May 2025) of the Cost Review Guidance and Project Officer Cost Review Template for Continuing Environmental Program and Project Grants can be found here: https://work.epa.gov/grants/cost-review |
| **21.** Does the work plan contain milestones, and output and outcome measures as required in the Environmental Results Order? | ☐ | ☐ | These should be easily identifiable. If these are not present in the work plan, the GS should consult with the PO for follow-up with the applicant.<br><br>The term "**outcome**" means the result, effect or consequence that will occur from carrying out an environmental program or activity that is related to an environmental or programmatic goal or objective. Outcomes may be environmental, behavioral, health-related or programmatic in nature, must be quantitative, and may not necessarily be achievable within an assistance agreement funding period.<br><br>The term "output" means an environmental activity, effort, and/or associated work products related to an environmental goal or objective, that will be produced or provided over a period of time or by a specified date. Outputs may be quantitative or qualitative but must be measurable during an assistance agreement funding period. |
| **VII. GRANTS SPECIALIST FUNDING RECOMMENDATION REVIEW** | **YES** | **NO** | **REFERENCES & NOTES** |
| **22. [FR Section I]** Has the Funding Recommendation (FR) been signed by the Authorized Approval Official or their Delegate?<br><br>(note: if a delegate is signing the FR, a best practice is to include a comment in the FR indicating that the delegate was acting in the absence of the approval official) | ☐ | ☐ | **If FR is not signed by the correct Approval Official with the proper Delegated Authority return FR to Draft for correction by the PO.**<br><br>See Return to Sender Guidance |
| **23. [FR Sections A.15 & A.16]** Are the Statutory Authority and Delegation of Authority correct?<br><br>They should match the information in the **Grants Crosswalk** | ☐ | ☐ | **If incorrect, the FR must be sent back to Draft for correction by the PO.**<br>**NOTE-** Some Delegations have specific limitations that require national concurrence in the form of a memo that should be attached to the FR before the FR is finalized, such as Delegation 14-45. Some new programs may also have Temporary Delegations, so verification of current status may be required.<br><br>Note also, if international activities are included in the Agreement, NEPA 102(2)(f) should likely be added as an authorizing statutory authority in section A.15.<br>See Return to Sender Guidance |
| **24. [FR Section A.23.a thru d]** Does the project description comply with the Data Quality Standards for project descriptions? See SOP-2021-G04. | ☐ | ☐ | If NO, advise PO to enter an FR comment to fix the description and/or provide additional information for sections A.23.a through c. **Note: if any changes are needed to the Subrecipient Activities description (A.23.d ) they can** |

| | | | | |
|---|---|---|---|---|
| The Description must address the following 4 elements:<br>1. Assistance award's purpose;<br>2. Activities to be performed;<br>3. Anticipated deliverables and expected outcomes, and intended beneficiary(ies);<br>4. Subrecipient activities if known or specified at the time of award.<br><br>It must also include a concise, clear description of the purpose/scope of the project in a manner that is understandable to the public. It should contain media-specific or environmental KEY TERMS that may be used as search terms by the public (e.g., air quality, toxins, solid waste, mercury, etc.). | | | | **only be made by revising the description in FR Question E.9. This will require the FR to be returned to draft.**<br><br>**Did you know that the first 140 characters (including spaces) of the project description get posted on the USASpending.gov website?** |
| **25. [FR Section B.1.a. & B.1.b.]** Has the PO properly documented the decision to award a Cooperative Agreement vs. a Grant?<br><br>Key elements:<br>1) The description should establish that assistance is appropriate because the project is authorized by Federal statute for the recipient to implement its own program for a public purpose.<br>2) It should define the level of EPA involvement to determine if a Grant or Cooperative Agreement is appropriate. | ☐ | ☐ | | **If incorrect, the FR must be sent back to Draft for correction by the PO.**<br><br>**NOTE- A Programmatic T&C for Substantial Involvement must be included in the FR for a Cooperative Agreement.**<br><br>See Return to Sender Guidance<br><br>See the Policy for Distinguishing Between Assistance and Acquisition, EPA Order 5700.1. |
| | **YES** | **NO** | **N/A** | **REFERENCES & NOTES** |
| **26. [FR Section B.2 thru B.2.h.]** If the workplan and budget include activities involving conducting conferences or workshops, has the PO addressed **ALL** the applicable FR questions?<br><br>**Note 1**: Community Meetings funded by assistance agreements must comply with these requirements.<br><br>**NOTE 2:** POs must provide responses for FR questions B.2.a thru g. No blanks are allowed. | ☐ | ☐ | ☐ | If YES, Program must demonstrate compliance with the Best Practices for Conferences in FR.<br><br>**If NO, return FR to Draft for correction by the PO.**<br><br>See Return to Sender Guidance<br><br>Also see: 200.432 Conferences, which includes the following definition: A conference is defined as a meeting, retreat, seminar, symposium, workshop or event whose primary purpose is the dissemination of technical information beyond the non-Federal entity and is necessary and reasonable for successful performance under the Federal award. |

| | YES | NO | N/A | REFERENCES & NOTES |
|---|---|---|---|---|
| **27**. **[FR Section B.3. thru B.3.a.]** If the workplan and budget include activities involving costs for light refreshments, meals, or beverages, has the PO addressed the applicable FR question?<br><br>**NOTE-** Grants Management Officers or Award Officials will make the final decision regarding the allowability and necessity of certain selected items of costs based upon the scope of work or workplan, budget, and if necessary, additional information provided by the recipient.<br><br>**27A**. **[FR Section B.3.a.]** If YES, has the PO attached a completed "Food Policy" checklist. | ☐<br><br>☐ | ☐<br><br>☐ | ☐<br><br>☐ | See: PN-2016-G05 and Guidance on Selected Items of Cost<br><br>If Yes, the PO must include the Checklist for Determining the Allowability of Cost for Light Refreshments and Meals Under Assistance Agreements, i.e., "Food Policy" checklist, to the Funding Recommendation (FR) for new or continuation awards and amendments to awards made on or after 1/1/2011.<br><br>**26A Related Reference Notes:** If NO, advise PO to enter FR comment to provide the checklist. |
| **28.** **[FR Section B.4.]** Has the PO adequately addressed how the project relates to the Statutory Authority?<br><br>The Statutory authority may be simple or complex. Items such as eligibility, match, progress, maintenance of effort and administrative cost restrictions may be included in the statute and therefore, the PO response must address how each is satisfied. In addition, some projects may require multiple statutory authorities and they all must be addressed in the response. | ☐ | ☐ | | **If NO, return FR to Draft for correction by the PO.** See Return to Sender Guidance<br><br>All statutes cited in FR section A.15 must be addressed in FR section B.4.<br><br>All activities must be allowable under the authorizing Statute(s) and the recipient must be eligible and other stipulations must be addressed. (e.g. 319(h) Nonpoint Source Management Program is an example of a complex Statutory Authority)<br><br>See the **Grants Crosswalk** |
| **29.** **[FR Section B.5. Funding Table]** Do the PRC(s) align with the appropriate Statutory Authority(s)?<br><br>If the choice of PRC appears to be incorrect or appears to be inappropriate for the Statutory Authority, verify using the Program/Project Description Book or the FY 2022 – FY 2026 EPA Strategic Plan, and PN-2022-G04, Procedural Guidance and PRC Crosswalk.<br><br>**29A.** Does the total dollar amount in the PRC Table match the amount of the current action (the amounts listed Commitment Notice(s))? | ☐<br><br>☐ | ☐<br><br>☐ | | **If NO, return FR to Draft for correction by the PO.**<br><br>See Return to Sender Guidance<br><br>Activities to be funded under assistance agreements must be appropriately funded, meaning that they must be consistent with the Agency's strategic plan and federal appropriations law.<br><br>**28A Related Reference Notes:**<br>**If NO, return FR to Draft for correction by the PO.**<br>See Return to Sender Guidance |
| **30.** **[FR Sections B.5.a thru B.5.c.]** Has the PO documented compliance with the Environmental Results Order? | ☐ | ☐ | | If NO, advise PO to enter a FR comment to provide additional information.<br><br>The FR responses to Section B.5.a and B.5.b should be "NO", and B.5.c. must always be "YES".<br><br>**NOTE-** B.5.c. must agree with the answer in Question No. 20 of this checklist. If not, you must resolve with the PO. |

| | YES | NO | REFERENCES & NOTES |
|---|---|---|---|
| **31. [FR Sections B.5. and B.5.d.]** Has the PO documented that the Program Results Code (PRC) and project activities are consistent? | ☐ | ☐ | **If NO, return FR to Draft for revision by the PO.**<br>See Return to Sender Guidance<br><br>The PO must address how the project fits under each Goal and Objective identified in the table in FR section B.5. |

| | YES | NO | N/A | |
|---|---|---|---|---|
| **32**. **[Section B.6.]** If Question No. 19 of this Checklist identified potential data use or collection activities that may warrant Quality Assurance (QA), has the Program addressed adequately the FR Question(s) including identifying the need for a Programmatic QA Term and Condition? | ☐ | ☐ | ☐ | **31.Related Reference Notes:**<br>If NO, follow up with PO to have them add a Comment to the FR to correct any improper responses and/or add the appropriate condition(s).<br><br>QA is the responsibility of Program Staff, however the GS must ensure that the proper terms and conditions are included in the award document if it applies. Here's additional guidance that can be shared with the Program Office if needed: Implementation of Quality Assurance Requirements for Organizations Receiving EPA Financial Assistance |
| **32A.** If QA applies, and the award exceeds $200,000 or is expected to exceed $200,000 (including all amendments) the Competency Policy applies. Has the Project Officer included the appropriate competency term and condition? See Competency FAQs Question 26. | ☐ | ☐ | ☐ | **31A. Related Reference Notes:**<br>If NO, follow up with PO to have them add a Comment to the FR to include the appropriate condition. |
| **32B.** If applicable has the PO added the required statement to the FR? See Competency FAQs Question 27<br><br>**32B NOTE** - This only applies to Continuing Environmental Programs with an approved Quality Management Plan<br><br>R2 has developed two checklists that POs can use to navigate QA & Competency Requirements. For Project Grants and CEPs. | ☐ | ☐ | ☐ | **31B. Related Reference Notes:**<br>If NO, follow up with PO to have them add a Comment to the FR to include the required statement.<br><br>**31A. & 31B. Reference Notes:**<br>Policy Notice 2013-G02 on Competency: https://work.epa.gov/sites/default/files/2024-09/pn_2013_g02.pdf |

| | YES | NO | N/A | |
|---|---|---|---|---|
| **33. [Section B.13]** If the workplan contains planned activities to collect identical information from 10 (ten) or more persons and the award will be either:<br><br>1. a Cooperative Agreement or;<br>2. a Grant Agreement when information collection is being undertaken at EPA's specific request; and/or will involve EPA specifically approving the collection of information or collection procedures.<br><br>Then the Paperwork Reduction Act applies. Has the PO included the proper Programmatic Term and Condition or indicated that they have obtained OMB approval prior to award? | ☐ | ☐ | ☐ | If NO, follow up with PO to have them add a Comment to the FR to correct any improper responses and/or add the appropriate condition.<br><br>For additional information see:<br>**GPI-99-01 Information Collection Requirements**<br><br>NOTE- Program must obtain required OMB clearance prior to the applicant initiating any work involving the survey or data collection. |
| **34. [FR Section B.14.]** In Question No. 19 of this Checklist did you identify potential work or travel outside the United States or its Territories?<br><br>If NO**, proceed to Question 35**<br><br>If YES has the PO:<br>1. Included NEPA 102(2)(f) as a Statutory Authority?<br>2. Addressed all the FR questions (B.14 thru B.14.d.) regarding OITA Clearance?<br><br>**NOTE-** As used here, foreign projects include grants, cooperative agreements, fellowships, and Interagency Agreements all or any part of which will be performed in a foreign country by (a) a U.S. recipient, (b) a foreign recipient, or (c) an international organization. Please note that foreign work includes travel of individuals to foreign countries under assistance agreements. Even a brief trip to a foreign country, for example to attend a conference, by itself requires OITA approval.<br><br>For further guidance see GPI 12-04 Award and Administration of Foreign Grants. | ☐<br><br>☐<br>☐ | ☐<br><br>☐<br>☐ | ☐<br><br>☐<br>☐ | **If the PO did NOT address all applicable requirements and/or included appropriate terms and conditions, return FR to Draft for revision by the PO.**<br>See Return to Sender Guidance<br><br>Reviewer must ensure that if the project contains any work or travel outside the United States that it has been properly approved by the Office of International Affairs and, if necessary, the State Department. OITA approval is required for travel to and contractual services or subawards performed in all foreign countries including Mexico and Canada. Puerto Rico, the Marianas, and U.S. territories are not covered by the requirement. Note also, if international activities are included in the Agreement, NEPA should likely be added as an authorizing statutory authority in section A.15.<br><br>See the Requirements for obtaining OITA Clearance<br><br>*Note: the Fly America Act term and condition is part of the General T&Cs so it never needs to be separately added* |
| **35. [FR Section B.15.]** Will Geospatial Data be created as part of the agreement?<br><br>If the PO answered YES to the FR question regarding geospatial information, verify with the PO whether Geospatial Data will be **created** as part of the agreement. | ☐ | ☐ | If YES ensure that the PO included the National Programmatic Geospatial Term and Condition. If the PO did not include the T&C, then he/she must add a Comment to the FR including it.<br><br>If the PO answered NO to the FR, then no additional action by the Grant Specialist is necessary.<br><br>For additional guidance, refer to:<br>National Geospatial Data Policy (pdf) | |

| | | | |
|---|---|---|---|
| **NOTE -** The use of GIS information does NOT require the use of Programmatic Term and Condition, however the creation of GIS data does require the National Programmatic Geospatial Term and Condition. | | | National Geospatial Data Procedures (pdf) |
| **36.** **[FR Section B.16.]** Has the PO indicated that Homeland Security - Presidential Directive (HSPD) 12 requirement for Smart Card applies to this applicant? | ☐ | ☐ | If YES, ensure that the PO included the EPASS National Programmatic Term and Condition in the FR which pertains to HSPD-12. If the PO did not include the T&C, then he/she must add a Comment to the FR including it.<br><br>See: GPI 08-03 Personal Identity Verification and Smart Card Guidance for Assistance Recipients |
| **37. [FR Section C.1, C.2. & C.3.]**<br>In C.1, did the PO properly indicate whether the application is recommended for funding through a competitive process?<br><br>**Complete the applicable section below (Competitive or Non-Competitive:**<br><br>**For COMPETITIVE Awards:**<br>Has the PO provided the required information in C.2.a. and C.2.b?<br>Has the proper documentation been attached in C.2.c?<br>It must, at a minimum, include:<br>☐ Competition Summary, including noting that the panel chair and all reviewers each signed conflict of interest forms, containing the following items:<br>• a general description of the type of projects solicited under the competition<br>• how many applicants applied and how many were deemed eligible<br>• how the evaluation and ranking was conducted by the review panel<br>• a list of the criteria the proposals were evaluated against (e.g., list the evaluation factors and their values from Section V of the announcement), and confirmation that the proposals were evaluated against the criteria and point distribution stated in Section V of the announcement<br>• Ratings and Rankings of all eligible applications<br>• Selection official decisions and rationale (including explicit discussions of any out of order selections and partial funding decisions) The Selection Official conflict of interest form may either be attached or referenced in the document.<br><br>Has the PO selected the correct type of competition in Section C.3?<br><br>**For NON-COMPETITIVE Awards:** Has the PO selected the appropriate Non-Competitive reason in Section C.2.? | ☐<br><br>☐<br><br>☐<br><br>☐ | ☐<br><br>☐<br><br>☐<br><br>☐ | **36.Related Reference Note:**<br>**If NO, then the FR must be returned to Draft for revision by PO.**<br><br>See Return to Sender Guidance<br><br>**COMPETED Awards Related Reference Notes:**<br><br>**If NO and/or if the PO did not properly and completely (no blanks are allowed) address the proceeding FR sub-questions, then the FR must be returned to Draft for revision by PO.**<br><br>Competition Policy<br><br>See Selection Documentation Guidance<br><br>**Reminder:** Most competitions are Open Competitions but some programs (e.g., Brownfields, Competitive DERA grants, Pollution Prevention, and State Wetlands Development Grants) require competition under statute or regulation. Simplified Competitions (competitions for $100,000 or less which are limited to a subset of the entire potential applicant pool) are not common, nor are Exempt Program competitions (competitions run for programs that didn't require them). Some programs (which would normally be required to compete their funds) have been granted an exemption under the competition policy. OGD maintains a list of these program exemptions at: https://usepa.sharepoint.com/sites/OARM/OGD/AAA/SitePages/Program-Exemptions.aspx<br><br>For a listing of Competition Codes for Competed awards, see chart on Page 2 in the Return to Sender Guidance<br><br>**NON-COMPETED Awards Related Reference Notes:**<br>**If NO and/or if the PO did not properly and completely (no blanks are allowed) address the proceeding FR sub-questions, then the FR must be returned to Draft for revision by PO.** |

| | | | |
|---|---|---|---|
| <br><br>**NOTE -** The proper choice made in C.2. by the PO will determine which subsections (if any) need to be completed, including approval dates and waivers/justifications.<br><br>Has the PO selected the correct reason for non-competition in Section C.3? | | | **Reminder:** For Non-CEP grants over $40,000 additional approvals and documentation are required for a Non-Competitive award, except for Novations (see Change of Recipient guidance in section 4.4.2 in the Grants Wiki).<br><br>For a listing of Non-Competition Codes for Non-Competed awards, see chart on Page 6 in the Return to Sender Guidance |
| **38. [FR Section D]** Based on a review of the **FR Budget Table**, address the following:<br><br>• **38A. Are the amounts shown in the cost categories in lines D.1 through D.11 correct? (they must match the award)**<br>• **38B. Does the amount in D.8 (Other) equal or exceed the sum of the amounts for Subawards (E.9.a) and Participant Support Costs (E.10.a)?**<br>• **38C**. Does the amount in line D.12 match the amount requested in the SF424 or any updates thereto?<br>• **38D**. Does the amount in Line D.13 equal the amount of the CURRENT action (not including EPA In-Kind support)?<br>• **38E**. Did the PO correctly answer the Fully versus Partial Funding question (FR Line D.14)? | ☐<br>☐<br>☐<br>☐<br>☐ | ☐<br>☐<br>☐<br>☐<br>☐ | While the GS conducts their own Cost Review, the GS must ensure that the requested and approved budget amounts are consistent between the PO Cost Review and the GS Cost Review.<br><br>The programmatic cost analysis must address all costs, except for Fringe and Indirect Costs. Those are the responsibility of the Grant Specialist and are not covered in the PO cost review.<br><br>The Total Approved Assistance Amount of the award does not appear in lines D.1 through D.14 of the FR budget but is available in Row I (in the Budget Worksheet) and should be populated to ensure the accuracy of the budget and cost share calculations.<br><br><br>If **the answers to 37A** or **37B** are NO, then the FR must be returned to Draft for revision by PO. Any other incorrect items may be fixed through comments.<br><br>See Return to Sender Guidance |
| **39. [FR Section E.1. & E.1.a.]** Has the Project Officer completed the appropriate cost review form and attached it to the Funding Recommendation (either in Section E.1.a. or Section M)? | ☐ | ☐ | If No, meaning the cost review is missing or is the wrong version, then the FR must be returned to draft.<br><br>Important note: For CDS grants (program code CG), POs must use the project grant option of cost review form below. This is the only cost review form that captures the proper characterization of construction costs and current UGG requirements. Use of any other cost review form for these grants is reason to return an FR to draft. Cost Review Template For PROJECT OFFICERS - Continuing Environmental Program/Gap Or Project Grants (DOCM)<br><br>Errors in the proper form may be fixed by attaching a revised form in an FR Comment document.<br><br>See Return to Sender Guidance<br><br>If the Project Officer has attached a Cost Review for Part 35 grants, verify the eligibility for this Simplified Review with your answer in Question No. 15 of this checklist. If the answers to ALL questions are "Yes", then the Part 35 Cost Review can be used. If any of the |

| | YES | NO | N/A | REFERENCES & NOTES |
|---|---|---|---|---|
| | | | | answers is NO, then the Project Grant Cost Review Template/Option must be used.<br><br>**REMINDER:** use of the combined CEP/Project Grant template is encouraged but optional except for CDS grants. Use of this form cannot be a reason for returning an FR to draft.<br><br>The PO Cost Review MUST address both EPA funds and Recipient Cost-share as applicable. In addition, EPA In-Kind support should be addressed and included in the requested & approved amounts.<br>The PO Cost Review should NOT include Fringe Benefits or Indirect Costs.<br><br>Cost review templates and guidance, as well as indirect cost calculators are available here:<br>https://intranet.epa.gov/ogd/cost_review/main/ |
| **40.** [**Section E.2.**] If applicable, has the PO completely and adequately addressed Pre-Award costs?<br><br>**REMINDERS for Pre-Award Costs:**<br>• **Must be included in the budget/work plan/SF-424or revision thereto**<br>• **Must be allowable by regulations/statute/policy**<br>• **Must be approved by the Project Officer via the FR or revision thereto.**<br>• **If over 90 days, a justification is required in Question E.2.a of the FR or revision thereto.**<br>• **No justification is required for pre-award costs up to 90 days** | ☐ | ☐ | ☐ | If NO, advise PO to enter FR comment to provide additional information.<br><br>Ensure that the PO's answer(s) are consistent with your response and the guidance in Question No. 14 of this checklist.<br><br>Note: The pre-award condition should always be in the Grant-Specific Administrative T&Cs of an award. |
| **41.** [**Section E.3. & E.3.a.**] **(Multiple Appropriation Grant)** If applicable, has the PO provided a sufficient justification and an allocation table?<br><br>Multiple appropriations awards are those that include funds from more than one distinct appropriation code, except for awards combining new and carryover and/or recertified funds in the same program.<br><br>See the sample chart below which shows the FY22 STAG appropriation codes. Even though all of these are under the major appropriation of STAG there are many separate programs within it. Combining funds from more than one program in a single award must meet the requirements of the multiple appropriations policy. For example, combining funds from codes E2 with E2C and/or E2D are not multiple appropriations since they are all the same appropriation funds – but just a combination of new and carryover or recertified funds. But, if E2SD funds are added, the multiple appropriations policy is triggered. | ☐ | ☐ | ☐ | If NO, advise PO to enter FR comment to provide additional information. Multiple Appropriation awards require 2 things:<br><br>1. A justification showing how ALL activities are eligible using each appropriation under the grant.<br><br>2. Allocation table showing the distribution by percentage among the various appropriations when the grant is fully funded.<br><br>See Multiple Appropriations Grants Policy Issuance 01-02<br><br>ALL activities must be eligible under each appropriation in a grant using multiple appropriations– see Section 4 of the Policy.<br>The major grant making appropriations are: STAG, EP&M, Superfund, LUST, and S&T. Multiple appropriation awards may include more than one of these in a single grant or more than one appropriation code within a single major appropriation. See the appropriation list in the Annual Advice of Allowance memo.<br><br>For further information on these see pages 7-11 and 7-12 for Multiple Appropriations Guidance in OCFO's Funds Control Manual |

| | |
|---|---|
| | State and Tribal Assistance Grants (STAG) |
| E1 | STAG Categorical Grants |
| E1 | STAG Categorical Grants Carryover (2nd year) |
| E1C | STAG Categorical Grants Carryover (BFY 2020 & Prior) |
| E1D | STAG Categorical Grants Recertified Funds |
| E1S3 | STAG - Harvey, Irma, and Maria Supplemental Carryover |
| E1S4 | STAG - BFY 2019 Disaster Supplemental Carryover |
| E1S7 | STAG ARP Act Supplemental Carryover |
| E1SDA | STAG CAT Grant - Bipartisan Infrastructure Suppl - Admin |
| E2 | STAG Clean Water SRF |
| E2 | STAG Clean Water SRF Carryover (2nd year) |
| E2SD | STAG CW Grant - Bipartisan Infrastructure Suppl |
| E2SDA | STAG CW Grant - Bipartisan Infrastructure Suppl - Admin |
| E2C | STAG Clean Water SRF Carryover (BFY 2020 & Prior) |
| E2D | STAG Clean Water SRF Recertified Funds |
| E2S2 | STAG Clean Water SRF Sandy Supplemental Carryover |
| E2S4 | STAG Clean Water SRF BFY 2019 Disaster Supplemental Carryover |
| E3 | STAG Drinking Water SRF |
| E3 | STAG Drinking Water SRF Carryover (2nd year) |
| E3C | STAG Drinking Water SRF Carryover (BFY 2020 & Prior) |
| E3D | STAG Drinking Water SRF Recertified Funds |
| E3S2 | STAG Drinking Water SRF Sandy Supplemental Carryover |
| E3S4 | STAG Drinking Water SRF BFY 2019 Disaster Supplemental Carryover |
| E3SD | STAG DW Grant - Bipartisan Infrastructure Suppl |
| E3SDA | STAG DW Grant - Bipartisan Infrastructure Suppl - Admin |
| E4 | STAG Special Programs |
| E4 | STAG Special Programs Carryover (2nd year) |
| E4C | STAG Special Program Carryover (BFY 2020 & Prior) |
| E4D | STAG Special Programs Recertified Funds |
| E4S5 | STAG USMCA Supplemental |
| E4S7 | STAG Special Programs ARP Act Supplemental Carryover |
| E4SD | STAG Spec. Projects - Bipartisan Infrastructure Suppl |
| E4SDA | STAG Spec. Projects - Bipartisan Infrastructure Suppl - Admin |
| E5 | STAG New Earmarks |
| E5C | STAG Earmarks (Program Project 51) |
| E9 | STAG Homeland Security Supplemental Carryover |

Also see PN-2022-G03: Funding Assistance Agreements with Infrastructure Investment and Jobs Act Appropriations and Other Appropriations

Resource Management Directive System Number: 2520-T1 -- Split-Funding with Multiple Appropriations

**42.** **[Section E.4.]** If applicable**,** has the PO completely and adequately addressed the EPA In-Kind contribution? ☐ ☐ ☐

How EPA In-Kind should be reflected in the **Grant Award**: In the award funding table, In-Kind must not be in the first line, but must be shown exclusively in the second line.




In-Kind must be included in the appropriate cost category(s) for which the support is provided. Examples: EPA In-Kind contracts should be identified in the Contract category or EPA-provided equipment should be in the Equipment category.

In the award budget table, In-Kind must be included in Lines 11, 12, 14 and 15. NOTE- EPA In-Kind costs are subject to cost-share requirements.




However, it will NOT be included in the fiscal table since this shows the funds obligated and made available to the recipient.

If NO, meaning the answers are incomplete (no blanks) or incorrect, advise PO to enter FR comment to provide additional information.

FR view:




EPA In-Kind contributions must be specifically requested by the applicant in the grant application package (or supplement to the application). We cannot award unrequested In-Kind support. Moreover, In-Kind support cannot be used to bypass the applicant's procurement requirements; there has to be a written justification demonstrating the cost-effectiveness and/or expediency for the federal government to procure the requested support. The PO must document whether there are "time" and/or "cost" savings and specifically identify the total amount of In-Kind support being provided.

It is important to note that In-Kind funding does not go to the recipient. It is NOT obligated as part of the grant. Instead, it is withheld and obligated locally by EPA Program and Contracts staff to procure goods and/or services for the recipient. It must be included in lines A.13 and D.12 but will not be included in D.13 in the FR:



| | | | | |
|---|---|---|---|---|
| In the OMB view of an award, the difference is made clear. Here is an extract from the Notice of Award section for a grant with an obligated amount of $9,049,668 and EPA In-Kind of $185,400 (combined total of $9,235,068).<br><br>Based on your Application dated 09/06/2012 including all modifications and amendments, the United States acting by and through the US Environmental Protection Agency (EPA) hereby awards $9,049,668. EPA agrees to cost share 54.60% of all approved budget period costs incurred, up to and not exceeding total federal funding of $9,235,068.<br><br>For more information see:<br>Internal Interim General Cost Review Guidance for EPA Grants Specialists and Project Officers | | | | D.12. Total Requested Amount<br>*D.13. Total Request To Fund Amt This Action<br><br>Recommendation: Some POs include a Grant-Specific Programmatic condition that identifies the amount(s) and purpose(s) of the EPA In-Kind support. This is not required but it makes it clear, especially when the In-Kind total is made up of more than one item. Here's an example:<br><br>**IN-KIND ASSISTANCE**<br>In accordance with the recipient's request, EPA will send $100,000 via EPA-Region 1 to NESCAUM for annual dues and $85,400 to the EPA national contract for technical support. |
| **43. [Section E.5.]** Referring to your review in Question 17 above, has the PO correctly and completely answered all questions to document compliance with Matching/Cost-share requirements?<br><br>Reminder: The "leveraging" term and condition is to be included in all competitive awards where the recipient proposed and was evaluated based on leveraging. If the leveraging included a voluntary cost-share or overmatch component, then the "voluntary cost-share or overmatch" term and condition must also be included in the competitive award.<br><br>**Reminder: Cost share percentages must be shown to two decimal places (e.g., 25.19% in both the FR and award documents.** | ☐ | ☐ | ☐ | If NO, meaning the answers are incomplete (no blanks) or incorrect, return FR to Draft for revision by the PO.<br>See Return to Sender Guidance<br><br>The GS must ensure that the PO's answers to the FR questions are complete and agree with the GS' analysis of cost-sharing in Question 17.<br>E.5. Is the recipient providing cost sharing under this agreement?<br>Yes<br>E.5.a. Cost sharing is:<br>E.5.b. What is the cost share percentage?<br>E.5.c. What is the MOE amount, if applicable?<br><br>Competition Guidance on Cost-share and Leveraging |
| **44. [Section E.7] Program Income:** If applicable, has the PO completely and adequately documented the use of Program Income that will be generated under the agreement?<br>E.7. Is this project expected to generate program income?<br>Yes<br>E.7.a. How much program income is expected?<br>$0.00<br>E.7.b. Recommendation for the disposition of this income (see 2 CFR 200.307 or 2 CFR 1500.8):<br>Add<br>Add to funds committed to the project by EPA and recipient and used to further eligible project or program objectives.<br>Use to finance the non-Federal share of the project or program.<br>Deduct from the total project or program allowable cost in determining the net allowable costs on which the Federal share of cost is based.<br>Permit fees are governmental revenue and not program income. Program income means gross income earned by the non-Federal entity that is directly generated by a supported activity or earned as a result of the Federal award during the period of performance except as provided in §200.307 paragraph (f). Program income includes but is not limited to income from fees for services performed, the use or rental or real or personal property acquired under Federal awards, the sale of commodities or items fabricated under a Federal award, license fees and royalties on patents and copyrights, and principal and interest on loans made with Federal award | ☐ | ☐ | ☐ | If NO, meaning that answers are incomplete or incorrect, advise PO to enter a FR comment to provide additional information.<br><br>2 CFR 1500.8<br>2 CFR 200.1 and 200.307<br><br>**REMINDERS:**<br>• **The default use of program income for EPA awards is addition.**<br>• **Ensure that the PO included a grant-specific Programmatic Condition with disposition instructions consistent with FR section E.7.b.**<br><br>Brownfields Revolving Loans: recipients may use grant funding prior to using program income funds generated by the revolving loan fund. Recipients may also keep program income at the end of the assistance agreement as long as they use these funds to continue to operate the revolving loan fund or some other brownfield purpose as outlined in their closeout agreement. |

funds. Interest earned on advances of Federal funds is not program income. Except as otherwise provided in Federal statutes, regulations, or the terms and conditions of the Federal award, program income does not include rebates, credits, discounts, and interest earned on any of them. See also §200.407 Prior written approval (prior approval).

If the recipient is proposing to use program income to finance the non-federal share (recipient cost-share) of the project, there must be a clear calculation for the expected amount and must be reflected in the budget (Application, FR and Line 13 of Award Document).

**45**. [**Section E.8.]** If applicable, has the PO provided disposition instructions for equipment to be acquired under the agreement?



E.8. Will equipment be acquired under this assistance agreement? (See 2 CFR 200.313)
Yes
E.8.a. When equipment is no longer needed for this project:
Add
Allow the recipient to continue to use it on this project or on other federally funded projects whether or not supported by Federal funds
Reserve EPA's right to transfer the title of the equipment to EPA or a third party when this project is complete
Allow the recipient to sell the equipment when it is no longer needed and reimburse EPA. Add the appropriate Term and Condition
Since this is a Superfund project, it is subject to specific disposal options (See 40 CFR 35.6345)
E.9. Are there Subawards proposed in the budget?

*Equipment* means tangible personal property (including information technology systems) having a useful life of more than one year and a per-unit acquisition cost which equals or exceeds the lesser of the capitalization level established by the non-Federal entity for financial statement purposes, or $10,000.

If NO, advise PO to enter a FR comment to provide additional information and, if applicable, the required programmatic condition.

If there are funds budgeted in the FR for equipment (D.4. Equipment) then the answer to FR section E.8 must be Yes and the appropriate disposition choice selected.

If the instructions are for anything other than allowing the recipient to keep the equipment, a programmatic condition should be included that provides specific disposition instructions.

See 200.313 for more information.
If the budget contains items for less than $10,000 for equipment, you should verify that the recipient has a lower internal threshold for equipment defined in its policies.

**46**. [**FR Section E.9.]** If applicable, are **Subawards** appropriately characterized in the "Other" budget category of the FR?



E.9. Are there Subawards proposed in the budget?

Refer to GPI 16-01: EPA Subaward Policy and 2 CFR 200.1 for additional determination and information, if necessary. NOTE: Subaward costs should be allocated to the "Other" budget category and the budget narrative should specify the amount of subaward funding.

Yes

Because subawards are included in the project, Grants Policy Issuance 16-01: EPA Subaward Policy and its requirements must be adhered to which apply to both EPA and the Pass-through entity. A National Term and Condition (referenced in Appendix B of the Subaward Policy), which identifies the subaward management expectations referenced in Title 2 CFR 200, is already included for this award in the General Online Terms and Condition titled: "Establishing and Managing Subawards (modified 3/29/16)", which is found on the EPA internet site. Please address the following:

E.9.a. What is the Total Aggregate Value for all proposed subawards?

E.9.b. Is this a Clean Water SRF or Drinking Water SRF grant (which is exempt from this requirement), or have you included the Subaward Reporting Requirements (found in Appendix C of the Subaward Policy) as part of your performance reporting term and condition in Section F. of the Funding Recommendation?

Yes

*C E.9.c. Describe the activities to be implemented through subawards.

No subawards are included in this assistance agreement.

See Return to Sender Guidance

**46A. [FR Section E.9.a.]** Has the PO provided the expected aggregate total of all subawards?

**46B. [FR Section E.9b.]** Has the Project Officer included Subaward Reporting requirements (usually incorporated as part of the performance reporting condition)?

**46C. [FR Section E.9c.]** Has the Project Officer included a description of subrecipient activities that complies with the

For these questions, refer to the Subaward Policy (GPI 16-01) for specific guidance and additional information relating to Subawards.

**45.Related Reference Notes:**

**If NO, the FR must be returned to Draft for correction of the Budget Table and/or Cost Review and/or the Project Description and/or missing or incorrect answers in E.9.a. through c.**

Important Note: Subawards include loans under the Clean Water, Drinking Water, and Brownfields Revolving Loan Funds. For these programs E.9 must always be "Yes," and a value must be entered for E.9.a

Although NGGS requires that E.9.b contain a "Yes" answer whenever it appears, subaward Reporting T&Cs should not be added for the Clean Water or Drinking Water SRFs unless the recipient is awarding subgrants in addition to loans. These programs are exempt from the 2 CFR 200.332 subrecipient management requirements for subawards as provided in 2 CFR 1500.3

If any of the information is missing or incorrect in any of the sub-questions in **E.9.a. through c.**, the FR must be returned to draft. If the questions were answered correctly but the appropriate T&C was omitted, the condition may be added through a comment to the FR.

| | | | | |
|---|---|---|---|---|
| Data Quality Standards for project descriptions? See SOP-2021-G04. | | | | |
| **47**. **[FR section E.10.]** If applicable, are **Participant Support Costs** appropriately characterized in the "Other" budget category of the FR?<br><br>If YES, answer 47A<br>If NA, proceed to question 48 | ☐ | ☐ | ☐ | **46. Related Reference Notes:**<br>**If NO, the FR must be returned to Draft for correction of the Budget Table and/or Cost Review.**<br><br>See Return to Sender Guidance |
| **47A. [FR section E.10A.]** Has the PO provided the expected aggregate total of all Participant Support Costs?<br><br>*Participant support costs* means direct costs for items such as stipends or subsistence allowances, travel allowances, and registration fees paid to or on behalf of participants or trainees (**but not employees or contractors/consultants**) in connection with conferences, or training projects (See 2 CFR 200.1<br><br>EPA Guidance on Participant Support Costs | ☐ | ☐ | ☐ | **46A. Related Reference Notes:**<br>No blanks are allowed if Participant Support Costs are applicable. If the amount is blank or incorrect, the PO must add a Comment to the FR showing the correct amount.<br><br>See also EPA's expanded definition of Participant Support Costs in 2 CFR 1500.1 covering rebates & subsidies |
| **48. [FR Section F] All FRs require at least a reporting and a cybersecurity condition.**<br><br>a. Are the proper interim and final programmatic progress/performance reporting condition(s)added in the FR?<br><br>**NOTE-** All interim and final programmatic progress/performance reports must meet basic requirements outlined in 2 CFR 200.329 and EPA Order 5700.7A1 (Environmental Results)<br><br>b. Is the appropriate version of the Cybersecurity T&C included? | ☐<br><br>☐ | ☐<br><br>☐ | ☐<br><br>☐ | If NO, follow up with PO to add a Comment to the FR to include the appropriate condition(s).<br><br>If the award is applicable to one of the programs listed in Attachment A in GPI 11-03 State Grant Workplans and Progress Reports, the condition must require the that interim and final progress reports submitted by State recipients prominently display the three Essential Elements described in Section 6.0 of the Policy. |
| **49.** Is this an infrastructure or other award that requires NEPA clearance?<br><br>Additional references:<br>https://www.ecfr.gov/current/title-40/part-6/subpart-A: General Provisions for EPA Actions Subject to NEPA | ☐ | ☐ | | If Yes, there must be documentation attached to the FR showing that NEPA requirements have been satisfied. **The award may not proceed until NEPA clearance is documented.**<br><br>**See: Environmental Review Guide for Special Appropriation Grants Subject to the National Environmental Policy Act**<br><br>Note: this reference is in the process of being updated. |
| **50.** Is this an award made under Assistance Listing 66.202: **Congressionally Mandated Projects?** | ☐ | ☐ | | POs must identify all such awards as earmarks in question B.4.a of the FR<br> |
| **VIII. MERIT REVIEW/OTHER FR REQUIREMENTS** | **YES** | **NO** | **N/A** | **REFERENCES & NOTES** |
| **51.** For non-competitive, discretionary grants (Column M in the Grants Crosswalk): Did the application pass the program office's merit review process for this grant program (e.g., is a merit review checklist or similar document attached to Section M of the FR, or has the GS been provided other written assurance from the PO.)? | ☐ | ☐ | ☐ | **If No, the award may not proceed until the merit review has been confirmed.**<br><br>Note that for conditionally approved PPGs, only the programs for which the workplans have been fully approved are required to have merit reviews |

| | YES | NO | REFERENCES & NOTES |
|---|---|---|---|
| Note: merit review is also required for non-competitive grants made under competitive programs (e.g., grants of $25k or less or those based on a competition exception/exemption) | | | completed. The programs that are not yet approved must have merit reviews completed when the workplan the grant conditions are lifted. |
| **52. [FR section G, G.2.]** Does this action require approval by the Senior Resource Official? | ☐ | ☐ | SRO Concurrence is required when the total costs are expected to be over $10 million for Continuing Environmental Programs and over $2 million for Project grants.<br><br>NOTE: if your SRO is the award official, separate approval of the FR is unnecessary since the SRO will sign the award. |
| **53. [FR PoP Tab]** a. Has the PO adequately addressed the Place of Performance and does the affected area make sense in the context of what is occurring in the project?<br><br>b. Has a Primary Place of Performance been identified?<br><br>See: The NGGS Award Reference Guide for instructions on completing Place of Performance in NGGS. | ☐ | ☐ | **Place of Performance, including a Primary Place of Performance is required for all actions in NGGS and cannot proceed without it.**<br><br>**NOTE -** OMB requires EPA to report Place of Performance data for every grant within 30 days of award and the information is displayed for the public at www.USASpending.gov based on information pulled from the Award Document. In the absence of more precise information, the default response would be the address of the grantee. However, POs should make every effort to get more specific information on place of performance to enhance the accuracy of our data. This requirement applies to all grants even with benefits that are Statewide. POs working on Statewide awards should be encouraged to engage the grantee for primary location(s) for specific places of performance. |
| **IX. AWARD DOCUMENT REQUIREMENTS** | **YES** | **NO** | **REFERENCES & NOTES** |
| **54.** Have you included a Funding Package Date in the award?<br><br>Funding Pkg. Date:<br>10/30/2020 | ☐ | ☐ | NGGS Funding Package Date field requirements:<br><br>•ALL actions must have a valid date entered in the NGGS "Funding Pkg Date" field within the "Award Document".<br><br>• This includes all monetary and non-monetary (such as time extensions, rebudgetings, etc.) actions.<br><br>• For some grant actions, the FPD is automatically populated, while other actions require manual entry. So be sure to check that this field is complete.<br><br>**If you are unsure of the FPD, OGD recommends the following:**<br><br>• For New grant actions, the FPD should be the receipt date of either the notification of the finalized Funding Recommendation or Commitment Notice(s), whichever is later.<br><br>• For Supplemental actions, the FPD should be the receipt date of either the notification of the finalized Funding Recommendation, Change Request or Commitment Notice(s), whichever is later. |

| | YES | NO | N/A | REFERENCES & NOTES |
|---|---|---|---|---|
| **55.** Is this a Congressionally Mandated Project, Superfund Technical Assistance Grant, or other award that includes special payment conditions?<br><br>If yes:<br><br>• Has the appropriate special payment condition been included in the award?<br><br>• Has the High Risk/Special Payment field and associated description been completed in Section 5 of the award?<br><br>• If the award is being made under Assistance Listing 66.202, has the Earmark Special Tracking Code been added in Section 5 of the award? | ☐<br><br>☐<br><br>☐<br><br>☐ | ☐<br><br>☐<br><br>☐<br><br>☐ | ☐<br><br>☐<br><br>☐<br><br>☐ | If yes, choose or enter the appropriate payment T&C in the award, and complete the fields in Section 5 of the award shown below.<br><br><br>Grant Specialists must also remember to identify all congressional earmark projects in the Award under the special tracking code field.<br><br> |

| X. NOTES/ADDITIONAL FOLLOW-UP ACTIONS NEEDED & ADD/UPDATE ANY TERMS AND CONDITIONS THAT MAY APPLY |
|---|
| |

| | |
|---|---|
| **APPROVAL SECTION** | |
| **This Application for Federal Assistance and funding recommendation have been reviewed for administrative compliance with statutory, regulatory, policy and delegated authorities. Signature below indicates, in the reviewer's opinion, the application complies with the administrative requirements for award of assistance.** | |
| | |
| **Grants Specialist** | |
| **INTERNAL CONTROL REVIEW (Optional)** | |
| **A Quality Control Review was made of this administrative review to ensure it complies with the statutory, regulatory delegated and policy requirements for award. Signature below indicates the reviewer supports the funding decision for this Application for Federal Assistance.** | |
| | |
| **Reviewer 1** | |
| | |
| **Reviewer 2** | |