# EXHIBIT 2

SUSTAINABILITY INSTITUTE, ET AL v. TRUMP

2:25-CV-02152-RMG

# EXHIBIT 2

## Supplemental Declaration of Bryan Cordell, The Sustainability Institute

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | |
|---|---|
| THE SUSTAINABILITY INSTITUTE, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States, et al.,<br><br>Defendants. | Case No. 2:25-cv-2152-RMG |

**SUPPLEMENTAL DECLARATION OF BRYAN CORDELL,**
**THE SUSTAINABILITY INSTITUTE**

1. I, Bryan Cordell, Executive Director of the Sustainability Institute, submit this declaration in support of Plaintiffs' Motion for an Injunction Pending Appeal.

2. From April to July 2025, Sustainability Institute proceeded with our Community Change grant project as quickly as possible while the grant funds were available – specifically to build 11 energy efficient affordable homes as well as to repair, weatherize, and upgrade 50 existing homes in the Union Heights North Charleston community,

3. This work all came to a sudden halt on July 28, 2025, when we received our termination notice from EPA. Ex. 1. This notice also outlined the 120-day closeout process required by 2 C.F.R. § 200.344.

4. On August 18, 2025, I emailed EPA to alert them that we do not agree to the termination. Att. A at 1.

5. On August 18, 2025, I also emailed EPA requesting payment for $71,536.29 in allowable costs properly incurred prior to the July 28, 2025 date of the Termination

Memorandum and Unilateral Termination of Assistance Agreement 5F-03D30824. In that email, I explicitly declined to close out the agreement while our termination dispute and litigation remain ongoing. Att. A at 11.

6. On August 19, 2025, I emailed EPA revising the request for payment from $71,536.29 to $75,451.36 due to an additional payment request received from a subrecipient for their costs incurred prior to termination. I again explicitly declined to close out the agreement. Att. A at 8.

7. About a third of those costs are owed to our subgrantees, one-third are due to an engineering firm for completed engineering work, and one-third are costs incurred by and due to Sustainability Institute. One of our subgrantees, an architect, is owed about $19,000 for already completed work, and has requested that our organization assist with a short-term loan in order to fulfil their obligations.

8. On August 27, 2025, I sent a Demand Letter to EPA to notify the EPA Dispute Decision Official that we disagree with the decision to terminate our grant award and to demand that EPA's Action Official provide a response in writing identifying the specific agency statute or regulation that purportedly authorizes this termination. The email also once again alerted EPA that we will not complete the administrative actions necessary to close out the grant until EPA's Dispute Decision Official takes final agency action on the termination pursuant to 2 CFR 1500.17(b). Att. A at 14-18.

9. I sent a follow-up email to EPA on August 29, 2025, reiterating our request for payment of our pre-termination costs. Att. A at 7-8.

10. Shantel Shelmon of the EPA replied to my email on August 29, 2025, stating that we would be able to draw the requested funds from ASAP after submitting a Final Federal Financial Report ("FFR") to reconcile the account. Att. A at 6-7.

11. On September 6, 2025, Rebekah Cordell, our organization's Director of Finance, emailed EPA again, explaining that we do not agree to a closeout of the Assistance Agreement as a condition of receiving payment for allowable costs incurred prior to the termination date, and therefore we are unable to submit a Final FFR at this time. She further asked whether there is an alternative form we could submit to request immediate payment of those costs, or whether it would suffice to submit an FFR that is not marked as final. Att. A at 6.

12. We followed up with EPA again on September 15, 2025, seeking a response to these questions. Att. A at 5.

13. We finally received a response from EPA on September 19, 2025, stating that in order to receive reimbursement, we must submit the Final FFR form. Att. A at 4.

14. We cannot submit the Final FFR form to receive reimbursement on our properly incurred pre-termination expenses because doing so would prematurely end our required 120-day close-out period while we continue to challenge EPA's actions both in federal court and administratively. As we continue to challenge EPA's actions both in federal court and administratively, we will not agree to a premature termination before the close-out process concludes.

15. An order from the Court granting the Motion for Injunctive Relief will redress Sustainability Institute's concerns and injuries.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States, the foregoing is true and correct.

Executed this __24th____ day of _September_ 2025.

___________________________
Bryan Cordell

The Sustainability Institute

Rebekah Cordell <rebekah@sustainabilityinstitutesc.org>

# Notice of Disagreement with 5F-03D30824 Assistance Amendment

1 message

**Bryan Cordell** <director@sustainabilityinstitutesc.org> Mon, Aug 18, 2025 at 9:43 PM
To: "Shelmon, Shantel" <Shelmon.Shantel@epa.gov>
Cc: McOmber.Kevin@epa.gov, Askew.Wendel@epa.gov, Payne.James@epa.gov, Donahue.Sean@epa.gov, Coogan.Daniel@epa.gov, Wise.Melissa@epa.gov, "Robinson, Jimmy" <Robinson.Jimmy@epa.gov>, "Akbar Buchanan, Ferry" <AkbarBuchanan.Ferry@epa.gov>, Eubanks.Kristy@epa.gov, Rebekah Cordell <Rebekah@sustainabilityinstitutesc.org>

To: Shantel Shelmon
U.S. Environmental Protection Agency
Atlanta Federal Center
61 Forsyth Street
Atlanta, GA 30303-8960

Date: August 18, 2025

Re: Notice of Disagreement with 5F-03D30824 Assistance Amendment

Dear Shantel Shelmon -

This email provides the EPA Disputes Decision Official and the Award Official with formal notice that Sustainability Institute disagrees with EPA's Unilateral Termination of Assistance Agreement Number 5F-03D30824 described in the July 28, 2025 Assistance Amendment and as transmitted in the July 28, 2025 Termination Memorandum on the grounds that will be set forth in our demand letter submission pursuant to 2 CFR 1500.15 within the 30 day time frame allowed by the regulation and specified in the Termination Memorandum. We have stopped work as directed and will not incur additional costs.

While we do not believe we are required to send this Notice of Disagreement as the regulations clearly allow 30 days to challenge a termination, (2 CFR 200.340(c)), we are sending it in an abundance of caution to state clearly that we do not accept this termination.

The Assistance Amendment suggests that any attempts to draw down could be seen as a waiver, which is contrary to the regulations which authorizes grantees to draw down on eligible costs incurred prior to termination, per 2 CFR 200.305(b)(3). Accordingly, we will be submitting a separate request for costs incurred prior to termination, which should not in any way serve as a waiver of our objection to the termination.

The EPA is not authorized to unilaterally change the law or implement policies that have not been authorized by Congress. As stated in our Demand Letter response to the termination, this termination is unlawful and is causing real harm on the ground to communities. The EPA does not have the authority to unilaterally change established regulations by sending out this assistance amendment notice, particularly as it directly contradicts the termination memo. Per 2 CFR 200.340(c)(ii), termination "prior to the end of the period of performance due to the recipient's material failure to comply with the terms and conditions of the Federal award" cannot move forward if the recipient has not exhausted its opportunities to challenge the decision or sent a dispute indicating intent to appeal to the agency within 30 days of receiving notification of termination (emphasis added). Accordingly, the timing of our demand letter within 30 days of the date we received our termination memo on July 28, 2025 abides by regulatory requirements.

We are actively challenging EPA's unlawful freezing actions and this termination through an ongoing lawsuit filed on March 19, 2025, in the U.S. District Court for the District of South Carolina, Sustainability Institute v. Trump, No. 2:25-cv-02152. As detailed in the attached complaint and court filings, we challenge the termination of our EPA grants on constitutional, Administrative Procedure Act, and nonstatutory ultra vires grounds. This litigation is currently pending before the Fourth Circuit Court of

Appeals.

In addition to the regulatory timeline, the termination memo itself states that we have 30 days to respond. An Assistance Amendment that sets forth a different timeline and conditions for termination cannot unilaterally change this regulatory provision. The termination must comply with clear procedural safeguards to protect individuals and due process. See Policy and Research, LLC v. U.S. Dep't of Health and Human Servs. 313 F. Supp. 3d 62 (D.D.C. 2018).

We also want to clarify that because we have not accepted the terms and conditions of the unilateral termination, maintaining the Assistance Agreement 5F-03D30824 remains a binding obligation of the EPA pursuant to 42 U.S.C. 7438(a) and 31 U.S.C. 1501(a)(5).

Our primary goal is simply to implement Congress' intent to reduce pollution while strengthening communities through our project activities that include weatherizing and retrofitting 50 existing homes in need of critical repair; generating affordable housing by performing site development of 3- acres of vacant land and constructing 11 new energy efficient, affordable housing units; and creating training and workforce programs to train community members in preparation for environmental jobs. These activities are focused on a historic community in North Charleston - the Union Heights community - which is trying to build back economically and become more resilient.

Benefits provided by the grant will include, but not be limited to:

- Increased energy efficiency in existing homes that will lead to reduced energy insecurity and financial burden for households;
- Reductions in health exposure to indoor air pollution and toxins in existing homes that will contribute to safer and healthier living environments;
- Providing community members with access to affordable, sustainable and resilient housing; and
- Training and workforce development that will lead to job creation.

We respectfully request that EPA staff work with us to ensure that we do not face severe economic hardships and allow us to bring these benefits to American people.

For these reasons, the demand letter we will send within the 30 day window is sufficient notice of our appropriate intent to contest this termination.

Sincerely,

Bryan Cordell

Bryan Cordell
Executive Director / Project Manager
Sustainability Institute

CC:
Kevin McOmber
Wendel Askew
Jim Payne
Sean Donahue
Daniel Coogan
Melissa Wise
Jimmy Robinson
Ferry Buchanan
Kristy Eubanks
Rebekah Cordell

--
Bryan H. Cordell
Executive Director
The Sustainability Institute
3973 Rivers Avenue, Suite 101

North Charleston, SC 29405

843.327.3573 (mobile)
843.529.3421 (office)
Director@sustainabilityinstituteSC.org
www.sustainabilityinstitutesc.org

**Our mission**: *Advancing resilient and sustainable communities while building the next generation of conservation leaders.*

PRIVILEGED AND CONFIDENTIAL: The information in this electronic message and any corresponding attachments are legally privileged and/or confidential materials, and are the property of Bryan Cordell. This information is intended for the sole use of the individual(s) or entity(s) to which it is addressed. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or duplication of this message is strictly prohibited. If you have received this message in error, please immediately notify Bryan Cordell by telephone (843.327.3573), and purge the message received. Thank You.

---

**FPC Notice of Disagreement to Assistance Amendment.pdf**
125K

**Rebekah Cordell <rebekah@sustainabilityinstitutesc.org>**

---

## RE: Request for Properly Incurred Costs For Grant 5F-03D30824: REVISION #1

1 message

---

**Shelmon, Shantel** <Shelmon.Shantel@epa.gov> Fri, Sep 19, 2025 at 3:25 PM
To: Rebekah Cordell <Rebekah@sustainabilityinstitutesc.org>
Cc: Bryan Cordell <director@sustainabilityinstitutesc.org>, "McOmber, Kevin" <Mcomber.Kevin@epa.gov>, "Askew, Wendel" <Askew.Wendel@epa.gov>, "Payne, James (Jim)" <payne.james@epa.gov>, "Donahue, Sean" <donahue.sean@epa.gov>, "Coogan, Daniel" <Coogan.Daniel@epa.gov>, "Wise, Melissa" <wise.melissa@epa.gov>, "Robinson, Jimmy" <Robinson.Jimmy@epa.gov>, "Akbar Buchanan, Ferry" <AkbarBuchanan.Ferry@epa.gov>, "Eubanks, Kristy" <Eubanks.Kristy@epa.gov>

Hi Rebekah,

Unfortunately, you will not be allowed to draw funds on the grant until you submit your Final FFR. Once you submit the FFR, the grant reconciliation will be performed by the finance center. After the reconciliation is completed, the account will be reopened and available for drawing down allowable costs.

Shantel Shelmon, MPH

Section Manager/Grants Management Officer

Grants Management Section

Grants and Acquisitions Management Branch

Mission Support Division

U.S. Environmental Protection Agency – Region 4

61 Forsyth Street, SW

Atlanta, Georgia 30303

Phone: (404) 562-9817

Fax: 404-562-8269

Email: shelmon.shantel@epa.gov

**From:** Rebekah Cordell <Rebekah@sustainabilityinstitutesc.org>
**Sent:** Monday, September 15, 2025 10:05 PM
**To:** Shelmon, Shantel <Shelmon.Shantel@epa.gov>
**Cc:** Bryan Cordell <director@sustainabilityinstitutesc.org>; McOmber, Kevin <McOmber.Kevin@epa.gov>; Askew, Wendel <Askew.Wendel@epa.gov>; Payne, James (Jim) <Payne.James@epa.gov>; Donahue, Sean <Donahue.Sean@epa.gov>; Coogan, Daniel <Coogan.Daniel@epa.gov>; Wise, Melissa <Wise.Melissa@epa.gov>; Robinson, Jimmy <Robinson.Jimmy@epa.gov>; Akbar Buchanan, Ferry <AkbarBuchanan.Ferry@epa.gov>; Eubanks, Kristy <Eubanks.Kristy@epa.gov>
**Subject:** Re: Request for Properly Incurred Costs For Grant 5F-03D30824: REVISION #1

You don't often get email from rebekah@sustainabilityinstitutesc.org. Learn why this is important

**Caution:** This email originated from outside EPA, please exercise additional caution when deciding whether to open attachments or click on provided links.

Shantel,

I'm following up on my email below. For the reasons stated below, we cannot submit a Final FFR at this time. Is there another form we can fill out that would allow us immediate payment of the allowable costs incurred prior to the July 28, 2025 termination date, without submitting a Final FFR? Or would it suffice to submit an FFR but not mark that it as final?

I look forward to your response.

Thank you,

Rebekah

-----
**Rebekah Cordell, CPA**
Director of Finance

The Sustainability Institute

3973 Rivers Avenue, Suite 101
North Charleston, SC 29405
www.SustainabilityInstituteSC.org
Cell: 843-718-7085

Rebekah@SustainabilityInstituteSC.org

On Sat, Sep 6, 2025 at 3:11 PM Rebekah Cordell <Rebekah@sustainabilityinstitutesc.org> wrote:

Shantel,

Thank you for your response. We decline to agree to a close out of Assistance Agreement 5F-03D30824 as a condition of receiving payment we are owed for allowable costs incurred prior to the July 28, 2025 date of the Termination Memorandum and Unilateral Termination Assistance Agreement. EPA has not completed all administrative actions to close out the assistance agreement under 2 CFR 200.344(a), given that the process for disputing the termination and our litigation (with a hearing scheduled on October 23, 2025 at the Fourth Circuit Court of Appeals) remain ongoing.

Since this dispute and litigation are ongoing, we are currently unable to estimate what our total allowable termination costs and closeout costs would be even if we were to agree to a close out (which we do not). So submitting a Final FFR right now would also preclude us from being able to request reimbursement for those allowable termination and close out costs that may be incurred in the coming months, which would cause us additional undue harm.

Is there another form we can fill out that would allow us immediate payment of the allowable costs incurred prior to the July 28, 2025 termination date, without submitting a Final FFR? Or can we submit an FFR but not mark that it is final?

Thanks for your help,

Rebekah

-----
**Rebekah Cordell, CPA**
Director of Finance

The Sustainability Institute

3973 Rivers Avenue, Suite 101
North Charleston, SC 29405
www.SustainabilityInstituteSC.org
Cell: 843-718-7085

Rebekah@SustainabilityInstituteSC.org

On Fri, Aug 29, 2025 at 4:05 PM Bryan Cordell <director@sustainabilityinstitutesc.org> wrote:

---------- Forwarded message ---------
From: **Shelmon, Shantel** <Shelmon.Shantel@epa.gov>
Date: Fri, Aug 29, 2025 at 3:51 PM
Subject: RE: Request for Properly Incurred Costs For Grant 5F-03D30824: REVISION #1
To: Bryan Cordell <director@sustainabilityinstitutesc.org>

Thank you for reaching out regarding Agreement 5F-03D30824. At this time, you will need to submit the Final Federal Financial Report (FFR) to reconcile the account. Once the reconciliation is completed, the account will be reopened and available for drawing down allowable costs.

Please let us know if you need assistance with the FFR submission process or have any additional questions.

Shantel Shelmon, MPH

Section Manager/Grants Management Officer

Grants Management Section

Grants and Acquisitions Management Branch

Mission Support Division

U.S. Environmental Protection Agency – Region 4

61 Forsyth Street, SW

Atlanta, Georgia 30303

Phone: (404) 562-9817

Fax: 404-562-8269

Email: shelmon.shantel@epa.gov

---

**From:** Bryan Cordell <director@sustainabilityinstitutesc.org>
**Sent:** Friday, August 29, 2025 3:17 PM
**To:** Shelmon, Shantel <Shelmon.Shantel@epa.gov>
**Subject:** Re: Request for Properly Incurred Costs For Grant 5F-03D30824: REVISION #1

You don't often get email from director@sustainabilityinstitutesc.org. Learn why this is important

**Caution:** This email originated from outside EPA, please exercise additional caution when deciding whether to open attachments or click on provided links.

Dear Shantel Shelmon,

I am sending this as a follow up to my email sent on August 19th to inquire about the status of our request for properly incurred costs for Grant 5F-03D30824. Will you please advise us on when we can expect to be able to access ASAP to draw down for properly incurred costs that happened prior to the grant termination?

Thank you,

Bryan Cordell

On Tue, Aug 19, 2025 at 11:13 PM Bryan Cordell <director@sustainabilityinstitutesc.org> wrote:

> To: Shantel Shelmon
> U.S. Environmental Protection Agency
> Atlanta Federal Center
> 61 Forsyth Street
> Atlanta, GA 30303-8960
>
> Date: August 19, 2025
>
> Re: Request for Properly Incurred Costs For Grant 5F-03D30824: REVISION #1
>
> Dear Shantel Shelmon -
>
> This request is a revision to the Request for Costs previously submitted on August 18, 2025. We just had one of our subrecipients turn in a request for their costs incurred up until the date of our grant termination, and those costs had not previously been included in the first request.
>
> Our request is now for $75,451.36 (revised from $71,536.29). Notwithstanding the direction in the Assistance Amendment not to draw down funds, we incurred $75,451.36 in allowable costs prior to the effective date of the termination and are hereby submitting a separate claim for immediate payment for these costs as provided in 2 CFR 200.305(b)(6) and 2 CFR 200.343(a). EPA did not provide Sustainability Institute with notice that payments were being withheld or performance suspended under Assistance Agreement 5F-03D30824 under 2 CFR 200.339(a) or (c) prior to issuing the July 28, 2025 Termination Memorandum and the July 28, 2025 Unilateral Termination Assistance Amendment.
>
> Given that the dispute process provides that we are entitled to recover costs incurred through the date of the termination, pursuant to 2 CFR 200.305(b)(6) and 2 CFR 200.343(a), we request access to ASAP to be able to draw down for properly incurred costs that happened prior to the termination. We are able to produce records of the allowable costs we incurred prior to termination upon request.
>
> We decline to agree to a close out Assistance Agreement 5F-03D30824 as a condition of receiving payment for allowable costs incurred prior to the July 28, 2025 date of Termination Memorandum and Unilateral Termination Assistance Agreement because EPA has not completed all administrative actions to close out the assistance agreement under 2 CFR 200.344(a) given that the process for disputing the termination remains ongoing.
>
> Sincerely,
>
> 
>
> Bryan Cordell
> Executive Director / Project Manager
> Sustainability Institute
>
> CC:
> Kevin McOmber
> Wendel Askew

Jim Payne
Sean Donahue
Daniel Coogan
Melissa Wise
Jimmy Robinson
Ferry Buchanan
Kristy Eubanks
Rebekah Cordell

--

Bryan H. Cordell

Executive Director
The Sustainability Institute

3973 Rivers Avenue, Suite 101

North Charleston, SC 29405

843.327.3573 (mobile)

843.529.3421 (office)
Director@sustainabilityinstituteSC.org

www.sustainabilityinstitutesc.org

**Our mission**: *Advancing resilient and sustainable communities while building the next generation of conservation leaders.*

PRIVILEGED AND CONFIDENTIAL: The information in this electronic message and any corresponding attachments are legally privileged and/or confidential materials, and are the property of Bryan Cordell. This information is intended for the sole use of the individual(s) or entity(s) to which it is addressed. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or duplication of this message is strictly prohibited. If you have received this message in error, please immediately notify Bryan Cordell by telephone (843.327.3573), and purge the message received. Thank You.

--

Bryan H. Cordell

*he, him, his*
Executive Director
The Sustainability Institute

3973 Rivers Avenue, Suite 101

North Charleston, SC 29405

843.327.3573 (mobile)

843.529.3421 (office)
Director@sustainabilityinstituteSC.org

www.sustainabilityinstitutesc.org

**Our mission**: *Advancing resilient and sustainable communities while building the next generation of conservation leaders.*

PRIVILEGED AND CONFIDENTIAL: The information in this electronic message and any corresponding attachments are legally privileged and/or confidential materials, and are the property of Bryan Cordell. This information is intended for the sole use of the individual(s) or entity(s) to which it is addressed. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or duplication of this message is strictly prohibited. If you have received this message in error, please immediately notify Bryan Cordell by telephone (843.327.3573), and purge the message received. Thank You.

--

Bryan H. Cordell

*he, him, his*
Executive Director
The Sustainability Institute

3973 Rivers Avenue, Suite 101

North Charleston, SC 29405

843.327.3573 (mobile)

843.529.3421 (office)
Director@sustainabilityinstituteSC.org

www.sustainabilityinstitutesc.org

**Our mission**: *Advancing resilient and sustainable communities while building the next generation of conservation leaders.*

PRIVILEGED AND CONFIDENTIAL: The information in this electronic message and any corresponding attachments are legally privileged and/or confidential materials, and are the property of Bryan Cordell. This information is intended for the sole use of the individual(s) or entity(s) to which it is addressed. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or duplication of this message is strictly prohibited. If you have received this message in error, please immediately notify Bryan Cordell by telephone (843.327.3573), and purge the message received. Thank You.

The Sustainability Institute

Rebekah Cordell <rebekah@sustainabilityinstitutesc.org>

# Request for Properly Incurred Costs For Grant 5F-03D30824

1 message

**Bryan Cordell** <director@sustainabilityinstitutesc.org> Mon, Aug 18, 2025 at 11:45 PM
Cc: McOmber.Kevin@epa.gov, Askew.Wendel@epa.gov, Payne.James@epa.gov, Donahue.Sean@epa.gov, Coogan.Daniel@epa.gov, Wise.Melissa@epa.gov, "Robinson, Jimmy" <Robinson.Jimmy@epa.gov>, "Akbar Buchanan, Ferry" <AkbarBuchanan.Ferry@epa.gov>, Eubanks.Kristy@epa.gov, Rebekah Cordell <Rebekah@sustainabilityinstitutesc.org>

To: Shantel Shelmon
U.S. Environmental Protection Agency
Atlanta Federal Center
61 Forsyth Street
Atlanta, GA 30303-8960

Date: August 18, 2025

Re: Request for Properly Incurred Costs For Grant 5F-03D30824

Dear Shantel Shelmon -

Notwithstanding the direction in the Assistance Amendment not to draw down funds, we incurred $71,536.29 in allowable costs prior to the effective date of the termination and are hereby submitting a separate claim for immediate payment for these costs as provided in 2 CFR 200.305(b)(6) and 2 CFR 200.343(a). EPA did not provide Sustainability Institute with notice that payments were being withheld or performance suspended under Assistance Agreement 5F-03D30824 under 2 CFR 200.339(a) or (c) prior to issuing the July 28, 2025 Termination Memorandum and the July 28, 2025 Unilateral Termination Assistance Amendment.

Given that the dispute process provides that we are entitled to recover costs incurred through the date of the termination, pursuant to 2 CFR 200.305(b)(6) and 2 CFR 200.343(a), we request access to ASAP to be able to draw down for properly incurred costs that happened prior to the termination. We are able to produce records of the allowable costs we incurred prior to termination upon request.

We decline to agree to a close out Assistance Agreement 5F-03D30824 as a condition of receiving payment for allowable costs incurred prior to the July 28, 2025 date of Termination Memorandum and Unilateral Termination Assistance Agreement because EPA has not completed all administrative actions to close out the assistance agreement under 2 CFR 200.344(a) given that the process for disputing the termination remains ongoing.

Sincerely,

Bryan Cordell
Executive Director / Project Manager
Sustainability Institute

CC:
Kevin McOmber
Wendel Askew

Jim Payne
Sean Donahue
Daniel Coogan
Melissa Wise
Jimmy Robinson
Ferry Buchanan
Kristy Eubanks
Rebekah Cordell

--

Bryan H. Cordell
Executive Director
The Sustainability Institute
3973 Rivers Avenue, Suite 101
North Charleston, SC 29405

843.327.3573 (mobile)
843.529.3421 (office)
Director@sustainabilityinstituteSC.org
www.sustainabilityinstitutesc.org

**Our mission**: *Advancing resilient and sustainable communities while building the next generation of conservation leaders.*

PRIVILEGED AND CONFIDENTIAL: The information in this electronic message and any corresponding attachments are legally privileged and/or confidential materials, and are the property of Bryan Cordell. This information is intended for the sole use of the individual(s) or entity(s) to which it is addressed. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or duplication of this message is strictly prohibited. If you have received this message in error, please immediately notify Bryan Cordell by telephone (843.327.3573), and purge the message received. Thank You.

---

**SI_EPA Request for Costs 5F-03D30824.pdf**
90K

The Sustainability Institute

Rebekah Cordell <rebekah@sustainabilityinstitutesc.org>

---

# RE: EPA Demand Letter and Attachments

1 message

---

**McOmber, Kevin** <McOmber.Kevin@epa.gov> Thu, Aug 28, 2025 at 1:46 PM
To: Bryan Cordell <director@sustainabilityinstitutesc.org>
Cc: "Shelmon, Shantel" <Shelmon.Shantel@epa.gov>, "Askew, Wendel" <Askew.Wendel@epa.gov>, "Payne, James (Jim)" <payne.james@epa.gov>, "Donahue, Sean" <donahue.sean@epa.gov>, "Coogan, Daniel" <Coogan.Daniel@epa.gov>, "Wise, Melissa" <wise.melissa@epa.gov>, "Robinson, Jimmy" <Robinson.Jimmy@epa.gov>, "Akbar Buchanan, Ferry" <AkbarBuchanan.Ferry@epa.gov>, "Eubanks, Kristy" <Eubanks.Kristy@epa.gov>, Rebekah Cordell <Rebekah@sustainabilityinstitutesc.org>, "Ho, Kanoelehua" <ho.kanoelehua@epa.gov>, "Rubini, Suzanne" <Rubini.Suzanne@epa.gov>

Good afternoon Mr. Cordell,

Thank you for your email.

Please be advised, as the DDO, I consider disputes in accordance with 2 C.F.R. Part 1500, Subpart E. This is an administrative process. As indicated by your letter, you are involved in a “lawsuit filed on March 19, 2025, in the U.S. District Court for the District of South Carolina, *Sustainability Institute v. Trump*, 2:25-cv-02152” regarding this matter. Since this matter is now subject to litigation in the U.S. District Court, I will not be issuing a decision on this issue as the administrative dispute is moot.

**Kevin J. McOmber, PE**

**Regional Administrator / Dispute Decision Official**

**U.S. EPA - Region 4**

61 Forsyth Street, SW

Atlanta, GA 30303

**(404) 562-8775**

mcomber.kevin@epa.gov

---

**From:** Bryan Cordell <director@sustainabilityinstitutesc.org>
**Sent:** Wednesday, August 27, 2025 4:57 PM
**To:** McOmber, Kevin <McOmber.Kevin@epa.gov>

**Cc:** Shelmon, Shantel <Shelmon.Shantel@epa.gov>; Askew, Wendel <Askew.Wendel@epa.gov>; Payne, James (Jim) <Payne.James@epa.gov>; Donahue, Sean <Donahue.Sean@epa.gov>; Coogan, Daniel <Coogan.Daniel@epa.gov>; Wise, Melissa <Wise.Melissa@epa.gov>; Robinson, Jimmy <Robinson.Jimmy@epa.gov>; Akbar Buchanan, Ferry <AkbarBuchanan.Ferry@epa.gov>; Eubanks, Kristy <Eubanks.Kristy@epa.gov>; Rebekah Cordell <Rebekah@sustainabilityinstitutesc.org>
**Subject:** Fwd: EPA Demand Letter and Attachments

You don't often get email from director@sustainabilityinstitutesc.org. Learn why this is important

**Caution:** This email originated from outside EPA, please exercise additional caution when deciding whether to open attachments or click on provided links.

From: Bryan Cordell

Sustainability Institute

3973 Rivers Avenue, Suite 101

North Charleston, SC 29405

Director@SustainabilityInstituteSC.org

To: Kevin McOmber

U.S. Environmental Protection Agency

Atlanta Federal Center

61 Forsyth Street

Atlanta, GA 30303-8960

Date: August 27, 2025

Re: Wrongful Termination of EPA Assistance Agreement 5F-03D30824 under 2 CFR 200.340

Dear Kevin McOmber:

Pursuant to 2 CFR 1500.15, we are writing to notify the EPA Dispute Decision Official that we disagree with the decision to terminate the subject award, as outlined in the EPA Action Official's Memorandum dated July 28, 20225. The termination notice is (1) arbitrarily vague relative to the standards in 2 CFR 200.341; (2) violates Congressional direction for EPA to implement the Environmental and Climate Justice grant program under 42 U.S.C. 7438; (3) is not authorized under the version of 2 CFR 200.340

that governs EPA's administration of Assistance Agreement 5F-03D30824 because none of the acceptable rationales under that provision are applicable here; (4) does not take into account the fact that EPA awarded the Assistance Agreement based on a merit review; and (5) conflicts with the programmatic terms and conditions of our agreement with EPA. The EPA Action Official's letter dated July 28, 2025, indicates that this termination is due to the determination that this award no longer effectuates the program goals or agency priorities and that the objectives of the award are no longer consistent with EPA funding priorities.

We are actively challenging EPA's unlawful freezing actions and this termination through an ongoing lawsuit filed on March 19, 2025, in the U.S. District Court for the District of South Carolina, *Sustainability Institute v. Trump*, 2:25-cv-02152. As detailed in the attached complaint and court filings, we challenge the termination of our EPA grants on constitutional, Administrative Procedures Act and nonstatutory ultra vires grounds. This litigation is currently pending at the Fourth Circuit Court of Appeals.

Accordingly, we do not believe the rationale given for terminating this grant is allowed under existing law. To be clear, this letter should in no way indicate or be taken to provide consent to enter into the formal administrative appeals process at EPA. As you are aware, our grant has a statutorily mandated three-year performance period, and waiting 180 days for the dispute process to run its course would create irreparable harm for us.

**(1) EPA's Asserted Grounds for Termination are Arbitrarily Vague and Do Not Provide Adequate Notice of the Reasons for Termination Under 2 CFR 200.341.**

According to the termination memorandum, EPA terminated the Assistance Agreement under 2 CFR 200.340:

> *. . . on the grounds that the award no longer effectuates the program goals or agency priorities. The objectives of the award are no longer consistent with EPA funding priorities.*
>
> *It is a priority of the EPA to eliminate discrimination in all programs throughout the United States. The EPA Administrator has determined that, per the Agency's obligations to the constitutional and statutory law of the United States, this priority includes ensuring that the Agency's grants do not support programs or organizations that promote or take part in diversity, equity, and inclusion ("DEI") initiatives, "environmental justice" initiatives, and conflict with the Agency's policy of prioritizing merit, fairness, and excellence in performing our statutory functions. In addition to complying with the civil rights laws, it is vital that the Agency assess whether all grant payments are free from fraud, abuse, waste, and duplication, as well as to assess whether current grants are in the best interests of the United States.*
>
> *The grant specified above provides funding for programs that promote or take part in DEI initiatives or environmental justice initiatives or other initiatives that conflict with the Agency's policy of prioritizing merit, fairness, and excellence in performing our statutory functions; that are not free from fraud, abuse, waste, or duplication; or that otherwise fail to serve the best interests of the United States. The grant is therefore inconsistent with, and no longer effectuates, Agency priorities.*

The termination memorandum does not provide the reasons why the EPA Administrator determined that the Assistance Agreement violates EPA's legal obligations or conflicts with EPA policies on merit, fairness and excellence in performing statutory functions; a description of evidence of fraud, abuse or waste as defined in the General Terms and Conditions of the Assistance Agreement that has taken place; or the specific provision in 2 CFR 200.340 authorizing the termination. Failure to identify particularized reasons for termination based on activities we performed or would perform under the Assistance Agreement is inconsistent with the notice requirement of 2 CFR 200.341 and prevents us from providing a detailed statement of the factual basis for disputing the termination as contemplated by 2 CFR 1500.15(c). The termination, therefore, is invalid.

Case 1:25-cv-01982-RJL Document 20-2 Filed 11/18/25 Page 21 of 24

Further, it is abundantly clear that this termination—like others—was based on sweeping, boilerplate determinations, rather than a careful, individualized review based on facts unique to our organization and our Assistance Agreement. Indeed, it appears that identical grounds for termination were asserted for all grants EPA awarded under the Environmental and Climate Justice Community Change Grant Program Notice of Funding Opportunity, Number EPA-R-OEJECR-OCS-23-04. As plaintiffs in the ongoing *Sustainability Institute v. Trump,* we note that, "In its latest filing, EPA confirms that it cancelled grant programs *en masse* without any assessment of the individual grants involved. In his declaration, EPA Assistant Deputy Administrator Travis Voyles explains that on February 25, 2025, he unilaterally, and on a single day, determined that several grant *programs* [rather than individual grants] should be terminated 'for policy reasons.'" (Plaintiff's Response to Order, ECF No. 146, *Sustainability Institute v. Trump,* Case No. 2-25-cv-02152 at 5) (quoting Voyles Sworn Declaration). This mass termination included Community Change Grants and Environmental Justice Collaborative Problem Solving grants. Our situation is no different.

Moreover, the absence of a particularized basis for terminating the Assistance Agreement conflicts with the Court's reasoning in *Woonasquatucket River Watershed Council v. United States Dep't of Agric*., finding that several agencies, including the EPA, were not permitted to engage in exactly the type of generalized terminations that are evident here.

**(2) Terminating this Grant Does Not Comply With Existing Regulations or Law.**

Section 2 CFR 200.340 lays out the circumstances under which federal awards can be terminated in part or in entirety. Termination is **only permissible** in circumstances of non-compliance with terms and conditions of the federal award (200.340(a)(1)); with the recipient's consent ((a)(2)), by mutual agreement of EPA and the Recipient ((a)(3)); or by EPA "to the extent authorized by law ***pursuant to the terms and conditions of the Federal award"*** including if the "award no longer effectuates the program goals or agency priorities." 2 CFR 200.340(a)(4). (Emphasis added). In its April 22, 2024, Preamble to the revisions to 2 CFR Part 200, the Office of Management and Budget (OMB) made it clear that in order for Federal agencies to assert that the grant "no longer effectuates program goals or agency priorities" grounds for termination, ***the terms and conditions must clearly and unambiguously authorize that action***. 89 FR 30046, 30169 (April 22, 2024). Indeed, EPA specifically removed any suggestion that the agency could unilaterally terminate an award based on a change in program priorities in the absence of enabling terms and conditions, as indicated in EPA's July 3, 2024, policy statement (89 FR 55262) regarding EPA's adoption of 2 CFR 200.340 prior to October 1, 2024.

As authorized under OMB's final rule, and in an effort to provide clarity on termination of its awards as expeditiously as possible, EPA previously decided to apply the revised version of 2 CFR 200.340 to EPA financial assistance agreements awarded or amended to add funds on or after July 1, 2024. This decision allowed EPA to implement the revised version of 2 CFR 200.340 through the terms and conditions of awards, as determined by EPA on or after that date. Consistent with the revised termination provision, EPA clearly and unambiguously specified all termination provisions in the terms and conditions of applicable awards, and does not allow for unilateral termination unless such provision is specifically stated in the grant terms and conditions. Our terms and conditions DO NOT allow for unilateral termination. Accordingly, any subsequent changes to the grounds for unilateral termination of an assistance agreement **must be agreed to by both EPA and the grantee. We have not, and unequivocally DO NOT, agree to any attempts to terminate this grant award based on a shift in agency priorities. We believe that Congress intended for these funds to flow in our legally mandated award and cannot be unilaterally terminated by the executive branch.**

Indeed, EPA specifically removed any suggestion that the agency could unilaterally terminate an award based on a change in program priorities, as indicated in EPA's July 3, 2024, policy statement (89 FR 55262) regarding terminations based on changes in Agency priorities. As such, the language in the EPA general terms and conditions starting on October 1, 2024 through April 2, 2025 clearly do NOT contemplate that the agency can terminate its grants because of a change in agency priorities, particularly one that has not been approved by Congress.

Our grant award does not include any statement regarding the need to comply with a shift in agency priorities, and it does not explicitly allow for this type of unilateral termination based on policy shifts.

**(3) There is No Other Valid Basis for Termination of Our Grant Award.**

The other conditions for termination are similarly inapplicable here. Termination for noncompliance is only possible when "the noncompliance with the terms and conditions **is substantial such that effective performance of the Assistance Agreement is materially impaired** or **there is adequate evidence of waste, fraud, or abuse,** prompting adverse action by EPA per 2 CFR 200.339, through either a partial or full termination." Neither case has been shown to exist. Indeed, EPA has neither identified any non-compliance nor requested that Sustainability Institute take action to cure any deficiencies in its agreement performance. Moreover, it bears noting that all competitive grants were awarded per 2 CFR 200.205, which requires a merit review before awarding funding; nothing that the Agency has stated in our termination letter undermines the meritorious nature of our organization or the project that we are undertaking with our federal funds.

Furthermore:

a. We have not failed to comply with the terms or conditions of this award. On the contrary, we have made every effort to comply with the terms of the award even in the face of extreme hardship caused by the agency's stop and start of our ASAP account. Our project has stayed in full compliance with the grant terms and conditions and the project has progressed as designed. On April 9, 2025 and April 24, 2025 (see attached emails), our EPA Project Officer, Ferry Buchanan, formally documented that our grant project and activities were in full compliance. His correspondence included: "By my account, Sustainability Institute has been an exemplary grantee… Sustainability Institute has continued to promptly fulfill all requirements and any requests on or before due dates. Acceptable progress was made for all milestones indicated in the work plan based on the last few monthly check-ins between EPA and Sustainability Institute."
b. We have not mutually agreed to terminate this award, and indeed, we oppose the termination of this critical award that helps reduce air pollution, increase water quality, and decrease energy costs and burdens for everyday Americans.
c. There has been no claim made that the grant will not accomplish the purposes for which it was made.
d. In fact, we believe that our award and planned activities exist in perfect harmony with the EPA's "Powering the Great American Comeback initiative" and meet the purpose and intent of Pillar 1: Clean Air, Land, and Water for Every American, and Pillar II: Restore American Energy Dominance.
e. The Programmatic Terms, as described above, do not allow termination based on policy preferences of a new Administration that conflict with the statutory authorization for the grant program as enacted by Congress.

As outlined in our litigation, this award was authorized by law, using funds appropriated by Congress identified in existing law. The grant was deemed consistent with agency requirements for performance of your statutory functions (evidenced by issuance of the award). This includes compliance with the agency's stated objectives for prioritizing merit, fairness and excellence as reflected by the fact that EPA awarded the funding on a competitive basis using merit-based selection criteria as provided in 2 CFR 200.205 and EPA Order 5700.5A1, EPA's Policy for Competition of Assistance Agreements.

Moreover, there has been no finding or concern raised about this award relative to fraud, waste or duplication. Congress has not passed any amendments or subsequent laws that would negate that authorization to distribute our legally obligated funds and the termination provisions have not otherwise been triggered in this instance.

Finally, the termination provisions specify that if EPA partially or fully terminates the Assistance Agreement, EPA must "(1) de-obligate uncommitted funds and re-obligate them to another Eligible Recipient to effectuate the objectives of the …Program within 90 days of the de-obligation …" This contractual commitment clearly mandates that this work must continue and underscores the importance that EPA places on the program. Given that there has been no legally justifiable basis presented for discontinuing the program here and given the contractual commitment for the work to be continued, the award to Sustainability Institute should be reinstated immediately to prevent further harm.

Indeed, Sustainability Institute's implementation of this grant directly implements the program goals as stated in 42 U.S.C. 7438 and the corresponding program guidance. There has been no updated program guidance to suggest otherwise. As outlined in our ongoing litigation, **EPA has provided no justifiable cause for terminating a legally obligated grant that clearly implements the will and intent of Congress.**

**(4) The Termination Letter Is Causing Irreparable Harm to Americans in the Southeast (EPA Region 4), as** detailed in the attached complaint and court filings

The attached pleadings and grant reports show how our organization was successfully implementing the award and delivering key outcomes of value to our community. We have remained in full compliance with all grant terms and conditions, and were achieving the deliverables and activities set forth in the approved scope of work.

**As our ongoing litigation clarifies, there are no authorizing statutes, regulations, terms, or policies that would support EPA's action to unilaterally terminate our award at this time. Accordingly, the remedy that we are requesting is for EPA to immediately reinstate our grant to ensure timely distribution of Congressionally-authorized funds.**

Absent this remedy, we demand that, as part of the scheduling order in this termination proceeding, you direct EPA's Action Official to provide a response in writing identifying the specific agency statute or regulation that purportedly authorizes this termination. That response should include a clear explanation and supporting evidence demonstrating how our current award is inconsistent with the cited authority.

Pursuant to 2 CFR 200.344(a), we will not complete the administrative actions necessary to close out the grant until EPA's Dispute Decision Official takes final agency action on the termination pursuant to 2 CFR 1500.17(b). We also reserve the right to object to any future claims of noncompliance under 2 CFR 200.344(i).

Very truly yours,

Bryan Cordell

Executive Director / Project Manager

Sustainability Institute

CC:

Shantel Shelmon

Wendel Askew

Jim Payne

Sean Donahue

Daniel Coogan

Melissa Wise

Jimmy Robinson

Ferry Buchanan

Kristy Eubanks

Rebekah Cordell

--

Bryan H. Cordell

*he, him, his*
Executive Director
The Sustainability Institute

3973 Rivers Avenue, Suite 101

North Charleston, SC 29405

843.327.3573 (mobile)

843.529.3421 (office)
Director@sustainabilityinstituteSC.org

www.sustainabilityinstitutesc.org

**Our mission**: *Advancing resilient and sustainable communities while building the next generation of conservation leaders.*

PRIVILEGED AND CONFIDENTIAL: The information in this electronic message and any corresponding attachments are legally privileged and/or confidential materials, and are the property of Bryan Cordell. This information is intended for the sole use of the individual(s) or entity(s) to which it is addressed. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or duplication of this message is strictly prohibited. If you have received this message in error, please immediately notify Bryan Cordell by telephone (843.327.3573), and purge the message received. Thank You.